Document comparison done by Workshare DeltaView on Friday, May 27, 2011 3:32:28 PM

| Input: | |
|---|---|
| Document 1 | file://F:/Clients/19620/004/Plan & Disclosure Statement/P-Plan (Final 040411).doc |
| Document 2 | file://F:/Clients/19620/004/Plan & Disclosure Statement/P-First Modified Plan (Final).doc |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 372 |
| Deletions | 262 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 642 |

Thomas W. Stilley, OSB No. 883167
Howard M. Levine, OSB No. 800730
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
E-Mail: tstilley@sussmanshank.com
      hlevine@sussmanshank.com
Attorneys for Debtor/Debtor-In-
Possession

James I. Stang, CA Bar No. 94435
Pamela E. Singer, CA Bar No. 224758
~~Pachulski Stang Ziehl~~
PACHULSKI STANG ZIEHL
 & ~~Jones~~JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: (310~~/~~) 277-6910
Facsimile: (310~~/~~) 201-0760
E-mail: jstang@pszjlaw.com
      psinger@pszjlaw.com
Attorneys for Official Committee of
Unsecured Creditors

Paul A. Richler, CA Bar No. 59909
MORGAN LEWIS & BOCKIUS LLP
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071-3132
Telephone: (213~~-~~) 612-1104
Facsimile: (213~~-~~) 612-2501
E-mail: prichler@morganlewis.com
Special Insurance Counsel for Official
Committee of Unsecured Creditors

Stephen S. Gray
CRG PARTNERS GROUP, LLC
2 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 482-4242
Facsimile: (617) 482-9804
E-Mail: Stephen.Gray@crgpartners.com
~~Attorneys for~~ Future Claimants
Representative

Richard K. Hansen, OSB No. 832231
Thomas V. Dulcich, OSB No. 802105
SCHWABE WILLIAMSON & WYATT PC
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204
Telephone: (503~~-~~) 796-2958
Facsimile: (503~~-~~) 796-2900
E-mail: rhansen@schwabe.com
      tdulcich@schwabe.com
Special Claims Counsel for Debtor and
Debtor-In-Possession

James R. Murray, WA Bar No. 25263
Scott N. Godes, DC Bar No. 463674
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
Telephone: (202~~-~~) 420-3409
Facsimile: (202~~-~~) 420-2201
E-mail: MurrayJ@DicksteinShapiro.com
      GodesS@DicksteinShapiro.com
Special Insurance Counsel for Debtor and
Debtor-In-Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | |
|---|---|
| ~~n~~In re:<br><br>SOCIETY OF JESUS, OREGON PROVINCE, an Oregon domestic nonprofit religious corporation,<br><br>              Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 09-30938-elp11

FIRST MODIFIED JOINT PLAN OF REORGANIZATION
(Dated ~~April 4,~~May 27, 2011)

**TABLE OF CONTENTS**

1.    DEFINITIONS.................................................................................. 1

2.    TREATMENT OF UNCLASSIFIED CLAIMS ....................................... ~~25~~28

2.1   Administrative Claims............................................................... ~~25~~28

3.    CLASSIFICATION OF CLAIMS.......................................................... ~~25~~28

4.    TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS .............................. ~~26~~29

4.1   Class 1:  Priority Claims ........................................................ ~~26~~29

4.2   Class 2:  General Unsecured Convenience Claims .................... ~~26~~30

4.3   Class 5:  Omak Area Shelter Claim........................................ ~~27~~30

4.4   Class 9:  Student Loan Claims .............................................. ~~27~~31

4.5   Class 12:  Charitable Gift Annuity Claims ............................... ~~28~~31

4.6   Class 14: Convenience Abuse Claims ..................................... ~~28~~31

5.    TREATMENT OF IMPAIRED CLASSES OF CLAIMS .............................. ~~28~~31

5.1   Classes 3 and 3A:  Abuse Claims .......................................... ~~28~~31

5.2   Treatment of Class 3 Claims.................................................. ~~32~~35

5.3   Treatment of Class 3A Claims (Non-Sexual Abuse Claims)..... ~~38~~42

5.4   Treatment of Litigation Current Abuse Claims......................... ~~39~~42

5.5   Class 4:  Future Abuse Claims............................................... ~~42~~45

5.6   Class 6:  Insured Non-Abuse Claims ..................................... ~~47~~50

5.7   Class 7:  General Unsecured Claims ...................................... ~~48~~51

5.8   Class 8:  Penalty Claims ...................................................... ~~48~~51

5.9   Class 10 ~~48~~ (Intentionally Omitted) ......................................... 51

5.10  Class 11:  Formation Fund Claim........................................... ~~48~~51

5.11  Class 13: Donor Claims and Beneficiary Claims ...................... ~~48~~51

5.12  Class 15: Abuse Related Contribution/Indemnity Claims ......... ~~48~~51

6.    TRUST .............................................................................. ~~49~~52

| | 6.1 | Establishment of Trust | 49 52 |
| | 6.2 | Formation of Trust | 50 53 |
| | 6.3 | Trustee Assumes Responsibility | 50 53 |
| | 6.4 | Beneficiaries | 50 54 |
| | 6.5 | Trustee | 51 54 |
| | 6.6 | Intentionally omitted | 51 54 |
| | 6.7 | Trust Funding | 54 |
| | 6.8 | Deposit and Payment of Funds | 52 55 |
| | 6.9 | Prosecution of Actions | 52 56 |
| | 6.10 | Winding Up/Distribution of Excess Funds | 53 57 |
| | 6.11 | No Execution | 54 57 |
| 7. | | LIQUIDATION AND PAYMENT OF ABUSE CLAIMS | 54 57 |
| | 7.1 | Liquidation of Abuse Claims | 54 57 |
| | 7.2 | Payment of Abuse Claims | 54 58 |
| | 7.3 | Future Abuse Claims Bar Date | 57 61 |
| | 7.4 | Effect of Disallowance of Abuse Claims | 58 61 |
| | 7.5 | Treatment of Attorneys' Fees of Abuse Claimants | 58 61 |
| | 7.6 | Treatment of Punitive Damages | 58 62 |
| | 7.7 | Withdrawal of Abuse Claims | 58 62 |
| 8. | | INSURANCE MATTERS | 58 62 |
| | 8.1 | Transfer of Insurance Rights | 58 62 |
| | 8.2 | Appointment of Trustee as Estate Representative to Enforce Insurance Rights  and Obtain Insurance Recoveries | 59 63 |
| | 8.3 | Consequences of Determination That Assignment is Invalid | 60 63 |
| | 8.4 | Preservation of Insurance Rights | 61 64 |
| | 8.5 | Post-Judgment Actions Against Non-Settling Insurers | 61 65 |

8.6     Settlement with Non-Settling Insurers ....................................................... 6265

8.7     Cooperation with Non-Settling Insurer in Defense of Claims..................... 6265

8.8     Insurance Neutrality ................................................................................... 6266

9.      MEANS FOR IMPLEMENTATION OF THE PLAN............................................ 6366

9.1     Closing ......................................................................................................... 6366

9.2     Continuation of Future Claimants Representative...................................... 6367

9.3     Obligations of the Reorganized Debtor and Participating Parties.............. 6468

9.4     Objections to Claims ................................................................................... 6569

9.5     Provisions Governing Distributions ........................................................... 6569

9.6     Closing of the Case .................................................................................... 6771

10.     CONDITIONS PRECEDENT........................................................................... 6871

10.1    Conditions to Effectiveness ........................................................................ 6871

10.2    Waiver of Conditions .................................................................................. 6872

11.     EFFECTS OF PLAN CONFIRMATION ........................................................... 6872

11.1    Discharge ..................................................................................................... 6872

11.2    Post-Petition Abuse Claims........................................................................ 6973

11.3    Vesting ......................................................................................................... 7073

11.4    Exculpation And Limitation Of Liability ..................................................... 7073

11.5    Supplemental Injunction Preventing Prosecution of Abuse
        Claims Against Settling Insurers Other than Safeco ................................. 70 74

11.6    Supplemental Injunction Preventing Prosecution of Abuse
        Claims Against Safeco 71, Travelers, and Western World ............................ 75

11.7    Channeling Injunction Preventing Prosecution of Abuse Claims
        Against Participating Parties and Released Parties, andChanneling Injunction
        71 Beneficiaries ........................................................................................... 77

11.8    Term of Injunctions or Stays and Confirmation of Settlements

With Settling Insurers, Released Parties, and Participating Parties ........... ~~74~~79

11.9  Release of Avoidance Claims Against Participating Parties and

Settling Insurers ................................................................................. ~~74~~80

12. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. .. ~~75~~81

12.1  Assumed Employee and Retiree Benefit Plans and Collective

Bargaining Agreements .................................................................... ~~75~~81

12.2  General; Assumed if Not Rejected ............................................................ ~~75~~81

12.3  Claims for Contract Rejection .................................................................. ~~75~~81

13. NON-MONETARY COMMITMENTS ................................................................... ~~76~~82

14. MISCELLANEOUS PROVISIONS ..................................................................... ~~81~~87

14.1  Retention of Jurisdiction ......................................................................... ~~81~~87

14.2  Modification of Plan ................................................................................. ~~82~~88

14.3  Severability .............................................................................................. ~~82~~88

14.4. Post-Confirmation Professional Fees and Expenses ............................... ~~82~~88

14.5  Headings ................................................................................................. ~~83~~89

14.6  Computation of Time Periods ................................................................... ~~83~~89

14.7  Notices .................................................................................................... ~~83~~89

14.8  Post-Confirmation Court Approval ............................................................ ~~84~~90

14.9  Election Pursuant to Section 1129(b) of the Bankruptcy Code ................. ~~85~~91

14.10 Consummation of the Plan ...................................................................... ~~85~~91

14.11 Exemption from Transfer Taxes .............................................................. ~~85~~91

14.12  Waivers ................................................................................................. ~~86~~92

14.13  Setoffs, Recoupments, and Defenses .................................................... ~~86~~92

14.14  Compromise of Controversies ................................................................ ~~86~~92

14.15  Withdrawal or Revocation of the Plan .................................................... ~~88~~94

14.16  Default ................................................................................................... ~~88~~95

| | | |
|---|---|---|
| 14.17 | Filing and Payment of Allowed Administrative Claims | ~~88~~95 |
| 14.18 | Payment of United States Trustee Fees | ~~89~~95 |
| 14.19 | Governing Law | ~~89~~96 |
| 14.20 | Reservation of Rights | ~~89~~96 |
| 14.21 | Controlling Documents | ~~89~~96 |
| 14.22 | Successors and Assigns | ~~89~~96 |
| 14.23 | Rounding of Fractional Numbers | ~~90~~96 |
| 14.24 | Dissolution of the Committee | ~~90~~97 |
| 14.25 | Exhibits | ~~90~~97 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

| | |
|---|---|
| 1 | Society of Jesus, Oregon Province, an Oregon non-profit religious corporation, |
| 2 | the Debtor and Debtor-in-Possession in this Case;, the Official Committee of Unsecured |
| 3 | Creditors appointed in this Case:, and the Future Claimants Representative appointed in |
| 4 | this Case as the legal representative for the Future Abuse Claimants, propose the |
| 5 | following Plan of Reorganization pursuant to the provisions of Chapter 11 of the |
| 6 | Bankruptcy Code. |

**1.    DEFINITIONS.**

For purposes hereof, any term used in an initially capitalized form in this Plan will have the defined meaning ascribed to it in the definitions set forth below and, if not defined below, in Section 101 of the Bankruptcy Code.  All definitions in the Bankruptcy Code and below will be subject to the rules of construction set forth in Section 102 of the Bankruptcy Code.  In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to" or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with. Whenever the context requires, such terms include the singular as well as the plural, the masculine gender includes the feminine, and the feminine gender includes the masculine.  Any specific references to promissory notes, deeds of trust or other debt instruments or security documents includes any amendments, modifications and extensions thereto.  Nothing contained in this Plan constitutes an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

The Plan includes as exhibits the (i) Safeco Settlement Agreement, which is(ii) Travelers Settlement Agreement (to be filed as a Plan Supplement), and (iii) the Western World Settlement Agreement (to be filed as a Plan Supplement), which are all incorporated herein by reference, and the Supplemental Injunction described therein.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ☐ FACSIMILE (503) 248-0130

The Safeco Settlement Agreement, ~~the Travelers Settlement Agreement, the Western World Settlement Agreement,~~ and Supplemental ~~Injunction~~Injunctions at ~~section~~sections 11.5 and 11.6 of the Plan, include: (i) terms that are not defined in the Plan, and (ii) terms contained in the Plan but that are defined differently than in the Plan. For the purposes of the interpretation and enforcement of the Safeco Settlement Agreement, the Supplemental ~~Injunction~~Injunctions, and the Plan provisions relating to the Safeco Settlement Agreement ~~and the Supplemental Injunction~~, the definitions in the Safeco Settlement Agreement control, and any conflicts between the defined terms in the Plan and the defined terms in the Safeco Settlement Agreement shall be resolved in favor of the defined terms in the Safeco Settlement Agreement. For the purposes of the interpretation and enforcement of the Travelers Settlement Agreement, the Supplemental Injunctions, and the Plan provisions relating to the Travelers Settlement Agreement, the definitions in the Travelers Settlement Agreement control, and any conflicts between the defined terms in the Plan and the defined terms in the Travelers Settlement Agreement shall be resolved in favor of the defined terms in the Travelers Settlement Agreement. For the purposes of the interpretation and enforcement of the Western World Settlement Agreement, the Supplemental Injunctions, and the Plan provisions relating to the Western World Settlement Agreement, the definitions in the Western World Settlement Agreement control, and any conflicts between the defined terms in the Plan and the defined terms in the Western World Settlement Agreement shall be resolved in favor of the defined terms in the Western World Settlement Agreement.

1.1 **"Abuse"** means any act of Sexual Abuse, or physical, non-sexual, mental, emotional, or cultural abuse.

1.2 **"Abuse Claim"** means a Claim, asserted by or on behalf of an individual who is or claims to be the victim of Abuse, against the Debtor and/or a Participating

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1  Party, related to Abuse that occurred prior to the Petition Date causing a personal injury
2  or wrongful death, or is a Claim for paternity.  The term "Abuse Claim" does not include
3  any Abuse Related Contribution/Indemnity Claim.

4  **1.3**  **"Abuse Claims Reviewer"** means the person, including the designee of
5  such person, who will administer an Allocation Plan.  Subject to the Plan's provisions for
6  replacement of the Abuse Claims Reviewer, the Abuse Claims Reviewer for Allocation
7  Plan I is Hon. William L. Bettinelli, Ret.  The Abuse Claims Reviewer for Allocation
8  Plans II and III is Katrina Pflaumer.

9  **1.4**  **"Abuse Claimant"** means the holder of an Abuse Claim, the estate of a
10  deceased Abuse Claimant, or the personal executor or personal representative of the
11  estate of a deceased Abuse Claimant, as the case may be.

12  **1.5**  **"Abuse Related Contribution/Indemnity Claim"** means any Entity's
13  Claim against any other Entity for contribution, indemnity, or reimbursement arising as a
14  result of such Entity having paid or defended against any Abuse Claim.

15  **1.6**  **"Administrative Claim"** means a Claim for payment of an administrative
16  expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in
17  Section 507(a)(1) of the Bankruptcy Code including the actual, necessary costs and
18  expenses of preserving the Debtor's estate and operating the Debtor's business
19  including Current Obligations, compensation for professional services and
20  reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy
21  Code, and all fees and charges assessed against the Debtor's estate under chapter 123
22  of Title 28, United States Code.

23  **1.7**  **"Administrative Claimant"** means the holder of an Administrative Claim.

24  **1.8**  **"Aged & Infirm Fund"** means the Oregon Province Aged & Infirm Fund
25  Charitable Trust, also known as the Arca Praevisionis.

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ⎢ FACSIMILE (503) 248-0130

1.8.a **"Allocation Plans"** means Allocation Plan I, Allocation Plan II, and Allocation Plan III.

1.9 **"Allocation Plan I"** means the protocol which is set forth as Exhibit 1.9 to the Plan.

1.10 **"Allocation Plan II"** means the protocol which is set forth as Exhibit 1.10 to the Plan.

1.11 **"Allocation Plan III"** means the protocol which is set forth as Exhibit 1.11 to the Plan.

1.12 **"Allowance Date"** means, with respect to a Claim, the date such Claim becomes Allowed.

1.13 **"Allowed"** means, with respect to a Claim, the extent to which: (a) the Claim is agreed to by the Claimant and by the Debtor or the Reorganized Debtor; (b) the Claim is expressly allowed in this Plan; or (c) proof of such Claim was (i) timely filed with the Claims Agent, (ii) deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) tardily filed with leave of the Bankruptcy Court, and, in any case, as to which the Claim is not Disputed or, if the Claim is or was Disputed, the Claim has been Allowed by a Final Order.

1.14 **"Apostolic Works Fund"** means the Oregon Province Apostolic Works Fund Charitable Trust, also known as the Arca Operum Apostolicorum.

1.15 **"Arcas"** means collectively the Aged & Infirm Fund, the Apostolic Works Fund, the Formation Fund, and the Foundations Fund, and the trusts under civil law created thereunder.

1.16 **"Average Future Claim Point Award"** means the average award per point for all pools utilizing Allocation Plan I, excluding those Abuse Claimants electing treatment as the holder of a Convenience Abuse Claim or who are otherwise awarded no points.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1.17 **"Avoidance Rights"** means those rights that may be asserted by the Debtor, as a debtor-in-possession, to avoid and recover transfers, liens, or obligations, described in Sections 544, 545, 546, 547, 548, 549, and 550 of the Bankruptcy Code, and any other actions provided for under applicable law that allows a debtor-in-possession or trustee to avoid certain transfers, but excluding those Avoidance Rights, if any, against the Participating Parties~~, Safeco,~~ and the Settling Insurers that are compromised and released pursuant to ~~Sections 11.5, 11.6, and 11.7~~Section 11.9 of the Plan.

1.18 **"Award"** means the liquidated amount of any Abuse Claim as determined in accordance with the terms of this Plan.

1.19 **"Ballot"** means the ballot that is used by a Creditor to accept or reject the Plan, and pursuant to which Abuse Claimants will make certain elections regarding the treatment of their Abuse Claims as provided in the Plan.

1.20 **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, principally codified in 11 USC Section 101, et seq., and any amendments thereto applicable to this case.

1.21 **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Oregon, located in Portland, Oregon.

1.22 **"Bankruptcy Rules"** means the Rules and Forms of Practice and Procedures in Bankruptcy promulgated under 28 USC § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 cases, together with all amendments and modifications thereto.

1.23 **"Beneficiary Claims"** means those Claims asserting (1) a right or entitlement to the use or benefit, including any religious use or benefit, of property, funds or other assets held by the Debtor or a Participating Party in trust or otherwise restricted in their use, including the property, funds, or other assets in the Apostolic

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 Works Fund, the Formation Fund, the Aged & Infirm Firm, and the Foundations Fund, or

2 (2) that the use of such property, funds, or other assets to pay Claims against the

3 Debtor or a Participating Party violates the terms of any such trust or other restriction.

4     **1.24 "Business Day"** means any day other than Saturday, Sunday, or a "legal

5 holiday", as that term is defined in Bankruptcy Rule 9006(a).

6     **1.25 "Canon Law"** means the 1983 Code of Canon Law promulgated on

7 January 25, 1983 by Pope John Paul II, and any amendments thereto.

8     **1.26 "Case"** means the case under Chapter 11 of the Bankruptcy Code

9 commenced by the Debtor on February 17, 2009, Case No. 09-30938-elp11.

10     **1.27 "Cash"** means cash, cash equivalents, bank deposits, and negotiable

11 instruments payable on demand.

12     ~~**1.28 Intentionally omitted.**~~

13     **1.28 "Channeled Claim"** means any Abuse Claim, Tort Claim (as defined in

14 the Safeco Settlement Agreement), Tort Claim (as defined in the Travelers Settlement

15 Agreement), Tort Claim (as defined in the Western World Settlement Agreement),

16 and/or Claim against a Channeling Injunction Beneficiary arising from, in connection

17 with, or related in any way to an Abuse Claim, Tort Claim (as defined in the Safeco

18 Settlement Agreement), Tort Claim (as defined in the Travelers Settlement Agreement),

19 or Tort Claim (as defined in the Western World Settlement Agreement). Each Claim

20 described in this Section 1.28 shall include all such Claims whenever and wherever

21 arising or asserted, whether sounding in tort, contract, warranty or any other theory of

22 law, equity or admiralty, including without limitation all Claims by way of direct action,

23 statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages,

24 for attorneys' fees and other expenses, or for any equitable remedy. A Channeled

25 Claim does not include an Abuse Claim against: (i) a Person or Persons having

26 personally committed an act or acts of Abuse resulting in a Claim against the Debtor or

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

a Participating Party, (ii) the Society of Jesus; (iii) the Father General of the Society of Jesus and his predecessors, (iv) the Society of Jesus General Curia; (v) a successor or predecessor of the Debtor to the extent of such successor's or predecessor's independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii) Seattle University, and (viii) the Jesuit High Schools.

    **1.29** **"Channeling Injunction"** means the injunction provided for under Section 11.7 of the Plan.

    **1.29(a) "Channeling Injunction Beneficiaries"** means the Participating Parties, the Released Parties, Safeco, the Safeco Released Parties, Travelers, the Travelers Released Parties, Western World, the Western World Released Parties, the Settling Insurers, and the Settling Insurer Released Parties.

    **1.30 "Chapter 11 Professionals"** means, collectively, the Debtor's Professionals, the Committee's Professionals, and the Future Claimants Representative's Professionals.

    **1.31 "Charitable Gift Annuities"** means the gifts made to the Debtor by various donors for charitable gift annuities, in exchange for which such donors are to receive certain fixed payments during their lives or the life of another person, the payments for which were fixed at the date of the gift based on actuarial life expectancy tables and uniform gift annuity rates.

    **1.32 "Claim"** means any claim, as that term is defined in Section 101(5) of the Bankruptcy Code, arising on or prior to entry of the Confirmation Order.

    **1.33 "Claim Allowance Agreement"** means an agreement between the Debtor and a Claimant which is entered into prior to the Effective Date and approved by the Bankruptcy Court as reasonable under Bankruptcy Rule 9019, whereby the Debtor and the Claimant agree to the Allowed amount of the Claimant's Claim.

    **1.34 "Claimant"** means a Creditor that holds a Claim.

1.35 **"Claims Agent"** means BMC Group, Inc.

1.36 **"Claims Bar Date"** means November 30, 2009.

1.37 **"Claims Bar Date Notice"** means the various notices of the last day to file Claims mailed to all known Creditors together with the publication notice published in various newspapers and other publications providing notice of the Claims Bar Date.

1.38 **"Claims Bar Date Order"** means the order of the Bankruptcy Court setting the Claims Bar Date and approving the method of notification of the Claims Bar Date.

1.39 **"Claims Objection Bar Date"** means, unless extended by the Court, the first Business Day that follows the 30th day after the Effective Date, by which any objection to a Claim (excluding Class 4 Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

1.40 **"Closing"** means the Reorganized Debtor's execution and delivery of the Plan Documents and payment to the Trust of those sums required to be paid in accordance with Sections 6.2 and 6.7 of the Plan.

1.41 **"Co-Defendant"** means a Person or Entity that is named as a defendant in a lawsuit in which the Debtor is also named as a defendant, and/or who is alleged to be fully or partially responsible for a Claim asserted, or which may be asserted in the future, against both such Person and/or Entity and the Debtor, including co-debtors as described in Section 509 of the Bankruptcy Code.

1.42 **"Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Case, as such committee may be reconstituted from time to time.

1.43 **"Committee's Professionals"** means Pachulski Stang Ziehl & Jones LLP; Morgan Lewis & Bockius LLP; LECG, LLC; Berkeley Research Group, LLC and all other professionals, if any, which the Committee has retained or may retain to provide

**Page 8 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

1 professional services in accordance with Section 1103(a) of the Bankruptcy Code and
2 as approved by the Bankruptcy Court.

3   **1.44 "Conditional Payment"** means any payment made pursuant to Section
4 1395y(b)(2)(B) of the MSPA.

5   **1.45 "Confirmation Date"** means the date of the entry of the Confirmation
6 Order.

7   **1.46 "Confirmation Hearing"** means the hearing held by the Bankruptcy Court
8 regarding confirmation of the Plan, as such may be continued from time to time.

9   **1.47 "Confirmation Order"** means the order confirming the Plan.

10   **1.48 "Contingent**" means, with respect to a Claim, a Claim that has not
11 accrued or is not otherwise payable and the accrual of which or the obligation to make
12 payment on which is dependent upon a future event that may or may not occur.

13   **1.49 "Convenience Abuse Claim"** means an Abuse Claim in an amount of
14 $2,500 or less, or voluntarily reduced to $2,500 by the holder of such Abuse Claim or
15 otherwise deemed to be a Convenience Abuse Claim under the Plan.

16   **1.50    Intentionally omitted**.

17   **1.51 "Court"** means the Bankruptcy Court.

18   **1.52 "Creditor Pool"** means a group of not less than forty-five (45) Class 3
19 Creditors who are associated for the purpose of allocating a portion of the Trust assets
20 to each Abuse Claimant in the group pursuant to Allocation Plan I or Allocation Plan II.
21 Each Creditor Pool shall be identified by a number, i.e. Creditor Pool No. 1.

22   **1.53 "Current Sexual Abuse Claim"** means the Abuse Claim of an Abuse
23 Claimant: (a) who prior to any amendment or supplementation of a proof of claim filed a
24 proof of claim alleging Sexual Abuse; or (b) who (i) initially filed a proof of claim that did
25 not allege Sexual Abuse but later amended or supplemented the proof of claim to allege
26 Sexual Abuse and (ii) according to the Abuse Claims Reviewer, based upon a

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 preponderance of evidence, has a Claim for Sexual Abuse; and (c) who is not a Future

2 Abuse Claimant.

3     **1.54 "Current Obligations"** means (a) all accounts payable and other

4 liabilities or obligations of the Debtor that arose or accrued in the ordinary course of the

5 Debtor's business subsequent to the Petition Date and prior to the Confirmation Date

6 (excluding any Abuse Claims), and (b) any taxes that were incurred subsequent to the

7 Petition Date and became or become legally due and payable by the Debtor

8 subsequent to the Petition Date and prior to the Confirmation Date.

9     **1.55 "Debtor"** means the Society of Jesus, Oregon Province, an Oregon non-

10 profit religious corporation (including the Province, and all Jesuit Communities located

11 within the Province Territory), and includes (a) each Jesuit Community, and (b) the

12 Province, to the extent any of them are determined not to be a civil entity separate from

13 the Debtor under applicable law.[1] "Debtor" does not include Jesuit Community of

14 Gonzaga University, Inc., a Washington corporation.

15     **1.56 "Debtor and Participating Party Actions"** means, other than as set forth

16 in this definition, any and all Claims, causes of action, and rights of the Debtor and the

17 Participating Parties against third parties including Claims of the Debtor and

18 Participating Parties for recovery of, or based upon, or in any manner arising from or

19 related to damages, general or exemplary (or both), or other relief, including equitable

20 relief relating to or based upon: (a) indebtedness owing to the Debtor; (b) fraud,

21 negligence, gross negligence, willful misconduct, or any other tort actions; (c) breaches

22 of contract; (d) violations of federal or state laws (including corporate and securities

23 laws); (e) breaches of fiduciary or agency duties; (f) Abuse Related

24 Contribution/Indemnity Claims, and (g) any other Claim of the Debtor or a Participating

25 _____

26 [1] The separate legal existence of a Jesuit Community and/or the Province has not been determined by the Bankruptcy Court and is not being decided in connection with confirmation of the Plan.

1  Party to the extent not assigned to the Trust or specifically compromised or released

2  pursuant to this Plan or an agreement incorporated into this Plan.  Debtor and

3  Participating Party Actions shall not include: (a) Insurance Claims, and (b) Avoidance

4  Rights.

5  **1.57  "Debtor and Participating Party Action Recoveries"** means the rights

6  of the Debtor and the Participating Parties to any and all proceeds or other relief,

7  including equitable relief, from (a) any award, judgment, relief, or other determination

8  rendered or made as to any Debtor or Participating Party Action; or (b) any compromise

9  or settlement of any Debtor or Participating Party Action.

10  **1.58  "Debtor's Professionals"** means the law firms Sussman Shank LLP,

11  Schwabe Williamson & Wyatt PC, Dickstein Shapiro LLP, Rothgerber Johnson & Lyons

12  PC, Hoffman Hart & Wagner LLP, and Hughes Pfiffner Gorski Seedorf & Odsen, LLC;

13  the public relations firm The Ulum Group; the Debtor's Claims Agent, BMC Group, Inc.;

14  the accounting firm Moss Adams LLP; and all other professionals, if any, which the

15  Debtor has retained or may retain to provide professional services in accordance with

16  Sections 327(a) and 327(e) of the Bankruptcy Code.

17  **1.59  "Disallowed"** means, with respect to any Claim, the extent to which the

18  Claim has not been Allowed pursuant to a Final Order.

19  **1.60  "Disputed"** means, with respect to a Claim, that an objection to such

20  Claim has been timely filed, or such Claim is listed as disputed in the Debtor's

21  schedules filed with the Bankruptcy Court, and such objection or dispute has not been

22  resolved by Final Order, or by agreement between the Claimant and the Debtor, the

23  Reorganized Debtor, or the Trustee, as applicable.

24  **1.61  "Documents"** means to the extent such documents relate to Sexual

25  Abuse, documents that have been produced in any Rule 2004 Examination of the

26  Debtor and in any other litigation in which the Debtor or the Province Entities have been

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  a party, subject to (a) the privileges enumerated in Section ~~13.15,~~13.15; (b) restrictions

2  under other federal and state laws or regulations~~,~~; (c) application of any court orders,

3  except those regarding privileges not enumerated in Section 13.15; and (d) redaction of

4  survivor's identities.  Notwithstanding the foregoing, the Reorganized Debtor and the

5  Province shall not assert the enumerated privileges in Section 13.15 to any Documents

6  already produced in any Rule 2004 Examination of the Debtor and in any other litigation

7  in which the Province Entities have been a party if not previously asserted. The prior

8  production of Documents shall not constitute a waiver of any of the privileges

9  enumerated in Section 13.15. The Debtor shall have a continuing obligation to produce

10  Documents as set forth in FRCP 26(e)(1)(A).

11  **1.62  "Donor Claims"** means those Claims of Persons and Entities that have

12  donated real or personal property, money, or funds to the Debtor and/or a Participating

13  Party, and as to which it is asserted (a) that such funds or property were donated for a

14  specific purpose, including without limitation any religious purpose, or otherwise are

15  restricted as to use, and that any use inconsistent with such purpose or restriction

16  constitutes a Claim, and (b) that the use of such funds or property pursuant to the

17  provisions of this Plan to pay Claims against the Debtor or a Participating Party is in any

18  way inconsistent with such specified purpose or restricted use.

19  **1.63  "Effective Date"** means the first Business Day after the Confirmation

20  Date on which (i) all conditions to effectiveness specified in this Plan have been

21  satisfied or waived, and (ii) no stay of the Confirmation Order is in effect.

22  ~~**1.64  "Enjoined Claim"** means any Claim against a Participating Party, a~~

23  ~~Settling Insurer, and/or a Released Party.  Each Claim described in this Section 1.64~~

24  ~~shall include all such Claims whenever and wherever arising or asserted, whether~~

25  ~~sounding in tort, contract, warranty or any other theory of law, equity or admiralty,~~

26  ~~including without limitation all Claims by way of direct action, statutory or regulatory~~

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1  action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and

2  other expenses, or for any equitable remedy.  An Enjoined Claim does not include an

3  Abuse Claim against: (i) a Person or Persons having personally committed an act or

4  acts of Abuse resulting in a Claim against the Debtor or a Participating Party, (ii) the

5  Society of Jesus; (iii) the Father General of the Society of Jesus and his predecessors,

6  (iv) the Society of Jesus General Curia; (v) a successor or predecessor of the Debtor to

7  the extent of such successor's or predecessor's independent liability for an act or acts of

8  Abuse; (vi) Gonzaga University; (vii) Seattle University, and (viii) the Jesuit High

9  Schools.

10     **1.64   Intentionally omitted.**

11     **1.65  "Estate"** means the bankruptcy estate of the Debtor as created under

12  Section 541 of the Bankruptcy Code.

13     **1.66  "Estimated Amount"** means the amount at which the Bankruptcy Court

14  or the Oregon U.S. District Court, pursuant to 28 USC §157(b)(2)(B), Section 502(c) of

15  the Bankruptcy Code, and Bankruptcy Rule 3018(a), as the case may be, estimates any

16  Claim or class of Claims that is Contingent, unliquidated, or disputed, including any

17  Abuse Claim or class thereof, for the purpose of (a) allowance, (b) distribution, (c)

18  confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, (d) voting to

19  accept or reject this Plan pursuant to Section 1126 of the Bankruptcy Code, or (e)  any

20  other purpose.

21     **1.67  "Estimation Order"** means an order of the Bankruptcy Court or the

22  Oregon U.S. District Court, as applicable, that determines the Estimated Amount of any

23  Claim or Claims for any purpose, whether individually or as part of an aggregate.

24     **1.68  "Exculpated Parties"** means the Debtor and Reorganized Debtor

25  (including the civilly incorporated entity, Society of Jesus, Oregon Province; the

26  Province; and all Jesuit Communities); the Participating Parties; the Released Parties;

**Page 13 of 100100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated April 4,May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 the Committee and each of its members; the FCR; CRG Partners Group, LLC as

2 consultant to the FCR; Safeco; Travelers; Western World; the Settling Insurers; and all

3 of their respective present or former members, managers, officers, directors,

4 employees, representatives, attorneys, and agents acting in such capacity, but not

5 including (i) a Person or Persons having personally committed an act or acts of Abuse

6 resulting in a Claim against the Debtor or a Participating Party, (ii) the Society of Jesus;

7 (iii) the Father General of the Society of Jesus and his predecessors, (iv) the Society of

8 Jesus General Curia or (v) a successor or predecessor of the Debtor to the extent of

9 such successor's or predecessor's independent liability for an act or acts of Abuse; (vi)

10 Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High Schools.

11    **1.69  "FCR"** means the Future Claimants Representative.

12    **1.70  "FCR's Professionals"** means the professionals, if any, which the FCR

13 has retained or may retain to provide professional services in accordance with Sections

14 327(a) and 327(e) of the Bankruptcy Code.

15    **1.71  "Final Order"** means an order, judgment, ruling or decree of the

16 Bankruptcy Court, a U.S. District Court, or any other court having jurisdiction as to

17 which (a) any appeal that has been taken has been finally determined or dismissed and

18 the time to take any further appeal, or to seek certiorari, further reargument or

19 rehearing, has expired or been waived in writing, or (b) the time to take an appeal has

20 expired and no appeal has been timely filed.

21    **1.72  "Formation Fund"** means the Oregon Province Formation Fund

22 Charitable Trust, also known as the Arca Seminarii.

23    **1.73  "Foundations Fund"** means the Oregon Province Foundations Fund

24 Charitable Trust, also known as the Arca Fundationum.

25    **1.74  "Future Abuse Claim"** means an Abuse Claim for which the Abuse

26 Claimant did not file his or her own proof of claim by the Claims Bar Date, and as of the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   30th day immediately preceding the Claims Bar Date met one of the following three

2   criteria:

3         (a)     The Abuse Claimant was under 18 years of age;

4         (b)     The Abuse Claimant:

5              (i)     was 18 years of age or older;

6              (ii)     was unaware of the occurrence of the physical acts that

7   constituted the Abuse; and,

8              (iii)     the Abuse Claimant's Abuse Claim was not time-barred by

9   operation of a state law limitations period,  or

10         (c)     The Abuse Claimant:

11              (i)     was 18 years of age or older;

12              (ii)     was aware of the occurrence of the physical acts that

13   constituted the Abuse;

14              (iii)     the Abuse Claimant's Abuse Claim was not time-barred by

15   operation of a state law limitations period; and

16              (iv)     the state law limitations period applicable to such Abuse

17   Claim had not begun to run.

18       The determination of whether an Abuse Claim was time-barred will be made

19   under applicable state law, with any state law enacted after the Petition Date having no

20   force or effect in such determination.   This defined term shall be interpreted in

21   accordance with the "Order Appointing Future Claimants Representative" (Docket No.

22   412).

23       **1.76**   **"Future Abuse Claimant"** means the holder of a Future Abuse Claim.

24       **1.77**   **"Future Claimants Representative"** means Stephen S. Gray, the legal

25   representative for Future Abuse Claimants appointed by the Court pursuant to its order

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 entered August 10, 2009 [Docket No. 412], or any successor appointed or approved by

2 the Court or the Oregon U.S. District Court, as applicable.

3     **1.78 "Future Abuse Claims Bar Date"** means the fifteenth (15th) anniversary

4 of the Effective Date.

5     **1.79 "Future Abuse Claims Liquidation Process"** means the procedure for

6 liquidating and Allowing or Disallowing the Abuse Claim of a Future Abuse Claimant as

7 provided for in the Trust Documents.

8     **1.80 "Future Abuse Claims Reserve"** means that portion of the assets to be

9 held in the Trust that will be allocated to the payment of Allowed Future Abuse Claims

10 pursuant to the terms of the Plan and Trust Documents.

11     **1.81 "General Unsecured Claim"** means any Claim against the Debtor that is

12 not an Administrative Claim or a Claim that is otherwise classified under the Plan.

13     **1.82 "General Unsecured Convenience Claim"** means any General

14 Unsecured Claim in an amount of $2,500 or less, or voluntarily reduced to $2,500 by the

15 holder of such Claim.

16     **1.83 Intentionally omitted**.

17     **1.84 "Insurance Claims"** means all Claims, causes of action and enforceable

18 rights against any Non-Settling Insurer whether sounding in contract, tort, or otherwise,

19 including equity and bad faith, other than an Insured Non-Abuse Claim, held by:

20         (a) The Debtor for any reason related to an Abuse Claim including

21 those for (i) defense, indemnity and payment of any Abuse Claim; (ii) any Non-Settling

22 Insurer's failure or refusal to provide Insurance Coverage under any Insurance Policy,

23 including the failure or refusal to provide a defense to any Abuse Claim against the

24 Debtor; (iii) any Non-Setting Insurer's tortious or wrongful claims handling including the

25 failure or refusal of any Non-Settling Insurer to timely compromise and settle any Abuse

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  Claims against the Debtor pursuant to any Insurance Policy; and (iv) the interpretation
2  or enforcement of the terms of any Insurance Policy; and/or

3           (b)     Any of the Participating Parties for any reason related to an Abuse
4  Claim against the Participating Party, whether independently or jointly liable with the
5  Debtor on such Abuse Claim, including (i) defense, indemnity and payment of any
6  Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide Insurance
7  Coverage under any Insurance Policy, including the failure or refusal to provide a
8  defense to any Abuse Claim against the Debtor or a Participating Party; (iii) any Non-
9  Setting Insurer's tortious or wrongful claims handling including the failure or refusal of
10  any Non-Settling Insurer to timely compromise and settle any Abuse Claims against the
11  Debtor or a Participating Party pursuant to any Insurance Policy; and (iv) the
12  interpretation or enforcement of the terms of any Insurance Policy.

13      **1.85  "Insurance Coverage"** means insurance that is available under any
14  Insurance Policy to cover all or any portion of an Abuse Claim asserted against (a) the
15  Debtor and/or (b) a Participating Party.

16      **1.86  "Insurance Policy"** means an insurance policy providing Insurance
17  Coverage.

18      **1.87  "Insurance Recoveries"** means the rights to any and all proceeds,
19  including any interest or income earned thereon, and other relief, from (a) any award,
20  judgment, relief, or other determination entered or made as to any Insurance Claims; (b)
21  any and all amounts payable by an Insurer under any settlement agreement with the
22  Debtor and/or a Participating Party with respect to Insurance Claims; and (c) any and all
23  proceeds of any Insurance Policy paid or payable to the Debtor and/or a Participating
24  Party with respect to Insurance Claims.

25      **1.88  "Insured"** means, with respect to an Abuse Claim, that portion of the
26  Claim for which there is Insurance Coverage being provided by an Insurer.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **1.89  "Insured Non-Abuse Claim"** means any Claim, other than an Abuse

2    Claim, all or part of which is covered by insurance.

3    **1.90  "Insurer"** means (a) any Person or Entity that during any period of time

4    either (i) provided Insurance Coverage to the Debtor and/or a Participating Party, its

5    predecessors, successors, or assigns, or (ii) issued an Insurance Policy to the Debtor

6    and/or a Participating Party, its predecessors, successors, or assigns; and (b) any

7    Person or Entity owing a duty to defend and/or indemnify the Debtor and/or a

8    Participating Party under any Insurance Policy.

9    **1.90(a) "Interest"** means all liens, Claims, encumbrances, interests, and other

10   rights of any nature, whether at law or in equity, including any rights of contribution,

11   indemnity, defense, subrogation, or similar relief.

12   **1.91  "Jesuit"** means a vowed member of the Society of Jesus.

13   **1.92  "Jesuit Community"** means a local community or group of Jesuits within

14   the Province Territory as described in the Statutes on Poverty, No. 46, § 1, and the

15   Complimentary Norms~~ Nos. 188, § 1, and 315, solely in the local community's or~~

16   ~~group's capacity as a juridic person under Canon Law~~ Nos. 188 §§ 1 and 315 and not in

17   the individual capacity of the member or members of such local community or group,

18   regardless of whether ~~separately incorporated~~it is part of the Debtor, or has a separate

19   legal existence under civil law.  As of the Effective Date, any Jesuit community

20   consisting entirely of Jesuits of provinces other than the Province is not a Jesuit

21   Community.

22   **1.93  "Jesuit High Schools"** means Bellarmine Preparatory School (Tacoma,

23   WA), Gonzaga Preparatory School (Spokane, WA), Jesuit High School (Portland, OR)

24   and Seattle Preparatory School (Seattle, WA).

25   **1.94  "Jesuit Novitiate of Sheridan"** means Jesuit Novitiate of Sheridan,

26   Oregon, Inc., an Oregon non-profit religious corporation.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1.95 **"Litigation Current Abuse Claim"** means an Abuse Claim for which the holder has elected to opt out of Allocation Plan I or II and proceed with the liquidation of the Abuse Claim through litigation.

1.96 **"Litigation Current Abuse Claimant"** means the holder of a Litigation Current Abuse Claim.

1.97 **Medicare Beneficiary"** means an Abuse Claimant who is eligible to receive or is receiving Medicare benefits.

1.98 **"Montana Catholic Missions"** means Montana Catholic Missions, S.J., a Montana non-profit religious corporation.

1.99 **"MSPA"** means Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 411.1 *et seq.*

1.100 **"MSPRC"** means Medicare Secondary Payer Recovery Contractor.

1.101 **"Non-Settling Insurer"** means any Insurer that is not a Settling Insurer.

1.102 **"Non-Sexual Abuse Claim"** means the Claim of an Abuse Claimant: (a) who filed a proof of claim alleging Abuse but not Sexual Abuse; or (b) who filed a proof of claim alleging Abuse but not Sexual Abuse and amended or supplemented the proof of claim to allege Sexual Abuse.

1.103 **"Omak Area Shelter Claim"** means the Claim of any Person or Entity against the Debtor based on the Debtor's promise or agreement to pay $200,000 for the establishment or support of a homeless shelter(s) and/or homeless services in the Omak, Washington area.

1.104 **"Oregon U.S. District Court"** means the United States District Court for the District of Oregon, located in Portland, Oregon.

1.105 **"Participating Party"** means those Persons or Entities listed on Exhibit 1.105 to the Plan, as the same may be amended with the consent of the Committee or, after the Effective Date, with the consent of the Trustee subject to Bankruptcy Court

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 approval, ~~in the amounts set forth opposite such Participating Party's name on Exhibit~~

2 ~~1.105 to~~<u>that are providing a portion of the funding for</u> the Plan~~,~~ in exchange for (a) the

3 release of any Abuse Related Contribution/Indemnity Claim by the Debtor against such

4 Participating Party, (b) the benefit of the Channeling Injunction<u>,</u> and (c) any other

5 benefits in favor of Participating Parties under the Plan.

6     **1.106 "Penalty Claim"** means a Claim for a fine, penalty, forfeiture, multiple

7 damages, punitive damages, or exemplary damages, including any Claim not meant to

8 compensate the Claimant for actual pecuniary loss.

9     **1.107 "Petition Date"** means February 17, 2009, the date the Debtor filed the

10 petition commencing this Case.

11     **1.108 "Pioneer Educational Society"** means Pioneer Educational Society, a

12 Washington non-profit religious corporation.

13     **1.109 "Plan"** means this Plan of Reorganization and any and all modifications

14 and/or amendments thereto.

15     **1.110 "Plan Documents"** means all agreements, documents and exhibits, as

16 the same may be amended, modified, supplemented, or restated from time to time, that

17 are necessary or appropriate to implement the Plan and the Trust, including the Trust

18 Documents<u> and Plan Supplements</u>; provided that the Committee shall have approved

19 each of said agreements, documents and exhibits as to form and content, such

20 approval not to be unreasonably withheld.

21     **<u>1.110(a) "Plan Supplement"</u>** <u>means, collectively, the documents, agreements,</u>

22 <u>instruments, schedules and exhibits and forms thereof to be filed as a Plan Supplement,</u>

23 <u>as each such document, agreement, instrument, schedule and exhibit and form thereof</u>

24 <u>may be altered, restated, modified or replaced from time to time, including subsequent</u>

25 <u>to the filing of any such documents.  Subsequent to their initial filing pursuant to the</u>

26 <u>Plan, the Debtor shall, with the consent of the Proponents and Safeco, Travelers, and</u>

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 Western World, be free to make non-material modifications to any such documents

2 without further filings or notice to any party. Each such document, agreement,

3 instrument, schedule or exhibit or form thereof is referred to herein as a "Plan

4 Supplement." The Debtor shall file the Plan Supplements on or before a date that is ten

5 (10) days prior to the Confirmation Hearing or such other date as determined by the

6 Bankruptcy Court.

7 **1.111 "Priority Claim"** means any Claim which, if Allowed, would be

8 entitled to priority under Section 507 of the Bankruptcy Code.

9 **1.112 "Priority Claimant"** means the holder of a Priority Claim.

10 **1.113 "Proponents"** means the Debtor, the Committee, and the FCR.

11 **1.114 "Pro Rata"** means proportionate, and when applied to a Claim means the

12 ratio of the amount distributed on account of an Allowed Claim in a class to the amount

13 distributed on account of all Allowed Claims in such class.

14 **1.115 "Province"** means the Oregon ~~Province~~province of the Society of Jesus,

15 an ecclesiastical entity, and a *juridic person* under ~~Canon Law~~canon law, regardless of

16 whether it is part of the Debtor, or has a separate legal existence under civil law.

17 **1.116 "Province Entities"** means the Province and the Participating Parties.

18 **1.117 "Province Territory"** means the geographic area encompassing the

19 states of Alaska, Idaho, Montana, Oregon, and Washington.

20 **1.118 "Provincial"** means the Person who is the ecclesiastical superior of the

21 Province.

22 **1.119 "Punitive Damages"** means the portion of a Claim for punitive or

23 exemplary damages.

24 **1.120 "Qualified Counsel"** means those attorneys representing Abuse

25 Claimants (other than Future Abuse Claimants) who are utilizing Allocation Plans I, II or

26 III and who have entered into an enforceable written retainer or fee agreements with

**Page 21 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

1  such Claimant on or before the Effective Date; provided that such attorney agrees that

2  the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by

3  such Abuse Claimant.

4      **1.121 "Qualified Counsel Fees"** means the amount to be subtracted from the

5  balance in the Trust in an amount equal to the actual fees payable to Qualified Counsel

6  under enforceable written retainer or fee agreements with Abuse Claimants who are

7  utilizing Allocation Plans I, II or III.  Before any distribution(s) to any Abuse Claimant

8  from the Creditor Pool, the Trustee will subtract all Qualified Counsel Fees and shall

9  pay such Qualified Counsel Fees to the appropriate Qualified Counsel at the time the

10  Abuse Claimant receives the first distribution from the Trustee.

11      **1.122 "Qualified Counsel Costs"** means the amount to be subtracted from the

12  balance in the Trust in an amount equal to the reimbursable expenses (prepetition and

13  postpetition) payable to Qualified Counsel under enforceable written retainer or fee

14  agreement with Abuse Claimants who are utilizing Allocation Plans I, II or III.  Before

15  any distribution(s) to any Creditor Pool from the Trust, the Trustee will subtract all

16  Qualified Counsel Costs and shall pay such Qualified Counsel Costs to the appropriate

17  Qualified Counsel at the time the Abuse Claimant receives the first distribution from the

18  Trustee.

19      **1.123 "Released Parties"** means (a) the Debtor's and Reorganized Debtor's

20  ~~(including the civilly incorporated entity, Society of Jesus, Oregon Province; the~~

21  ~~Province; and all Jesuit Communities)~~ present or former members, managers, officers,

22  directors, employees, representatives, attorneys, or agents acting in such capacity; (b)

23  the Participating Parties; and (c) the Participating Parties' present or former members,

24  managers, officers, directors, employees, representatives, attorneys, or agents acting in

25  such capacity.  The term "Released Parties" does not include: (i) a Person or Persons

26  having personally committed an act or acts of Abuse resulting in a Claim against the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

1  Debtor or a Participating Party, (ii) the Society of Jesus; (iii) the Father General of the

2  Society of Jesus and his predecessors, (iv) the Society of Jesus General Curia or (v) a

3  successor or predecessor of the Debtor to the extent of such successor's or

4  predecessor's independent liability for an act or acts of Abuse; (vi) Gonzaga University;

5  (vii) Seattle University; and (viii) the Jesuit High Schools.

6  **1.124 Intentionally omitted.**

7  **1.125 "Reorganized Debtor"** means the Debtor on and after the Effective Date;

8  provided that any successor to the Province, Debtor or the Reorganized Debtor through

9  a merger or suppression of the Province shall not have any rights or remedies by virtue

10  of the Plan or Confirmation Order on account of Abuse Claims for which the successor

11  was independently liable.

12  **1.126 "Representatives"** means the current and former officers, directors,

13  agents, attorneys, employees, and legal representatives of a Person or Entity, but

14  excluding (i) a Person or Persons having personally committed an act or acts of Abuse

15  resulting in a Claim against the Debtor or a Participating Party, (ii) the Society of Jesus;

16  (iii) the Father General of the Society of Jesus and his predecessors, (iv) the Society of

17  Jesus General Curia, (v) a successor or predecessor of the Debtor to the extent of such

18  successor's or predecessor's independent liability for an act or acts of Abuse; (vi)

19  Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High Schools.

20  **1.127 "Represented Class 3 Abuse Claimant"** means a Class 3 Abuse

21  Claimant whose proof of claim, prior to any supplement or amendment filed with the

22  Bankruptcy Court, was signed by an attorney of record.

23  **1.128 "Safeco"** means American States Insurance Company, General

24  Insurance Company of America, and Safeco Insurance Company of America, and each

25  of their past and present subsidiaries, parents, and affiliates. "Safeco" also includes all

26  future subsidiaries, parents, and affiliates of American States Insurance Company,

**Page 23 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 General Insurance Company of America, and Safeco Insurance Company of America,

2 to the extent that their liability is derivative of Safeco's liabilities under the ~~policies, as~~

3 ~~"Safeco~~ Policies~~" are defined in the Safeco Settlement Agreement~~.

4     **1.129 "Safeco Coverage Litigation"** means that certain adversary proceeding

5 entitled General Insurance Company of America and American States Insurance

6 Company v. Society of Jesus, Oregon Province, Adversary Proceeding No. 09-3351-

7 elp, filed on October 23, 2009.

8     **1.129(a) "Safeco Other Releasing Parties"** means "Other Releasing Parties"

9 as defined in the Safeco Settlement Agreement.

10     **1.129(b) "Safeco Policies"** means "Policies" as defined in the Safeco

11 Settlement Agreement.

12     **1.129(c) "Safeco Released Parties"** means "Safeco Released Parties" as

13 defined in the Safeco Settlement Agreement.

14     **1.130 "Safeco Settlement Agreement"** refers to that certain Settlement

15 Agreement between Safeco and the Debtor dated March 23, 2011 attached as Exhibit

16 ~~1.130.~~ 1.130 to the Plan.

17     **1.131 "Safeco Settlement Amount"** means the payment of $118 million to be

18 made by Safeco pursuant to Section 2.1 of the Safeco Settlement Agreement.

19     **1.132 "Section 363 Sale"** means a sale of property pursuant to the provisions

20 of Section 363 of the Bankruptcy Code.

21     **1.133 ~~"Secured Claim~~Intentionally omitted."** ~~means a Claim against the~~

22 ~~Debtor that is secured by a lien on property in which the Debtor has an interest, or that~~

23 ~~is subject to setoff under § 553 or the Bankruptcy Code, as determined under § 506(a)~~

24 ~~of the Bankruptcy Code, including interest, fees and charges as permitted pursuant to~~

25 ~~Section 506(b) of the Bankruptcy Code.~~

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1.134 **"Settled"** means, with respect to a Claim, a Claim that has been resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or a U.S. District Court, as applicable.

1.135 **"Settling Insurer"** means: (a) each of those Insurers listed on Exhibit 1.135 to the Plan, as the same may be amended before the Confirmation Hearing with the consent of the Committee and the FCR, and after the Confirmation Hearing with the consent of the Trustee; and (b) such Insurer's predecessors, successors and assigns, but only to the extent that: (i) such predecessor's liability was assumed by the Insurer listed on Exhibit 1.135 to the Plan, and (ii) such successor's or assign's liability is derivative of the liability of the Insurer listed on Exhibit 1.135 of to the Plan and not independent of the liability of the Insurer listed on Exhibit 1.135 to the Plan.

**1.135(a) "Settling Insurer Other Releasing Parties"** means "Other Releasing Parties" as defined in any settlement agreement between a Settling Insurer and the Debtor, the Reorganized Debtor, a Participating Party, or the Trustee, as the case may be.

**1.135(b) "Settling Insurer Policies"** means "Policies" as defined in any settlement agreement between a Settling Insurer and the Debtor, the Reorganized Debtor, a Participating Party, or the Trustee, as the case may be.

**1.135(c) "Settling Insurer Released Parties"** means the "Settling Insurer Released Parties" as defined in any settlement agreement between a Settling Insurer and the Debtor, the Reorganized Debtor, a Participating Party, or the Trustee, as the case may be.

1.136 **"Sexual Abuse"** means sexual conduct or misconduct, sexual abuse, or sexually-related harm or contacts, or interactions of a sexual nature between a child and an adult, or a non-consenting adult and another adult. A child or non-consenting adult is abused whether or not this activity involves explicit force.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1.137 **"Sexual Abuse Claims"** means Abuse Claims for Sexual Abuse.

1.138 **"Shelter Beneficiary(ies)"** means a minimum of one (1) and a maximum of three (3) viable and recognized homeless shelters or programs serving the homeless in the Omak, Washington area designated pursuant to Section 4.3 of the Plan.

1.139 **"Society of Jesus"** means the worldwide Roman Catholic religious order of men founded in 1540 by Saint Ignatius Loyola and designated by him as "The Company of Jesus." That title was Latinized into "Societatis Jesu" in the Bull of Paul III approving its formation and the first formula of its Institute ("Regimini militantis ecclesia", 27 September, 1540).

1.140 **"Society of Jesus, Alaska"** means Society of Jesus, Alaska, an Alaska non-profit religious corporation.

1.141 **"Statutes on Poverty"** means the Statutes on Religious Poverty in the Society of Jesus first promulgated in 1976 and revised in 2003.

1.142 **"Student Loan Claims"** means those Claims of Persons or Entities in probation or engaged in studies to become a member of the Society for payment or reimbursement of their student loan obligations to an educational institution, including any Claims of the educational institutions themselves, if any, based on the Debtor's agreement to pay or assume such student loan obligations.

1.143 **"Supplemental Injunction"** means each of the injunctions in Sections 11.5 and 11.6.

1.144 **"Temporarily Allowed"** with reference to a Claim means such Claim as temporarily allowed for any purpose other than distribution on a Claim pursuant to Bankruptcy Rule 3018(a) or otherwise.

1.145 "**Third Party Derivative Claims**" means Claims against any Person or Entity for disregard of the corporate form, piercing the corporate veil, or alter ego, that would subject such Person or Entity to liability for Abuse Claims against the Debtor.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

**1.145(a) "Travelers"** means Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, and each of their past and present subsidiaries, parents, and affiliates. "Travelers" also includes all future subsidiaries, parents, and affiliates of Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, to the extent that their liability arises out of liabilities under insurance policies issued by Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, or any of their past or present subsidiaries, parents, or affiliates.

**1.145(b) "Travelers Other Releasing Parties"** means "Other Releasing Parties" as defined in the Travelers Settlement Agreement.

**1.145(c) "Travelers Policies"** means "Policies" as defined in the Travelers Settlement Agreement.

**1.145(d) "Travelers Released Parties"** means "Travelers Released Parties" as defined in the Travelers Settlement Agreement.

**1.145(e) "Travelers Settlement Agreement"** refers to that certain Settlement Agreement to be entered into between Travelers and the Debtor which will be filed as a Plan Supplement and included as Exhibit 1.145(e) to the Plan.

**1.146 "Trust"** means the trust to be established pursuant to the Plan and the Trust Documents for the benefit of all Abuse Claimants.

**1.147 "Trust Documents"** means the agreements, instruments, and other documents that are reasonably necessary or desirable in order to implement the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 provisions of the Plan that relate to the creation, administration and funding of the Trust.

2 A trust agreement is attached as Exhibit 1.147 to the Plan.

3 **1.148 "Trustee"** means Omni Management Group, LLC, the trustee of the

4 Trust, and any successor trustee appointed pursuant to the terms of this Plan and the

5 Trust Documents.

6 **1.149 "U.S. District Court"** means a United States District Court.

7 **1.150 "Unrepresented Class 3 Abuse Claimant"** means a Class 3 Abuse

8 Claimant whose proof of claim, prior to any supplement or amendment filed with the

9 Bankruptcy Court, was not signed by an attorney of record. Retention of counsel after

10 the filing of the original proof of claim does not relieve the Class 3 Abuse Claimant of

11 the foregoing classification, unless counsel has executed and filed a proof of claim

12 superseding the proof of claim executed and filed by the Class 3 Abuse Claimant.

13 **1.151 "Unrepresented Class 3A Abuse Claimant"** means a Class 3A Abuse

14 Claimant whose proof of claim, prior to any supplement or amendment filed with the

15 Bankruptcy Court, was not signed by an attorney of record. Retention of counsel after

16 the filing of the original proof of claim does not relieve the Class 3A Abuse Claimant of

17 the foregoing classification, unless counsel has executed and filed a proof of claim

18 superseding the proof of claim executed and filed by the Class 3A Abuse Claimant.

19 **1.152 "Unresolved"** means, with respect to a Claim, a Claim that has neither

20 been Allowed or Disallowed or liquidated.

21 **1.153 "Voting Procedures"** means those procedures approved by the

22 Bankruptcy Court pursuant to Motion for Order: (A) Approving Disclosure Statement; (B)

23 Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for

24 Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for

25 Voting on Plan; (E) Scheduling Hearing and Establishing Notice and Objection

26 Procedures in Respect of Confirmation of Plan; and (F) Granting Related Relief.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1.154 **"Western World"** means Western World Insurance Company, and its past and present subsidiaries, parents, and affiliates. "Western World" also includes all future subsidiaries, parents, and affiliates of Western World Insurance Company, to the extent that their liability is derivative of Western World's liabilities under the Western World Policies.

1.156 **"Western World Other Releasing Parties"** means "Other Releasing Parties" as defined in the Western World Settlement Agreement.

1.157 **"Western World Policies"** means "Policies" as defined in the Western World Settlement Agreement.

1.158 **"Western World Released Parties"** means "Western World Released Parties" as defined in the Western World Settlement Agreement.

1.159 **"Western World Settlement Agreement"** refers to that certain Settlement Agreement to be entered into between Western World and the Debtor which will be filed as a Plan Supplement and included as Exhibit 1.159 to the Plan.

## 2. TREATMENT OF UNCLASSIFIED CLAIMS.

2.1 **Administrative Claims**. Except as provided in section 6.7(b) of the Plan, the Reorganized Debtor will pay Administrative Claimants the full amount of their Allowed Administrative Claims in Cash either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the Administrative Claimant and the Debtor or the Reorganized Debtor; provided, however, that any Current Obligations will be paid in full in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

## 3. CLASSIFICATION OF CLAIMS.

All Claims except Administrative Claims are placed in the following classes for all purposes.   A Claim is classified in a particular class only to the extent the Claim

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  qualifies within the description of that class and is classified in a different class to the

2  extent the Claim qualifies within the description of that different class.  If a Claim is

3  acquired or transferred, the Claim will be placed in the class where it would have been

4  placed if it were owned by the original holder of such Claim.  If a Claimant has more

5  than one Claim in the same class, such Claims will be aggregated and treated as a

6  single Claim.  If a Claimant has Claims in different classes, such Claims will be

7  aggregated only within the same class and not between classes.

8      Class 1: Priority Claims

9      Class 2: General Unsecured Convenience Claims

10     Class 3: Current Sexual Abuse Claims

11     Class 3A: Non-Sexual Abuse Claims

12     Class 4: Future Abuse Claims

13     Class 5: Omak Area Shelter Claim

14     Class 6: Insured Non-Abuse Claims

15     Class 7: General Unsecured Claims

16     Class 8: Penalty Claims

17     Class 9: Student Loan Claims

18     Class  10: Intentionally Omitted.

19     Class 11: Formation Fund Claim

20     Class 12: Charitable Gift Annuity Claims

21     Class 13: Donor and Beneficiary Claims

22     Class 14: Convenience Abuse Claims

23     Class 15: Abuse Related Contribution/Indemnity Claims

24  **4.     TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.**

25      **4.1     Class 1:  Priority Claims**.  The holders of Allowed Priority Claims will

26  receive either (a) payment from the Reorganized Debtor of the full amount of their

**Page 30 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1  Allowed Claims in Cash, on or as soon as practicable following the Effective Date or, if

2  later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as

3  may be agreed in writing by the Claimant and the Reorganized Debtor.

4      **4.2 Class 2: General Unsecured Convenience Claims**.  The holders of

5  Allowed General Unsecured Convenience Claims will receive either (a) payment from

6  the Reorganized Debtor of the full amount of their Allowed General Unsecured

7  Convenience Claims in Cash, on or as soon as reasonably practicable following the

8  Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed General

9  Unsecured Convenience Claims upon such terms as may be agreed in writing by the

10  Claimant and the Reorganized Debtor.

11      **4.3 Class 5: Omak Area Shelter Claim.**  John Allison, counsel for the

12  holders of Omak Area Shelter Claims, shall, within ninety (90) days after the Effective

13  Date, with the approval of a majority of the holders of Allowed Class 5 Claims,

14  designate in writing to the Reorganized Debtor the "Shelter Beneficiary(ies) for whose

15  benefit the Reorganized Debtor will convey the total sum of $200,000.  If more than one

16  Shelter Beneficiary is designated by Allison, each Shelter Beneficiary shall be entitled to

17  its proportional share of the total sum of $200,000.  This conveyance shall be due and

18  owing on the one (1) year anniversary following the date on which Allison has

19  designated the Shelter Beneficiary(ies) to the Reorganized Debtor.  If Allison has not

20  designated the Shelter Beneficiary(ies) within ninety (90) days after the Effective Date,

21  then the Reorganized Debtor shall within a reasonable period, but not more than ninety

22  (90) additional days therefrom, select a Shelter Beneficiary(ies)  and notify Allison of its

23  decision.  The Reorganized Debtor shall then have one (1) year after the date of its

24  notification to Allison to convey $200,000 to the Shelter Beneficiary(ies).   Upon

25  conveyance of $200,000 to the Shelter Beneficiary(ies), whether designated by Allison

26  or by the Reorganized Debtor as the case may be, the Reorganized Debtor shall advise

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1     Allison.  Such notification shall complete the Reorganized Debtor's obligation to these

2     Claimants, which shall be deemed fully and completely satisfied.

3         **4.4    Class 9:  Student Loan Claims**.  The legal, equitable, and contractual

4     rights of holders of Allowed Student Loan Claims will not be altered by the Plan and will

5     be paid in the ordinary course by the Reorganized Debtor.

6         **4.5    Class 12:  Charitable Gift Annuity Claims**.  The legal, equitable, and

7     contractual rights of holders of Allowed Charitable Gift Annuity Claims will not be altered

8     by the Plan and will be paid in the ordinary course by the Reorganized Debtor.

9         **4.6    Class 14: Convenience Abuse Claims**.  The holders of Allowed

10     Convenience Abuse Claims will receive payment from the Trust of the full amount of

11     their Allowed Convenience Abuse Claims in Cash, on or as soon as reasonably

12     practicable following the Effective Date or, if later, the Allowance Date.

13     **5.    TREATMENT OF IMPAIRED CLASSES OF CLAIMS.**

14         **5.1    Classes 3 and 3A:  Abuse Claims**.

15         5.1.1  On the Effective Date, and subject to ~~section~~sections 6.3 and 6.4 of

16     the Plan, the Trust shall assume all liability for and the Trust will pay all Abuse Claims

17     pursuant to the provisions of the Plan and Trust Documents.  The assumption of liability

18     and payment of the Abuse Claims by the Trust shall not release the Debtor's liability on

19     account of the Abuse Claims.  Provided however, all of the Debtor's liability on account

20     of the Abuse Claims shall be discharged pursuant to the provisions of Section 11.1 of

21     this Plan.  As provided in Bankruptcy Code §524(e), such discharge shall not affect the

22     liability of any other entity on, or the property of any other entity for, the Abuse Claims

23     including the liability of any Non-Settling Insurer, which liability shall continue unaffected

24     by the terms of this Plan (except to the extent this Plan incorporates the Safeco

25     Settlement Agreement, Travelers Settlement Agreement, Western World Settlement

26     Agreement, and any settlement agreements with other Settling Insurers) or the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    discharge granted to the Debtor under this Plan and Bankruptcy Code §1141(d).

2              5.1.2  On the Effective Date, and without any further action by any party,

3    each Class 3 and 3A Claimant who has elected to use Allocation Plans I, II or III to the

4    extent permitted by the Plan, shall be deemed to have assigned to the Trust that

5    Claimant's Class 3 or 3A Abuse Claim against the Debtor and each of the Participating

6    Parties, if such assignment is valid.  If such assignment is determined by the

7    Bankruptcy Court not to be valid, then each Class 3 and 3A Claimant will retain that

8    Claimant's Class 3 or 3A Abuse Claim and shall be deemed to have appointed the

9    Trustee as his or her attorney -in -fact for the purpose of:  (a) asserting his or her Class

10    3 or 3A Abuse Claim against the Reorganized Debtor and/or the Participating Parties,

11    subject to the provisions of Section 6.9 of this Plan and (b) provided that such Abuse

12    Claim results in a judgment against the Reorganized Debtor, asserting any rights that

13    such Class 3 or 3A Claimant may have against any Non-Settling Insurer.  All recoveries

14    received on account of such Abuse Claims shall be deemed to be held in trust for the

15    benefit of the Trust and shall be remitted to the Trust as soon as practicable following

16    the Class 3 or 3A Claimant's receipt of such Insurance Recoveries.  The determination

17    of whether the assignment by the Class 3 and 3A Claimants' of the Class 3 and 3A

18    Abuse Claims to the Trust is valid shall be made by the Bankruptcy Court at the

19    Confirmation Hearing. A determination that such assignment of the Class 3 and 3A

20    Abuse Claims to the Trust is valid shall include, *inter alia,* a determination that the

21    assignment in no way affects the ability of the Trust to pursue collection of the Class 3

22    and 3A Abuse Claims from the Non-Settling Insurers, and each of them. That

23    determination shall be binding upon all parties receiving notice of the Confirmation

24    Hearing, which shall include notice of this provision.  If a party in interest, including Non-

25    Settling Insurers, fails to timely file an objection to the proposed assignment by the

26    deadline for filing objections to confirmation of this Plan, that party in interest shall be

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 l FACSIMILE (503) 248-0130

<table>
<tr><td>1</td><td>deemed to have irrevocably consented to the assignment and will be forever barred</td></tr>
<tr><td>2</td><td>from asserting that the assignment in any way affects the ability of the Trust to pursue</td></tr>
<tr><td>3</td><td>collection of the Class 3 and 3A Abuse Claims from the Non-Settling Insurers, and each</td></tr>
<tr><td>4</td><td>of them.</td></tr>
</table>

5       5.1.3   At such time as a Litigation Current Abuse Claimant obtains a final

6   non-appealable judgment against the Debtor and/or the Reorganized Debtor pursuant

7   to Section 5.4 of this Plan, such Litigation Current Abuse Claimant shall be deemed to

8   have assigned to the Trust such final non-appealable judgment against the Debtor

9   and/or the Reorganized Debtor and any rights such Litigation Current Claimant may

10  have against any Non-Settling Insurer, if such assignment is valid.  If such assignment

11  is determined by the Bankruptcy Court not to be valid, then each Litigation Current

12  Abuse Claimant will retain that Claimant's final non-appealable judgment and any rights

13  such Litigation Current Claimant may have against any Non-Settling Insurer and shall

14  be deemed to have appointed the Trustee as his or her attorney in fact for the purpose

15  of asserting any rights such Litigation Current Claimant may have against any Non-

16  Settling Insurer.   All recoveries received on account of such final non-appealable

17  judgment and any rights such Litigation Current Abuse Claimant may have against any

18  Non-Settling Insurer shall be deemed to be held in trust for the benefit of the Trust and

19  shall be remitted to the Trust as soon as practicable following the Litigation Current

20  Abuse Claimant's receipt of any Insurance Recoveries.  The determination of whether

21  the assignment of the final non-appealable judgment against the Debtor and/or the

22  Reorganized Debtor and any rights such Litigation Current Claimant may have against

23  any Non-Settling Insurer to the Trust is valid shall be made by the Bankruptcy Court at

24  the Confirmation Hearing.  A determination that such assignments to the Trust is valid

25  shall include, *inter alia,* a determination that the assignment in no way affects the ability

26  of the Trust to pursue collection of such Litigation Current Abuse Claims from the Non-

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ‖ FACSIMILE (503) 248-0130

1   Settling Insurers, and each of them. That determination shall be binding upon all parties

2   receiving notice of the Confirmation Hearing, which shall include notice of this provision.

3   If a party in interest, including Non-Settling Insurers, fails to timely file an objection to

4   the proposed assignment by the deadline for filing objections to confirmation of this

5   Plan, that party in interest shall be deemed to have irrevocably consented to the

6   assignment and will be forever barred from asserting that the assignments in any way

7   affects the ability of the Trust to pursue collection of the Litigation Current Abuse Claims

8   from the Non-Settling Insurers, and each of them.

9       5.1.4  Upon the completion of the Abuse Claims Reviewer's review of

10  Abuse Claims in a given Creditor Pool utilizing Allocation Plans I, II or III, including the

11  reconsideration of any point award for an Abuse Claim pursuant to the applicable

12  Allocation Plan, the Abuse Claims Reviewer shall provide written notification to the

13  Trustee of the points awarded to each Abuse Claimant in the Creditor Pool.  The

14  Trustee shall calculate the average value of each awarded point in the Creditor Pool

15  based on the net funds in each Creditor Pool available for distribution to the Abuse

16  Claimants in the Creditor Pool, i.e. the funds available after the reserves and deductions

17  provided for in the Plan and Plan Documents.  The Trustee shall determine each Abuse

18  Claimant's monetary award from such net funds by multiply the average value of each

19  awarded point by the number of points awarded to a particular Abuse Claimant.  Upon

20  making such determination, the Trustee shall distribute the monetary award to the

21  Abuse Claimant in accordance with the Plan.

22      5.1.5  Under no circumstance shall the monetary award to an Abuse

23  Claimant pursuant to Allocation Plans I, II or III have any effect on the rights of a Non-

24  Settling Insurer.

25      5.1.6  Debtor, the Reorganized Debtor and their counsel shall reasonably

26  cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ⊔ FACSIMILE (503) 248-0130

1  Claims Reviewer or the Trustee in connection with any inquiries by either in the
2  administration of the Allocation Plans.

3          5.1.7  The Abuse Claims Reviewer also may, but shall not be required to,
4  obtain discovery through use of process from any party other than the Debtor and the
5  Reorganized Debtor, and shall have all of the rights and powers of the Debtor to take
6  such discovery under Part VII of the Bankruptcy Rules. The Abuse Claims Reviewer's
7  determination shall be made expeditiously. The extent to which the Federal Rules of
8  Evidence will be applied by the Abuse Claims Reviewer in assessing the credibility and
9  competency of the evidence shall be within the sole discretion of the Abuse Claims
10  Reviewer. The Federal Rules of Evidence, to the extent determined by the Abuse
11  Claims Reviewer to be applicable, shall be liberally construed to promote justice.

12          5.1.8  No Class 3 or 3A Abuse Claimant may challenge the merit, validity,
13  or amount of any Class 3 or 3A Claim.

14  **5.2  Treatment of Class 3 Claims.**

15          5.2.1  The ballot shall provide Class 3 Abuse Claimants the following
16  alternatives to treatment in the Creditor Pool reflected on the Ballot:

17          (a)  Treatment of the Class 3 Abuse Claimant's Claim as a
18  Litigation Abuse Claim or

19          (b)  Treatment of the Class 3 Abuse Claimant's Claim as an
20  Abuse Claim in a Creditor Pool or

21          (c)  Treatment of the Class 3 Abuse Claimant's Claim as a
22  Convenience Abuse Claim.

23          5.2.2  If a Class 3 Abuse Claimant does not return a marked Ballot
24  indicating one of the elections in Section 5.2.1, the Class 3 Abuse Claimant shall
25  irrevocably will be treated as a Convenience Abuse Claim.  Notwithstanding the
26  foregoing, the Committee's counsel shall notify the Class 3 Abuse Claimant by mail of

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 the failure to mark a Ballot and the treatment of the Abuse Claim as a Convenience

2 Abuse Claim, and the Class 3 Abuse Claimant shall have ten (10) days from mailing of

3 such notice to deliver to Committee's counsel a marked Ballot which marked Ballot will

4 govern the treatment of the Class 3 Abuse Claim.

5 5.2.3 Assignment to a Creditor Pool. All Class 3 Abuse Claimants shall

6 be assigned to a Creditor Pool ~~and such assignment shall be reflected on the Class 3~~

7 ~~Abuse Claimant's Ballot. The Allocation Plan utilized by the Creditor Pool to which the~~

8 ~~Class 3 Abuse Claimant is assigned also shall be reflected on the Ballot~~.

9 5.2.4 Represented Class 3 Abuse Claimant.

10 (a) Ballot Designation of Creditor Pool: The assignment of a

11 Represented Class 3 Abuse Claimant to a Creditor Pool shall reflect the written

12 recommendation of the Represented Class 3 Abuse Claimant's attorney of record,

13 provided that the Committee has received such written recommendation from the

14 Represented Class 3 Abuse Claimant's attorney of record in accordance with the Voting

15 Procedures. If such written recommendation is not received in accordance with the

16 Voting Procedures, the Represented Class 3 Abuse Claimant shall be treated as an

17 Unrepresented Class 3 Abuse Claimant solely for the purpose of the assignment of

18 such Represented Class 3 Abuse Claimant to a Creditor Pool and Allocation Plan.

19 (b) Opt Out From Designated Creditor Pool. Each Represented

20 Class 3 Abuse Claimant, in accordance with the Voting Procedures, may opt out of the

21 Creditor Pool designated on the Ballot and select any alternative Creditor Pool. If the

22 Represented Class 3 Abuse Claimant opts out of the Creditor Pool designated on the

23 Ballot, but does not designate an alternative Creditor Pool, the Represented Class 3

24 Abuse Claimant shall be assigned to a Creditor Pool on a random basis by the

25 Committee; provided that the random assignments shall result in assignments to

26 Allocation Plans in proportion to the Allocation Plan assignments designated in the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1    original Ballots and that the first random assignment shall be to a Creditor Pool using

2    the Allocation Plan that has the greater number of Class 3 Abuse Claimants as

3    designated in the original Ballots.   If more than one Creditor Pool has selected an

4    Allocation Plan, such Represented Class 3 Abuse Claimant will be assigned to one of

5    the Creditor Pools on a random basis by the Committee provided that such Creditor

6    Pool assignments shall be in proportion to the number of Class 3 Abuse Claimants in

7    each Creditor Pool as designated in the original Ballots.

8         For example purposes only, assume that Ballot designations reflect that two-

9    thirds (2/3) of the Class 3 Abuse Claimants are assigned to Creditor Pools utilizing

10    Allocation Plan I and one-third (1/3) of the Class 3 Abuse Claimants are assigned to

11    Creditor Pools utilizing Allocation Plan II.   If fifteen Represented Class 3 Abuse

12    Claimants opt out of the Creditor Pool designated on the Ballot but do not designate an

13    alternative Creditor Pool, ten (10) of the Represented Class 3 Abuse Claimants will be

14    assigned to Creditor Pools utilizing Allocation Plan I and five (5)  of the Represented

15    Class 3 Abuse Claimants will be assigned to Creditor Pools utilizing Allocation Plan II.

16    The same method will be used for assigning such Represented Class 3 Abuse

17    Claimants to Creditor Pools.

18           (c)     If the Represented Class 3 Abuse Claimant does not return

19    the Ballot opting out of the assigned Creditor Pool in accordance with the Voting

20    Procedures, the Represented Class 3 Abuse Claimant irrevocably will be assigned to

21    the Creditor Pool designated on the Ballot.

22           (d)     If a Represented Class 3 Abuse Claimant's counsel has not

23    associated into a minimum sized pool, the Represented Class 3 Abuse Claimant will

24    use the ballot to elect an Allocation Plan and Creditor Pool.  If a Represented Class 3

25    Abuse Claimant fails to make the election of an Allocation Plan on the ballot, the

26    Represented Class 3 Abuse Claimant will be assigned to the Allocation Plan on a

1  random basis but the assignments shall be prorated between Allocation Plan I and

2  Allocation Plan II based on the numbers of Class 3 Abuse Claimants in the originally

3  constituted Creditor Pools.  If the Represented Class 3 Abuse Claimant does not elect

4  into a Creditor Pool, the Represented Class 3 Abuse Claimant will be assigned to a

5  Creditor Pool on a random basis but the assignments shall be prorated between the

6  Creditor Pools based on the numbers of Claimants in the originally constituted Creditor

7  Pools.

8      5.2.5    Unrepresented Class 3 Abuse Claimant.  The Ballot for an

9  Unrepresented Class 3 Abuse Claimant shall not reflect any assignment to a Creditor

10 Pool.  If the Unrepresented Class 3 Abuse Claimant does not elect treatment as a

11 Litigation Abuse Claimant, such claimant may mark the Ballot to select the Creditor Pool

12 to which the Unrepresented Class 3 Abuse Claimant will be assigned.

13          (a)    If the Unrepresented Class 3 Abuse Claimant does not

14 designate ~~an alternative~~a Creditor Pool, the Unrepresented Class 3 Abuse Claimant

15 shall be assigned to a Creditor Pool on a random basis by the Committee; provided that

16 the random assignments shall result in assignments to Allocation Plans in proportion to

17 the Allocation Plan assignments designated in the original Ballots and that the first

18 random assignment shall be to a Creditor Pool using the Allocation Plan that has the

19 greater number of Abuse Claimants as designated in the original Ballots.   If more than

20 one Creditor Pool has selected an Allocation Plan, such Unrepresented Class 3 Abuse

21 Claimant will be assigned to one of the Creditor Pools on a random basis by the

22 Committee provided that such Creditor Pool assignments shall be in proportion to the

23 number of Abuse Claimants in each Creditor Pool as designated in the original Ballots.

24 For example purposes only, assume that Ballot designations reflect that two-thirds (2/3)

25 of the Abuse Claimants are assigned to Creditor Pools utilizing Allocation Plan I and

26 one-third (1/3) of the Abuse Claimants are assigned to Creditor Pools utilizing Allocation

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ❘ FACSIMILE (503) 248-0130

1  Plan II.  If fifteen Unrepresented Class 3 Abuse Claimants do not designate a Creditor

2  Pool or do not return the Ballot in accordance with the Voting Procedures, ten (10) of

3  the Unrepresented Class 3 Abuse Claimants will be assigned to Creditor Pools utilizing

4  Allocation Plan I and five (5)  of the Unrepresented Class 3 Abuse Claimants will be

5  assigned to Creditor Pools utilizing Allocation Plan II.   The same method will be used

6  for assigning such Unrepresented Class 3 Abuse Claimants to Creditor Pools.

7          (b)      An Unrepresented Class 3 Claimant will use the ballot to

8  elect an Allocation Plan and Creditor Pool.  If such a Claimant fails to make the election

9  of an Allocation Plan on the Ballot, the Claimant will be assigned ~~will be assigned~~ on a

10  random basis by the Committee but the assignments shall be prorated between the

11  Allocation Plans ~~based on the numbers of Claimants in the originally constituted~~

12  ~~Creditor Pools.  If the Claimant does not elect into a Creditor Pool, the Claimant will be~~

13  ~~assigned on a random basis but the assignments shall be prorated between the~~

14  ~~Creditor Pools~~ based on the numbers of Claimants in the originally constituted Creditor

15  Pools.

16          5.2.6  The Trustee shall establish a monetary reserve for each of the

17  Creditor Pools.  The amount of such reserve shall be determined by multiplying the

18  number of Claims in a Creditor Pool by the average distribution to a Class 3 Abuse

19  Claimant, net of certain deductions from the ~~sum of  $166.1 million~~funds received by the

20  Trust, including deductions set forth in the Plan (a) Chapter 11 Professionals unpaid

21  Allowed Administrative Claims and Allowed expenses, (b) $~~6.468~~7.233 million, plus

22  additional amounts as provided in the Plan, on account of a reserve for Future Abuse

23  Claims,(c)  fees and costs of Abuse Claim Reviewers in relation to the preliminary

24  review of certain Abuse Claims as set forth in the Plan; (d) and distribution to a reserve

25  for Class 3A Abuse Claimants as set forth in Section 5.3; (e) distribution to a reserve for

26  Litigation Current Abuse Claimants as set forth in Section 5.4; (f) a reserve to be

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 established by the Trustee, subject to Bankruptcy Court approval, for certain attorney's

2 fees, costs and expenses to be incurred by the Debtor and/or the Reorganized Debtor;

3 and (g) any other deductions and/or reserves required by the Plan. The Trustee shall

4 also establish a reasonable administrative expense reserve for each Creditor Pool's

5 post-confirmation expenses, including the fees and expenses of administering the

6 Creditor Pool's Allocation Plan.

7 5.2.7 ~~No Class 3 or 3A Abuse Claimant may challenge the merit, validity,~~

8 ~~or amount of any Class 3 or 3A Claim.~~5.2.8 Confirmation of the Plan shall be

9 conditioned on no Creditor Pool having have more than 10% of its original membership

10 of Represented Class 3 Abuse Claimants opt out of the Creditor Pool. This condition

11 may be waived by the Committee.

12 ~~5.2.9~~5.2.8 The Abuse Claims Reviewer for each Creditor Pool will

13 divide the Claims in the Creditor Pool into two categories: (a) Claims originally filed as

14 Current Sexual Abuse Claims and (b) Claims filed by the Law Office of Joseph A.

15 Blumel III, P.S. and Breck Barton & Associates, P.A. The Abuse Claims Reviewer shall

16 determine if any of these Claims is a Claim of Sexual Abuse supported by credible

17 evidence. The Abuse Claims Reviewer's powers to examine such a Claim will include

18 all of the discovery powers permitted the Abuse Claims Reviewer in the subsequent

19 evaluation of the Claims in the Creditor Pool. If the Abuse Claims Reviewer determines

20 based on a preponderance of evidence, that the Claim is not a Sexual Abuse Claim,

21 such Claim will be classified and treated as a Class 3A Claim. If Abuse Claims

22 Reviewer determines based on a preponderance of evidence that the Claim is a Sexual

23 Abuse Claims, the Claim will be classified and treated as a Class 3 Claim. The Abuse

24 Claims Reviewer determination will be subject solely to a right to seek reconsideration

25 as provided in the applicable Allocation Plan. After the Abuse Claims Reviewer has

26 determined the amount awarded to the Class 3 Claims filed by the Law Office of Joseph

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  A. Blumel III, P.S. and Breck Barton & Associates, P.A., the total awards on account of

2  such Class 3 Claims will be compared to the amount funded into a Creditor Pool on

3  account of such Claims.  If the total amount awarded is less than the total amount

4  funded into a Creditor Pool on account of all such Claims, the difference shall be

5  withdrawn from such Creditor Pool's reserve and distributed amongst all of the Creditor

6  Pools on a pro rata basis determined by the number of Abuse Claimants in each

7  Creditor Pool.  If the difference is $0, no withdrawals from such Creditor Pool's reserve

8  shall be made.  If the total amount awarded is more than the total amount funded into a

9  Creditor Pool on account of all such Claims, each other Creditor Pool shall contribute its

10  pro rata share determined by the number of Abuse Claimants in all of the Creditor Pools

11  to the Creditor Pools containing such Claims, provided however, that the Class 3 Claims

12  filed by the Law Office of Joseph A. Blumel III, P.S and Breck Barton & Associates, P.A.

13  shall not participate in any of such additional funds.

14         5.2.10 5.2.9   The Claims of Unrepresented Abuse Claimants also shall

15  be preliminarily reviewed by the Abuse Claims Reviewer assigned to the Creditor Pool.

16  The Abuse Claims Reviewer's powers to preliminarily investigate such a Claim will

17  include all of the discovery powers permitted the Abuse Claims Reviewer under the

18  applicable Allocation Plan.

19         5.2.11 5.2.10   If the Abuse Claims Reviewer determines that an

20  Unrepresented Class 3 Abuse Claimant for sexual abuse fails to meet Rule 9011's

21  certifications, the Abuse Claims Reviewer shall deny the Claim.  A Claimant whose

22  Sexual Abuse Claim is so denied shall have the right to request reconsideration from

23  the Abuse Claims Reviewer and shall have the right to submit additional evidence that

24  in support of that request.  If the Claimant fails to seek reconsideration on a timely basis

25  in accordance with the applicable Allocation Plan, or if the Abuse Claims Reviewer

26  denies the reconsideration request, the Unrepresented Class 3 Abuse Claimant shall

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1      have no right to any distribution under the Plan.

2      ~~5.2.12~~5.2.11  If the Abuse Claims Reviewer finally determines that a Claim

3 should be denied hereunder, the amount reserved for such Claim in the creditor Pool

4 shall be distributed amongst the Creditor Pools on a prorated basis based on the

5 number of Abuse Claimants in each Creditor Pool.

6 _//_

7 _//_

8

9      **5.3**      **Treatment of Class 3A Claims (Non-Sexual Abuse Claims).**

10      5.3.1  The Trustee shall establish a reserve for Class 3A Claims in

11 amount equal to $17,500 multiplied by the number of Class 3A Claims.  The Abuse

12 Claims Reviewer assigned to Allocation Plan II shall review the Claims and make

13 awards ranging from $0 to $17,500 in accordance with Allocation Plan III.

14      5.3.2  When an Abuse Claim is reclassified from a Creditor Pool to Class

15 3A, the difference between the amount reserved for such Claim in the Creditor Pool and

16 $17,500 shall be distributed amongst the Creditor Pools on a prorated basis based on

17 the number of Abuse Claimants in each Creditor Pool.

18      5.3.3  The Trustee, up to five business days prior to <u>notifying the Class 3A</u>

19 <u>Claimants of </u>the Abuse Claims Reviewer's ~~publication of the~~ awards, shall have the

20 right to settle a Class 3A<u> Claim</u> without Bankruptcy Court approval.

21      5.3.4  Any amounts reserved for the Class 3A which are not awarded to

22 Class 3A Claimants shall be distributed on a prorated basis to each Creditor Pool based

23 on the number of Abuse Claimants in each Creditor Pool.

24      **5.4**      **Treatment of Litigation Current Abuse Claims.**

25      5.4.1  At the Confirmation Hearing, the Committee shall ask the Court to

26 estimate the Litigation Current Abuse Claims pursuant to Bankruptcy Code §502 and

1   the Trustee shall establish a reserve equal to the amount of the Court's estimate. The

2   reserve shall be used for the payment of Allowed Litigation Current Abuse Claims and

3   reasonable attorney's fees and expenses to be incurred by the Debtor and Reorganized

4   Debtor in the litigation and settlement of Litigation Current Abuse Claims.

5          5.4.2  Litigation Current Abuse Claims for which a prepetition action was

6   pending: (a) shall be transferred back to the U.S. District Court from which it was

7   originally transferred, (b) shall, upon the appropriate motion in the U. S. District Court to

8   which it was transferred back, be subject to remand to the court from which it was

9   originally removed if the prepetition action was removed during the Case, (c) the

10  complaint shall be deemed amended to replace the Debtor's name with the fictitious

11  name to be designated in the Confirmation Order and (c) liquidated pursuant to a final

12  non-appealable judgment by the court to which it was transferred and/or remanded.

13  The Litigation Current Abuse Claimant/plaintiff shall file a motion in the appropriate court

14  to put the prepetition action back onto the court's active trial docket, and serve such

15  motion on the Reorganized Debtor and the Trustee.  Consistent with the discharge

16  provided for in Section 11.1 any judgment obtained in such action ~~may~~shall not be

17  enforced against the Debtor, the Reorganized Debtor and/or any of their assets, and

18  shall be paid in accordance with the Plan only from the reserve in the Trust established

19  for the payment of Litigation Current Abuse Claims and related fees and expenses.  If a

20  Litigation Current Abuse Claimant does not timely file the motion seeking to put the

21  case on the active trial docket of the appropriate court within sixty (60) days of the

22  Effective Date, the Abuse Claim will be treated as a Convenience Abuse Claim, which

23  treatment will be irrevocable and in complete satisfaction, payment and release of such

24  Litigation Current Abuse Claim.

25          5.4.3  Within sixty (60) days ~~of~~after the Effective Date each Litigation

26  Current Abuse Claimant who does not have a pending prepetition action must: file a

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1    complaint in the U.S. District Court for the District of Oregon against the Reorganized

2    Debtor, using the fictitious name for the Reorganized Debtor as set forth in the

3    Confirmation Order asserting his or her Abuse Claim and serve such complaint upon

4    the Reorganized Debtor and Trustee. Consistent with the discharge provided for in

5    Section 11.1 any judgment obtained in such action ~~may~~shall not be enforced against the

6    Debtor, the Reorganized Debtor and/or any of their assets, and shall be paid in

7    accordance with the Plan only from the reserve in the Trust established pursuant to

8    Section 5.4.1 of the Plan.

9           5.4.4 If a Litigation Current Abuse Claimant does not timely file such a

10    complaint set forth in Section 5.4.3, then his or her Abuse Claim will be treated as a

11    Convenience Abuse Claim, which treatment will be irrevocable and in complete

12    satisfaction, payment and release of the Litigation Current Abuse Claim.

13           5.4.5 The Debtor and/or the Reorganized Debtor will retain all of the

14    Debtor's rights, defenses, privileges, affirmative defenses, including statute of

15    limitations, counterclaims, setoffs, and recoupments, with respect to Litigation Current

16    Abuse Claims. The Debtor and Reorganized Debtor will have complete control of

17    litigation and settlements of Litigation Current Abuse Claims, subject to the rights of the

18    Trustee and/or any Non-Settling Insurer that is defending such a Claim pursuant to the

19    terms of the applicable Insurance Policy or policies. All attorneys' fees, costs and

20    expenses of this litigation and/or settlements of Litigation Current Abuse Claims shall be

21    paid by the Trust without prejudice to any party's rights against a Non-Settling Insurer

22    for reimbursement thereof.

23           5.4.6 If a Non-Settling Insurer contests Insurance Coverage for a final

24    non-appealable judgment in favor of a Litigation Current Abuse Claimant:

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ⊔ FACSIMILE (503) 248-0130

1      (a)  At the request of the Trust, the Reorganized Debtor shall

2 assert its Insurance Claims to the extent requested by the Trust against any Non-

3 Settling Insurer;

4      (b)  The Reorganized Debtor shall select and retain counsel to

5 pursue its Insurance Claims, subject to the Trustee's approval, which approval shall not

6 be unreasonably withheld;

7      (c)  The Trust shall pay the reasonable attorneys' fees that are

8 incurred by the Reorganized Debtor in pursuing its Insurance Claims pursuant to this

9 Section 5.4.55.4.6;

10      (d)  The Trust shall, in addition to reasonable attorneys' fees,

11 reimburse the Reorganized Debtor for any reasonable out of pocket costs and

12 expenses it incurs as a direct consequence of pursuing such Insurance Claims, but will

13 not compensate the Reorganized Debtor for any time any of its employees expend; and

14      (e)  Upon receipt by the Reorganized Debtor, all Insurance

15 Recoveries received by the Reorganized Debtor on account of such Insurance Claims

16 shall be deemed to be held in trust for the benefit of the Trust and shall be remitted by

17 the Reorganized Debtor to the Trust as soon as practicable following the Reorganized

18 Debtor's receipt of such Insurance Recoveries.

19    5.4.7 Each holder of an Allowed Litigation Current Abuse Claim will be

20 paid in cash by the Trust such holder's pro rata share of a reserve for Litigation Current

21 Abuse Claims net of the Debtor and Reorganized Debtor's fees, costs, and attorneys

22 fees and costs defending and settling all Litigation Current Abuse Claims, within thirty

23 (30) days after of the later of the date on which all Litigation Current Abuse Claims have

24 been Allowed or Disallowed by Final Order or upon settlement or other final disposition

25 of all the Litigation Current Abuse Claims.

26   **5.5  Class 4:  Future Abuse Claims.**

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

5.5.1  On the Effective Date, and subject to section 6.3 and 6.4 of the Plan, all Class 4 Claims will be assumed by the Trust, which will pay those Claims pursuant to the provisions of the Trust Documents.  The assumption of the Class 4 Claims by the Trust shall not release the Debtor's liability on account of the Class 4 Abuse Claims.  Provided however, all liability on account of Class 4 Abuse Claims shall be discharged pursuant to the provisions of Section 11.1 of the Plan.  As provided in section 524(e) of the Bankruptcy Code, such discharge shall not affect the liability of any other entity on, or the property of any other entity for, the Class 4 Claims including the liability of any Non-Settling Insurer, which liability shall continue unaffected by the terms of this Plan (except to the extent the Safeco Settlement Agreement is incorporated into the Plan or any other Settling Insurer's, the Travelers Settlement Agreement, the Western World Settlement Agreement, or any settlement agreement with a Settling Insurer is incorporated into the Plan) or the discharge granted to the Debtor under this Plan and Bankruptcy Code section 1141(d).

5.5.2  On the Effective Date, and without any further action by any party, each Class 4 Claimant shall be deemed to have assigned to the Trust that Class 4 Claimant's Class 4 Claim against the Debtor and each of the Participating Parties, if such assignment is valid.  If such assignment is determined by the Bankruptcy Court not to be valid, then each Class 4 Claimant will retain that Claimant's Class 4 Claim and shall be deemed to have appointed the Trustee as his or her attorney-in-fact for the purpose of:  (a) asserting his or her Class 4 Claim against the Reorganized Debtor and the Participating Parties, subject to the provisions of Section 6.9 of this Plan and (b) provided that such Abuse Claim results in a judgment against the Reorganized Debtor, asserting any rights that such Class 4 Claimant may have against any Non-Settling Insurer.  All recoveries received on account of such Claims shall be deemed to be held in trust for the benefit of the Trustee and shall be remitted to the Trustee as soon as

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 practicable following the Class 4 Claimant's receipt of such Insurance Recoveries. The

2 determination of whether the assignment of the Class 4 Claimants' Abuse Claims to the

3 Trust is valid shall be made by the Bankruptcy Court at the Confirmation Hearing. A

4 determination that such assignment of the Class 4 Claims to the Trust is valid shall

5 include, *inter alia,* a determination that the assignment in no way affects the ability of the

6 Trust to pursue collection of the Class 4 Claims from the Non-Settling Insurers, and

7 each of them. That determination shall be binding upon all parties receiving notice of

8 the Confirmation Hearing, which shall include notice of this provision. If a party in

9 interest fails to timely file an objection to the proposed assignment by the deadline for

10 filing objections to confirmation of this Plan, that party in interest shall be deemed to

11 have irrevocably consented to the assignment and will be forever barred from asserting

12 that the assignment in any way affects the ability of the Trustee to pursue collection of

13 the Class 4 Abuse Claim from the Non-Settling Insurers, and each of them.

14      5.5.3 Creation of Future Abuse Claims Reserve Fund:

15 Pursuant to the Trust Agreement, the Trustee shall establish the Future Abuse Claims

16 Reserve Fund consisting of:

17           (a)    $6.4687.23 million;

18           (b)    45% of any sums paid to the Trust from Non-Settling

19 Insurers; and

20           (c)    30% of any sums paid to the Trust from entities on account

21 of such entities becoming a Participating Party other than those listed on Exhibit 1.105.

22      5.5.4 Intentionally Omitted.

23      5.5.5 Liquidation of Class 4 Claims.

24           (a)    The Future Abuse Claims Reserve Fund shall reimburse the

25 Trust for its Pro Rata share of attorneys' fees, costs and expenses incurred by the Trust

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 after the Effective Date in recovering any amounts from Non-Settling Insurers and
2 Participating Parties.

3         (b)     The holder of a Class 4 Claim shall proceed with allowance
4 of the Class 4 Claim by filing with the Trustee a Future Abuse Claim proof of claim to be
5 requested from and furnished by the Trustee upon request of a Class 4 Claimant.
6 Class 4 Claims will be reviewed pursuant to Allocation Plan I by the Abuse Claim
7 Reviewer Hon. William B. Bettinelli, Ret'd.  Each Class 4 Claim will be assigned a score
8 consistent with similar Claims filed during the Case.

9         5.5.6  Distribution to Class 4 Claimants.

10         (a)     Valuation of Class 4 Claims:  The points awarded to a Class
11 4 Claimant will be multiplied by the Average Future Claim Point Award.  For illustration
12 purposes only, if the total number of Class 3 Claims in pools using Allocation Plan I
13 were 250, with 40 Claimants electing treatment as holders of Convenience Abuse
14 Claims and an additional 10 Claimants receiving zero points (i.e. no award), the
15 average would be calculated by dividing the total awards for the remaining 200 Class 3
16 Claims by the total number of points for those Claims. Thus, Class 4 Claimants will
17 receive shares in the Future Abuse Claim Reserve Fund equal to the number of points
18 awarded their Claim times the average award per point as determined above. At any
19 time prior to final liquidation of a Class 4 Claim, the holder of such Class 4 Claim may
20 settle the value of the Class 4 Claim with the Abuse Claim Reviewer.

21         (b)     Number of Shares.

22         (i)     The total number of shares in the Future Abuse
23 Claims Reserve Fund is determined initially by 63 (the estimated number of Class 4
24 Claimants) multiplied by the Average Future Claim Point Award plus an additional 20%.
25 (For example, if the Average Future Claim Point Award is $300,000, the initial number
26 of shares authorized for the Future Abuse Claims Reserve Fund would be 63 x 300,000

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    x 1.2 or 22,680,000 shares).

2              (ii)     The number of shares will be adjusted as follows:

3                  (1)     The minimum number of unallocated shares

4    begins equal to the initial share calculation. In the example above 22,680,000 shares.

5                  (2)     The minimum number of unallocated shares

6    declines by $1/15^{th}$ of the initial authorization each anniversary of the Effective Date.

7    Over the course of time, the minimum number of shares would decline until the 15th

8    anniversary of the Effective Date, at which time the minimum number of shares would

9    be 0.

10                 (3)     If the issuance of shares to Class 4 Claimants

11   were to bring the unallocated share balance below the minimum, additional shares in

12   the Future Abuse Claims Reserve Fund would be authorized to bring the unallocated

13   balance back to the required minimum number of shares.

14                 (4)     On the 15th anniversary of the Effective Date,

15   all authorized but unawarded shares in the Future Abuse Claims Reserve Fund would

16   be cancelled.

17           (c)     Dividends.

18                 (1)     Class 4 Claimants awarded shares in the

19   Future Abuse Claims Reserve Fund will be paid a dividend on such shares. The

20   dividend will be determined by dividing the Future Abuse Claims Reserve Fund, net of

21   reserves agreed upon by the Trustee and Future Claimants Representative, by the

22   number of authorized shares. For example if the Future Abuse Claims Reserve Fund,

23   net of reserves agreed upon by the Trustee and Future Claimants Representative is

24   $13,000,000 and the initial number of authorized shares is 22,680,000, the Base

25   Dividend Rate would be $13,000,000 / 22,680,000 or $0.573 per share. The dividend

26   per share is recalculated annually, the denominator being updated with any additional

**Page 50 of ~~100~~100** – <u>FIRST MODIFIED</u> JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~<u>May 27,</u> 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 shares authorized, the numerator being updated with any changes to the Future Abuse
2 Claims Reserve Fund, net of agreed upon reserves.  If the dividend rate increases,
3 Class 4 Claimants  previously receiving dividends will receive additional dividends to
4 bring them up to the then current rate.  If the dividend decreases,~~.~~ Class 4 Claimants
5 previously receiving dividends have no liability to any entity for the amount previously
6 received.  The dividend rate can never exceed $1.00 per share.

7            (2)    After the 15th anniversary of the Effective Date,
8 authorized but unawarded shares in the Future Abuse Claims Reserve Fund will be
9 cancelled. The Trustee will calculate a dividend rate based solely on the awarded
10 shares , but not to exceed a dividend of $1.00 per share).  Class 4 Claimants previously
11 receiving less than such dividend rate  would receive additional dividends to bring their
12 aggregate dividend up to such rate.  Any excess reserve funds after reaching $1.00 per
13 share is to be donated to a charity supporting survivors of childhood sexual abuse to be
14 chosen by the Trustee.

15          (d)    Class 4 Claims Filed after the Future Claims Bar Date
16 Are Barred.  All Class 4 Claims filed after the Future Claims Bar Date (i.e. the fifteenth
17 (15th) anniversary of the Effective Date) will have no right to payment or any other right
18 under the Plan, and all such Claims will be discharged under the Plan.

19          (e)    Effect of Disallowance.  In accordance with the
20 discharge provisions in Section 11.1 and the provisions in sections 11.4, 11.5, 11.6 and
21 11.7 of the Plan, if a Class 4 Claim is liquidated at $0, the holder of such Claim will have
22 no further rights against the Debtor, the Reorganized Debtor, Settling Insurers,
23 Participating Parties, ~~Settling Insurers~~Released Parties, or the Trust and/or their
24 respective assets.

25     **5.6**    **Class 6:  Insured Non-Abuse Claims**.  Each holder of an Insured Non-
26 Abuse Claim that is covered by an insurance policy issued by a Non-Settling Insurer will

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

1 retain the right to pursue the recovery of such Claim, including the filing of a lawsuit

2 against the Reorganized Debtor, the Participating Parties, and the Non-Settling Insurer

3 providing coverage for the Claim to obtain a judgment establishing the Allowed amount

4 of the Claim but will be restricted to seeking payment solely from the insurance

5 coverage available for such Claim.  Consistent with the discharge provided for in

6 Section 11.1, and sections 11.4, 11.5, 11.6, and 11.7 of the Plan, any judgment

7 obtained in such action may not be enforced against the Debtor, the Reorganized

8 Debtor, the Participating Parties, the Released Parties, the Settling Insurers, and/or any

9 of their respective assets.  Once the Claim has been Allowed, and the Non-Settling

10 Insurer has paid all amounts for which there is coverage, the remaining portion, if any,

11 excluding Punitive Damages, will be included in Class 7 and treated as a General

12 Unsecured Claim. The Punitive Damage portion, if any, will be included in Class 8.

13 **5.7 Class 7: General Unsecured Claims**.  The holders of Allowed General

14 Unsecured Claims will receive payment from the Reorganized Debtor of their Pro Rata

15 share of the sum of $500,000, to be paid as soon as reasonably practicable after all

16 General Unsecured Claims have either been Allowed or Disallowed, but subject to the

17 filing and allowance of Claims under Section 502(h) of the Bankruptcy Code.

18 **5.8 Class 8: Penalty Claims**.  Allowed Penalty Claims, if any, will be

19 subordinated to all other Allowed Claims and will receive no distribution under the Plan.

20 **5.9 Class 10:** Intentionally omitted.

21 **5.10 Class 11: Formation Fund Claim**.  The Formation Fund Claim of

22 approximately $8,953,046 consisting of a loan from the Formation Fund to the Apostolic

23 Works Fund is not a Claim against the Debtor but against the Apostolic Works Fund. As

24 a result, the Formation Fund will not be entitled to vote on the Plan, its Claim will be

25 Disallowed, and it will receive no distribution under the Plan. The Formation Fund will

26 retain its rights to pursue collection of its Claim solely from the Apostolic Works Fund.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **5.11 Class 13: Donor Claims and Beneficiary Claims**.  The holders of Donor

2    Claims and Beneficiary Claims, if any, will be Disallowed and will receive no distribution

3    under the Plan.

4    **5.12 Class 15: Abuse Related Contribution/Indemnity Claims**.  All Abuse

5    Related Contribution/Indemnity Claims held by any Person or Entity against the Debtor,

6    the Reorganized Debtor, or a Participating Party, and all Abuse Related

7    Contribution/Indemnity Claims held by the Debtor, the Reorganized Debtor or a

8    Participating Party against any Person or Entity will, on the Effective Date, be cancelled

9    and released and will be of no further force or effect. However, notwithstanding such

10   cancellation and release, each holder of an Abuse Related Contribution/Indemnity

11   Claim will retain the right to assert such Claim in any proceeding to establish the

12   respective liability of, or to allocate fault to, those Persons or Entities allegedly

13   responsible for an Abuse Claim, but there shall be no affirmative recovery against any

14   holder of an Abuse Related Contribution/Indemnity Claim on account of such allocation

15   of fault.

16   **6.    TRUST.**

17   **6.1    Establishment of Trust**.   On the Effective Date, the Trust shall be

18   established in accordance with the Trust Documents.  Except as otherwise specified in

19   the Plan, the purposes of the Trust, among other things, shall be to:  (a) ~~to~~ enter into,

20   accept, and enforce the terms of the Plan and the Plan Documents regarding the Abuse

21   Claims; (b) ~~to~~ assume all of the Debtor's, Reorganized Debtor's and Participating

22   Parties' rights, Claims, defenses, liabilities and obligations concerning the Abuse

23   Claims; (c) ~~to~~ defend, litigate, arbitrate, mediate, negotiate, and settle the Litigation

24   Current Abuse Claims; (d) ~~to~~ exercise the Avoidance Rights; (e) subject to Section 8.1,

25   fund and pay for any litigation, arbitration, mediation and negotiation regarding the

26   Insurance Claims against the Non-Settling Insurers related to the Abuse Claims; (f)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

1 receive, hold, and invest funds in accordance with and subject to the provisions of this

2 Plan and the Trust Documents; (g)  issue payments and disburse funds subject to the

3 terms of this Plan and the Trust Documents, (h) retain attorneys, accountants, experts,

4 and other professionals to assist the Trustee in carrying out its duties under the Plan

5 and the Trust Documents; (i) pay the expenses, including professional fees of the

6 attorneys, accountants, experts, and other professionals to assist the Trustee in

7 carrying out its duties under the Plan and the Trust Documents; (j) pay the reasonable

8 attorney's fees, costs and expenses incurred by the Reorganized Debtor as provided in

9 the Plan; and (k) ~~to~~ aid in the enforcement of the Channeling Injunction.  The Trust shall

10 qualify as a Qualified Settlement Fund pursuant to Section 468B of the Internal

11 Revenue Code and the Treasury Regulations promulgated thereunder.  Neither the

12 Trust nor the Trustee will have the power or authority to bring, nor will the Trust or the

13 Trustee be deemed to succeed to, the Debtor's and Participating Parties' rights with

14 respect to, any of the Debtor and Participating Party Actions.

15       **6.1.1**  Nothing in the Plan or Plan Documents shall limit the Trust's rights

16 to dispute a Non-Settling Insurer's contribution, indemnity, or other equitable or legal

17 claims.

18     **6.2**  **Formation of Trust**.  On or before the Effective Date (but after entry of

19 the Confirmation Order and after the Confirmation Order becomes a Final Order), the

20 Reorganized Debtor will cause the following to occur:  (a) the execution and delivery of

21 the Trust Documents, (b) delivery to the Trustee of any amounts due to the Trust; (c)

22 delivery of such assignments from the Reorganized Debtor to give effect to the right of

23 the Trustee to receive any portion of the amounts due to the Trust; and (d) delivery of

24 such documents, agreements and assignments that are necessary to convey to the

25 Trust the Debtor's ~~insurance coverage~~Insurance Claims against the Non Settling

26 Insurers.

**6.3    Trustee Assumes Responsibility**.  On the Effective Date, and subject to the rights of the beneficiaries described in section 6.4 of the Plan, and in accordance with the Plan, the Trustee will assume all liability and full responsibility for resolving and paying the Abuse Claims of all Abuse Claimants electing to use Allocation Plans I, II and III, and the Trustee will assume all liability and full responsibility for resolving and paying all Litigation Current Abuse Claims and Future Abuse Claims.  Subject to section 6.4 of the Plan, the Trustee will assume full responsibility for: (a) establishing the respective reserves with respect to the Trust; (b) making payments to the holders of Class 3, 3A and 4 Claims that become payable under the Plan and Trust Documents, (c) collecting, investing and distributing the Trust's funds for the benefit of the Trust and; and (d) fulfilling all other obligations under the Trust Documents.

**6.4    Beneficiaries**.  The sole beneficiaries of the Trust are:(a) the holders of the Abuse Claims and (b) those for whom reserves for the various fees, costs and expenses, including reasonable attorneys' fees and costs, in administering the Trust have been established by the Plan the Trust Documents.  No beneficiary of the Trust shall have any interest in any reserve established by the Trustee pursuant to the Plan and Trust Documents other than the reserve established for the payment of such beneficiary's Claim.  No other creditors, including but not limited to the Class 15 creditors have any right, title or interest in the assets of the Trust.

**6.5    Trustee**.  The Trustee will be Omni Management Group, LLC.  The Trustee will act only pursuant to the provisions of this Plan and the Trust Documents. The Trustee may not assign any of his rights or obligations.  The Trustee will be entitled to receive a reasonable fee and reimbursement of reasonable costs and expenses for his services, with such fees and cost to be paid from the Trust.

**6.6    Intentionally omitted.**

**6.7    Trust Funding**.  The Trust will be funded as follows:

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    (a)    On the thirteenth (13th) day after the entry of the Confirmation

2  Order, the ~~Reorganized~~ Debtor and the Participating Parties will, deposit into a trust

3  account the sum of Forty-Three Million One Hundred Thousand Dollars

4  ($~~43,100,000.~~43,100,000) in Cash. On the Effective Date or the first Business Day

5  following the Effective Date if the Effective Date is not a Business Day, the Reorganized

6  Debtor and Participating Parties will transfer all funds in the trust account, including

7  accrued interest, to the Trust. In the event the Effective Date does not occur within three

8  (3) business days after the ~~Reorganized~~ Debtor ~~makes~~and the Participating Parties

9  make such deposit into the trust account, the ~~Reorganized~~ Debtor and Participating

10 Parties shall have the sole and exclusive option to withdraw the money from the trust

11 account and deposit such money back into the Reorganized Debtor's and Participating

12 Parties' accounts, as the case may be.

13    (b)    On the Effective Date, the Reorganized Debtor and the

14 Participating Parties will segregate and deposit into an interest bearing account an

15 additional Five Million Dollars ($~~5,000,000.~~5,000,000) in Cash from which the Allowed

16 Amount of all unpaid fees and expenses of the Chapter 11 Professionals are to be paid.

17 Payments to each Chapter 11 Professional will be made within 10 days after entry of a

18 Final ~~Orders~~Order Allowing ~~the~~its fees and expenses ~~of all of the Chapter 11~~

19 ~~Professionals~~.   After all such payments are made, any funds remaining in the

20 segregated account, including accrued interest thereon, shall be paid into the Trust;

21    (c)    Safeco, Travelers, and Western World will pay or deliver to the

22 Trust the sums due pursuant to the Safeco Settlement Agreement, the Travelers

23 Settlement Agreement, and the Western World Settlement Agreement.

24    (d)    The Reorganized Debtor and the Participating Parties will pay or

25 deliver to the Trustee such sums received by them from any settlements of Insurance

26 Claims prior to the Effective Date; and.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   (e)    On the Effective Date, without any further act by any party, the
2   Reorganized Debtor and the Committee will be deemed to have assigned to the Trustee
3   and the Trust all Avoidance Rights (not otherwise released, compromised, enjoined or
4   discharged under the Plan) and Third Party Derivative Claims against Entities other
5   than Participating Parties.

6       **6.8    Deposit and Payment of Funds**.  All funds paid to the Trustee pursuant
7   to this Plan will be deposited in the Trust.  The Trustee shall invest all funds that are
8   deposited in the Trust at his discretion subject to the terms of the Trust Documents.
9   The Trustee may distribute funds to the beneficiaries of the Trust by payment to the
10  client trust accounts of the attorneys of record representing the beneficiaries as
11  determined by the filed proofs of claim.  The Trustee shall have no liability to the
12  beneficiaries of the Trust on account of the administration of the funds once the funds
13  are transferred to the client trust accounts of the beneficiaries' attorneys of record.
14  Pursuant to the instructions of the Abuse Claims Reviewer and notwithstanding any
15  provision of Allocation Plans I II or III, the Trustee may make interim payments to
16  Beneficiaries of a Creditor Pool.

17      **6.9    Prosecution of Actions**.  An action may be prosecuted against the
18  Reorganized Debtor as follows:

19      (a)    In the event that, pursuant to Section 5.1.2 of this Plan, the
20  assignment of the Class 3 and/or 3A Abuse Claims to the Trust is determined to be
21  valid, or pursuant to Section 5.5.2 of this Plan, the assignment of the Class 4 Abuse
22  Claims to the Trust is determined to be valid, the Trust may prosecute an action on
23  account of such validly assigned Claims as provided in part (c) of this Section.

24      (b)    In the event that the assignment of the Class 3, 3A and 4 Claims
25  provided for at Section 5.1.2 of this Plan, or either of them, is not determined to be valid,
26  any such Class 3, 3A or 4 Claimant may prosecute an action on account of such

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   assigned claim by the Trust as his or her attorney -in -fact as provided in part (c) of this

2   Section.  Any recovery from the prosecution of such an action is deemed assigned to

3   the Trust.

4           (c)     Pursuant to parts (a) and (b) of this Section 6.9, following the

5   Effective Date of this Plan, the Trust or any Class 3, 3A or 4 Claimant who has elected

6   to use Allocation Plans I, II or III, as the case may be and has the consent of the

7   Trustee, may commence an action against the Reorganized Debtor solely for the

8   purpose of liquidating an Abuse Claim for the purpose of pursuing Insurance

9   Recoveries with respect to such Abuse Claim from Non-Settling Insurers.  Any such

10  action shall identify the Reorganized Debtor as set forth in the Confirmation Order and

11  shall be deemed by operation of law to be an action against the Debtor.  Consistent with

12  the discharge provided for in Section 11.1 any judgment obtained in such action may

13  not be enforced against the Debtor, the Reorganized Debtor and/or any of their assets,

14  and shall be paid in accordance with the Plan and shall be fully enforceable solely

15  against and paid by any Non-Settling Insurer under the terms of that Non-Settling

16  Insurer's Insurance Policy.  Any recovery from the prosecution of such an action is

17  deemed assigned to the Trust.

18      **6.10  Winding Up/Distribution of Excess Funds**.  Upon entry of an order by a

19  court of competent jurisdiction authorizing termination and dissolution of the Trust, the

20  Trustee will promptly proceed to wind up the affairs of the Trust.   Under no

21  circumstance shall the Trust be terminated or dissolved prior to the fifteenth (15th)

22  anniversary of the Effective Date.  Upon termination of the Trust, and provided that all

23  fees and expenses of the Trust have been paid or provided for in full, the Trustee will

24  deliver all funds and other investments remaining in the Trust, if any, including any

25  investment earnings thereon, to a charity supporting survivors of childhood sexual

26  abuse to be chosen by the Committee prior to confirmation of the Plan and named in

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 the Confirmation Order.

2 **6.11 No Execution**.  All funds held in the Trust will remain property of the Trust

3 until such time as the funds have actually been paid to and received by a Person or

4 Entity entitled to receive payment pursuant to the terms of this Plan and the Trust

5 Documents.  Except as expressly provided in the Plan, Confirmation Order and the

6 Trust Documents, the Trust shall not be responsible for any Claims against the Debtor.

7 **7.    LIQUIDATION AND PAYMENT OF ABUSE CLAIMS.**

8 **7.1   Liquidation of Abuse Claims**.  The Trust shall liquidate the Abuse

9 Claims in accordance with the terms and conditions of the Plan and Trust Documents.

10 The Trust's liquidation of the Abuse Claims shall not be binding upon any Non-Settling

11 Insurer unless such Non-Settling Insurer agrees in writing to be bound by the Trust's

12 Liquidation of the Abuse Claims no later than —21 days following the Effective Date.

13 Absent such consent, Non-Settling Insurers shall only be bound by judgments obtained

14 against the Debtor and/or the Participating Parties prior to the Petition Date and by

15 judgments obtained in proceedings brought in accordance with section 5.4 and 6.9 of

16 this Plan.

17 **7.2   Payment of Abuse Claims**.

18 7.2.1  The Trust shall pay Abuse Claims in accordance with the terms of

19 the Plan, Confirmation Order and Trust Documents.  It is not anticipated that the Trust

20 will have sufficient assets to pay all of the Abuse Claims in the full amount that all Abuse

21 Claimants may be owed in the event that all Abuse Claimants elected to liquidate their

22 Claims pursuant to Allocation Plans I, II or III.  For the avoidance of doubt, neither the

23 Debtor's or the Participating Parties' obligations to Abuse Claimants shall be deemed to

24 have been paid in full, nor their liability to Abuse Claimants fully satisfied, as a result of

25 payments received by Abuse Claimants from the Trust.  Rather, because Abuse Claims

26 are being paid by the Trust without regard to whether those Claims are covered by

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 □ FACSIMILE (503) 248-0130

1 Insurance Policies issued by Settling Insurers: (a) the Trust shall be shall be deemed to
2 be subrogated to the Claims of the Abuse Claimants paid by the Trust to the extent of
3 those payments, (b) the Trust may pursue such subrogation Claim and any contribution
4 Claim in an action brought pursuant to Section 6.9 of the Plan and (c) the Trust may
5 pursue any deficiency between the amount of an Abuse Claim and the amount that the
6 Abuse Claimant received from the Trust in an action brought pursuant to Section 6.9 of
7 the Plan. Except as provided in Section 6.96.9, and subject to sections 11.1, 11.4, 11.5,
8 11.6, and 11.7 of the Plan, the Trust may not bring any action under this Section against
9 the Debtor, the Reorganized Debtor, the Participating Parties, any Settling Insurer
10 and/or their respective assets.

11       7.2.2 Before the Trustee will pay any portion of any Abuse Claim to any
12 Abuse Claimant, that Claimant must provide a third-party vendor, which vendor has
13 been approved by the Trustee and, Safeco, Travelers, and Western World, and which
14 approval shall not be unreasonably withheld, ("Approved Vendor") or if no Approved
15 Vendor has been retained by or on behalf of an Abuse Claimant, the Trustee, with the
16 Abuse Claimant's name, date of birth, Social Security Number or Health Insurance
17 Claim Number (together, the "Personal Information"), a signed Social Security Release
18 Form or a Medicare Release form, or both, when requested by the Approved Vendor or
19 the Trustee, as the case may be, and any other information or documents reasonably
20 required to comply with Sections 7.2.3 and 7.2.4.

21       7.2.3 Each Abuse Claimant who claims that he or she is not a Medicare
22 Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may
23 be, to use the Personal Information to submit a query to the Social Security
24 Administration to verify whether he or she is a Medicare Beneficiary. Before the Trustee
25 will pay any portion of any Abuse Claim to an Abuse Claimant who claims that he or she
26 is not a Medicare Beneficiary, the Abuse Claimant will provide a letter from an

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ‖ FACSIMILE (503) 248-0130

1    Approved Vendor supported by documentation from the Social Security Administration,
2    received within the last sixty (60) days or if no Approved Vendor has been retained by
3    or on behalf of an Abuse Claimant, documentation from the Social Security
4    Administration received within the last sixty (60) days, confirming that the Abuse
5    Claimant is not a Medicare Beneficiary.  In the absence of such a confirming letter or
6    documentation, each Abuse Claimant will be presumed to be a Medicare Beneficiary.
7    Notwithstanding the foregoing, the Abuse Claimant may provide the Trustee with the
8    documentation from the Social Security Administration received within sixty (60) days
9    prior to a distribution from the Trustee, confirming that the Abuse Claimant is not a
10   Medicare Beneficiary.

11        7.2.4 Each Medicare Beneficiary expressly authorizes the Approved
12   Vendor or the Trustee, as the case may be, to use the Personal Information to submit a
13   query to the MSPRC to determine the amount of each and every Conditional Payment,
14   if any, subject to reimbursement by a "primary plan."  Before the Trustee will pay any
15   portion of any Abuse Claim to a Medicare Beneficiary, such Medicare Beneficiary, must
16   provide the Trustee with a letter from MSPRC received within sixty (60) days prior to a
17   distribution from the Trustee: (a) setting forth the Conditional Payment estimate made to
18   or on behalf of the Medicare Beneficiary that is subject to reimbursement by a "primary
19   plan," as the phrase is defined in Section 1395y(b)(2) of the MSPA; or (b) stating that no
20   such Conditional Payment has been made to or on behalf of the Medicare Beneficiary.
21   Notwithstanding the foregoing, the Abuse Claimant may provide the Trustee within sixty
22   (60) days prior to a distribution from the Trustee, a letter from MSPRC: (a) setting forth
23   the Conditional Payment estimate made to or on behalf of the Medicare Beneficiary that
24   is subject to reimbursement by a "primary plan," as the phrase is defined in Section
25   1395y(b)(2) of the MSPA; or (b) stating that no such Conditional Payment has been
26   made to or on behalf of the Medicare Beneficiary.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1     7.2.5  The failure by one or more Medicare Beneficiaries or other Abuse

2 Claimants to comply with these provisions shall not delay or impair the payment by the

3 Trustee to any other Medicare Beneficiary or other Abuse Claimant complying with

4 these provisions.

5     7.2.6  In the event of a violation or breach of the undertaking in Section

6 2.3 of the Safeco Settlement Agreement, then pursuant to Section 3.4 of the Safeco

7 Settlement Agreement, the Trust is liable to Safeco for the damages, injunctive relief,

8 attorneys' fees, costs, and expenses ~~as set forth therein~~. In the event of a violation or

9 breach of the undertaking in Section 2.3 of the Travelers Settlement Agreement, then

10 pursuant to Section 3.4 of the Travelers Settlement Agreement, the Trust is liable to

11 Travelers for the damages, injunctive relief, attorneys fees, costs, and expenses. In the

12 event of a violation or breach of the undertaking in Section 2.3 of the Western World

13 Settlement Agreement, then pursuant to Section 3.4 of the Western World Settlement

14 Agreement, the Trust is liable to Western World for the damages, injunctive relief,

15 attorneys fees, costs, and expenses.

16     7.2.7  If the Abuse Claimant is the estate of an Abuse Claimant, then the

17 letters or documentation required pursuant to Sections 7.2.3 and 7.2.4 need not be

18 dated within sixty (60) days of the date of payment by the Trustee to such Claimant.

19     7.2.8  In the event that the Trustee does not comply with the provisions of

20 Sections 7.2.2 through 7.2.6, Safeco, Travelers, and/or Western World, as applicable,

21 shall be entitled to injunctive relief or damages resulting from such breach plus

22 attorneys' fees and costs.

23     **7.3  Future Abuse Claims Bar Date.**  Each holder of a Future Abuse Claim

24 must, on or before the Future Abuse Claims Bar Date, file with the Trustee a proof of

25 claim or such Claimant's Future Abuse Claim will be forever barred and the holder of

26 such Claim will have no right to payment or other rights under the Plan or the Trust

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Documents.

**7.4 Effect of Disallowance of Abuse Claims**.  If an Abuse Claim is denied payment pursuant to the Allocation Plans or an Abuse Claimant fails to obtain a judgment against the Debtor, Reorganized Debtor, Released Parties, Participating Parties, or the Trust, the holder of such Abuse Claim will have no further rights against the Debtor, Reorganized Debtor, Released Parties, Participating Parties, the Settling Insurers, the Trust or Trustee relating to such Abuse Claim.

**7.5 Treatment of Attorneys' Fees of Abuse Claimants**.  Subject to the treatment of Qualified Counsel Fees pursuant to the Plan, the fees and expenses of attorneys representing Abuse Claimants who receive payment from the Trust will be borne by such Abuse Claimants based on applicable state law and individual arrangements made between such Abuse Claimants and their respective attorneys. In no event will the Debtor, the Reorganized Debtor, the Participating Parties, the Released Parties, the Settling Insurers, the Trust, or the Trustee have any liability for any fees and expenses of attorneys representing any of the Abuse Claimants except for the provisions relating to Qualified Counsel Fees, and any such Claims for fees and expenses, if any, will be Disallowed.

**7.6 Treatment of Punitive Damages**.  Claims for punitive or exemplary damages in connection with any of the Claims will be treated as Penalty Claims and will receive no distribution under the Plan.

**7.7 Withdrawal of Abuse Claims**.  An Abuse Claimant may withdraw an Abuse Claim at any time on written notice to the Trustee.  If withdrawn, the Claim will be withdrawn with prejudice and may not be reasserted.

**8. INSURANCE MATTERS.**

**8.1 Transfer of Insurance Rights**.  On the Effective Date, and without any further action by any party, but subject to the provisions of Sections 8.2 and 8.3, the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

| 1 | Debtor, the Reorganized Debtor, and each of the Participating Parties will be deemed to |

Debtor, the Reorganized Debtor, and each of the Participating Parties will be deemed to have assigned to the Trust the Debtor's, the Reorganized Debtor's, and the Participating Parties' rights to all Insurance Claims and Insurance Recoveries against the Non-Settling Insurers.  The foregoing transfer shall be effective to the maximum extent permissible under applicable law and the terms of the Insurance Policies and shall not be construed:  (a) as an assignment of the Insurance Policies or (b) to entitle any person or entity to Insurance Coverage other than those persons or entities entitled to such coverage under the terms of the Insurance Policies.  The determination of whether the assignment of the Insurance Claims and Insurance Recoveries, or either of them, to the Trust is valid or would defeat or impair the Insurance Coverage with respect to an Insurance Policy, shall be made by the Bankruptcy Court at the Confirmation Hearing.  If a party in interest fails to timely file an objection to the proposed assignment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the assignment and will be forever barred from asserting that the assignment in any way affects the ability of the Trust to pursue Insurance Claims and Insurance Recoveries, or either of them, from the Non-Settling Insurers, and each of them, or Insurance Coverage.  In the event that the Bankruptcy Court determines that the assignment of the Insurance Claims and Insurance Recoveries is valid and does not defeat or impair the Insurance Coverage, following the Effective Date, the Trust shall assume responsibility for, and be bound by, all of the obligations of the Debtor and Participating Parties under the Insurance Policies; provided, however, that the Trust's assumption of such responsibility shall not relieve the Debtor the Reorganized Debtor or the Participating Parties from any obligation that such entities may have under the Insurance Policies.

**8.2 Appointment of Trustee as Estate Representative to Enforce Insurance Rights and Obtain Insurance Recoveries**.  Pursuant to the provisions of

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ❙ FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1    section 1123(b)(3)(B) of the Bankruptcy Code and subject to the provisions of Sections

2    5.1.2, 5.4, 6.9 and 8.3 of the Plan, the Trust is hereby appointed as the representative

3    of the Debtor's estate for the purpose of retaining and enforcing the Debtor's and the

4    Debtor's estate's Insurance Coverage and for Insurance Claims with respect to the

5    Abuse Claims against the Debtor.

6        **8.3 Consequences of Determination That Assignment is Invalid**.  In the

7    event that the Bankruptcy Court determines that the assignment of Insurance Claims

8    provided for in Section 8.1, or that the appointment of the Trust as the Debtor's and the

9    Debtor's estate's representative provided for in Section 8.2, is invalid or would defeat or

10   impair the Insurance Coverage with respect to an Insurance Policy, as to such

11   Insurance Policy, the assignment and/or appointment, as the case may be, will be

12   deemed not to have been made.  If the assignment and/or appointment is not deemed

13   to have been made, the Debtor, the Reorganized Debtor, and each of the Participating

14   Parties will retain the Insurance Claims under such Insurance Policy, and:

15       (a)    At the request of the Trust, subject to Section 8.6, the

16   Reorganized Debtor will assert its Insurance Claims to the extent requested by the Trust

17   against any Non-Settling Insurer,

18       (b)    The Reorganized Debtor will select and retain counsel to

19   pursue its Insurance Claims pursuant to this Section 8.3, subject to the Trustee's

20   approval, which approval shall not be unreasonably withheld,

21       (c)    The Trust shall pay the reasonable attorneys' fees, costs

22   and expenses allowed by the Bankruptcy Court that are incurred by the Reorganized

23   Debtor in pursuing its Insurance Claims pursuant to this Section 8.3,

24       (d)    The Trust shall, in addition to reasonable attorneys' fees,

25   costs and expenses provided for in Section 8.3(c), reimburse the Reorganized Debtor

26   for any reasonable out of pocket costs and expenses it incurs as a direct consequence

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 of pursuing such Insurance Claims, but will not compensate the Reorganized Debtor for
2 any time any of its employees expend.

3     (e)    Upon receipt by the Reorganized Debtor, all Insurance
4 Recoveries received by the Reorganized Debtor on account of such Insurance Claims
5 shall be deemed to be held in trust for the benefit of the Trust and shall be remitted by
6 the Reorganized Debtor to the Trust as soon as practicable following the Reorganized
7 Debtor's receipt of such Insurance Recoveries.

8     **8.4**    **Preservation of Insurance Rights**.  Nothing in this Plan shall be
9 construed to impair or diminish in any way any Non-Settling Insurers obligations under
10 any Insurance Policy.  No provision of this Plan shall impair diminish any Non-Settling
11 Insurer's legal, equitable, or contractual obligations relating to the Insurance Policies
12 issued by the Non-Settling Insurers or the Insurance Claims against the Non-Settling
13 Insurers in any respect.  In the event that any court determines that any provision of this
14 Plan impairs or diminishes any Non-Settling Insurer's obligations with respect to the
15 Insurance Claims or Insurance Recoveries, such provision of this Plan shall be given
16 effect only to the extent that it shall not cause such impairment or diminishment.

17     **8.5**    **Post-Judgment Actions Against Non-Settling Insurers**.  In the event
18 that the Trust or any Abuse Claimant obtains a judgment against the Reorganized
19 Debtor pursuant to Sections 5.4 or 6.9, the Reorganized Debtor will cooperate with the
20 Trust or Abuse Claimant in the pursuit of any action brought by the Trust or Abuse
21 Claimant against a Non-Settling Insurer that the Trust contends provides Insurance
22 Coverage for such judgment.  Reorganized Debtor agrees that it will provide the Trust
23 or Abuse Claimant with any non-privileged and relevant documents and information
24 reasonably requested by the Trust or Abuse Claimant in pursuit of such an action.  The
25 Trust agrees that it will reimburse the Reorganized Debtor for any reasonable out of
26 pocket costs it incurs, including attorneys' fees, as a direct consequence of such

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 cooperation, but will not compensate the Reorganized Debtor for any time any of its

2 employees expend.

3     **8.6**     **Settlement with Non-Settling Insurers.**   Following the Effective Date,

4 the Reorganized Debtor shall not enter into a settlement agreement affecting any

5 Insurance Policy or Insurance Policies with any Non-Settling Insurer without the express

6 written consent of the Trust, which consent may be granted or withheld at the Trust's

7 sole and absolute discretion. Following the Effective Date, the Reorganized Debtor

8 authorizes the Trust to exclusively act on its behalf to negotiate a settlement with any

9 Non-Settling Insurer on account of such Insurance Claims.

10     **8.7**     **Cooperation with Non-Settling Insurer in Defense of Claims**.  Without

11 limiting its obligations pursuant to Section 8.1, in the event that the Trust or any Abuse

12 Claimant prosecutes an action against the Reorganized Debtor pursuant to Sections

13 5.4, or 6.9, the Reorganized Debtor will cooperate, in accordance with the terms of any

14 applicable Insurance Policy, with a Non-Settling Insurer that is providing a defense to

15 such a Claim. The Trust agrees that it will reimburse the Reorganized Debtor for any

16 reasonable out of pocket costs, including attorneys' fees, it incurs as a direct

17 consequence of such cooperation, but will not compensate the Reorganized Debtor for

18 any time any of its employees expend.

19     **8.8**   **Insurance Neutrality**.  Other than as expressly provided in this Section 8,

20 no provision of this Plan shall diminish or impair the right of any Insurer to assert any

21 defense to any Insurance Claim. Neither the assumption by the Trust of the Abuse

22 Claims nor the fact that the Trust is liquidating and paying monies on account of the

23 Abuse Claims shall be construed in any way to diminish any obligation of any Insurer

24 under any Insurance Policy to provide Insurance Coverage to the Debtor, the Debtor's

25 Estate or the Reorganized Debtor for Abuse Claims. The duties and obligations, if any,

26 of the Non-Settling Insurers under each Non-Settling Insurer's Insurance Policy shall not

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 [ FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 be impaired, altered, reduced or diminished by: (a) the discharge granted to the Debtor

2 under the Plan pursuant to section 1141(d) of the Bankruptcy Code, (b) the

3 exonerations, exculpations and releases contained in the Plan or (c) the Channeling

4 Injunction.

5 **9.    MEANS FOR IMPLEMENTATION OF THE PLAN.**

6       **9.1    Closing.**  Closing will be conducted in the offices of Sussman Shank LLP,

7 or at such other location designated by the Reorganized Debtor, as soon as reasonably

8 practicable following the Effective Date for the purpose of the Reorganized Debtor, the

9 Participating Parties, and the Settling Insurers executing and delivering the Plan

10 Documents and completing those actions necessary for the Reorganized Debtor, the

11 Participating Parties, and the Settling Insurers to establish and fund the Trust and make

12 other distributions required to be made upon, or promptly following, the Effective Date.

13 As soon as practicable after the conditions set forth in Section 10.1 have been satisfied

14 or waived in accordance with Section 10.2, the Reorganized Debtor will give written

15 notice of the Closing to the Committee, the FCR, and any Claimant, Insurer,

16 Participating Party, or other Person or Entity that will be directly involved in the Closing.

17       **9.2    Continuation of Future Claimants Representative**.

18             9.2.1 Notwithstanding the entry of the Confirmation Order or the

19 occurrence of the Effective Date, the duty of the FCR, or his successor, will be generally

20 to represent the collective interests of the Future Abuse Claimants to ensure the

21 Trustee's compliance with the Plan and Trust Documents as they relate to the Class 4

22 Claims.  Such duty will continue until the Trust reserve for Class 4 Claims is wound

23 down in accordance with the provisions of the Plan and Trust Documents.

24             9.2.2  The FCR will have no duty of any kind to give or offer legal advice

25 to any individual who is, or contends that he or she is, an Abuse Claimant, make

26 available to any such individual an attorney or other professional person, or assist any

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    such individual in proving his or her own Claim or negotiating a settlement of such

2    Claim.  In addition to the FCR's other powers, the FCR will be empowered to: (a) retain

3    counsel and other professional advisors; (b) act as an advisor to the Trustee; (c)

4    enforce the Trust Documents and the Plan, or any provisions thereof, for the benefit of

5    the Future Abuse Claimants through legal proceedings or otherwise; and (d) initiate,

6    prosecute and defend any appeal arising out of or relating to (i) the Confirmation Order

7    or the Plan, (ii) any Plan Documents, or (iii) any other order or judgment entered in, or

8    relating to, the Case.  Upon termination of the Trust, without the necessity for any other

9    or further action by any party and without court order, the FCR will be discharged from

10    all further authority, duties, responsibilities and obligations relating to or arising from or

11    in connection with the Case or this Plan.  All reasonable fees, costs and expenses of

12    the FCR, including the fees and expenses of the FCR's professionals, will be paid by

13    the Trust from the reserve established for Class 4 Claims.

14    **9.3    Obligations of the Reorganized Debtor and Participating Parties.**

15    (a)    The Reorganized Debtor and the Participating Parties will:

16    In the exercise of their respective business judgment, review all

17    Claims filed against the Estate except for Abuse Claims and, if advisable, object to such

18    Claims;

19    (b)    After the Effective Date, not object to any Omak Area Shelter

20    Claims or Abuse Claims, except those Abuse Claims described in Sections 5.4 and 6.9

21    of the Plan.

22    (c)    In the exercise of their respective business judgment,

23    investigate, prosecute, settle, or dismiss all Debtor and Participating Parties Actions that

24    are not otherwise resolved under this Plan.  Unless otherwise provided in this Plan or

25    the Plan Documents, the Reorganized Debtor and Participating Parties will be entitled to

26    receive all Debtor and Participating Party Action Recoveries and insurance proceeds

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    not related to the Abuse Claims;

2               (d)     Notwithstanding anything to the contrary in this Plan, honor

3    the Debtor's obligations under the Insurance Policies issued by the Non-Settling

4    Insurers and under applicable non-bankruptcy law, with the Reorganized Debtor's

5    attorneys' fees, costs and expenses incurred in doing so, if any, to be paid by the Non-

6    Settling Insurers and/or the Trust, as provided under the Insurance Policies, this Plan,

7    or the Trust Documents, as applicable;

8               (e)     Honor the Debtor's obligations arising under any settlement

9    agreement between the Debtor and any Settling Insurer that has been approved by the

10   Bankruptcy Court; and,

11              (f)     Perform all of their obligations under this Plan and Plan

12   Documents, in each case, as and when the same become due or are to be performed.

13       **9.4     Objections to Claims**.  Objections to a Claim (except for Abuse Claims)

14   as to which no objection is pending as of the Effective Date, must be filed by the Claims

15   Objection Bar Date.

16       **9.5     Provisions Governing Distributions**.

17              9.5.1 Distribution Only to Holders of Allowed Claims.    Except as

18   otherwise provided in the Plan, distributions under this Plan and the Plan Documents

19   will be made only to the holders of Allowed Claims and in the case of Abuse Claims,

20   only to liquidated Claims pursuant to the Plan and the Trust Documents.  To the extent

21   of any funds paid to the Trust under the Safeco Settlement Agreement, Travelers

22   Settlement Agreement, or Western World Settlement Agreement, distributions to Abuse

23   Claimants under this Plan and the Plan Documents will be made in accordance with the

24   Safeco Settlement Agreement, Travelers Settlement Agreement, and Western World

25   Settlement Agreement, as applicable.   Until a Disputed Claim becomes an Allowed

26   Claim, the holder of that Disputed Claim will not receive any distribution otherwise

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

1   provided to the Claimants under this Plan or the Plan Documents. If necessary in

2   determining the amount of a Pro Rata distribution due to the holders of Allowed Claims

3   in any class, the Reorganized Debtor or the Trustee, as applicable, will make the Pro

4   Rata calculation as if all Unresolved Claims were Allowed Claims in the full amount

5   Claimed or in the Estimated Amount.  When an Unresolved Claim in any class becomes

6   an Allowed Claim, the Reorganized Debtor or the Trustee, as applicable, will make full

7   or partial distributions, as applicable, with respect to such Allowed Claim, net of any

8   setoff contemplated by the order, if any, allowing such Claim and/or any required

9   withholding of applicable federal and state taxes.

10         9.5.2  Transmittal of Distributions.  Except as otherwise provided in this

11   Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to be

12   made under this Plan or the Plan Documents to Claimants holding Allowed Claims or in

13   the case of Abuse Claim, Claimants holding liquidated Claims will, in each case, be

14   made by the Reorganized Debtor or Trustee, as applicable, by first class United States

15   mail, postage prepaid, (a) to the client trust account for attorneys of record of Abuse

16   Claimants, (b) if the Abuse Claimant does not have an attorney of record, to the latest

17   mailing address set forth in a proof of claim filed with the Claims Agent or the

18   Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be

19   provided to the Reorganized Debtor or Trustee, as applicable, by such Claimant in

20   writing, or (c) if no such proof of claim has been filed and no written notice setting forth a

21   mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor

22   or Trustee, as applicable, to the mailing address set forth in the schedules filed by the

23   Debtor in this Case.  If a Claimant's distribution is not mailed or is returned to the

24   Reorganized Debtor or Trustee because of the absence of a proper mailing address,

25   the Reorganized Debtor or Trustee, as the case may be, shall make a reasonable effort

26   to locate or ascertain the correct mailing address for such Claimant from information

**Page 71 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. Notwithstanding the foregoing, the Trustee may deliver Abuse Claimants' distributions to the client trust accounts of attorneys of record.

9.5.3 Timing of Distributions. Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day, with interest to the extent expressly contemplated by this Plan or any applicable agreement or instrument.

(a) Form of Distributions. Unless otherwise agreed by the Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, all distributions will be made, at the option of the Reorganized Debtor or Trustee, by a check or wire transfer.

(b) No Professional Fees or Expenses. No professional fees or expenses incurred by a Claimant will be paid by the Debtor, the Reorganized Debtor, or the Trustee with respect to any Claim except as specified in this Plan or the Trust Documents.

9.6 **Closing of the Case**. As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Court to close the Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, the Trustee, or any other party in interest to reopen the Case for any matter over which the Court or Oregon U.S. District Court has retained jurisdiction under this Plan. Any order closing this Case will provide that the Bankruptcy Court or

**Page 72 of 100100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated April 4, May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

1  Oregon U.S. District Court, as appropriate, will retain (a) jurisdiction to enforce, by

2  injunctive relief or otherwise, the Confirmation Order, any other orders entered in this

3  Case, and the obligations created by this Plan and the Plan Documents; and (b) all

4  other jurisdiction and authority granted to it under this Plan and the Plan Documents.

5  **10.   CONDITIONS PRECEDENT.**

6      **10.1   Conditions to Effectiveness**.  The Effective Date will occur when each of

7  the following conditions have been satisfied or waived in accordance with Section 10.2

8  of this Plan:

9          10.1.1  The Bankruptcy Court shall have entered a Final Order or Final

10  Orders approving all settlement agreements between the Debtor, the Participating

11  Parties, and the Settling Insurers, and any appropriate judgments consistent therewith,

12  in form and substance reasonably acceptable to each of those parties, and no stay of

13  such Orders shall be in effect;

14          10.1.2   The Trust has received <u>a total of </u>$43.1 million

15  ($~~43,100,000.)~~<u>43,100,000) on behalf of the Reorganized Debtor and Participating</u>

16  <u>Parties</u>;

17          10.1.3  The Debtor ~~has~~<u>and Participating Parties have</u> deposited the sum

18  of $5 million ($~~5,000,000.~~<u>5,000,000</u>) as required by section  6.7(b) of the Plan.

19          10.1.4  The Bankruptcy Court shall have entered the Confirmation Order

20  in form and substance reasonably acceptable to the Proponents, the Participating

21  Parties, and the Settling Insurers, and no stay of such Order shall be in effect.

22      **10.2   Waiver of Conditions**.  Any condition set forth in Section 10.1 of this Plan

23  may be waived by the mutual consent of the Proponents, the Participating Parties, and

24  the Settling Insurers. ~~The condition set forth in Section 10.1 of this Plan may be waived~~

25  ~~by the mutual consent of the Participating Parties and Settling Insurers.~~

26

**Page 73 of ~~100~~100** – <u>FIRST MODIFIED </u>JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~<u>May 27,</u> 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1  **11.    EFFECTS OF PLAN CONFIRMATION.**

2      **11.1    Discharge**.  Notwithstanding anything to the contrary in the Plan, on the

3  Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtor ~~(other~~

4  ~~than Jesuit Community of Gonzaga University, Inc.)~~ and the Reorganized Debtor will be

5  discharged from all liability for any and all Claims and Debts, known or unknown,

6  whether or not giving rise to a right to payment or an equitable remedy, that arose,

7  directly or indirectly, from any action, inaction, event, conduct, circumstance, happening,

8  occurrence, agreement, or obligation of the Debtor, or the Debtor's Representatives

9  before the Confirmation Date, or that otherwise arose before the Confirmation Date,

10  including all interest, if any, on any such Claims and Debts, whether such interest

11  accrued before or after the date of commencement of this Case, and including all

12  Claims and Debts based upon or arising out of Abuse, and from any liability of the kind

13  specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not

14  (a) a proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy

15  Code; (b) such Claim is Allowed under this Plan;  or (c) the holder of such Claim has

16  accepted this Plan.

17      11.1.1  Section 11.1 of the Plan does not apply to (a) the obligations of

18  any Non-Settling Insurers for any Claims; (b) the obligations arising under any

19  settlement agreement between the Debtor and any Settling Insurer approved by the

20  Bankruptcy Court, which are not and will not be discharged; (c) the performance by the

21  Reorganized Debtor of any and all obligations due to the Non-Settling Insurers under

22  their Insurance Policies with respect to any Abuse Claim, and (d) (i) a Person or

23  Persons having personally committed an act or acts of Abuse resulting in a Claim

24  against the Debtor or a Participating Party, (ii) the Society of Jesus; (iii) the Father

25  General of the Society of Jesus and his predecessors, (iv) the Society of Jesus General

26  Curia (v) a successor or predecessor of the Debtor to the extent of such successor's or

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 predecessor's independent liability for an act or acts of Abuse; (vi) Gonzaga University;

2 (vii) Seattle University; and (viii) the Jesuit High Schools.

3 **11.2 Post-Petition Abuse Claims.** Abuse Claims, other than Future Claims,

4 arising or occurring after the Petition Date will not be discharged, released or impaired,

5 with the exception of any Abuse Claim against a Settling Insurer**.**

6 **11.3 Vesting**. Except as otherwise expressly provided in this Plan or in the

7 Confirmation Order, on the Effective Date, the Reorganized Debtor (a) will be vested

8 with all of the property of the Estate free and clear of all Claims, liens, encumbrances,

9 charges and other interests of Creditors and Claimants; and (b) may hold, use, dispose,

10 and otherwise deal with such property and conduct its affairs, in each case, free of any

11 restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

12 **11.4 Exculpation And Limitation Of Liability**. Except as expressly provided

13 in this Plan, none of the Exculpated Parties will have or incur any liability to, or be

14 subject to any right of action by, any holder of a Claim, any other party in interest, or any

15 of their respective agents, employees, representatives, financial advisors, attorneys, or

16 affiliates, or any of their successors or assigns, for any act or omission in connection

17 with, relating to, or arising out of the Case, including the exercise of their respective

18 business judgment and the performance of their respective fiduciary obligations, the

19 pursuit of confirmation of the Plan, or the administration of the Plan or the Trust, except

20 liability for their willful misconduct or gross negligence (provided however the Debtor

21 and Reorganized Debtor will be discharged from any such liability for such acts or

22 omissions occurring prior to the Confirmation Date), and in all respects, such parties will

23 be entitled to reasonably rely upon the advice of counsel with respect to their duties and

24 responsibilities under the Plan or in the context of the Case.

25 **11.5 Supplemental Injunction Preventing Prosecution of Abuse Claims**

26 **Against Settling Insurers.** Pursuant to sections 105(a) and 363 of the Bankruptcy

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 Code, any and all Persons and Entities who now hold or who may in the future hold

2 Claims ~~or interests~~and Interests of any kind or nature (including all debt holders, all

3 equity holders, governmental, tax and regulatory authorities, lenders, trade and other

4 creditors, Abuse Claimants, other insurers, and all others holding Claims or Interests of

5 any kind or nature whatsoever) against the ~~Province,~~Debtor, the Reorganized Debtor,

6 the Province, the Participating Parties, the Settling Insurers, the Settling Insurer Other

7 Releasing Parties, ~~Settling Insurers,~~ or the Settling ~~Insurers' Insurance~~Insurer Policies,

8 arising out of, relating to, or in connection with the Settling ~~Insurers' Insurance~~Insurer

9 Policies or Abuse Claims are hereby permanently stayed, enjoined, barred, and

10 restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt

11 to assert or enforce any such Claim ~~or Interest against Settling Insurers, and all of their~~

12 ~~employees, officers, directors, shareholders, principals, parents, agents, attorneys, and~~

13 ~~representatives, as well as the predecessors, successors, assignors, and assigns of~~

14 ~~Settling Insurers, in their capacity as such, and/or the Settling Insurers' Insurance~~and

15 Interests against the Settling Insurers, the Settling Insurer Released Parties, and/or the

16 Settling Insurer Policies.

17 //

18 //

19 //

20 **11.6 Supplemental ~~Injunction~~Injunctions Preventing Prosecution of**

21 **Abuse Claims Against Safeco, Travelers, and Western World.**

22 11.6.1 In accordance with the Safeco Settlement Agreement  and the

23 Approval Order that approved the Agreement (as defined in the Safeco Settlement

24 Agreement),  pursuant to sections 105(a) and 363 of the Bankruptcy Code, any and all

25 Persons and Entities who now hold or who may in the future hold any Claims (as

26 defined in the Safeco Settlement Agreement) or Interests (as defined in the Safeco

1 Settlement Agreement) of any kind or nature (including, without limitation, all debt

2 holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade

3 and other creditors, Tort Claim (as defined in the Safeco Settlement Agreement)

4 holders, other insurers, and all others holding Claims (as defined in the Safeco

5 Settlement Agreement) or Interests (as defined in the Safeco Settlement Agreement) of

6 any kind or nature whatsoever) against SJOP, Safeco Other Releasing Parties, Safeco,

7 Safeco Released Parties, or the Safeco Policies, relating to or in connection with the

8 Safeco Policies, Tort Claims (as defined in the Safeco Settlement Agreement), or Abuse

9 Claims (as defined in the Plan), are hereby permanently stayed, enjoined, barred, and

10 restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt

11 to assert or enforce any such Claim (as defined in the Safeco Settlement Agreement) or

12 Interest against Safeco, (as defined in the Safeco Settlement Agreement) or Interest (as

13 defined in the Safeco Settlement Agreement) against Safeco, the Safeco Released

14 Parties, and/or the Safeco Policies.

15                 11.6.2 Pursuant to sections 105(a) and 363 of the Bankruptcy Code and in

16 consideration of the undertakings of Travelers pursuant to the Travelers Settlement

17 Agreement, including any of the Travelers' purchases of Travelers Policies from the

18 Debtor free and clear of all Claims (as defined in the Travelers Settlement Agreement)

19 and Interests pursuant to Section 363(f) of the Bankruptcy Code, any and all Persons

20 and Entities who have held, now hold or who may in the future hold Claims (as defined

21 in the Travelers Settlement Agreement) or Interests of any kind or nature (including all

22 debt holders, all equity holders, governmental, tax and regulatory authorities, lenders,

23 trade and other creditors, Abuse Claimants, Future Abuse Claimants, Tort Claimants

24 (as defined in the Travelers Settlement Agreement), other insurers, and all others

25 holding Claims or Interests of any kind or nature whatsoever) against the Debtor, the

26 Estate, the Province, Travelers Other Releasing Parties, Travelers, Travelers Released

**Page 77 of 100100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated April 4,May 27, 2011)

| | |
|---|---|
| 1 | Parties, or the Travelers Policies, arising out of, relating to, or in connection with the |
| 2 | Travelers Policies, Abuse Claims, and/or Tort Claims  (as defined in the Travelers |
| 3 | Settlement Agreement), are hereby permanently stayed, enjoined, barred, and |
| 4 | restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt |
| 5 | to assert or enforce any such Claim (as defined in the Travelers Settlement Agreement) |
| 6 | or Interest against Travelers, Travelers Released Parties, and/or the Travelers Policies. |
| 7 | 11.6.3 In accordance with the Western World Settlement Agreement  and |
| 8 | the Approval Order that approved the Agreement (as defined in the Western World |
| 9 | Settlement Agreement),  pursuant to sections 105(a) and 363 of the Bankruptcy Code, |
| 10 | any and all Persons and Entities who now hold or who may in the future hold any |
| 11 | Claims (as defined in the Western World Settlement Agreement) or Interests (as defined |
| 12 | in the Western World Settlement Agreement) of any kind or nature (including, without |
| 13 | limitation, all debt holders, all equity holders, governmental, tax and regulatory |
| 14 | authorities, lenders, trade and other creditors, Tort Claim (as defined in the Western |
| 15 | World Settlement Agreement) holders, other insurers, and all others holding Claims (as |
| 16 | defined in the Western World Settlement Agreement) or Interests (as defined in the |
| 17 | Western World Settlement Agreement) of any kind or nature whatsoever) against SJOP, |
| 18 | Western World Other Releasing Parties, Western World, Western World Released |
| 19 | Parties, or the Western World Policies, relating to or in connection with the Western |
| 20 | World Policies, Tort Claims (as defined in the Western World Settlement Agreement), or |
| 21 | Abuse Claims (as defined in the Plan), are hereby permanently stayed, enjoined, |
| 22 | barred, and restrained from taking any action, directly or indirectly, to assert, to enforce |
| 23 | or to attempt to assert or enforce any such Claim (as defined in the Western World |
| 24 | Settlement Agreement) or Interest (as defined in the Western World Settlement |
| 25 | Agreement) against Western World, the Western World Released Parties, and/or the |
| 26 | Western World Policies. |

**Page 78 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1         11.6.4 Any Insurer, other than Safeco, Travelers, and Western World, that

2 becomes a Settling Insurer and signs a settlement agreement substantially in the form

3 of the Safeco Settlement Agreement, shall be entitled to the benefits, including all

4 injunctions, as set forth in the form of settlement agreement signed by such Insurer.

5    **11.7 Channeling Injunction Preventing Prosecution of Abuse Claims**

6 **Against ~~Participating Parties, Released Parties, and Safeco~~Channeling Injunction**

7 **Beneficiaries.** In consideration of the undertakings of the ~~Participating Parties and~~

8 ~~Released Parties~~Channeling Injunction Beneficiaries, pursuant to their respective

9 settlements with the Debtor and/or a Participating Party, the funding of the Trust, other

10 consideration, and to further preserve and promote the agreements between ~~the~~

11 ~~Debtor, the Participating Parties, and the Released Parties~~and among the Channeling

12 Injunction Beneficiaries, and the protections afforded the ~~Participating Parties and the~~

13 ~~Released Parties~~Channeling Injunction Beneficiaries, and pursuant to section 105 of the

14 Bankruptcy Code~~,~~:

15    (a) any and all ~~Abuse Claims (and all such Claims against Safeco), and as to~~

16 ~~Safeco all Tort Claims as defined in the Safeco Settlement Agreement, against~~

17 ~~Safeco, the Participating Parties, and the Released Parties~~Channeled Claims are

18 channeled into the Trust; and~~,~~

19    (b) all Persons or Entities ~~which~~that have held or asserted, ~~which~~hold or assert,

20 or ~~which~~ may in the future hold or assert, ~~an Enjoined~~any Channeled Claim are hereby

21 permanently stayed, enjoined, barred and restrained from taking any action, directly or

22 indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce

23 any ~~Enjoined~~Channeled Claim, including:

24    (i) commencing or continuing in any manner any action or other

25 proceeding of any kind with respect to any ~~Enjoined~~Channeled Claim against ~~Safeco,~~

26 ~~any Participating Party, or Released Party, its~~any Channeling Injunction Beneficiaries,

**Page 79 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 ~~their respective~~ predecessors, successors, and assigns, or their respective employees,

2 officers, and directors,  or against the property of any ~~Participating Party or Released~~

3 ~~Party, its~~Channeling Injunction Beneficiaries, their respective predecessors, successors,

4 and assigns, or their respective employees, officers, and directors;

5 (ii) enforcing, attaching, collecting or recovering, by any manner or means,

6 from ~~Safeco, any Participating Party, or Released Party, its~~ any Channeling Injunction

7 Beneficiaries, their respective predecessors, successors, and assigns, or their

8 respective employees, officers, and directors, or from the property of ~~Safeco, any~~

9 ~~Participating Party, or Released Party, its~~any Channeling Injunction Beneficiaries, their

10 respective predecessors, successors, and assigns, or their respective employees,

11 officers, and directors, with respect to any such ~~Enjoined~~Channeled Claim, any

12 judgment, award, decree, or order against ~~Safeco, a Participating Party, or Released~~

13 ~~Party~~any Channeling Injunction Beneficiaries, or other Person or Entity;

14 (iii) creating, perfecting or enforcing any lien of any kind against ~~Safeco,~~

15 ~~any Participating Party, or Released Party, its~~any Channeling Injunction Beneficiaries,

16 their respective predecessors, successors, and assigns, or their respective employees,

17 officers, and directors, or the property of ~~Safeco, any Participating Party, or Released~~

18 ~~Party, its~~any Channeling Injunction Beneficiaries, their respective predecessors,

19 successors, and assigns, or their respective employees, officers, and directors, with

20 respect to any such ~~Enjoined~~Channeled Claim; and

21 (iv) asserting, implementing or effectuating any ~~Enjoined~~Channeled Claim

22 of any kind against :

23 (1) any obligation due ~~Safeco, any Participating Party, or Released~~

24 ~~Party, its~~any Channeling Injunction Beneficiaries, their respective predecessors,

25 successors, and assigns, or their respective employees, officers, and directors~~, (2)~~

26 ~~Safeco, any Participating Party, or Released Party, its~~;

**Page 80 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1          (2) any Channeling Injunction Beneficiaries, their respective

2 predecessors, successors, and assigns, or their respective employees, officers, and

3 directors~~,~~; or

4          (3) the property of ~~Safeco, any Participating Party, or Released~~

5 ~~Party, its~~any Channeling Injunction Beneficiaries, their respective predecessors,

6 successors, and assigns, or their respective employees, officers and directors, with

7 respect to any such ~~Enjoined~~Channeled Claim.

8      Notwithstanding any provision of this Plan, the foregoing "Channeling Injunction

9 Preventing Prosecution of Abuse Claims Against ~~Participating Parties, Released~~

10 ~~Parties, and Safeco~~Channeling Injunction Beneficiaries" provides absolutely no

11 protection to (i) a Person or Persons having personally committed an act or acts of

12 Abuse resulting in a Claim against the Debtor or a Participating Party, (ii) the Society of

13 Jesus; (iii) the Father General of the Society of Jesus and his predecessors, (iv) the

14 Society of Jesus General Curia; (v) a successor or predecessor of the Debtor to the

15 extent of such successor's or predecessor's independent liability for an act or acts of

16 Abuse; (vi) Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High

17 Schools.

18         11.7.1      To the extent not otherwise enjoined in Section 11.6,

19 assertion and enforcement of ~~Abuse Claims, and Tort Claims as defined in the Safeco~~

20 ~~Settlement Agreement~~Channeled Claims, and any attempt to assert or enforce such

21 Claims, by any Person or ~~entity, against Safeco (as defined in the Safeco Settlement~~

22 ~~Agreement), or the Safeco Released Entities (as defined in the Safeco Settlement~~

23 ~~Agreement),~~Entity, against Safeco, the Safeco Released Parties, Travelers, the

24 Travelers Released Parties, Western World, and the Western World Released Parties is

25 hereby permanently stayed, enjoined, barred, and restrained.

26

1  11.7.2  Notwithstanding anything to the contrary in section 11.5 of the Plan that applies
2  to Settling Insurers other than Safeco, and pursuant                    11.7.2      Pursuant   to
3  Paragraph N of the [Proposed] Order Approving Settlement Agreement with Safeco
4  Including Sale of Insurance Policies, Safeco is and Section 1.1.21 of the Safeco
5  Settlement Agreement, Safeco, the Safeco Released Parties, Travelers, the Travelers
6  Released Parties, Western World, and the Western World Released Parties are entitled
7  to and hereby shall receive the benefits and protections of the injunctions in Sections
8  11.5 and 11.7 of this Plan as if Section 11.5 and 11.7 of the Plan applied specifically to
9  Safeco, the Safeco Released Parties, Travelers, the Travelers Released Parties,
10  Western World, and the Western World Released Parties.

11    **11.8    Term of Injunctions or Stays and Confirmation of Settlements With**
12  **Settling Insurers, Released Parties, and Participating Parties**.  All injunctions and/or
13  stays provided for in this Plan, the injunctive provisions of Sections 524 and 1141 of the
14  Bankruptcy Code, and all injunctions or stays protecting a Safeco, the Safeco Released
15  Parties, Travelers, the Travelers Released Parties, Western World, the Western World
16  Released Parties, Settling Insurers, Settling Insurer Released Party, Released Parties,
17  and/or Participating Party Parties, and their respective predecessors, successors, and
18  assigns, including a Safeco, Travelers, Western World, or any other Settling Insurer that
19  has purchased its Insurance Policy or Policies in a Section 363 Sale, are permanent
20  and will remain in full force and effect following the Effective Date and are not subject to
21  being vacated or modified.    Debtor's settlement agreements, if any, with Safeco,
22  Travelers, Western World, the Settling Insurers, the Released Parties, and the
23  Participating Parties previously authorized by the Bankruptcy Court are hereby affirmed
24  and any obligations of Debtor with respect to such settlement agreements shall be
25  assumed by the Reorganized Debtor and Trustee, as applicable, on the Effective Date.
26  None of the injunctions or stays under the Plan provide any protection whatsoever to (i)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1 a Person or Persons having personally committed an act or acts of Abuse resulting in a

2 Claim against the Debtor or a Participating Party, (ii) the Society of Jesus; (iii) the

3 Father General of the Society of Jesus and his predecessors or (iv) the Society of Jesus

4 General Curia; (v) a successor or predecessor of the Debtor to the extent of such

5 successor's or predecessor's independent liability for an act or acts of Abuse; (vi)

6 Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High Schools.

7 **11.9 Release of Avoidance Claims Against Participating Parties and**

8 **Settling Insurers.**  On the Effective Date, all Avoidance Claims, including those arising

9 under Sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code, against each

10 of the Participating Parties and the Settling Insurers, and the Debtor and Reorganized

11 Debtor as trustee of the Arcas (and any other Person or Entity that may be determined

12 to be a trustee of the Arcas), and each of their predecessors, successors, and assigns,

13 shall be deemed settled, compromised, and released by this Plan.  The foregoing

14 release has absolutely no application to the Avoidance Actions set forth on Exhibit

15 ~~11.10~~11.9.

16 **12.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

17 **12.1 Assumed Employee and Retiree Benefit Plans and Collective**

18 **Bargaining Agreements**.  To the extent not previously assumed, all employee and

19 retiree benefit plans and all collective bargaining agreements to which the Debtor is a

20 party will be deemed assumed by the Reorganized Debtor on the Effective Date.

21 **12.2 General; Assumed if Not Rejected**.  Subject to the requirements of

22 Section 365, all executory contracts and unexpired leases of the Debtor that have not

23 been rejected by order of the Bankruptcy Court or are not the subject of a motion to

24 reject pending on the Confirmation Date will be deemed assumed by the Reorganized

25 Debtor on the Effective Date. If any party to an executory contract or unexpired lease

26 that is being assumed objects to such assumption, the Bankruptcy Court may conduct a

**Page 83 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

1  hearing on such objection on any date that is either mutually agreeable to the parties or

2  fixed by the Bankruptcy Court.  All payments to cure defaults that may be required

3  under Section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized

4  Debtor.  In the event of a dispute regarding the amount of any such payments, or the

5  ability of the Debtor to provide adequate assurance of future performance, the

6  Reorganized Debtor will make any payments required by Section 365(b)(1) of the

7  Bankruptcy Code after the entry of the Final Order resolving such dispute.

8      **12.3   Claims for Contract Rejection**.  All proofs of claim with respect to Claims

9  arising from the rejection of executory contracts or unexpired leases must be filed with

10  the Bankruptcy Court within 30 days after the Effective Date or such Claims will be

11  forever barred. If any order providing for the rejection of an executory contract or

12  unexpired lease did not provide a deadline for the filing of Claims arising from such

13  rejection, proofs of Claim with respect thereto must be filed within 30 days after the later

14  to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date,

15  the date such order becomes a Final Order, or such Claims will be forever barred.

16  **13.   NON-MONETARY COMMITMENTS.**

17      In order to further promote healing and reconciliation, and in order to continue the

18  Plan proponents efforts to prevent sexual abuse from occurring in the Province in the

19  future, the Debtor and Reorganized Debtor agree that beginning thirty (30) days after

20  the Effective Date (unless a different date is provided below):

21      **13.1**   For a period of not less than ten (10) years after the Effective Date, the

22  Reorganized Debtor will post on the homepage of the Province's website,

23  www.nwjesuits.org, a prominent link to the names of all members of  the Province, who

24  are identified as perpetrators of Sexual Abuse in proofs of claim filed in the Case.

25  Notwithstanding the foregoing, the Province shall maintain the posting for any longer

26  period of time if recommended by the U.S. Conference of Catholic Bishops.  Provided,

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1  that the posting will not include the names of any of the five (5) Province members who

2  deny that they are perpetrators of Sexual Abuse unless the Province concludes that the

3  accusations are credible.  Upon the Province determining that any of the five (5) the

4  Province members are credibly accused, such member's name will be added to the

5  posting.

6      **13.2**  The Confirmation Order shall vacate any order(s) entered in the Case

7  restricting the publication of the names of any members of the Province who are

8  identified as perpetrators of Sexual Abuse in proofs of claim filed in the Case.

9      **13.3**  The Province will make available for two (2) years after the Effective Date

10  one printable page per quarter on the Province's website, www.nwjesuits.org, for Abuse

11  Claimants to tell their stories of Abuse, if they desire to publish their stories.

12      **13.4**  The  Provincial will send letters of apology to all Abuse Claimants at the

13  address listed on their proof of claim.  Letters of apology will state that the Abuse

14  Claimant was not at fault for the Abuse, and that the Province and the Reorganized

15  Debtor takes responsibility for its part in the Abuse.  The Provincial will personally sign

16  the letters of apology.  Nothing in the letter shall be deemed a reaffirmation of the Abuse

17  Claim or a waiver of any of the Reorganized Debtor's rights under the Plan.

18      **13.5**  For a period of five (5) years after the Effective Date, the Provincial will be

19  available upon reasonable notice in Portland Oregon, during scheduled visits to

20  Anchorage, Seattle, and Spokane, and at additional locations where he is having

21  manifestations with the Province members to have a private conference with any person

22  who has alleged to have an Abuse Claim.

23      **13.6**  Reorganized Debtor and the Province will institute a policy requiring that

24  its employees, representatives, agents and spokespersons, not refer either verbally or

25  in print to sexual abuse claimants as "alleged" claimants, "alleged" victims or "alleged"

26  survivors.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     **13.7**  The Province and the Reorganized Debtor will include a link on the

2     Province's website, www.nwjesuits.org,  for five (5) years after the Effective Date to a

3     prominent statement urging persons sexually abused by priests or religious to come

4     forward and contact law enforcement, and the Province's Victim's Assistance

5     Coordinator, and/or any survivor group or organization felt appropriate by the person

6     wishing to make a report of abuse.

7     **13.8**  On the Effective Date, the Reorganized Debtor and the Province shall

8     adopt and implement a written  policy for members of the Province and all employees of

9     the Reorganized Debtor requiring all members and employees to report to state and

10     local police and law enforcement authorities any knowledge of child Sexual Abuse

11     (provided that reporting of knowledge of Abuse obtained within the Sacrament of

12     Confession is not mandatory).

13     **13.9**  Irrespective of an apology, the Provincial shall issue a statement of

14     gratitude for the survivors of Sexual Abuse who have had the courage to speak about

15     the Sexual Abuse they endured and continue to live with every day. This statement shall

16     be posted on www.nwjesuits.org and published prominently as a retail ad of no less

17     than a quarter page in the Oregonian, the Seattle Times, the Missoulian, the Idaho

18     Statesman, the Spokesman Review, the Anchorage Daily News, Indian Country Today,

19     Indian Times, the Fairbanks Daily News-Miner, Omak Chronicle, Fort Belknap News,

20     Billings Gazette, The Charkoosta, Lake County Leader, Valley Journal, Blaine County

21     Journal, The Mountaineer, Havre Daily News, and Great Falls Tribune.   In the

22     statement, the Provincial shall encourage victims to report abuse to law enforcement

23     and seek help from professional counselors. This statement shall include contact

24     information for support groups such as SNAP, SOAR Inc., and/or similar organizations.

25     **13.10**  The Reorganized Debtor will publicly announce and post on the

26     Province's website, www.nwjesuits.org, the full and complete release of all survivors of

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Sexual Abuse from any confidentiality requirement in settlements that they have signed

as a condition of settlement. No survivor's identity may be released or revealed without

his or her permission. The Reorganized Debtor and the Province shall contact by first

class mail each survivor of Sexual Abuse who has previously entered into such a

confidentiality agreement. The letter shall be addressed to the survivor at the address

listed in such agreement or to the person's attorney, if any, to notify them of the full and

complete release. Any future settlement related to Sexual Abuse entered into by the

Reorganized Debtor and/or the Province shall not contain any confidentiality provision

except at the written request of the survivor claimant.

**13.11** The Reorganized Debtor and the Province shall adopt a whistle blower

policy concerning the method by which a report concerning abuse within the Province

can be made and expressly providing that the Reorganized Debtor and the Province will

not take any retaliatory actions against persons who report such information in good

faith.

*//*

**13.12** The Provincial shall request that the Attorneys General of the five states

incorporated in the Province to form a Joint Task Force on Child Protection to annually

investigate and monitor all institutions under the auspices of the Reorganized Debtor

and the Province.

**13.13** The Reorganized Debtor and the Province will never seek to, direct, pay

or hire any agent or employee or third party, to retract, oppose or challenge the

constitutionality or legitimacy of any reform of a statute of limitations affecting sexual

abuse in the five states in the Province or similar legislation or law in any other state or

jurisdiction.

**13.14** The Reorganized Debtor and the Province shall continue to provide a toll-

free phone number and website for anonymous abuse complaints and include that

**Page 87 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated ~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

1 information on the main page of the Province's website. – www.nwjesuits.org. If a

2 report of abuse is made formally to anyone in the Province or through the

3 aforementioned avenues, the Reorganized Debtor and the Province will encourage the

4 alleged victim to report the information to law enforcement and the Reorganized Debtor

5 and the Province will report the information to law enforcement as well. If a perpetrator

6 is found to be guilty either by the state or federal court system or by the Province, the

7 Provincial will publicly identify the perpetrator and will encourage any other possible

8 survivors to report the abuse to local law enforcement.

9 **13.15** In connection with the production of Documents set forth herein, the

10 Province Entities shall waive any and all privileges and defenses, if any, associated with

11 any statutory or Constitutional protections the Province Entities might otherwise seek to

12 assert, including any privileges and defenses associated with or in any way based upon

13 Canon Law, except for the following enumerated privileges under Oregon law:

14     1. Attorney-Client;

15     2. Priest-Penitent;

16     3. Psychologist/Psychoanalyst-Client;

17     4. Licensed Counselor/Social Worker-Client;

18     5. Physician-Patient; and,

19     6. Attorney Work Product.

20 **13.16** Any Person may publish the Documents.

21 **13.17** In connection with the production of Documents, and other than with

22 respect to video depositions, no victim's identity may be released or revealed without

23 his or her express permission. Judge Gregg Zive[1] will rule on any disputes regarding

24 _____

25 [1] Or, as applicable, a successor agreed upon by the Reorganized Debtor and the
Trustee. If the Reorganized Debtor and Trustee cannot agree on a successor, a

26 successor designated by the Bankruptcy Court upon joint application of the
Reorganized Debtor and the Trustee.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 the production of Documents.  Decisions by Judge Zive (or, as applicable, his
2 successor) shall  be final and non-reviewable by any court or other tribunal or authority.

3     **13.18** No Province Entity will retain or pay for counsel for any third party to
4 contest the production of any Document.

5     **13.19** Upon a showing of good cause and after the Reorganized Debtor's
6 opportunity to respond thereto, the Reorganized Debtor shall allow Judge Zive (or his
7 successor) to have complete access to inspect Reorganized Debtor and the Province
8 files and archives to ensure that all Documents have been produced, subject to any
9 generally applicable rules regarding access to the Province archives.  The purpose of
10 this inspection right is to verify that all Documents have been produced, which
11 verification shall be final and non-reviewable by any court or other tribunal or authority.

12     **13.20** The Reorganized Debtor shall provide the Trustee with a compliance
13 report semi-annually for the first year and then annually. The Trustee shall be a party in
14 interest regarding the compliance report and the enforcement of the covenants in
15 Sections 13.1 through 13.22.

16     **13.21** The Reorganized Debtor and the Province shall not oppose, expressly or
17 implicitly, any proposed or enacted statutes or laws or judicial precedent that require
18 mandatory reporting of child abuse, abandonment or neglect.

19     **13.22** The Reorganized Debtor and the Province Entities, having exercised their
20 best efforts to produce, upon request, to an Abuse Claimant or the designee, any and
21 all of the Abuse Claimant's personal records, including but not limited to school records,
22 health records and communion records within 30 days of request, represent to the
23 Committee that they have no such documents or records in their possession, custody,
24 or control.

25 **14.**    **MISCELLANEOUS PROVISIONS.**

26     **14.1**   **Retention of Jurisdiction**.  Notwithstanding entry of the Confirmation

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 □ FACSIMILE (503) 248-0130

1 Order or the occurrence of the Effective Date:

2        14.1.1 Except as otherwise set forth in this Plan or in the Confirmation

3 Order, the Bankruptcy Court will retain jurisdiction over all matters arising under, in

4 furtherance of, or in connection with this Plan, including the following:

5        (a)    The determination of objections to Disputed Claims; the

6 determination of requests for payment of Claims entitled to priority under Section 507 of

7 the Bankruptcy Code, including compensation of and reimbursement of expenses of

8 parties entitled thereto;

9        (b)    The resolution of controversies and disputes regarding

10 interpretation and implementation of this Plan and the Plan Documents;

11        (c)    The granting of relief in aid of this Plan and the Plan

12 Documents including the entry of appropriate orders (which may include contempt or

13 other sanctions) to protect the Reorganized Debtor, the Participating Parties, the

14 Settling Insurers, and  the Released Parties from actions prohibited under this Plan or

15 the Plan Documents;

16        (d)    Amendments to and modifications of this Plan;

17        (e)    Subject to the limitations and exclusions described above,

18 the determination of any and all applications, adversary proceedings, and contested or

19 litigated matters pending on the Effective Date; and

20        (f)    The closing of this Case.

21    **14.2  Modification of Plan**.  The Proponents reserve the right, in accordance

22 with the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of

23 the Confirmation Order. After the entry of the Confirmation Order, the Proponents may,

24 upon order, amend or modify this Plan in accordance with Section 1127(b) of the

25 Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  this Plan in such manner as may be necessary to carry out the purpose and intent of
2  this Plan.

3      **14.3  Severability**.  In the event of a successful collateral attack on any
4  provision of this Plan (i.e., an attack other than through a direct appeal of the
5  Confirmation Order), the remaining provisions of this Plan will remain binding on the
6  Debtor, the Reorganized Debtor, the Participating Parties, the Settling Insurers, the
7  Trustee, the Committee, the FCR, all Claimants, all Creditors, and all other parties in
8  interest.

9      **14.4.  Post-Confirmation Professional Fees and Expenses**.  Except as
10  otherwise provided in the Plan, all professional fees and expenses incurred or payable
11  by the Reorganized Debtor, the Trustee, and the FCR after the Effective Date will be
12  paid in the ordinary course of business of the Reorganized Debtor and the Trust without
13  the need for approval of the Bankruptcy Court. The Bankruptcy Court will retain
14  jurisdiction to resolve any dispute with respect to such fees or expenses upon
15  application by the affected professional, the Trustee, the Committee, the FCR, or the
16  Reorganized Debtor.

17      **14.5  Headings**.  The headings of the sections ~~and Sections~~ of this Plan are
18  inserted for convenience only and will not affect the interpretation hereof.

19      **14.6  Computation of Time Periods**.  In computing any period of time
20  prescribed or allowed by this Plan, the day of the act, event, or default from which a
21  designated period of time begins to run will not be included. The last day of the period
22  so computed will be included so long as it is a Business Day. When the period of time
23  prescribed or allowed is less than 11 days, any day that is not a Business Day will be
24  excluded in the computation.

25      **14.7  Notices**.  All notices or requests to the Reorganized Debtor in connection
26  with this Plan shall be in writing and served either by (i) United States mail, postage

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 l FACSIMILE (503) 248-0130

| | |
|---|---|
| 1 | prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges |
| 2 | prepaid, and shall be deemed given when received by the following parties: |
| 3 | <u>If to the Debtor or Reorganized Debtor:</u> |
| 4 | Society of Jesus, Oregon Province |
| 5 | 3215 SE 45th Avenue<br>Portland, OR 97206 |
| 6 | Attn: Provincial |
| 7 | With a copy to: |
| 8 | Sussman Shank LLP<br>1000 SW Broadway, Suite 1400 |
| 9 | Portland, OR 97205<br>Attention: Thomas W. Stilley and Howard M. Levine |
| 10 | <u>If to the Trustee:</u> |
| 11 | Pachulski Stang Ziehl & Jones LLP |
| 12 | 10100 Santa Monica Boulevard, 11th Floor<br>Los Angeles, CA 90067-4100 |
| 13 | Attention: James I. Stang |
| 14 | <u>If to the FCR:</u> |
| 15 | Stephen S. Gray<br>CRG Partners Group, LLC |
| 16 | 2 Atlantic Avenue<br>Boston, MA 02110 |
| 17 | |
| 18 | All notices and requests to a Person or Entity holding any Claim will be sent to |
| 19 | them at ~~their~~the last known address listed for such Person or Entity with the Court or |
| 20 | with the Debtor's Claims Agent, or to the last known address of their attorney of record. |
| 21 | The holder of a Claim may designate in writing any other address, which designation will |
| 22 | be effective upon actual receipt by the Reorganized Debtor and the Trustee. Any |
| 23 | Person or Entity entitled to receive notice under this Plan will have the obligation to |
| 24 | provide the Reorganized Debtor and the Trustee with such Person's or Entity's current |
| 25 | address for notice purposes. The Reorganized Debtor and Trustee will have no |
| 26 | obligation to attempt to locate a more current address in the event any notice proves to |

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1186    Filed 05/27/11

| 1 | be undeliverable to the most recent address which has been provided to the |
| 2 | Reorganized Debtor and the Trustee. |

3    **14.8  Post-Confirmation Court Approval**.  Any action requiring Bankruptcy

4    Court, U.S. District Court, or ~~State Court~~state court approval after the Effective Date will

5    require the Person or Entity seeking such approval to file an application, motion, or

6    other request with the Bankruptcy Court, U.S. District Court, or ~~State Court~~state court,

7    as applicable, and obtain a Final Order approving such action before the requested

8    action may be taken. The Person or Entity filing such application, motion, or other

9    request shall serve such application, motion, or other request, together with a notice

10   setting forth the time in which objections must be filed with the court, on the

11   Reorganized Debtor, the Committee, the FCR, and the Trustee by first-class mail,

12   electronic mail, ECF, overnight courier, facsimile, or hand delivery.  Unless the court

13   orders otherwise, all notices shall provide the recipients at least 21 days in which to file

14   an objection to the application, motion, or other request.  If no objection is timely filed,

15   the court may authorize the proposed action without further notice or a hearing.  If an

16   objection is timely filed, the court will determine whether to conduct a hearing, or to

17   require the submission of further documentation, prior to ruling on the application,

18   motion, or other request.

19   **14.9  Election Pursuant to Section 1129(b) of the Bankruptcy Code**.  The

20   Proponents hereby request confirmation of the Plan pursuant to Section 1129(b) of the

21   Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the

22   Bankruptcy Code, except Section (a)(8) thereof, are met with regard to the Plan.  In

23   determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code

24   have been met, any Class or subclass of a Class that does not contain as an element

25   thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018

26   as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11

1  Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject

2  this Plan and for purposes of determining acceptance or rejection of this Plan by such

3  Class or subclass.

4  **14.10 Consummation of the Plan**.  The Proponents reserve the right to request

5  that the Confirmation Order include (i) a finding by the Court that Bankruptcy Rule

6  3020(e) shall not apply to the Confirmation Order, and (ii) the Court's authorization for

7  the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

8  **14.11 Exemption from Transfer Taxes**.  Pursuant to Section 1146(c) of the

9  Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in

10  furtherance of, or in connection with this Plan, whether occurring prior or subsequent to

11  the Confirmation Date, including any deeds, bills of sale or assignments executed in

12  connection with any disposition of assets contemplated by this Plan, shall not be subject

13  to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar

14  tax.

15  **14.12 Waivers**.  Except as otherwise provided in the Plan or in the Confirmation

16  Order, any term of the Plan may be waived by the party benefited by the term to be

17  waived.

18  **14.13 Setoffs, Recoupments, and Defenses**.  With the exception of the

19  Sections of the Plan concerning the cancellation and waiver of the Abuse Related

20  Contribution/Indemnity Claims, nothing contained in the Plan shall constitute a waiver or

21  release by the Debtor, Reorganized Debtor, Participating Parties, or Trustee of any

22  rights of setoff or recoupment, or of any defense, they may have with respect to any

23  Claim (including rights under Section 502(d) of the Bankruptcy Code).  Except as

24  otherwise provided in the Plan or in the Confirmation Order or in agreements previously

25  approved by a Final Order, the Debtor, Reorganized Debtor, Participating Parties, or

26  Trustee may, but will not be required to, set off against any Claim or any distributions

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

| | |
|---|---|
| 1 | with respect to such Claim, any and all of the Claims, rights and causes of action of any |
| 2 | nature that the Debtor, the Reorganized Debtor, Participating Parties, or Trustee, as |
| 3 | applicable, may hold against the holder of such Claim; provided, however, that neither |
| 4 | the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of |
| 5 | any distribution hereunder or any other action or omission of the Debtor, Reorganized |
| 6 | Debtor, Participating Parties, or Trustee, nor any provision of the Plan, shall constitute a |
| 7 | waiver or release by the Debtor, the Reorganized Debtor, Participating Parties, or |
| 8 | Trustee, as applicable, of any such Claims, rights and causes of action that the Debtor, |
| 9 | the Reorganized Debtor, Participating Parties, or Trustee, as applicable, may possess |
| 10 | against such holder. |
| 11 | **14.14 Compromise of Controversies**. |
| 12 | 14.14.1 Court Approval of Settlements. In consideration for the |
| 13 | classification, distributions and other benefits provided under the Plan, the provisions of |
| 14 | the Plan shall constitute a good faith compromise and settlement of all Claims or |
| 15 | controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall |
| 16 | constitute the Court's approval of each of the compromises and settlements provided for |
| 17 | in the Plan, and the Court's findings shall constitute its determination under the |
| 18 | standards of Bankruptcy Rule 9019 that such compromises and settlements are in the |
| 19 | best interests of the Debtor and the Estate. The Debtor and Participating Parties |
| 20 | expressly reserve the right to compromise and settle other Claims and Debtor and |
| 21 | Participating Party Actions up to and including the Effective Date. |
| 22 | 14.14.2 Settlement of the Property of the Estate Litigation. Specifically |
| 23 | included within the Court's approval of compromises and settlements of Claims and |
| 24 | controversies is the Court's approval of the settlement and compromise reached |
| 25 | between the Debtor and the Committee of that certain adversary proceeding entitled |
| 26 | *Official Committee of Unsecured Creditors v. Society of Jesus, Oregon Province, et al*, |

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    Adversary Proceeding No. 10-30275-elp, filed on September 23, 2010 (the "Estate

2    Property Litigation"). Pursuant to that settlement, on the Effective Date, and without the

3    need for the execution of any further documents the Estate Property Litigation will be

4    dismissed, with prejudice, and without fees or costs to any party.

5            14.14.3   Settlement with Safeco. Specifically included within the Court's

6    approval of compromises and settlements of Claims and controversies is the Court's

7    approval of the Safeco Settlement Agreement.  The Safeco Settlement Agreement is

8    incorporated in this Plan by reference.  If a conflict exists between the Plan and the

9    Safeco Settlement Agreement, the Safeco Settlement Agreement control such conflict.

10   The Safeco Settlement Agreement controls the protections and benefits afforded

11   Safeco and the Safeco Released Parties under the Safeco Settlement Agreement, as

12   well as the rights and obligations of the parties thereto, to the extent of any conflict with

13   the Plan.  The Safeco Settlement Agreement is binding on the Trust.

14           14.14.4  Settlement with Travelers.  Specifically included within the Court's

15   approval of compromises and settlements of Claims and controversies is the Court's

16   approval of the Travelers Settlement Agreement.  The Travelers Settlement Agreement

17   is incorporated in this Plan by reference.  If a conflict exists between the Plan and the

18   Travelers Settlement Agreement, the Travelers Settlement Agreement controls such

19   conflict. The Travelers Settlement Agreement controls the protections and benefits

20   afforded Travelers and the Travelers Released Parties under the Travelers Settlement

21   Agreement, as well as the rights and obligations of the parties thereto, to the extent of

22   any conflict with the Plan.  The Travelers Settlement Agreement is binding on the Trust.

23           14.14.5      Settlement with Western World. Specifically included within

24   the Court's approval of compromises and settlements of Claims and controversies is the

25   Court's approval of the Western World Settlement Agreement.  The Western World

26   Settlement Agreement is incorporated in this Plan by reference.  If a conflict exists

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

between the Plan and the Western World Settlement Agreement, the Western World Settlement Agreement controls such conflict. The Western World Settlement Agreement controls the protections and benefits afforded Western World and the Western World Released Parties under the Western World Settlement Agreement, as well as the rights and obligations of the parties thereto, to the extent of any conflict with the Plan.  The Western World Settlement Agreement is binding on the Trust.

**14.15 Withdrawal or Revocation of the Plan**.  The Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan is revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no force and effect and in such event nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Estate or any other Person or Entity, or to prejudice in any other manner the rights of a Proponent, whether one or more, or any other entity in further proceedings involving a Proponent or Proponents and specifically shall not modify or affect the rights of any party under any prior orders of the Court.

**14.16 Default**.  Except as otherwise provided in the Plan or in the Confirmation Order, in the event the Reorganized Debtor, a Participating Party, a Settling Insurer, or the Trustee shall default in the performance of any of ~~its~~their respective obligations under the Plan or under any of the Plan Documents and shall not have cured such a default within any applicable cure period (or, if no cure period is specified in the Plan or Plan Documents or in any instrument issued to or retained by a Claimant under the Plan, then within 30 days after receipt of written notice of default), then the entity to whom the performance is due may pursue such remedies as are available at law or in equity.  An event of default occurring with respect to one Claim shall not be an event of default with respect to any other Claim.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **14.17 Filing and Payment of Allowed Administrative Claims**.  All requests for

2    the payment of Administrative Claims, including applications for the compensation of the

3    FCR and the Chapter 11 Professionals, must be filed with the Bankruptcy Court no later

4    than 6030 days after the Effective Date or at such time as the Bankruptcy Court may

5    otherwise order. Once a Final Order is entered Allowing a Disputed Administrative

6    Claim, the Reorganized Debtor will pay such Claim in accordance with this Plan.

7    **14.18 Payment of United States Trustee Fees**.  All fees due to the United

8    States Trustee pursuant to 28 USC §1930(a) accruing before or after the Effective Date

9    will be paid by the Reorganized Debtor as and when they become due and will be

10    based on the Reorganized Debtor's total disbursements, including ordinary course of

11    business disbursements, but will not include disbursements made directly to Claimants

12    or to the Trust under this Plan.  Such fee obligations will not terminate until this Case is

13    converted or dismissed, or until this Case is no longer pending upon entry of a Final

14    Order closing this Case, whichever  first occurs.

15    **14.19 Governing Law**.  Except to the extent that federal law (including the

16    Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising

17    under the Plan or under the Plan Documents shall be governed by and construed and

18    enforced in accordance with the laws of the State of Oregon without giving effect to the

19    principles of conflicts of laws.

20    **14.20 Reservation of Rights**.  If the Plan is not confirmed by a Final Order, or if

21    the Plan is confirmed and the Effective Date does not occur, the rights of all parties in

22    interest in the Case are and will be reserved in full.  Any concessions or settlement

23    reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not

24    become effective, no party in interest in the Case shall be bound or deemed prejudiced

25    by any such concession or settlement.

26    **14.21 Controlling Documents**.   To  the  extent  any  provision  of  the  Plan

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

| | |
|---|---|
| 1 | Documents (other than the Safeco Settlement Agreement, *Travelers Settlement* |
| 2 | *Agreement, or Western World Settlement Agreement*) is inconsistent with this Plan, the |
| 3 | provisions of the Plan shall control. To the extent any provision of the Safeco Settlement |
| 4 | Agreement, *Travelers Settlement Agreement, or Western World Settlement Agreement* |
| 5 | is inconsistent with this Plan or the Plan Documents (other than the Safeco Settlement |
| 6 | Agreement, *Travelers Settlement Agreement, or Western World Settlement* |
| 7 | *Agreement*), the Safeco Settlement Agreement, *Travelers Settlement Agreement, and* |
| 8 | *Western World Settlement Agreement, as applicable,* shall control. |
| 9 | **14.22 Successors and Assigns**. The Plan shall be binding upon and inure to |
| 10 | the benefit of the Debtor, the Reorganized Debtor, all Claimants and all other parties in |
| 11 | interest affected thereby and their respective successors, heirs, legal representatives |
| 12 | and assigns. |
| 13 | **14.23 Rounding of Fractional Numbers.** All fractional numbers, including |
| 14 | payments or distributions under the Plan and Trust Documents shall be rounded (up or |
| 15 | down) to the nearest whole number. |
| 16 | **14.24 Dissolution of the Committee.** Upon the Effective Date, the Committee |
| 17 | will be dissolved. |
| 18 | **14.25 Exhibits**. All Exhibits to this Plan, *including Plan Supplements,* are |
| 19 | incorporated into and are a part of this Plan as if set forth in full herein. |
| 20 | DATED: ~~April 4,~~May 27, 2011 |
| 21 | |
| 22 | **{SIGNATURES TO FOLLOW}** |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

SOCIETY OF JESUS, OREGON
PROVINCE, an Oregon domestic non-
profit religious corporation,

~~SUSSMAN SHANK LLP~~FUTURE
CLAIMANTS REPRESENTATIVE

/s/ *Michael A. Tyrrell, SJ for*
*Patrick J. Lee, S.J.*

~~/s/ Thomas W. Stilley~~

By:_____

By:_____
   Patrick J. Lee, S.J.
   President

~~Thomas W. Stilley, OSB No. 883167~~
~~Howard M. Levine, OSB No. 800730~~
~~Attorneys for Society of Jesus,~~
{TO BE PROVIDED}

_____
~~Oregon Province~~Stephen S. Gray

PACHULSKI STANG ZIEHL & JONES
LLP

SUSSMAN SHANK LLP

/s/ *James I. Stang*

/s/ *Thomas W. Stilley*

By:_____

By:_____
   Thomas W. Stilley, OSB No. 883167
   Howard M. Levine, OSB No. 800730
   Attorneys for Society of Jesus,
   Oregon Province

_
   James I. Stang, Admitted Pro Hac Vice
   Pamela Egan Singer, OSB No. 894231
   Attorneys for the Official Committee of
   Unsecured Creditors

**F:\CLIENTS\19620\004\PLAN & DISCLOSURE STATEMENT\P-~~FIRST MODIFIED~~ PLAN (FINAL ~~040411~~).DOC**

**Page 100 of ~~100~~100** – FIRST MODIFIED JOINT PLAN OF REORGANIZATION (Dated
~~April 4,~~May 27, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1186   Filed 05/27/11