Document comparison done by Workshare DeltaView on Friday, May 27, 2011 3:24:30 PM

| Input: | |
|---|---|
| Document 1 | file://F:/Clients/19620/004/Plan & Disclosure Statement/P-Disclosure Statement (Final 040711).DOC |
| Document 2 | file://F:/Clients/19620/004/Plan & Disclosure Statement/P-Disclosure Statement First Modified (Final 2).DOC |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 294 |
| Deletions | 227 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 525 |

1   Thomas W. Stilley, OSB No. 883167
    Howard M. Levine, OSB No. 800730
2   SUSSMAN SHANK LLP
    1000 SW Broadway, Suite 1400
3   Portland, OR 97205-3089
    Telephone: (503) 227-1111
4   Facsimile: (503) 248-0130
    E-Mail: tstilley@sussmanshank.com
5           hlevine@sussmanshank.com
    Attorneys for Debtor and Debtor-In-
6   Possession

Stephen S. Gray
CRG PARTNERS GROUP, LLC
2 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 482-4242
Facsimile: (617) 482-9804
E-Mail: Stephen.Gray@crgpartners.com
~~Attorneys for~~ Future Claimants
Representative

7   James I. Stang, CA Bar No. 94435
    Pamela E. Singer, CA Bar No. 224758
8   ~~Pachulski Stang Ziehl~~
    PACHULSKI STANG ZIEHL
9   & ~~Jones~~JONES LLP
    10100 Santa Monica Blvd., 11th Floor
10   Los Angeles, California 90067-4100
    Telephone: (310/) 277-6910
11   Facsimile: (310/) 201-0760
    E-mail: jstang@pszjlaw.com
12           psinger@pszjlaw.com
    Attorneys for Official Committee of
13   Unsecured Creditors

Richard K. Hansen, OSB No. 832231
Thomas V. Dulcich, OSB No. 802105
SCHWABE WILLIAMSON & WYATT PC
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204
Telephone: (503-) 796-2958
Facsimile: (503-) 796-2900
E-mail: rhansen@schwabe.com
        tdulcich@schwabe.com
Special Claims Counsel for Debtor and
Debtor-In-Possession

14   Paul A. Richler, CA Bar No. 59909
    MORGAN LEWIS & BOCKIUS LLP
15   300 South Grand Ave., 22nd Floor
    Los Angeles, CA 90071-3132
16   Telephone: (213-) 612-1104
    Facsimile: (213-) 612-2501
17   E-mail: prichler@morganlewis.com
    Special Insurance Counsel for Official
18   Committee of Unsecured Creditors

James R. Murray, WA Bar No. 25263
Scott N. Godes, DC Bar No. 463674
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
Telephone: (202-) 420-3409
Facsimile: (202-) 420-2201
E-mail: MurrayJ@DicksteinShapiro.com
       GodesS@DicksteinShapiro.com

19

20 Special Insurance Counsel for Debtor and
Debtor-In-Possession

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

21

22

23

24

25

26

1    In re:                                          )
                                                     )   Case No. 09-30938-elp11
2    SOCIETY OF JESUS, OREGON                        )
     PROVINCE, an Oregon domestic nonprofit          )   DISCLOSURE STATEMENT
3    religious corporation,                          )   REGARDING FIRST MODIFIED
                                                     )   JOINT PLAN OF REORGANIZATION
4                              Debtor.               )   DATED
                                                     )   APRIL 4, MAY 27, 2011
5                                                    )
                                                     )
6    _____)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

I. INTRODUCTION AND STATEMENTS REGARDING REPRESENTATIONS ........... 1

   A. Introduction ................................................................................................. 1

   B. Definitions and Plan Supremacy ............................................................... 1

   C. Summary of Key Features of the Plan ...................................................... 2

   D. Limited Representations ...................................................................... ~~9~~10

   E. Voting ............................................................................................... ~~11~~12

   F. Plan Summary .................................................................................. ~~13~~14

II. FUNDING SOURCES FOR THE PLAN ................................................ ~~16~~17

III. THE SOCIETY OF JESUS, OREGON PROVINCE ............................... ~~19~~20

   A. The History of the Province ................................................................ ~~19~~20

   B. The Debtor's and Participating Parties' Assets And Liabilities ...................... ~~21~~23

      1. Assets ........................................................................................ ~~21~~23

         (a) Unrestricted Property ................................................................ ~~22~~24

         (b) Property Held Within Trusts ....................................................... ~~22~~24

         (c) Third Party Property ................................................................. ~~22~~24

      2. Liabilities ................................................................................... ~~22~~24

         (a) Administrative Claims ............................................................... ~~22~~24

         (b) Priority Claims ....................................................................... ~~22~~24

         (c) General Unsecured Claims ....................................................... ~~22~~24

         (d) Current Abuse Claims .............................................................. ~~22~~25

         (e) Future Abuse Claims ............................................................... ~~23~~26

         (f) Insured Non-Abuse Claims ....................................................... ~~23~~26

         (g) Student Loan Claims ................................................................ ~~24~~26

         (h) Charitable Gift Annuity Claims .................................................. ~~24~~26

         (i) Retiree Benefit Claims .............................................................. ~~24~~26

| | | |
|---|---|---|
| | (j) Donor and Beneficiary Claims | ~~24~~26 |
| | (k) Abuse Related Contribution/Indemnity Claims | ~~24~~27 |
| IV. DESCRIPTION OF THE PLAN | | ~~26~~29 |
| A. | Classification And Treatment Of Claims Under The Plan | ~~26~~29 |
| | 1. Claim Amounts | ~~26~~29 |
| | 2. Effective Date of the Plan | ~~26~~29 |
| | 3. Classification Generally | ~~27~~29 |
| | 4. Treatment of Claims | ~~27~~30 |
| B. | Executory Contracts and Unexpired Leases to be Assumed if not Rejected | ~~27~~30 |
| C. | Objections to Claims | ~~28~~30 |
| D. | Administrative Claims Bar Date | ~~28~~31 |
| E. | Discharge | ~~29~~31 |
| F. | Vesting of Property | ~~30~~33 |
| G. | Exculpation and Limitation of Liability and Injunctions. | ~~30~~33 |
| H. | Reservation of Rights | ~~35~~40 |
| V. POST-CONFIRMATION MANAGEMENT OF REORGANIZED DEBTOR | | ~~36~~41 |
| VI. FEDERAL TAX CONSEQUENCES | | ~~36~~41 |
| VII. ACCEPTANCE AND CONFIRMATION | | ~~38~~43 |
| A. | Voting Procedures | ~~38~~43 |
| | 1. Generally | ~~38~~43 |
| | 2. Current Abuse Claimant and FCR Elections | ~~38~~43 |
| | 3. Incomplete Ballots | ~~39~~44 |
| | 4. Withdrawal Of Ballots; Revocation | ~~40~~45 |
| | 5. Submission Of Ballots | ~~40~~45 |
| | 6. Confirmation Hearing and Plan Objection Deadline | ~~41~~46 |
| | 7. Feasibility | ~~42~~47 |

B.   Best Interests Of Creditors ............................................................. 4247

C.   Confirmation Over Dissenting Class ............................................. 4348

    1.   No Unfair Discrimination ........................................................ 4348

    2.   Fair and Equitable Test ......................................................... 4449

        (a) Secured Creditors............................................................. 4449

        (b) Unsecured Creditors......................................................... 4449

VIII.  ALTERNATIVES TO THE PLAN......................................................... 4449

IX.  CONCLUSION. .................................................................................. 4550

**THIS DISCLOSURE STATEMENT HAS <u>NOT</u> YET BEEN APPROVED BY THE  COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  IF YOU HAVE REQUESTED AND RECEIVED A COPY OF THIS DISCLOSURE STATEMENT IN CONNECTION WITH THE COURT'S HEARING TO CONSIDER APPROVAL OF THE DISCLOSURE STATEMENT, NOTHING CONTAINED HEREIN IS OR SHALL BE DEEMED A SOLICITATION OF ACCEPTANCE OF THE PLAN OF REORGANIZATION.**

1    Society of Jesus, Oregon Province, an Oregon non-profit corporation (the

2    "Debtor")[1], the Official Committee of Unsecured Creditors appointed in this Case (the

3    "Committee"), and the Future Claimants Representative appointed in this Case (the

4    "Future Claimants Representative" or "FCR") (collectively the "Proponents") have

5    prepared this Disclosure Statement in connection with the solicitation of acceptances of

6    the Debtor's, Committee's, and FCR's First Modified Joint Plan of Reorganization Dated

7    April 4,May 27, 2011 (the "Plan").  A copy of the Plan accompanies this Disclosure

8    Statement.

9    **I.**      **INTRODUCTION AND STATEMENTS REGARDING REPRESENTATIONS.**

10       **A.**      **Introduction.**

11       On February 17, 2009 (the "Petition Date"), the Debtor commenced this Chapter

12   11 reorganization case ("Case") by filing a voluntary petition under Chapter 11 of the

13   United States Bankruptcy Code ("Bankruptcy Code").   Since the Petition Date, the

14   Debtor has remained a debtor-in-possession pursuant to Sections 1107 and 1108 of the

15   Bankruptcy Code.

16       **B.**      **Definitions and Plan Supremacy.**

17       All terms defined in the Plan, the Safeco Settlement Agreement, the Travelers

18   Settlement Agreement, and the SafecoWestern World Settlement Agreement will have

19   the same meanings when used in this Disclosure Statement.   Terms defined in this

20   Disclosure Statement which are also defined in the Plan and Safeco, the Safeco

21   Settlement Agreement, the Travelers Settlement Agreement, and the Western World

22   Settlement Agreement are solely for convenience and the Proponents do not intend to

23

24   [1] The definition of  "Debtor" under the Plan provides that the Debtor includes (a) each
     Jesuit Community, and (b) the Province, to the extent a Jesuit Community and/or the
25   Province is/are not an entity/entities recognized under civil law that is/are separate from
     the Debtor. To the extent the Province or a Jesuit Community is recognized as a
26   separate entity under civil law, it is not considered part of the Debtor and is included as
     a Participating Party under the Plan.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    change the definitions of those terms from the Plan or the Safeco, the Safeco
 2    Settlement Agreement, the Travelers Settlement Agreement, or the Western World
 3    Settlement Agreement.  Furthermore, in the event of any inconsistency between the
 4    Plan, the Safeco Settlement Agreement, the Travelers Settlement Agreement, and The
 5    Western World Settlement Agreement, and this Disclosure Statement, the Safeco
 6    Settlement Agreement, Travelers Settlement Agreement, and Western World
 7    Settlement Agreement will control over the Plan and the Disclosure Statement, and the
 8    Plan will control over the Disclosure Statement.  The Exhibits attached to this Disclosure
 9    Statement are incorporated into and are a part of this Disclosure Statement.
10    #
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     **C.**    **Summary of Key Features of the Plan.**

2     The following is a brief summary of the key features of the Plan:

3     •   As of June 30, 2010, approximately six hundred forty (640) unresolved

4 Abuse Claims had been filed against the Debtor. Those Claims remain Unresolved and

5 will be Allowed or Disallowed pursuant to the Claims resolution procedures set forth in

6 the Plan. After elimination of duplicate and amended Abuse Claims, the Debtor and the

7 Committee estimate that approximately five hundred thirty five (535) unresolved Current

8 Sexual Abuse Claims (including the claim of the Future Claims Representative

9 appointed in the Chapter 11 case of the Catholic Bishop of Northern Alaska) and one

10 (1) Future Abuse Claim (filed by the FCR) had been filed against the Debtor.

11     •   The Debtor expects an unknown number of Future Abuse Claims will be

12 filed after confirmation of the Plan and before the Future Abuse Claims Bar Date which

13 is fifteen (15) years after the Effective Date of the Plan. The FCR estimates that this

14 number could be approximately sixty four (64) Claims.

15     •   The Plan includes certain non-monetary agreements by the Reorganized

16 Debtor and certain other parties that the Committee believes will reduce the risk of the

17 future sexual abuse of minors.

18     •   The Plan provides for the Reorganized Debtor and Participating Parties to

19 provide: (1) Forty Eight Million One Hundred Thousand Dollars ($48,100,000.00) in

20 Cash, less the amounts necessary to pay the unpaid Allowed Claims of all Chapter 11

21 Professionals (estimated at approximately $5,000,000), to the Trust to pay Current

22 Abuse Claims plus any Allowed Future Abuse Claims that are filed after confirmation of

23 the Plan and prior to the Future Abuse Claims Bar Date. This amount will be paid from

24 real and personal property: (1) owned by the Debtor and Participating Parties without

25 restrictions, and (2) held in trust by the Debtor under the names: (a) Oregon Province

26 Formation Fund Charitable Trust, (b) Oregon Province Aged & Infirm Fund Charitable

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 Trust, (c) Oregon Province Apostolic Works Fund Charitable Trust, and (d) Oregon
2 Province Foundations Fund Charitable Trust. The estimated value of all such property is
3 as follows:

4     o  Debtor's and Participating Parties' Unrestricted Assets – including
5 cash, real property and investments - approximately $4,518,000;

6     o  The Formation Fund Assets - including cash, real property, and
7 investments valued at approximately $28,701,000 which the Debtor asserts is held in
8 trust and is restricted in its use to the education, training, and spiritual growth of persons
9 studying to become Jesuits;

10     o  The Aged and Infirm Fund Assets – including cash and investments
11 valued at approximately $49,186,000 which the Debtor asserts is held in trust and is
12 restricted in its use to the care and welfare of aged, sick, and infirm Jesuits;

13     o  The Apostolic Works Fund Assets – including real property and
14 other assets valued at approximately $18,556,000 which the Debtor asserts is held in
15 trust and is restricted in its use to promote certain works, such as retreat houses,
16 especially for non-Jesuits, centers for the social apostolate or for the spread of Catholic
17 teaching through the media; for charitable works both in and outside the Society of
18 Jesus; and for other like apostolate that would otherwise lack sufficient resources;

19     o  The Foundations Fund Assets – currently the Foundations Fund
20 contains no assets.

21     •  The Plan further provides for the Debtor's ~~primary~~ Insurers ~~for most of the~~
22 ~~relevant time frame~~, Safeco Insurance Company of America, American States
23 Insurance Company, and General Insurance Company  (collectively "Safeco") to pay
24 the sum of One Hundred Eighteen Million Dollars ($118,000,000.00); Fidelity and
25 Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc.,
26 American Equity Insurance Company, Travelers Indemnity Company of Illinois,

1  Travelers Companies, Inc., and Travelers Indemnity Company of Connecticut
2  (collectively "Travelers") to pay the sum of One Million Four Hundred Thousand Dollars
3  ($1,400,000); and Western World Insurance Company ("Western World") to pay the
4  sum of Three Hundred Thousand Dollars $(300,000); all to the Trust for monetary
5  awards to Current Abuse Claimants and Future Abuse Claimants. In exchange for such
6  ~~payment~~payments, Safeco, Travelers, and Western World will receive the benefit of
7  injunctions in Section 11 of the Plan and more fully described in Section V. of this
8  Disclosure Statement.

9      • The Plan is intended to preserve the Debtor's rights under insurance
10 policies issued by Non-Settling Insurers. Insurance Recoveries will be paid to the Trust.

11     • The Plan provides a mechanism by which Abuse Claimants can seek
12 judgments for Abuse Claims against the Reorganized Debtor for the purpose of
13 subsequently pursuing Insurance Recoveries with respect to such judgments from Non-
14 Settling Insurers, with any recoveries limited solely to available insurance, and not from
15 the Reorganized Debtor or any of its assets.

16     • The Reorganized Debtor will also assign to the Trust the Avoidance
17 Rights (e.g., preferential and fraudulent transfer claims) and Third Party Derivative
18 Claims (e.g., claims against any Person or Entity for disregard of the corporate form,
19 piercing the corporate veil, or alter ego, that would subject such Person or Entity to
20 liability for the Abuse Claims against the Debtor).

21     • The Trust assets will be used solely to pay: (a) unpaid Allowed Chapter 11
22 Professionals' administrative fees and expenses, (b) the fees and expenses of
23 administering the Trust (including determining the Allowed amount of each of the Abuse
24 Claims, professional fees, and taxes), (c) fees and expenses related to liquidation of
25 certain Abuse Claims covered by Non-Settling Insurers and pursuit of Insurance
26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  Recoveries, and (d) the liquidated Abuse Claims.  No other Claims against the Debtor
2  will be paid from the Trust assets.

3      • The Reorganized Debtor will pay all Priority Claims in full. The estimated
4  amount of Priority Claims is $400.

5      • The Reorganized Debtor will assume the Debtor's obligations for all
6  Retiree Benefit Claims and will pay those Claims as they come due.  The estimated
7  amount of the unfunded obligation for such Claims is approximately $13,700,000;

8      • The Reorganized Debtor will provide $500,000 for the payment of General
9  Unsecured Claims which are estimated to total approximately $987,000, ~~resulting in a~~
10 ~~dividend of approximately 50%~~plus any Allowed Claims filed on account of transfers
11 avoided by the Trust.  The dividend to be paid to General Unsecured Creditors~~.~~ is not
12 known at this time.

13     • The Trust will assume the Debtor's liability for the liquidation and payment
14 of all Abuse Claims.  Until the Abuse Claims are liquidated under the Plan, no individual
15 Abuse Claimant will know how much she or he will receive on account of the Abuse
16 Claim.  The Committee expects that monetary awards to Abuse Claimants using one of
17 the Allocation Plans will be distributed within thirty (30) days after the Effective Date of
18 the Plan.  The Committee expects that monetary awards to Abuse Claimants using
19 litigation to liquidate their Abuse Claims will be distributed several years after the
20 Effective Date of the Plan.

21     • Sexual Abuse Claimants may elect to liquidate their Sexual Abuse Claims
22 through Allocation Plan I or II, litigate their Claims, or may be treated as a Convenience
23 Abuse Claim.  Allocation Plan I is attached to the Plan as Exhibit 1.9 and Allocation Plan
24 II is attached to the Plan as Exhibit 1.10.  The Ballots provided with the Plan and
25 Disclosure Statement will indicate which elections Sexual Abuse Claimants' counsel
26 recommend and the Claimants' will make their elections on the Ballots.  Sexual Abuse

**Page 6 of ~~54~~54** – DISCLOSURE STATEMENT ~~CONCERNING~~REGARDING FIRST
MODIFIED JOINT PLAN OF REORGANIZATION DATED ~~APRIL 4,~~MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

1  Claimants are presumed to elect to liquidate their Claims through one of the Allocation

2  Plans unless they expressly elect to litigate their Sexual Abuse Claims. Allocation Plans

3  I and II have been prepared by the Committee and counsel for Claimants holding

4  Sexual Abuse Claims.

5       • Abuse Claimants represented by counsel who liquidate their Claims by an

6  Allocation Plan will be assigned to Creditor Pools and Allocation Plans based on prior

7  designations by their counsel of record.  Abuse Claimants who are not represented by

8  counsel of record will be assigned to a Creditor Pool and Allocation Plan.  Each Sexual

9  Abuse Creditor Pool will be funded on a per capita basis utilizing the average amount

10 per claim based on the Trust's assets after reserves for (1) expenses of the Trust's

11 administration, (2) Abuse Claims to be liquidated through litigation, (3) Non-Sexual

12 Abuse Claims, and (4) Future Abuse Claims.  At this time, the Plan Proponents

13 approximate that total funding for each Sexual Abuse Creditor Pool will average

14 approximately $300,000 per person in the pool.  This funding formula does not

15 guarantee any amount to any particular Sexual Abuse Claimant.  An Award to any

16 individual depends on the outcome of the liquidation of the Sexual Abuse Claim through

17 an Allocation Plan.

18       o Sexual Abuse Claimants represented by Tamaki Law and Feltman,

19 Gebhardt, Greer & Zeimantz, P.S. will be in the Tamaki/Spruance Creditor Pool and

20 using Allocation Plan I administered by Hon. William Bettinelli (Retired).  Mr. Bettinelli's

21 resume is attached as Exhibit "B". Sexual Abuse Claimants in the Tamaki/Spruance

22 Creditor Pool are listed on Exhibit "D" to this Disclosure Statement.

23       o Sexual Abuse Claimants represented by Manly & Stewart and

24 Cooke Roosa LLP,  and certain Sexual Abuse Claimants represented by Power &

25 Brown, LLC will be in the Roosa/Manly/Brown Creditor Pool and using Allocation Plan I

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  administered by Hon. William Bettinelli (Retired). Sexual Abuse Claimants in the
2  Roosa/Manly/Brown Creditor Pool are listed on Exhibit "E" to this Disclosure Statement.

3      o  Sexual Abuse Claimants represented by James, Vernon & Weeks,
4  P.A.; Eymann Allison Hunter Jones P.S.; Pfau~~,~~ Cochran Vertetis Amala PLLC; Law
5  Offices of Timothy D. Kosnoff; Chasan & Walton, L.L.C.; Kosnoff PLLC;  and Gordon
6  Thomas   Honeywell   LLP,   will   be   in   the   ~~Northwest Attorneys for~~
7  ~~Justice~~Pfau/Kosnoff/James/Allison/Chasan/Walton/ Blumel Creditor Pool and using
8  Allocation Plan II administered by Katrina C. Pflaumer.  Ms. Pflaumer's resume is
9  attached as Exhibit "C". Sexual Abuse Claimants in the Northwest Attorneys for Justice
10  Creditor Pool are listed on Exhibit "F" to this Disclosure Statement.

11      o  Sexual Abuse Claimants represented by Law Offices of David
12  Henderson, Valcarce Law Office LLC, and certain Sexual Abuse Claimants represented
13  by Power & Brown, LLC will be in the Valcarce/Henderson/Brown Creditor Pool and
14  using Allocation Plan I administered by Hon. William Bettinelli (Retired). Sexual Abuse
15  Claimants in the Valcarce/Henderson/Brown Creditor Pool are listed on Exhibit "G" to
16  this Disclosure Statement.

17      o  Sexual Abuse Claimants may opt out of their assigned Creditor
18  Pools and Allocation Plans and elect other Creditor ~~Pool~~Pools and Allocation Plans or
19  may elect to liquidate their Claims through litigation.

20      •  Abuse Claimants who are determined to have non-Sexual Abuse Claims
21  may elect to liquidate their Abuse Claims by Allocation Plan III administered by Katrina
22  C. Pflaumer or litigate their Claims.  Seventeen Thousand Five Hundred Dollars
23  ($17,500) is the maximum per Claim liquidation amount for Claims liquidated through
24  Allocation Plan III.  Allocation Plan III is attached to the Plan as Exhibit 1.11. Allocation
25  Plan III has been prepared by one of the counsel for Claimants holding Non-Sexual
26  Abuse Claims.

1          • Abuse Claimants electing to litigate their Abuse Claims will be entitled to

2     have their Claims adjudicated and the Allowed amount of their Claims determined by a

3     court of competent jurisdiction.  At or before the Confirmation Hearing, the Committee

4     will ask the Bankruptcy Court to estimate the Claims of such Abuse Claimants and the

5     Trustee will create monetary reserves in those amounts.  The Trustee will be

6     responsible for defending the Trust against the Abuse Claims of those Abuse Claimants

7     that elect to liquidate their Abuse Claims through litigation and the fees and expenses,

8     including attorney's fees, incurred in that defense will be deducted from the monetary

9     reserve that is based on the Bankruptcy Court's estimate.  Once all of the Abuse Claims

10    payable from the reserve are Allowed or Disallowed by Final Orders, the Allowed

11    Claims will be paid pro rata by the Trust from the respective litigation reserve.

12         • Abuse Claimants electing convenience class treatment will receive

13    $2,500.

14         • Future Abuse Claimants will be required to liquidate their Abuse Claims

15    through Allocation Plan I administered by Hon. William Bettinelli (Retired).  A separate

16    monetary reserve, deducted from the total settlement fund of $~~166.1~~167.8 million, will

17    be established for the payment of liquidated Future Abuse Claims.  The amount of the

18    fund will be no less than approximately $6.4 million and will increase, based upon the

19    formula set forth in the Plan, if additional funds are recovered from Non-Settling Insurers

20    and certain third parties.

21         • Prior to the Effective Date, all Non-Settling Insurers providing Insurance

22    Coverage for the Abuse Claims will have the opportunity to settle their liability to the

23    Debtor, the Participating Parties, and all Abuse Claimants by reaching an agreement

24    with the Debtor that is approved by the Bankruptcy Court.  After the Confirmation Date,

25    Non-Settling Insurers may settle such liability by reaching an agreement with the Trust

26    in the Trustee's sole and absolute discretion.  The proceeds of such settlement will be

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  paid to the Trust.  As of the date of this Disclosure Statement, ~~none of the Insurers~~
2  ~~providing coverage for the Abuse Claims, other than Safeco, have entered into~~
3  ~~settlement agreements to settle~~Safeco, Travelers, and Western World have all settled
4  their liability for the Abuse Claims and ~~only Safeco has~~ agreed to provide ~~any~~ funding to
5  the Trust.

6  •  Insurers who do not elect to become Settling Insurers will be responsible
7  for providing Insurance Coverage for those Abuse Claims that are covered by their
8  Insurance Policies. Abuse Claims covered by an Insurance Policy issued by a Non-
9  Settling Insurer may be liquidated through litigation against the Reorganized Debtor and
10 the Reorganized Debtor may pursue coverage for such Abuse Claims and obtain
11 Insurance Recoveries on account of those Abuse Claims.    Provided however, no
12 recovery shall be had against the Reorganized Debtor or any of its assets.  If the Non-
13 Settling Insurer refuses to pay the Reorganized Debtor's defense costs, the Trust will
14 pay those costs. Any Insurance Recoveries on account of such Abuse Claims will be
15 paid to the Trust.

16 •  All Abuse Related Contribution/Indemnity Claims held by any Person or
17 Entity against the Debtor, the Reorganized Debtor, or a Participating Party, and all
18 Abuse Related Contribution/Indemnity Claims held by the Debtor, the Reorganized
19 Debtor or a Participating Party against any Person or Entity will, on the Effective Date,
20 be cancelled and released and will be of no further force or effect. However,
21 notwithstanding such cancellation and release, each holder of an Abuse Related
22 Contribution/Indemnity Claim will retain the right to assert such Claim in any proceeding
23 to establish the respective liability of, or to allocate fault to, those Persons or Entities
24 allegedly responsible for an Abuse Claim, but there shall be no affirmative recovery
25 against any holder of an Abuse Related Contribution/Indemnity Claim on account of
26 such allocation of fault.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1             •     The Abuse Claimants will retain their rights, if any, against any Person or
2 Entity other than the Debtor, the Reorganized Debtor, the Participating Parties, the
3 Released Parties, and the Settling Insurers for the Abuse Claims, including, without
4 limitation, (i) a Person or Persons having personally committed an act or acts of Abuse
5 resulting in a Claim against the Debtor or a Participating Party, (ii) the Society of Jesus;
6 (iii) the Father General of the Society of Jesus and his predecessors, (iv) the Society of
7 Jesus General Curia; (v) a successor or predecessor of the Debtor to the extent of such
8 successor's or predecessor's independent liability for an act or acts of Abuse; (vi)
9 Gonzaga University; (vii) Seattle University, and (viii) the Jesuit High Schools.

10             •     All Punitive Damage Claims will be discharged and enjoined and will
11 receive no distribution under the Plan.

12        **D.**      <u>**Limited Representations**</u>.

13      This Disclosure Statement is submitted in accordance with Section 1125 of the
14 Bankruptcy Code for the purpose of soliciting acceptances of the Plan from holders of
15 certain Claims. The Court has approved this Disclosure Statement as containing
16 information of a kind, and in sufficient detail, which is adequate to enable you to make
17 an informed judgment whether to vote to accept or reject the Plan.

18
19      THIS DISCLOSURE STATEMENT IS NOT THE PLAN. THIS
DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH
ACCOMPANIES THIS DISCLOSURE STATEMENT, SHOULD BE READ
20 COMPLETELY. FOR THE CONVENIENCE OF CREDITORS, THE PLAN
IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL
21 SUMMARIES AND OTHER STATEMENTS REGARDING THE PLAN
ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH
22 IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.

23
24      NO REPRESENTATIONS OR ASSURANCES CONCERNING THE
DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS OPERATIONS, THE
VALUE OF ITS ASSETS, OR THE FUTURE OPERATIONS OF THE
25 REORGANIZED DEBTOR ARE AUTHORIZED BY THE DEBTOR
OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.
26

THIS IS A SOLICITATION BY THE PROPONENTS ONLY AND IT IS NOT A SOLICITATION BY THE PROPONENTS' ATTORNEYS OR ANY OTHER PROFESSIONALS EMPLOYED BY THE PROPONENTS. THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE PROPONENTS AND NOT OF THE PROPONENTS' ATTORNEYS OR ANY OTHER PROFESSIONAL.

UNLESS OTHERWISE EXPRESSLY STATED, PORTIONS OF THIS DISCLOSURE STATEMENT DESCRIBING THE DEBTOR'S FINANCIAL CONDITION HAVE NOT BEEN SUBJECTED TO AN INDEPENDENT AUDIT, BUT WERE PREPARED FROM INFORMATION COMPILED BY THE DEBTOR FROM RECORDS MAINTAINED IN THE ORDINARY COURSE OF ITS OPERATIONS. NONE OF THE INFORMATION HAS BEEN COMPILED BY THE COMMITTEE OR THE FUTURE ABUSE CLAIMANTS REPRESENTATIVE. THE DEBTOR ASSERTS THAT REASONABLE EFFORTS HAVE BEEN MADE TO ACCURATELY PREPARE ALL FINANCIAL INFORMATION WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT FROM THE INFORMATION AVAILABLE TO THE DEBTOR. HOWEVER, AS TO ALL SUCH FINANCIAL INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ERROR.

THE COMMITTEE AND THE FUTURE CLAIMANTS REPRESENTATIVE ARE CO-PROPONENTS OF THE PLAN. HOWEVER, NEITHER HAS MADE ANY INDEPENDENT EFFORT TO OBTAIN FINANCIAL INFORMATION REGARDING THE DEBTOR OR TO PREPARE THE FINANCIAL INFORMATION SUPPLIED BY THE DEBTOR. THE COMMITTEE AND THE FUTURE CLAIMANTS REPRESENTATIVE DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE.

THE DISCLOSURE STATEMENT INCLUDES STATEMENTS REGARDING THE DEBTOR'S AND RELATED ENTITIES' RELATIONSHIP TO ONE ANOTHER AND OWNERSHIP OF REAL AND PERSONAL PROPERTY AND THAT CERTAIN REAL AND PERSONAL PROPERTY IS HELD IN TRUST FOR NON-DEBTOR THIRD PARTIES. THE COMMITTEE DISPUTES THESE STATEMENTS AND SUCH DISPUTES ARE SETTLED ONLY THROUGH CONFIRMATION OF THE PLAN, SATISFACTION OF ALL CONDITIONS TO THE EFFECTIVE DATE, AND PAYMENT OF ALL AMOUNTS DUE TO THE TRUST UNDER THE PLAN.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS OR TAX ADVICE TO CREDITORS. CREDITORS SHOULD CONSULT THEIR OWN LEGAL

**Page 12 of ~~54~~54** – DISCLOSURE STATEMENT ~~CONCERNING~~REGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED ~~APRIL 4,~~MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1187    Filed 05/27/11

1  COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS
2  ABOUT TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON
   CREDITORS.

3  **E.**   **Voting**.

4  Under the Bankruptcy Code, only creditors with Claims in "impaired" classes and

5  with Claims that are Allowed, or have been Temporarily Allowed by the Bankruptcy

6  Court pursuant to an order, are entitled to vote on the Plan.  In general, a Claim is

7  "Allowed," as that term is used in the Bankruptcy Code, if (i) the Claim is listed in the

8  Debtor's schedules of liabilities filed with the Bankruptcy Court as not disputed,

9  contingent, or unliquidated, or (ii) a proof of claim has been timely filed with the Claims

10  Agent by the holder of the Claim, and the Debtor has not filed an objection to the Claim,

11  or (iii) the Bankruptcy Court has entered an order allowing the Claim.  If a Claim is not

12  Allowed, but the holder thereof wishes to vote on the Plan, the holder must timely file a

13  motion with the Bankruptcy Court requesting that the Claim be Temporarily Allowed.

14  In order for a class of Claims to vote to accept the Plan, votes representing at

15  least two-thirds in amount and more than one-half in number of the Claims voting in that

16  class must be cast in favor of acceptance of the Plan.  As more fully described below,

17  the Debtor is seeking acceptances from holders of Allowed Claims in the following

18  classes (reserving the right to supplement as to any other impaired class(es) of Claims,

19  if any):

20

| Class | Description | Status |
|-------|-------------|--------|
| Class 3 | Current Sexual Abuse Claims | Impaired – Entitled to Vote |
| Class 3A | Non-Sexual Abuse Claims | Impaired – Entitled to Vote |
| Class 4 | Future Abuse Claims | Impaired – Entitled to Vote |
| Class 6 | Insured Non-Abuse Claims | Impaired – Entitled to Vote |
| Class 7 | General Unsecured Claims | Impaired – Entitled to Vote |

**Page 13 of 5454** – DISCLOSURE STATEMENT CONCERNINGREGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED APRIL 4,MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

| Class 8 | Penalty Claims | Will Not Receive or Retain any Property Under the Plan – Deemed to Reject |
| Class 10 | Intentionally Omitted | |
| Class 11 | Formation Fund Claim | Will Not Receive or Retain Any Property Under the Plan – Deemed to Reject |
| Class 13 | Donor and Beneficiary Claims | Will Not Receive or Retain Any Property Under the Plan – Deemed to Reject |
| Class 15 | Abuse Related Contribution/Indemnity Claims | Impaired – Entitled to Vote |

The following classes of Claims are not impaired under the Plan:

| **Class** | **Description** | **Status** |
| --- | --- | --- |
| Class 1 | Priority Claims | Unimpaired – Deemed to Accept |
| Class 2 | General Unsecured Convenience Claims | Unimpaired – Deemed to Accept |
| Class 5 | Omak Area Shelter Claim | Unimpaired – Deemed to Accept |
| Class 9 | Student Loan Claims | Unimpaired – Deemed to Accept |
| Class 12 | Charitable Gift Annuity Claims | Unimpaired – Deemed to Accept |
| Class 14 | Convenience Abuse Claims | Unimpaired – Deemed to Accept |

The specific treatment of each class under the Plan is set forth in the Plan and is summarized in Articles I.F and V of this Disclosure Statement. Section 1129(b) of the Bankruptcy Code provides that, if the Plan is rejected by one or more impaired classes of Claims, the Plan nevertheless may be confirmed by the Court if: (i) the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class(es) of Claims that are impaired under the Plan; and (ii) at least one class of impaired Claims has voted to accept the Plan. These requirements are described in further detail in Section VIII.C. of this Disclosure Statement.

A VOTE FOR ACCEPTANCE OF THE PLAN BY THOSE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE IS IMPORTANT. THE

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

PROPONENTS RECOMMEND THAT THE HOLDERS OF ALLOWED IMPAIRED CLAIMS VOTE IN FAVOR OF THE PLAN.

IN ORDER FOR A VOTE TO BE COUNTED, A BALLOT MUST BE PROPERLY FILLED OUT AND ACTUALLY RECEIVED ON OR BEFORE ___4:00 P.M. PACIFIC DAYLIGHT TIME ON _____,JUNE 30, 2011, BY THE VOTINGBALLOTING AGENT AS SET FORTH IN THE BALLOT.

F.    **Plan Summary.**  A table summarizing the classification and treatment of Claims under the Plan is set forth below.

| Class/Nature of Claim | Treatment | Approximate Amount of Claims | Dates and Approximate **Amount of Distributions** | Estimated **Distributions** |
|---|---|---|---|---|
| Administrative Claims (Including Professional Fees and Expenses) | Unimpaired | $5,000,000 | To be paid in full by the Reorganized Debtor when such Claims become due, or if already due, on or as soon as reasonably practicable after the Effective Date, or if later, the Allowance Date. | 100% |
| Class 1 Priority Claims | Unimpaired | $400 | To be paid in full by the Reorganized Debtor on or as soon as reasonably practicable after the Effective Date, or if later, the Allowance Date. | 100% |
| Class 2 General Unsecured Convenience Claims | Unimpaired | $Unknown | To be paid in full by the Reorganized Debtor on or as soon as reasonably practicable after the Effective Date or if later, the Allowance Date. | 100% |
| Class 3 Current Sexual Abuse Claims | Impaired | $Unknown | Each Allowed Current Sexual Abuse Claim to receive payment from the Trust, with Current Sexual Abuse Claimants electing liquidation through an Allocation Plan being paid from a designated Creditor Pool and | Unknown |

**Page 15 of 5454** – DISCLOSURE STATEMENT CONCERNINGREGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED APRIL 4,MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 □ FACSIMILE (503) 248-0130

| Class/Nature of Claim | Treatment | Approximate Amount of Claims | Dates and Approximate Amount of Distributions | Estimated Distributions |
|---|---|---|---|---|
| | | | Litigation Current Abuse Claims being paid Pro Rata from a litigation reserve established through the Trust. | |
| Class 3A Non-Sexual Abuse Claims | Impaired | $Unknown | Each Allowed Non-Sexual Abuse Claim to receive payment from the Trust, with Non-Sexual Abuse Claimants electing liquidation through an Allocation Plan being paid an amount not to exceed $17,500 per Claim and Non-Sexual Abuse Claimants electing liquidation through litigation being paid Pro Rata from a litigation reserve established through the Trust. | Unknown |
| Class 4 Future Abuse Claims | Impaired | $Unknown | Each Allowed Future Abuse Claim to receive payment from the Trust's Future Abuse Claims Reserve. | Unknown |
| Class 5 Omak Area Shelter Claim | Unimpaired | $200,000 | The Reorganized Debtor will pay $200,000 to a homeless shelter(s) in the Omak, WA area. | 100% |
| Class 6 Insured Non-Abuse Claims | Impaired | $Unknown | Each Allowed Insured Non-Abuse Claim will receive payment solely to the extent covered by insurance but will not be entitled to receive any payment from the Reorganized Debtor. | Unknown |
| Class 7 General Unsecured Claims | Impaired | $987,000 plus any amounts recovered by the Trust through assertion of the | $500,000 to be shared Pro Rata by all holders of Allowed General Unsecured Claims, with payment to be made | 50%Unknown |

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

| Class/Nature of Claim | Treatment | Approximate Amount of Claims | Dates and Approximate Amount of Distributions | Estimated Distributions |
|---|---|---|---|---|
| | | Avoidance Rights | within 30 days of the Effective Date after entry of Final Orders resolving all Avoidance Rights litigation filed by the Committee or Trust, or within 30 days of the Claim being Allowed, whichever is later. | |
| Class 8 Penalty Claims | Disallowed | $Unknown | None | None |
| Class 9 Student Loan Claims | Unimpaired | $323,000 | All student loan obligations will be assumed by the Reorganized Debtor and payments made as they come due | 100% |
| Class 10 Intentionally Omitted | | | | |
| Class 11 Formation Fund Claim | Disallowed | $8,953,046 | The Claim will be disallowed against the Debtor. The Claim will be acknowledged by the Apostolic Works Fund to be an obligation of such fund and paid according to its terms. | None |
| Class 12 Charitable Gift Annuity Claims | Unimpaired | $283,000 | The Reorganized Debtor will honor all obligations and payments to Charitable Gift Annuitants as they come due | 100% |
| Class 13 Donor and Beneficiary Claims | Disallowed | $Unknown | None | None |
| Class 14 Convenience Abuse Claims | Unimpaired | $Unknown | Holders of Allowed Convenience Abuse Claims will each receive a payment of $2,500 from the Trust on or as soon as reasonably practicable | 100% |

**Page 17 of 5454 – DISCLOSURE STATEMENT CONCERNING REGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED APRIL 4, MAY 27, 2011**

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

| Class/Nature of Claim | Treatment | Approximate Amount of Claims | Dates and Approximate Amount of Distributions | Estimated Distributions |
|---|---|---|---|---|
| | | | following the Effective Date | |
| Class 15 Abuse Related Contribution/Indemnity Claims | Mutual Release | $Unknown | None | None |

## II.     FUNDING SOURCES FOR THE PLAN.

A.  Reorganized Debtor's and Participating Parties' Funding of the Plan.

a.  Administrative Claims.     The Reorganized Debtor will pay all Allowed Administrative Claims (including the Chapter 11 Professionals' Allowed fees and expenses) in full.

b.  General Unsecured Convenience Claims. The Reorganized Debtor will pay all General Unsecured Convenience Claims in full.

c.  General Unsecured Claims. The Reorganized Debtor will provide $500,000 to be distributed Pro Rata to the holders of General Unsecured Claims.

d.  Student Loan Claims. The Reorganized Debtor will pay, in its normal course of operations, all Allowed Student Loan Claims, estimated at approximately $323,000.

e.  Charitable Gift Annuity Claims. The Reorganized Debtor will pay all Charitable Gift Annuity Claims, estimated at approximately $282,000, in full as and when they come due.

f.  Retiree Benefit Claims. The Reorganized Debtor will assume the Debtor's obligations for the Retiree Benefit Claims (estimated to total approximately $13.7 million in unfunded liabilities), and pay those claims as and when they come due.

g.  Abuse Claims. The Reorganized Debtor and Participating

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    Parties will contribute to the Trust Forty-Three Million One Hundred Thousand Dollars

2    ($~~43,100,000.00~~43,100,000) Cash, plus an additional Five Million Dollars

3    ($~~5,000,000.00~~5,000,000) Cash **less** the Allowed amount of all unpaid Chapter 11

4    Professional Fees (estimated to total approximately $5,000,000 on the Effective Date),

5    for a total contribution of approximately $~~43,100,0000~~43,100,000. The Trust will also

6    receive the benefit of the Avoidance Claims, including preferential and fraudulent

7    transfer claims, Third Party Derivative Claims (e.g., claims against any Person or Entity

8    for disregard of the corporate form, piercing the corporate veil, or alter ego, that would

9    subject such Person or Entity to liability for the Abuse Claims against the Debtor), and

10   the benefit of Insurance Recoveries against Non-Settling Insurers.

11   The Committee, with standing granted by the Bankruptcy Court, has commenced

12   the Avoidance Actions set forth on Exhibit "H" and the last day to file additional

13   Avoidance Actions under Bankruptcy Code § 546(a) was February 17, 2011, except as

14   such date may be extended pursuant to the Bankruptcy Rules.  The Debtor contends

15   that none of the filed Avoidance Actions will result in a recovery for the Trust.  The

16   Committee believes that the filed Avoidance Actions may result in a recovery for the

17   Trust; however, the Committee is unable at this time to project the amount of recoveries

18   under the Avoidance Actions.

19   B. <u>Settling Insurers Funding of the Plan</u>. All proceeds from settlements

20   reached with the Debtor's and Participating Parties' Insurers providing Insurance

21   Coverage for the Abuse Claims will be paid to the Trust and used to pay the Trust's

22   expenses and the Abuse Claims. ~~The~~Three of the Debtor's ~~primary Insurer~~Insurers,

23   Safeco, ~~has~~Travelers, and Western World, have reached ~~a settlement~~settlements with

24   the Debtor pursuant to which ~~it~~they will provide One Hundred Eighteen Million Dollars

25   ($~~118,000.000.00~~118,000.000), One Million Four Hundred Thousand Dollars

26   ($1,400,000), and Three Hundred Thousand Dollars ($300,000) respectively to the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  Trust.  The Debtor is seeking Bankruptcy Court approval of the Safeco Settlement
2  Agreement and the terms and conditions of the Bankruptcy Court-approved Safeco,
3  Travelers Settlement Agreement, and Western World Settlement Agreement, including
4  injunctions and releases benefitting Safeco, Travelers, and Western World that are
5  included in the Safeco Settlement Agreement and, Travelers Settlement Agreement,
6  Western World Settlement Agreement, and the Plan. The Plan contains a provision for
7  other Insurers to become Settling Insurers with the consent of the Trust, in which event
8  those Settling Insurers would be entitled to the benefit of the injunctions and releases
9  provided for Settling Insurers under the Plan.

10         Other than as provided in Section 8 of the Plan, the rights and obligations of Non-
11 Settling Insurers will not be affected by the Plan and such Insurers will continue to
12 provide Insurance Coverage for the Abuse Claims that are covered by their Insurance
13 Policies on a claim-by-claim basis in accordance with the provisions of their Insurance
14 Policies. The Plan provides for the Trust to receive any Insurance Recoveries from the
15 Non-Settling Insurers for each Abuse Claim regardless of whether the Abuse Claim is
16 liquidated through an Allocation Plan or through litigation.

17 //

18 //

19 **III.**     **THE SOCIETY OF JESUS, OREGON PROVINCE.**

20         **A.**     **The History of the Province.**

21         The Roman Catholic Church is a hierarchical religious organization.  The Society
22 of Jesus (the "Society" or "SOJ") is a religious order of priests and brothers within the
23 Roman Catholic Church commonly known as the Jesuits.  The Society's work is divided
24 geographically into provinces, with the Oregon Province currently encompassing the
25 states of Alaska, Idaho, Montana, Oregon, and Washington.  Under Canon Law, a
26 province is a *juridic person*.  A *juridic person* is treated as a separate legal entity under

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

| 1 | Canon Law much like a corporation under civil law.  Each province is presided over by a |
| 2 | Jesuit priest given the title "Provincial". |
| 3 | In 1841 the first Jesuit missionaries arrived in the Pacific Northwest.  At that time |
| 4 | the cities of Seattle, Portland, and Spokane did not exist.  The closest settlement was |
| 5 | San Francisco, a small Mexican outpost and mission.  These Jesuits committed |
| 6 | themselves to a mission which extended on the east from the Rocky Mountains west to |
| 7 | the Pacific Ocean and on the south from Mexico north to the Arctic Ocean (the "Rocky |
| 8 | Mountain Mission" or "Mission").  On October 25, 1889, Fr. Joseph Cataldo, Superior of |
| 9 | the Mission, and three other Jesuit missionaries formed a Montana non-profit religious |
| 10 | corporation under the name "Montana Catholic Missions, S.J." to hold funds and |
| 11 | property in trust for the Mission, and for establishing and conducting churches, schools, |
| 12 | and libraries.  On August 22, 1893, Fr. Leopold Van Gorp, the new Superior of the |
| 13 | Mission, and two of his consultors, Fr. Cataldo and Fr. Joseph Caruana formed a |
| 14 | Washington non-profit religious corporation under the name "Pioneer Educational |
| 15 | Society" to provide a civilly recognized entity for holding the Mission's real property in |
| 16 | the State of Washington and for other purposes.  This coincided with a significant |
| 17 | undertaking by the Mission to purchase land for the building of a Catholic residential |
| 18 | community in Spokane, Washington.  On September 8, 1909, the Rocky Mountain |
| 19 | Mission was elevated to the status of a province.  On February 18, 1918, Fr. Francis |
| 20 | Dillon, Fr. William Deeney, and Fr. Aloisius van der Velden formed an Oregon non-profit |
| 21 | religious corporation under the name "Society of Jesus".  On February 2, 1932, the |
| 22 | states of Oregon, Washington, Idaho, and Montana, and the Territory of Alaska were |
| 23 | formally designated the "Oregon Province".  Thereafter, the Oregon Province continued |
| 24 | to hold its property and conduct its affairs under the two corporations referred to above, |
| 25 | Pioneer Educational Society and Society of Jesus.  On July 31, 1964, three Jesuit |
| 26 | missionaries working in Alaska formed an Alaska non-profit religious corporation under |

**Page 21 of 5454** – DISCLOSURE STATEMENT CONCERNINGREGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED APRIL 4,MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

the name "Society of Jesus, Alaska" to hold property and conduct the secular affairs of the Alaska missions, which at that time were independent missions from the Oregon Province. On March 31, 1997, the corporation known as Society of Jesus changed its name to "Society of Jesus, Oregon Province."  The Oregon Province continues to utilize each of the above-stated corporations to hold property, both for itself and in trust, and to conduct the Province's secular affairs.  Fr. Patrick J. Lee is the current Provincial of the Oregon Province, having served since in that capacity since August 2008. The Province is included within the definition of "Debtor" to the extent it is not an entity recognized under civil law that is separate from the Debtor. To the extent the Province may be recognized as a separate civil entity from the Debtor, it has been included as a Participating Party under the Plan.

The Jesuits working within the Oregon Province are organized into Jesuit Communities.  Communities are separate *juridic persons* from the Province under Canon Law and pursuant to the Society's own rules and regulations.  The following Jesuit Communities exist within the Oregon Province: Arrupe Jesuit Community (Seattle), Bellarmine Jesuit Community (Tacoma), Brother Joe Prince Jesuit Community (St. Mary's, AK), Capitol Hill Jesuit Community (Seattle), Colombiere Jesuit Community (Portland), Gonzaga Jesuit Community (Spokane), Jesuit High School Community (Portland), Manresa Jesuit Community (Spokane), Jesuit Novitiate of St. Francis Xavier (Portland), Regis Jesuit Community (Spokane), Missoula Jesuit Community (Missoula), and Yakima Jesuit Community (Yakima). The Jesuit Communities are included within the definition of "Debtor" to the extent they are not entities recognized under civil law that are separate from the Debtor (which definition excludes Jesuit Community of Gonzaga University, Inc., a Washington corporation).  To the extent the Jesuit Communities may be recognized as separate civil entities from the Debtor, they have been included as Participating Parties under the Plan.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1       Each of the Jesuit Communities is responsible for furthering the Society's

2 mission by providing teaching, guidance, counseling, and religious leadership at various

3 institutions known as apostolates.  A specific Jesuit Community is assigned to each

4 apostolate.   Examples of apostolates within the Province served by the Jesuit

5 Communities include Jesuit High School in Portland, Oregon (served by the Jesuit High

6 School Community), Seattle University in Seattle, Washington (served by the Arrupe

7 Jesuit Community), and Bellarmine Preparatory School in Tacoma, Washington (served

8 by the Bellarmine Jesuit Community).   Each of the apostolates is a separately

9 incorporated non-profit corporation under civil law and has been for many years.  The

10 apostolates own, possess, operate, and maintain their assets; generate their own

11 revenues from tuition, fees, donations, and other sources; manage their own finances;

12 and are managed and controlled by their officers and an independent board of trustees.

13 Despite each of the apostolates' long-standing separate civil existence, the Committee

14 has asserted that some of these apostolates may be an asset of the Debtor's

15 bankruptcy estate.  The Debtor and the apostolates each assert they are separate civil

16 entities and their assets are not part of the Bankruptcy Estate. That dispute ~~is~~has not

17 been settled through the Plan~~.~~, and nothing in the Plan will serve to release the

18 following Persons or Entities from liability for any of the Claims: (i) a Person or Persons

19 having personally committed an act or acts of Abuse resulting in a Claim against the

20 Debtor or a Participating Party, (ii) the Society of Jesus; (iii) the Father General of the

21 Society of Jesus and his predecessors, (iv) the Society of Jesus General Curia; (v) a

22 successor or predecessor of the Debtor to the extent of such successor's or

23 predecessor's independent liability for an act or acts of Abuse; (vi) Gonzaga University;

24 (vii) Seattle University; and (viii) the Jesuit High Schools.

25       The Committee contends that the Debtor has Third Party Derivative claims

26 against, inter alia: (i) the Society of Jesus; (ii) the Father General of the Society of Jesus

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

1  and his predecessors, (iii) the Society of Jesus General Curia; (iv) Gonzaga University;
2  (v) Seattle University, and/or (vi) the Jesuit High Schools.  Under the Plan, Third Party
3  Derivate Claims means Claims against any Person or Entity for disregard of the
4  corporate form, piercing the corporate veil, or alter ego, that would subject such Person
5  or Entity to liability for Abuse Claims against the Debtor. Under the Plan, these claims
6  are assigned to the Trust.  The Trustee will determine whether the Trust should
7  prosecute such claims of the Debtor.  If the Trustee determines that the Trust should
8  pursue such claims, the Trustee will do so based on the exercise of his business
9  judgment that such litigation would benefit the Trust.

10   **B.    The Debtor's and Participating Parties' Assets And Liabilities.**

11       **1.    Assets.**

12   There are ~~four~~three main categories of property in which the Debtor and
13  Participating Parties may hold some type of interest.  The first category is property the
14  Debtor owns outright without any restrictions or encumbrances and which is available to
15  pay Claims against the Debtor.  The second category is property, and the earnings
16  thereon, held in the Formation Fund, Aged & Infirm Fund, Apostolic Works Fund, and
17  Foundations Fund, which the Debtor and Participating Parties assert ~~is~~are held in
18  charitable trusts to be used for specifically enumerated purposes. The third category is
19  property, and the earnings thereon, that the Debtor and the Participating Parties hold
20  and invest for third parties.

21       **(a)    Unrestricted Property.**  The Debtor's unrestricted property
22  consists of the Debtor's operating accounts, and ~~its~~the Debtor's buildings and tangible
23  personal property located at the Loyola Jesuit Center in Portland, Oregon as described
24  in Section I. C. of this Disclosure Statement. Also included are the funds held by the
25  Jesuit Communities in their bank accounts. The Province does not have any assets
26  separate from the Debtor's assets.

1            **(b)**     **Property Held Within Trusts.**   The property held within

2 Trusts consists of the Formation Fund, Aged & Infirm Fund, Apostolic Works Fund, and

3 Foundations Fund property described in Section I.C. of this Disclosure Statement; and,

4            **(c)**     **Third Party Property.** The third party property consists of:

5            (1)     Omak Mission Church – Held for the Catholic Bishop

6 of Spokane. Value unknown;

7            (2)     DeSmet Mission Farm Property – Held for the

8 ~~Couer~~Coeur d' Alene tribe. Value unknown; and,

9            (3)     Zambia Mission investments – held for the Jesuit

10 Center for Theological Reflection, Zambia, valued at approximately $207,000.

11        **2.**     **Liabilities.**

12            **(a)**     **Administrative Claims.**   The Debtor anticipates that it will

13 owe approximately $5,000,000 in unpaid Administrative Claims on the Effective Date

14 (assuming an Effective Date of ~~June 15,~~July 25, 2011), consisting primarily of legal fees

15 and expenses owing to the attorneys, accountants, consultants, experts, and other

16 advisors for the Debtor, the Committee, and the FCR.

17            **(b)**     **Priority Claims.**   Priority Claims are estimated by the Debtor

18 to total approximately $400.

19            **(c)**     **General Unsecured Claims.**   General Unsecured Claims

20 are estimated by the Debtor to total approximately $987,000.[2]   These Claims consist

21 primarily of trade claims against the Debtor which were unpaid as of the Petition Date.

22            **(d)**     **Current Abuse Claims.**   As of the November 30, 2009

23

24 [2] This number could increase if the Committee or Trust is successful in recovering any

25 funds through pursuit of the Avoidance Rights. That is because any Person or Entity that is required to pay the Trust any funds it received as an avoidable transfer may be

26 entitled to file a Claim for the amount it is required to pay to the Trust. The Committee is unable to determine at this time, however, whether any of the avoidance actions will be successful.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Claims Bar Date, 609 Current Abuse Claims had been filed against the Debtor. After elimination of duplicate and amended Abuse Claims, the Debtor and the Committee estimate that approximately five hundred thirty-five (535) unresolved Current Abuse Claims and one (1) Future Abuse Claim (filed by the FCR) have been filed against the Debtor.  Certain of the unresolved Abuse Claims may be subject to objection prior to the Confirmation of the Plan.  At this time, the Debtor and Committee cannot state with certainty the amount that will be available in the Trust to pay Current Abuse Claims because the amount that will be available in the Trust is subject to payment of certain Administrative Expenses which will be unpaid as of the Effective Date and $6.47.23 million, plus possible additional amounts as provided in the Plan, for the reserve to pay Future Abuse Claims. In addition, neither the Debtor nor the Committee can estimate the administrative expenses the Trust will incur because they are subject to numerous variables that cannot be identified or quantified at this time.  However, based on current information regarding such unpaid Administrative Expenses, the Debtor and Committee estimate that the Trust, net of such unpaid Administrative Expenses and the approximately $6.4  7.23 million reserve for Future Abuse Claims, will have approximately $155156 million available for the payment of Current Abuse Claims and the Trust's administrative expenses.  This amount may increase if the Trust receives Insurance Recoveries from Non-Settling Insurers and/or recoveries from the Avoidance Rights.

       **(e)** **Future Abuse Claims.**  The Debtor and the Committee expect an unknown number of Future Abuse Claims will be filed after confirmation of the Plan and before the Future Abuse Claims Bar Date which is fifteen (15) years after the Effective Date of the Plan. The FCR estimates that this number could be approximately sixty four (64) Claims.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

1                         **(f)**      **Insured Non-Abuse Claims.** The Debtor is unaware of any

2 such Claims; however, if any do exists they should be covered by the Debtor's liability

3 insurance policies.

4                         **(g)**      **Student Loan Claims.** Student Loan Claims are estimated

5 by the Debtor to total approximately $323,000.

6                         **(h)**      **Charitable Gift Annuity Claims.** Charitable Gift Annuity

7 Claims are estimated by the Debtor to total approximately $262,000.

8                         **(i)**      **Retiree Benefit Claims**. Retiree Benefit Claims are

9 estimated by the Debtor to total approximately $13.7 million in potential unfunded

10 liability.

11                         **(j)**      **Donor and Beneficiary Claims.** These Claims consists of

12 the Claims by those Persons or Entities who have made donations to the Debtor or to a

13 Jesuit Community who may allege that their donations, or the property acquired with

14 their donations, are subject to donor imposed restrictions, or are held in trust, which

15 prevents such property from being utilized to pay Claims against the Debtor and the

16 Participating Parties. The Debtor does not believe that any such property is being used

17 to pay Claims. The Debtor does not anticipate any such Claims being asserted that

18 would prevent confirmation of the Plan. The only filed Claims that might fall into this

19 category are the Claims asserted on behalf of the beneficiaries of the Formation Fund,

20 Aged & Infirm Fund, Apostolic Works Fund, and Foundations Fund, which the Debtor

21 believes will likely support the Plan.

22                         **(k)**      **Abuse Related Contribution/Indemnity Claims.** Abuse

23 Related Contribution/Indemnity Claims were filed by Catholic Bishop of Northern Alaska,

24 as debtor-in-possession in its own Chapter 11 bankruptcy case pending in the United

25 States Bankruptcy Court for the District of Alaska (Case No. 08-00110-DMD) ("CBNA");,

26 Archdiocese of Portland in Oregon ("Archdiocese of Portland") f/b/o the future claims

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

trust established in its own Chapter 11 bankruptcy case ("Archdiocese of Portland"); and Michael Murphy, the Future Claims Representative in the Catholic Bishop of Northern Alaska Chapter 11 bankruptcy case (the "CBNA FCR, and Seattle University ("Seattle U").  The claims between CBNA and the Debtor were settled in early 2010 under an a previous bankruptcy court approved agreement that provided for a mutual release of claims between them as which is provided in consistent with the treatment for Abuse Related Contribution/Indemnity Claims under the Plan (the "CBNA Settlement").

The Archdiocese of Portland, CBNA, and the CBNA FCR each seek Seattle U sought to hold the Debtor liable for all or a proportionate part of future claims that have been, or may be asserted, against the Debtor and the CBNA, Seattle U, or the Archdiocese of Portland's future claims trusts trust established in their respective under the Archdiocese of Portland's Chapter 11 bankruptcy cases plan. The Debtor is unaware whether any such claims have, or will have, any value. Nevertheless, the Proponents believe the mutual release treatment being afforded such Claims under the Plan is fair and equitable to both those Claimants and their respective future claims trusts, and to the Debtor and the Abuse Claimants in this Case between the Debtor, on the one hand, and CBNA, Seattle U, or the Archdiocese of Portland, on the other hand, is fair and equitable. Otherwise, the Trustee would, following confirmation of the Plan, be entitled to assert claims for contribution or indemnity against Seattle U and the future claims trusts trust in the CBNA and Archdiocese of Portland and CBNA cases for those Abuse Claims in this case which qualify as future claims in those cases that case. Likewise, the Seattle U and the future claims trusts in those cases trust in the Archdiocese of Portland case would be entitled to assert contribution and indemnity claims against the Trust in this Case for those same Abuse Claims.  This could result in protracted litigation and expense for Seattle U and the future claims trusts in those cases and the Trust in this Case and the Archdiocese of Portland case, which will be avoided by the mutual

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    release.

2         Although the Trust, Seattle U, and the Archdiocese of Portland future claims

3    ~~trusts/reserves in the other cases will be~~trust would be, and the CBNA future claims

4    trust already is under the CBNA Settlement, precluded from asserting ~~claims~~Abuse

5    Related Contribution/Indemnity Claims against each other, the Abuse Claimants in this

6    Case will not be prohibited from seeking recovery from ~~both~~ the Trust~~'s Future Abuse~~

7    ~~Claims Reserve in this Case~~, and also from Seattle U and/or the future claims

8    trusts~~/reserves~~ in the ~~other~~Archdiocese of Portland and CBNA cases (if ~~the~~an Abuse

9    ~~Claimants~~Claimant in this Case can qualify as a future ~~claimants~~claimant in ~~the~~

10    ~~other~~those cases). In the event ~~such claims are~~an Abuse Claim is allowed against

11    Seattle U and one or more trusts, or against more than one trust~~,~~ but not Seattle U,

12    Seattle U and the respective trusts will not be entitled ~~to ask the~~seek contribution or

13    indemnity from each other ~~trusts~~ to pay all or any portion of the amount for which ~~they~~

14    ~~are held to be~~Seattle U or a trust is found liable. Subject to applicable law, Seattle U and

15    the ~~Abuse Claimants. The~~ respective trusts may ~~still assert~~, however, argue for

16    allocation of fault in any litigation with the Abuse Claimant so as to ~~shift~~attempt to

17    attribute all or any portion of ~~liability~~fault for the Abuse Claim to the other ~~trusts~~ in order

18    to avoid or reduce the amount ~~they are~~Seattle U or a specific trust is required to pay to

19    the Abuse Claimant.

20         Counsel for the Creditors Committee in this Case served as counsel to the official

21    creditors committee in the CBNA case and is serving as counsel to the settlement

22    trustee in the CBNA case. Counsel for the Creditors Committee has not represented

23    the Creditors Committee, the CBNA creditors committee, or the CBNA settlement

24    trustee in connection with the treatment of this class of Claims. Counsel for the Debtor

25    in this Case served as counsel to the Archdiocese of Portland in its chapter 11 case,

26    and represents it in limited matters unrelated to this case. Counsel for the Debtor has

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 not represented the Archdiocese of Portland in connection with the treatment of this

2 class of Claims. The Debtor and counsel for the Debtor will leave it to counsel for the

3 Committee to resolve disputes, if any, that may arise regarding the Archdiocese of

4 Portland's Claims and the treatment of those Claims under the Plan.

5 **IV. DESCRIPTION OF THE PLAN.**

6 The following description of the Plan is for informational purposes only and does

7 not contain all provisions of the Plan. Creditors should not rely on this description for

8 voting purposes but should read the Plan in its entirety. This summary of the Plan does

9 not purport to be complete.

10 IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE CONTENTS
OF THE PLAN AND THIS DISCLOSURE STATEMENT, THE PLAN WILL
11 CONTROL.

12 **A. Classification And Treatment Of Claims Under The Plan.**

13 **1. Claim Amounts.**

14 Until Allowed, certain Claims against the Debtor are in unliquidated

15 amounts. Accordingly, the amounts of Claims specified in this Disclosure Statement

16 reflect only the Debtor's estimates based on information available to it. Additionally, the

17 amounts of Claims specified in this Disclosure Statement do not include all Claims that

18 may arise from the rejection of certain executory contracts or other contingent or

19 unliquidated Claims against the Debtor.

20 **2. Effective Date of the Plan.**

21 The Effective Date of the Plan determines when the performance of many

22 of the obligations under the Plan is due. Unless an appeal is taken from the

23 Confirmation Order, the Effective Date is expected to occur on the fifteenth day after

24 entry of the Confirmation Order.

25 **3. Classification Generally.**

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    Under the Plan, all Claims against the Debtor, other than Administrative

2    Claims, are divided into fifteen (15) separate classes, which the Debtor believes

3    complies with the requirements of the Bankruptcy Code.  Unless otherwise expressly

4    stated in the Plan, the respective treatments under the Plan of Allowed Claims are in full

5    discharge and satisfaction of those Allowed Claims.  Except as provided in the Plan, all

6    Claims against the Debtor and arising prior to the Confirmation Date, except for Abuse

7    Claims arising after the Petition Date, will be discharged as of the Effective Date

8    pursuant to Section 1141(d) of the Bankruptcy Code, and as provided in the Plan.

9         **4.    Treatment of Claims**.

10    A table that briefly summarizes the classification and treatment of Claims

11    under the Plan is set forth in Section I.F. above.  Reference is made to the Plan itself for

12    the specific terms and provisions.

13    **B.    Executory Contracts and Unexpired Leases to be Assumed if not**

14    **Rejected**.

15    On the Effective Date, all executory contracts and unexpired leases of the Debtor

16    that have not been assumed or rejected, and are not subject to a pending motion to

17    reject, will be assumed by the Reorganized Debtor in accordance with the provisions

18    and requirements of Sections 365 and 1123 of the Bankruptcy Code.  In general,

19    Claims arising from the rejection of an executory contract or unexpired lease must be

20    filed within thirty (30) days after the Effective Date.  Every such Claim which is timely

21    filed, if and when Allowed, will be treated as a General Unsecured Claim under the

22    Plan.  Every such Claim which is not timely filed by the deadline fixed in the Plan will be

23    forever barred, unenforceable, and discharged, and the Creditor holding the Claim will

24    not receive or be entitled to any distribution under the Plan on account of such Claim.

25    #

26    **C.    Objections to Claims**.

**Page 31 of 5454** – DISCLOSURE STATEMENT CONCERNINGREGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED APRIL 4,MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

1    Notwithstanding the occurrence of the Effective Date, and except as to any Claim

2    that has been Allowed by Court order prior to the Effective Date, the Reorganized

3    Debtor, the Committee, the FCR, any Claimant, the Insurers, or any other party in

4    interest may object to the allowance of any Claim against the Debtor or seek estimation

5    thereof on any grounds permitted by the Bankruptcy Code (except the Reorganized

6    Debtor will not object to any Abuse Claims, and no Abuse Claimant may object to the

7    Abuse Claim of any other Abuse Claimant) by filing the appropriate pleading in the

8    Bankruptcy Court at any time prior to the first Business Day which is at least 30 days

9    after the Effective Date.  No payments or other distributions will be made to the holder

10   of a Claim unless and until such Claim is an Allowed Claim or, in the case of a

11   permissible objection by an Abuse Claimant to an Abuse Claim, until liquidated by the

12   Abuse Claims Reviewer.  If a non-Abuse Claim is not an Allowed Claim on the Effective

13   Date, or when payment is otherwise due under the Plan, payment on the Allowed Claim

14   (plus interest, if any, as provided in the Plan) will be made as soon as practicable

15   following the Allowance Date.  Abuse Claims liquidated through an Allocation Plan will

16   be paid by the Trust as soon as practicable after liquidation by the Abuse Claims

17   Reviewer and the expiration of any time period for reconsideration of the decision of the

18   Abuse Claims Reviewer under an Allocation Plan.

19        **D.    <u>Administrative Claims Bar Date</u>.**

20        All requests for payment of Administrative Claims other than Current Obligations

21   must be served and filed with the Bankruptcy Court no later than 30 days after the

22   Effective Date.   Except as otherwise allowed by the Bankruptcy Court, any

23   Administrative Claim that is not served and filed by such date will be forever barred.

24   After approval of the final fee applications of the Chapter 11 Professionals by the

25   Bankruptcy Court for services provided and costs incurred during the course of

26

1 administration of the Case, the Chapter 11 Professionals will not be required to submit
2 any further fee applications to the Bankruptcy Court.

3     E.    **Discharge**.

4     **Sections 11.1 and 11.2 of the Plan provide the following with respect to the**
5 **Debtor's Discharge:**

6     *11.1 Discharge. Notwithstanding anything to the contrary in the Plan, on*
7 *the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the*
8 *Debtor ~~(other than Jesuit Community of Gonzaga University, Inc.)~~ and the*
9 *Reorganized Debtor will be discharged from all liability for any and all Claims and*
10 *Debts, known or unknown, whether or not giving rise to a right to payment or an*
11 *equitable remedy, that arose, directly or indirectly, from any action, inaction,*
12 *event, conduct, circumstance, happening, occurrence, agreement, or obligation*
13 *of the Debtor, or the Debtor's Representatives before the Confirmation Date, or*
14 *that otherwise arose before the Confirmation Date, including all interest, if any,*
15 *on any such Claims and Debts, whether such interest accrued before or after the*
16 *date of commencement of this Case, and including all Claims and Debts based*
17 *upon or arising out of Abuse, and from any liability of the kind specified in*
18 *Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a*
19 *proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy*
20 *Code; (b) such Claim is Allowed under this Plan; or (c) the holder of such Claim*
21 *has accepted this Plan.*

22     *11.1.1 Section 11.1 of the Plan does not apply to (a) the obligations*
23 *of any Non-Settling Insurers for any Claims; (b) the obligations arising under any*
24 *settlement agreement between the Debtor and any Settling Insurer approved by*
25 *the Bankruptcy Court, which are not and will not be discharged; (c) the*
26 *performance by the Reorganized Debtor of any and all obligations due to the Non-*

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    *Settling Insurers under their Insurance Policies with respect to any Abuse Claim,*

2    *and (d) (i) a Person or Persons having personally committed an act or acts of*

3    *Abuse resulting in a Claim against the Debtor or a Participating Party, (ii) the*

4    *Society of Jesus; (iii) the Father General of the Society of Jesus and his*

5    *predecessors, (iv) the Society of Jesus General Curia (v) a successor or*

6    *predecessor of the Debtor to the extent of such successor's or predecessor's*

7    *independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii)*

8    *Seattle University; and (viii) the Jesuit High Schools.*

9    *    11.2   Post-Petition Abuse Claims. Abuse Claims, other than Future Claims,*

10   *arising or occurring after the Petition Date will not be discharged, released or*

11   *impaired, with the exception of any Abuse Claim against a Settling Insurer.*

12   **F.    <u>Vesting of Property</u>.**

13   Except as otherwise expressly provided in the Plan or in the Confirmation Order,

14   on the Effective Date, the Reorganized Debtor will be vested with all of the property of

15   the Estate free and clear of all Claims, liens, encumbrances, charges and other interests

16   of Creditors and Claimants.  As of the Effective Date, the Reorganized Debtor may hold,

17   use, dispose, and otherwise deal with such property and conduct its affairs, in each

18   case, free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy

19   Court, other than those restrictions expressly imposed by the Plan, the Confirmation

20   Order, or the Plan Documents.

21   **G.    <u>Exculpation and Limitation of Liability and Injunctions</u>.**

22   **The Plan provides the following with respect to exculpation and limitation**

23   **of liability and injunctions:**

24   *    11.4  Exculpation And Limitation Of Liability.  Except as expressly*

25   *provided in this Plan, none of the Exculpated Parties will have or incur any*

26   *liability to, or be subject to any right of action by, any holder of a Claim, any other*

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ‖ FACSIMILE (503) 248-0130

1   *party in interest, or any of their respective agents, employees, representatives,*

2   *financial advisors, attorneys, or affiliates, or any of their successors or assigns,*

3   *for any act or omission in connection with, relating to, or arising out of the Case,*

4   *including the exercise of their respective business judgment and the performance*

5   *of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or*

6   *the administration of the Plan or the Trust, except liability for their willful*

7   *misconduct or gross negligence (provided however the Debtor and Reorganized*

8   *Debtor will be discharged from any such liability for such acts or omissions*

9   *occurring prior to the Confirmation Date), and in all respects, such parties will be*

10   *entitled to reasonably rely upon the advice of counsel with respect to their duties*

11   *and responsibilities under the Plan or in the context of the Case.*

12     *11.5 Supplemental Injunction Preventing Prosecution of Abuse Claims*

13   *Against Settling Insurers~~.~~ Pursuant to sections 105(a) and 363 of the Bankruptcy*

14   *Code, any and all Persons and Entities who now hold or who may in the future*

15   *hold Claims ~~or interests~~and Interests of any kind or nature (including all debt*

16   *holders, all equity holders, governmental, tax and regulatory authorities, lenders,*

17   *trade and other creditors, Abuse Claimants, other insurers, and all others holding*

18   *Claims or Interests of any kind or nature whatsoever) against the*

19   *~~Province,~~Debtor, the Reorganized Debtor, the Province, the Participating Parties,*

20   *the Settling Insurers, the Settling Insurer Other Releasing Parties, ~~Settling~~*

21   *~~Insurers,~~ or the Settling ~~Insurers' Insurance~~Insurer Policies, arising out of,*

22   *relating to, or in connection with the Settling ~~Insurers' Insurance~~Insurer Policies*

23   *or Abuse Claims are hereby permanently stayed, enjoined, barred, and restrained*

24   *from taking any action, directly or indirectly, to assert, to enforce or to attempt to*

25   *assert or enforce any such Claim ~~or Interest against Settling Insurers, and all of~~*

26   *~~their employees, officers, directors, shareholders, principals, parents, agents,~~*

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 ~~attorneys, and representatives, as well as the predecessors, successors,~~

2 ~~assignors, and assigns of Settling Insurers, in their capacity as such, and/or the~~

3 ~~Settling Insurers' Insurance~~and Interests against the Settling Insurers, the

4 Settling Insurer Released Parties, and/or the Settling Insurer Policies.

5 *11.6 Supplemental ~~Injunction~~Injunctions Preventing Prosecution of*

6 *Abuse Claims Against Safeco, Travelers, and Western World.*

7 **11.6.1** *In accordance with the Safeco Settlement Agreement and the*

8 *Approval Order that approved the Agreement (as defined in the Safeco Settlement*

9 *Agreement), pursuant to sections 105(a) and 363 of the Bankruptcy Code, any*

10 *and all Persons and Entities who now hold or who may in the future hold any*

11 *Claims (as defined in the Safeco Settlement Agreement) or Interests (as defined*

12 *in the Safeco Settlement Agreement) of any kind or nature (including, without*

13 *limitation, all debt holders, all equity holders, governmental, tax and regulatory*

14 *authorities, lenders, trade and other creditors, Tort Claim (as defined in the*

15 *Safeco Settlement Agreement) holders, other insurers, and all others holding*

16 *Claims (as defined in the Safeco Settlement Agreement) or Interests (as defined*

17 *in the Safeco Settlement Agreement) of any kind or nature whatsoever) against*

18 *SJOP, Safeco Other Releasing Parties, Safeco, Safeco Released Parties, or the*

19 *Safeco Policies, relating to or in connection with the Safeco Policies, Tort Claims*

20 *(as defined in the Safeco Settlement Agreement), or Abuse Claims (as defined in*

21 *the Plan), are hereby permanently stayed, enjoined, barred, and restrained from*

22 *taking any action, directly or indirectly, to assert, to enforce or to attempt to*

23 *assert or enforce any such Claim ~~(as defined in the Safeco Settlement~~*

24 *~~Agreement) or Interest against Safeco,~~ (as defined in the Safeco Settlement*

25 *Agreement) or Interest (as defined in the Safeco Settlement Agreement) against*

26 *Safeco, the Safeco Released Parties, and/or the Safeco Policies.*

| | |
|---|---|
| 1 | **11.6.2** *Pursuant to sections 105(a) and 363 of the Bankruptcy Code* |
| 2 | *and in consideration of the undertakings of Travelers pursuant to the Travelers* |
| 3 | *Settlement Agreement, including any of the Travelers' purchases of Travelers* |
| 4 | *Policies from the Debtor free and clear of all Claims (as defined in the Travelers* |
| 5 | *Settlement Agreement) and Interests pursuant to Section 363(f) of the Bankruptcy* |
| 6 | *Code, any and all Persons and Entities who have held, now hold or who may in* |
| 7 | *the future hold Claims (as defined in the Travelers Settlement Agreement) or* |
| 8 | *Interests of any kind or nature (including all debt holders, all equity holders,* |
| 9 | *governmental, tax and regulatory authorities, lenders, trade and other creditors,* |
| 10 | *Abuse Claimants, Future Abuse Claimants, Tort Claimants (as defined in the* |
| 11 | *Travelers Settlement Agreement), other insurers, and all others holding Claims or* |
| 12 | *Interests of any kind or nature whatsoever) against the Debtor, the Estate, the* |
| 13 | *Province, Travelers Other Releasing Parties, Travelers, Travelers Released* |
| 14 | *Parties, or the Travelers Policies, arising out of, relating to, or in connection with* |
| 15 | *the Travelers Policies, Abuse Claims, and/or Tort Claims (as defined in the* |
| 16 | *Travelers Settlement Agreement), are hereby permanently stayed, enjoined,* |
| 17 | *barred, and restrained from taking any action, directly or indirectly, to assert, to* |
| 18 | *enforce or to attempt to assert or enforce any such Claim (as defined in the* |
| 19 | *Travelers Settlement Agreement) or Interest against Travelers, Travelers* |
| 20 | *Released Parties, and/or the Travelers Policies.* |
| 21 | **11.6.3** *In accordance with the Western World Settlement Agreement* |
| 22 | *and the Approval Order that approved the Agreement (as defined in the Western* |
| 23 | *World Settlement Agreement), pursuant to sections 105(a) and 363 of the* |
| 24 | *Bankruptcy Code, any and all Persons and Entities who now hold or who may in* |
| 25 | *the future hold any Claims (as defined in the Western World Settlement* |
| 26 | *Agreement) or Interests (as defined in the Western World Settlement Agreement)* |

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

1  *of any kind or nature (including, without limitation, all debt holders, all equity*

2  *holders, governmental, tax and regulatory authorities, lenders, trade and other*

3  *creditors, Tort Claim (as defined in the Western World Settlement Agreement)*

4  *holders, other insurers, and all others holding Claims (as defined in the Western*

5  *World Settlement Agreement) or Interests (as defined in the Western World*

6  *Settlement Agreement) of any kind or nature whatsoever) against SJOP, Western*

7  *World Other Releasing Parties, Western World, Western World Released Parties,*

8  *or the Western World Policies, relating to or in connection with the Western*

9  *World Policies, Tort Claims (as defined in the Western World Settlement*

10  *Agreement), or Abuse Claims (as defined in the Plan), are hereby permanently*

11  *stayed, enjoined, barred, and restrained from taking any action, directly or*

12  *indirectly, to assert, to enforce or to attempt to assert or enforce any such Claim*

13  *(as defined in the Western World Settlement Agreement) or Interest (as defined in*

14  *the Western World Settlement Agreement) against Western World, the Western*

15  *World Released Parties, and/or the Western World Policies.*

16  *11.6.4 Any Insurer, other than Safeco, Travelers, and Western World,*

17  *that becomes a Settling Insurer and signs a settlement agreement substantially in*

18  *the form of the Safeco Settlement Agreement, shall be entitled to the benefits,*

19  *including all injunctions, as set forth in the form of settlement agreement signed*

20  *by such Insurer.*

21  *11.7  Channeling Injunction Preventing Prosecution of Abuse Claims*

22  *Against ~~Participating Parties, Released Parties, and Safeco~~Channeling Injunction*

23  *Beneficiaries.  In consideration of the undertakings of the ~~Participating Parties~~*

24  *~~and Released Parties~~Channeling Injunction Beneficiaries, pursuant to their*

25  *respective settlements with the Debtor and/or a Participating Party, the funding of*

26  *the Trust, other consideration, and to further preserve and promote the*

1  *agreements between* ~~*the Debtor, the Participating Parties, and the Released*~~
2  ~~*Parties*~~*and among the Channeling Injunction Beneficiaries, and the protections*
3  *afforded the* ~~*Participating Parties and the Released Parties*~~*Channeling Injunction*
4  *Beneficiaries, and pursuant to section 105 of the Bankruptcy Code*~~*,*~~*:*

5      *(a) any and all* ~~*Abuse Claims (and all such Claims against Safeco), and as*~~
6  ~~*to Safeco all Tort Claims as defined in the Safeco Settlement Agreement,*~~
7  ~~*against Safeco, the Participating Parties, and the Released Parties*~~*Channeled*
8  *Claims are channeled into the Trust; and*~~*,*~~

9      *(b) all Persons or Entities* ~~*which*~~*that have held or asserted,* ~~*which*~~*hold or*
10 *assert, or* ~~*which*~~*may in the future hold or assert,* ~~*an Enjoined*~~*any Channeled*
11 *Claim are hereby permanently stayed, enjoined, barred and restrained from taking*
12 *any action, directly or indirectly, for the purposes of asserting, enforcing, or*
13 *attempting to assert or enforce any* ~~*Enjoined*~~*Channeled Claim, including:*

14     *(i) commencing or continuing in any manner any action or other*
15 *proceeding of any kind with respect to any* ~~*Enjoined*~~*Channeled Claim against*
16 ~~*Safeco, any Participating Party, or Released Party, its*~~*any Channeling Injunction*
17 *Beneficiaries, their respective predecessors, successors, and assigns, or their*
18 *respective employees, officers, and directors, or against the property of any*
19 ~~*Participating Party or Released Party, its*~~*Channeling Injunction Beneficiaries,*
20 *their respective predecessors, successors, and assigns, or their respective*
21 *employees, officers, and directors;*

22     *(ii) enforcing, attaching, collecting or recovering, by any manner or*
23 *means, from* ~~*Safeco, any Participating Party, or Released Party, its*~~*any*
24 *Channeling Injunction Beneficiaries, their respective predecessors, successors,*
25 *and assigns, or their respective employees, officers, and directors, or from the*
26 *property of* ~~*Safeco, any Participating Party, or Released Party, its*~~*any Channeling*

1  *Injunction Beneficiaries, their respective* predecessors, successors, and assigns,

2  or their respective employees, officers, and directors, with respect to any such

3  ~~Enjoined~~*Channeled* Claim, any judgment, award, decree, or order against ~~Safeco,~~

4  ~~a Participating Party, or Released Party~~*any Channeling Injunction Beneficiaries,*

5  or other Person or Entity;

6  (iii) creating, perfecting or enforcing any lien of any kind against

7  ~~Safeco,~~ any ~~Participating Party, or Released Party, its~~*Channeling Injunction*

8  *Beneficiaries, their respective* predecessors, successors, and assigns, or their

9  respective employees, officers, and directors, or the property of ~~Safeco, any~~

10  ~~Participating Party, or Released Party, its~~*any Channeling Injunction Beneficiaries,*

11  *their respective* predecessors, successors, and assigns, or their respective

12  employees, officers, and directors, with respect to any such ~~Enjoined~~*Channeled*

13  Claim; and

14  (iv) asserting, implementing or effectuating any ~~Enjoined~~*Channeled*

15  Claim of any kind against *:*

16  (1) any obligation due ~~Safeco, any Participating Party, or~~

17  ~~Released Party, its~~*any Channeling Injunction Beneficiaries, their respective*

18  predecessors, successors, and assigns, or their respective employees, officers,

19  and directors~~, (2) Safeco, any Participating Party, or Released Party, its~~*;*

20  *(2) any Channeling Injunction Beneficiaries, their respective*

21  predecessors, successors, and assigns, or their respective employees, officers,

22  and directors~~,~~*;* or

23  (3) the property of ~~Safeco, any Participating Party, or Released~~

24  ~~Party, its~~*any Channeling Injunction Beneficiaries, their respective* predecessors,

25  successors, and assigns, or their respective employees, officers and directors,

26  with respect to any such ~~Enjoined~~*Channeled* Claim.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    Notwithstanding any provision of this Plan, the foregoing "Channeling
2    Injunction Preventing Prosecution of Abuse Claims Against ~~Participating Parties,~~
3    ~~Released Parties, and Safeco~~Channeling Injunction Beneficiaries" provides
4    absolutely no protection to (i) a Person or Persons having personally committed
5    an act or acts of Abuse resulting in a Claim against the Debtor or a Participating
6    Party, (ii) the Society of Jesus; (iii) the Father General of the Society of Jesus and
7    his predecessors, (iv) the Society of Jesus General Curia; (v) a successor or
8    predecessor of the Debtor to the extent of such successor's or predecessor's
9    independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii)
10   Seattle University; and (viii) the Jesuit High Schools.

11        11.7.1        To the extent not otherwise enjoined in Section 11.6,
12   assertion and enforcement of ~~Abuse Claims, and Tort Claims as defined in the~~
13   ~~Safeco Settlement Agreement~~Channeled Claims, and any attempt to assert or
14   enforce such Claims, by any Person or ~~entity, against Safeco (as defined in the~~
15   ~~Safeco Settlement Agreement), or the Safeco Released Entities (as defined in the~~
16   ~~Safeco Settlement Agreement),~~Entity, against Safeco, the Safeco Released
17   Parties, Travelers, the Travelers Released Parties, Western World, and the
18   Western World Released Parties is hereby permanently stayed, enjoined, barred,
19   and restrained.

20   ~~11.7.2  Notwithstanding anything to the contrary in section 11.5 of the Plan that~~
21   ~~applies to Settling Insurers other than Safeco, and pursuant~~        11.7.2
22   Pursuant to Paragraph N of the [Proposed] Order Approving Settlement
23   Agreement with Safeco Including Sale of Insurance Policies, ~~Safeco is~~and
24   Section 1.1.21 of the Safeco Settlement Agreement, Safeco, the Safeco Released
25   Parties, Travelers, the Travelers Released Parties, Western World, and the
26   Western World Released Parties are entitled to and hereby shall receive the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  *benefits and protections of the injunctions in Sections 11.5 and 11.7 of this Plan*

2  *as if Section 11.5 and 11.7 of the Plan applied specifically to Safeco, the Safeco*

3  *Released Parties, Travelers, the Travelers Released Parties, Western World, and*

4  *the Western World Released Parties.*

5  **11.8   Term of Injunctions or Stays and Confirmation of Settlements With**

6  *Settling Insurers, Released Parties, and Participating Parties.   All injunctions*

7  *and/or stays provided for in this Plan, the injunctive provisions of Sections 524*

8  *and 1141 of the Bankruptcy Code, and all injunctions or stays protecting aSafeco,*

9  *the Safeco Released Parties, Travelers, the Travelers Released Parties, Western*

10  *World, the Western World Released Parties, Settling Insurers, Settling Insurer*

11  *Released Party, Released Parties, and/or Participating PartyParties, and their*

12  *respective predecessors, successors, and assigns, including aSafeco, Travelers,*

13  *Western World, or any other Settling Insurer that has purchased its Insurance*

14  *Policy or Policies in a Section 363 Sale, are permanent and will remain in full*

15  *force and effect following the Effective Date and are not subject to being vacated*

16  *or modified.   Debtor's settlement agreements, if any, with Safeco, Travelers,*

17  *Western World, the Settling Insurers, the Released Parties, and the Participating*

18  *Parties previously authorized by the Bankruptcy Court are hereby affirmed and*

19  *any obligations of Debtor with respect to such settlement agreements shall be*

20  *assumed by the Reorganized Debtor and Trustee, as applicable, on the Effective*

21  *Date.   None of the injunctions or stays under the Plan provide any protection*

22  *whatsoever to (i) a Person or Persons having personally committed an act or acts*

23  *of Abuse resulting in a Claim against the Debtor or a Participating Party, (ii) the*

24  *Society of Jesus; (iii) the Father General of the Society of Jesus and his*

25  *predecessors or (iv) the Society of Jesus General Curia; (v) a successor or*

26  *predecessor of the Debtor to the extent of such successor's or predecessor's*

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

1 **independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii)**

2 **Seattle University; and (viii) the Jesuit High Schools.**

3       H.    <u>Reservation of Rights</u>.

4       Except as expressly provided in the Plan and this Disclosure Statement, the Plan

5 will have no force or effect unless the Confirmation Order is entered by the Bankruptcy

6 Court and the Effective Date has occurred.  The filing of the Plan, any statement or

7 provision contained in the Plan or in this Disclosure Statement, or the taking of any

8 action by the Debtor or Proponents with respect to the Plan will not be, or be deemed to

9 be, an admission or waiver of any rights of the Debtor or Proponents.

10 **V.    POST-CONFIRMATION MANAGEMENT OF REORGANIZED DEBTOR.**

11       The administration of the Reorganized Debtor will continue as before the Petition

12 Date with the Provincial being the president and sole member of the Reorganized

13 Debtor.  Pursuant to the Society's vow of poverty, the Provincial will receive no

14 monetary compensation for his services to the Reorganized Debtor but his needs and

15 expenses will be taken care of by the Jesuit Community of which he is a member.

16 **VI.    FEDERAL TAX CONSEQUENCES.**

17       THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF

18 THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN.  ACCORDINGLY,

19 ALL HOLDERS OF CLAIMS ARE STRONGLY URGED TO CONSULT THEIR TAX

20 ADVISORS WITH SPECIFIC REFERENCE TO THE FEDERAL, STATE, AND LOCAL

21 TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO SUCH HOLDER.

22 NEITHER THE PROPONENTS NOR THEIR COUNSEL MAKE ANY

23 REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF

24 CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO THE DEBTOR OR

25 ANY CREDITOR.

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1         Under the Internal Revenue Code of 1986, as amended, there may be significant

2 federal income tax issues arising under the Plan described in this Disclosure Statement

3 that affect Creditors in the case. The Trust is structured as a "qualified settlement fund"

4 ("QSF") within the meaning of Treasury Regulations enacted under Internal Revenue

5 Code Section 486B(g). The Trust is characterized as a QSF because:

6         1.     The Trust will be established pursuant to an order of, or be

7 approved by, the United States, any state or political subdivision thereof, or any agency

8 or instrumentality (including a court of law) of any of the foregoing and will be subject to

9 the continuing jurisdiction of that governmental authority;

10         2.     The Trust will be established to resolve or satisfy one or more

11 contested or uncontested claims that have resulted or may result from an event that has

12 occurred and that has given rise to at least one claim asserting liability arising out of,

13 among other things, a tort, breach of contract, or violation of law (but excluding non-tort

14 obligations of the Debtor to make payments to its general trade creditors or debt holders

15 that relates to: a case under Title 11 of the United States Code, a receivership,

16 foreclosure of similar proceeding in a federal or state court, or a workout); and

17         3.     The Trust will be a trust under state law.

18      The primary tax consequences of the Trust being characterized as a QSF are the

19 following:

20         (a)     the Trust must use a calendar taxable year and the accrual

21 method of accounting;

22         (b)     the Trust takes a fair market value basis in property

23 contributed to it by the Debtor and others;

24         (c)     the Trust's income is taxed to the trust; and,

25         (d)     the Trust will have a separate taxpayer identification number.

26      The Trust will be required to comply with a number of other administrative tax

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 Ɩ FACSIMILE (503) 248-0130

1　rules, including filing appropriate information returns (generally IRS Form 1099 - MISC)

2　when approved payments are made to an Abuse Claimant, their attorney, or other

3　designated payee such as a "qualified assignee" within the meaning of Section 130 of

4　the Internal Revenue Code of 1986, as amended. It is not practicable to present a

5　detailed explanation of every possible federal and state income tax ramifications of the

6　Trust or the Plan.

7　　　　4.　　The Trust will pay taxes (if any) relating to its income and to distributions

8　pursuant to the Plan, and/or the Trust and will retain reserves to do so.  The Debtor and

9　the Reorganized Debtor will have no tax liability or reporting obligations with respect

10　related to the Trust's income or distributions pursuant to the Plan and/or the Trust.

11　**VII.　ACCEPTANCE AND CONFIRMATION.**

12　　　　**A.　Voting Procedures.**

13　　　　　　**1.　Generally**.

14　　　　Only the FCR and those Creditors whose Claims fall within one or more

15　classes that are impaired under the Plan are eligible to vote to accept or reject the Plan.

16　In that regard, only the FCR and holders of Allowed or Temporarily Allowed Claims in

17　Classes 3, 4, 6, 7, 10 and 15 are entitled to vote on the Plan. Classes 1, 2, 5, 9, 12, and

18　14 are not impaired under the Plan and are deemed to have accepted the Plan without

19　voting. Classes 8, 11, and 13 will not receive or retain any property under the Plan and

20　are deemed to have rejected the Plan without voting. The Debtor reserves the right to

21　supplement this Disclosure Statement (if necessary) and to solicit any of those Classes

22　which may prove to be impaired and entitled to vote.

23　　　　Separate Ballots will be sent to the FCR and known holders of Claims whether or

24　not such Claims are Disputed.  However, only the FCR and holders of Allowed or

25　Temporarily Allowed Claims in one or more impaired classes are entitled to vote on the

26　Plan.  A Claim to which an objection has been filed is not an Allowed Claim unless and

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    until the Bankruptcy Court rules on the objection and enters an order allowing the Claim.

2    The holder of a Disputed Claim is not entitled to vote on the Plan unless the holder of

3    such Claim requests that the Bankruptcy Court, pursuant to Bankruptcy Rule 3018,

4    temporarily allow the Claim in an appropriate amount solely for the purpose of enabling

5    the holder of such Disputed Claim to vote on the Plan, and the Bankruptcy Court does

6    so.

7             2.    **Current Abuse Claimant and FCR Elections.** All Current Abuse

8    Claimants and the FCR must make the following elections, as applicable, on the Ballot

9    for accepting or rejecting the Plan:

10                  a.    Current Abuse Claims will be deemed to be Abuse

11   Claims to be liquidated through the Creditor Pools, Class 3A, and the Allocation Plans

12   indicated on the Abuse Claimant's Ballot unless: (a) an objection to the Claim is filed

13   prior to the final hearing on the Disclosure Statement, or (b) the Abuse Claimant

14   affirmatively elects on the ballot for accepting or rejecting the Plan to have the Abuse

15   Claim treated as either a Litigation Current Abuse Claim or a Convenience Abuse

16   Claim, or (c) the Abuse Claimants elects to participate in a different Creditor Pool or

17   Allocation Plan than those indicated on the Abuse Claimant's Ballot. Litigation Current

18   Abuse Claimants will be required to litigate their Abuse Claims against the Reorganized

19   Debtor with the Allowed amount of the Abuse Claim being determined by trial,

20   settlement, or dismissal; provided that the non-Insurance assets of the Reorganized

21   Debtor are not liable for Allowed Litigation Abuse Claims and the Reorganized Debtor

22   will have no personal responsibility or liability for the payment of such Claims.  Current

23   Abuse Claimants may have the liquidated amount of their Claims determined by the

24   Abuse Claims Reviewer pursuant to an Allocation Plan without the need for trial.

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     **b.**  Future Abuse Claims will be liquidated pursuant to Allocation

2 Plan I administered by Hon William Bettinelli, Ret. by the FCR's acceptance of the Plan

3 on behalf of all Future Abuse Claimants.

4     **3.**  **Incomplete Ballots.**

5     Ballots which are signed, dated, and timely received, but on which a vote

6 to accept or reject the Plan has not been indicated, will not be counted as a vote either

7 to accept or to reject the Plan or as a vote cast with respect to the Plan.

8 Notwithstanding the foregoing, the designation of Creditor Pools and Allocation Plans

9 on the Ballot will be applicable to the Abuse Claimant identified on such Ballot.

10 *//*

11     **4.**  **Withdrawal Of Ballots; Revocation.**

12     The FCR and any Creditor which has delivered a Ballot accepting or

13 rejecting the Plan may withdraw such acceptance or rejection by delivering a written

14 notice of withdrawal to the Debtor's attorneys, at any time prior to the voting deadline.

15     A notice of withdrawal, to be valid, must: (i) contain the description of the

16 Claim or Claims to which it relates and the amount of such Claim or Claims (except for

17 Future Abuse Claims); (ii) be signed by the FCR or Creditor in the same manner as the

18 Ballot; and (iii) be received by the Debtor's attorneys, Sussman Shank LLP, in a timely

19 manner at the address set forth below.

20     If an Abuse Claimant withdraws an acceptance but does not elect out of

21 the Creditor Pool and Allocation Plan indicated on the Ballot, the Claimant's Abuse

22 Claim will be treated in accordance with the indicated Creditor Pool and Allocation Plan.

23     Unless otherwise directed by the Bankruptcy Court, a purported notice of

24 withdrawal of Ballots or change in the vote which is not received in a timely manner will

25 not be effective to withdraw or change a previously furnished Ballot.

26     **5.**  **Submission Of Ballots.**

The form of Ballot for each of the Classes entitled to vote on the Plan will be sent to the FCR and all Creditors along with a copy of the Court-approved Disclosure Statement and a copy of the Plan. The FCR and Creditors should read the Disclosure Statement, Plan, and Ballot carefully. If the FCR or any Creditor has any questions concerning voting procedures, it may contact:

Attorneys for the Debtor:

Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205
Telephone: 503-227-1111
Facsimile: 503-248-0130
Attn: Thomas W. Stilley or Howard M. Levine
E-Mail: tstilley@sussmanshank.com
hlevine@sussmanshank.com
Or

Attorneys for the Creditors Committee:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067-4100
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Attn: James I. Stang
E-Mail: jstang@pszjlaw.com

Ballot(s) or withdrawals/revocations must be returned to ~~Omni Management Group, LLC~~ (the "~~Voting~~Balloting Agent") at the following addresses:

- If a Claimant files the ballot in person, by courier service, or by overnight delivery (e.g. FedEx), the ballot should be delivered to the following address, between the hours of 7:00 a.m. and 5:00 p.m., ~~Prevailing~~ Pacific Daylight Time, on business days:

    **Society of Jesus, Oregon Province ~~Case~~**
    **Balloting Agent**
    **c/o Omni Management Group, LLC**
    **16161 Ventura Blvd, Suite C**
    **PMB 478**
    **~~c/o TO BE DETERMINED~~Encino, CA 91436**

- If a Claimant files by the ballot by mail, the ballot should be mailed with sufficient lead time so that the ballot will be received at the following

1  address between the hours of 7:00 a.m. and ~~5~~4:00 p.m., ~~Prevailing~~
2  Pacific Daylight Time, on business days:

**Society of Jesus, Oregon Province ~~Case~~**
**Balloting Agent**
**c/o Omni Management Group, LLC**
**16161 Ventura Blvd, Suite C**
**PMB 478**
**~~c/o TO BE DETERMINED~~Encino, CA 91436**

7  • ~~If a Claimant files the ballot by fax, the ballot should be faxed to the~~
8  ~~following with sufficient lead time that the ballot will be received at the~~
   ~~following facsimile number by 5:00 p.m., Prevailing Pacific Time:~~

**~~TO BE DETERMINED~~**

11  Ballots (and withdrawals/revocations) must be received no later than ~~5~~4:00 p.m.,
12  ~~Prevailing~~ Pacific Daylight Time, on ~~_____,~~June 30, 2011.

13  **6.  Confirmation Hearing and Plan Objection Deadline.**

14  The Bankruptcy Court will hold a hearing on confirmation of the Plan
15  commencing on ~~_____,~~July 7, 2011 at ~~_____~~9:30 a.~~m./p~~.m. in the
16  Bankruptcy Courtroom No. 1, 1001 SW Fifth Avenue, 7th Floor, Portland, Oregon,
17  97204. All objections, if any, to the confirmation of the Plan must be in writing; must
18  state with specificity the grounds for any such objections; and must be filed with the
19  Bankruptcy Court on or before ~~_____, 2011:~~ June 30, 2011.

   **7.  Feasibility**

20  The Bankruptcy Code requires, as a condition to confirmation, that the
21  Bankruptcy Court find that liquidation of the Debtor or the need for future reorganization
22  is not likely to follow after confirmation. For the purpose of determining whether the
23  Plan meets this requirement, the Debtor has prepared projections attached hereto as
24  Exhibit "A" showing that the Reorganized Debtor will have the resources and ability to
25  pay those Claims that are due on confirmation of the Plan and all of the Reorganized

26

**Page 49 of ~~54~~54** – DISCLOSURE STATEMENT ~~CONCERNING~~REGARDING FIRST
MODIFIED JOINT PLAN OF REORGANIZATION DATED ~~APRIL 4,~~MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

1  Debtor's future obligations as they come due, and to make the contributions that the

2  Reorganized Debtor is required to make to the Trust upon confirmation of the Plan.

3  **B.    Best Interests Of Creditors.**

4  Under Section 1129(a)(7) of the Bankruptcy Code, the Plan must provide that

5  Creditors receive at least as much under the Plan as they would receive in a Chapter 7

6  liquidation of the Debtor.   The Debtor has agreed to provide funding to pay

7  Administrative and Priority Claims in full (estimated to be approximately $5,000,000),

8  and to provide $500,000 to pay non-priority General Unsecured Claims, resulting in a

9  dividend of approximately 50% to General Unsecured Creditors. In addition, the Trust

10  will receive approximately $43.1 million from the Debtor and Participating Parties,

11  approximately $~~118~~119.7 million in Insurance Recoveries from the ~~Settling~~

12  ~~Insurers~~Safeco, Travelers, and Western World, the Avoidance Actions, and Third Party

13  Derivative Claims. This is substantially more than the Debtor believes it would be

14  required to provide to Creditors if its assets were liquidated under Chapter 7. That is

15  because the majority of the funds being used to pay Claims are from settlement of the

16  Debtor's Insurance Claims against ~~its primary Insurer~~Safeco, Travelers, and Western

17  World and from assets that are held in the Formation Fund, Aged and Infirm Fund, and

18  Apostolic Works Fund, which the Debtor asserts are Charitable Trusts that the Debtor

19  contends would not be available to pay Claims, absent the settlement. That issue has

20  not been fully litigated but has been settled by the Debtor and the Committee to provide

21  funding for this Plan. Furthermore, the $~~118,000,000~~119.7 million being provided by

22  Safeco, Travelers, and Western World would not be available for distribution to all

23  Abuse Claimants in Chapter 7, but would only be available to each Claimant on a claim-

24  by-claim basis, and would ~~be~~ require the Claimant to personally pursue whatever

25  Insurance Coverage might be available for his or her Claim. Litigation over the extent of

26  the Debtor's assets that might be available to pay Claims and the extent of Insurance

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

| 1 | Coverage, would be prolonged, subject to appeals, very costly to the estate, and have |
| 2 | an uncertain outcome. As a result, the Proponents believe the Plan results in |
| 3 | significantly more to Creditors than would be available if the Debtor's assets were |
| 4 | liquidated in Chapter 7, thus satisfying the "best interest of creditors" test of Section |
| 5 | 1129(a)(7) of the Bankruptcy Code. |

6     **C.**    <u>**Confirmation Over Dissenting Class**</u>.

7      In the event that any impaired class of Claims does not accept the Plan, the

8 Bankruptcy Court may nevertheless confirm the Plan at the request of the Proponents if

9 all other requirements under Section 1129(a) of the Bankruptcy Code are satisfied, and

10 if, as to each impaired class which has not accepted the Plan, the Bankruptcy Court

11 determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with

12 respect to such non-accepting class. Each of these requirements is discussed below.

13     **1.**    <u>**No Unfair Discrimination**</u>.

14      The Plan "does not discriminate unfairly" if: (a) the legal rights of a

15 dissenting class are treated in a manner that is consistent with the treatment of other

16 classes whose legal rights are similar to those of the dissenting class; and (b) no class

17 receives payments in excess of that which it is legally entitled to receive for its claims.

18 The Proponents believe the Plan does not discriminate unfairly as to any impaired class

19 of Claims.

20     **2.**    <u>**Fair and Equitable Test**</u>.

21      The Bankruptcy Code establishes different "fair and equitable" tests for

22 Secured Claims and Unsecured Claims, as follows:

23     **(a)**    **Secured Creditors.** To satisfy the "fair and equitable"

24 requirement as to a class of Secured Claims, the Plan must, at a minimum, provide that

25 (i) each impaired secured creditor retains its liens securing a Secured Claim and

26 receives on account of its secured claim deferred cash payments having a present

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  value equal to the amount of its Allowed Secured Claim, (ii) each impaired secured

2  creditor realizes the "indubitable equivalent" of its Allowed Secured Claim, or (iii) the

3  property securing the Claim is sold free and clear of liens with such liens to attach to the

4  proceeds, and the liens against such proceeds are treated in accordance with clause (i)

5  or (ii) of this subparagraph (a).

6          **(b)**    **Unsecured Creditors.**  To satisfy the "fair and equitable"

7  requirement, to the extent it applies in this Case, as to a class of unsecured Claims, the

8  Plan must, at a minimum, provide that (i) each impaired unsecured creditor receives or

9  retains under the Plan property of a value equal to the amount of its Allowed Claim, or

10  (ii) the holders of Claims and interests that are junior to the Claims of the non-accepting

11  class do not receive or retain any property under the Plan on account of such Claims

12  and interests.

13  **VIII.**   **ALTERNATIVES TO THE PLAN.**

14  If the Plan is not confirmed, several different events could occur.  Among the

15  alternatives to the Plan are: (1) the Debtor could propose another plan providing for

16  different treatment of Claims; (2) a creditor or other interested party could propose a

17  competing plan; or (3) the Bankruptcy Court (after appropriate notice and hearing) could

18  dismiss the Case if no party is able to confirm a plan in a reasonable period of time.

19  **IX.**   **CONCLUSION.**

20  The Proponents believe the Plan provides the best alternative for paying Claims

21  as soon as possible and that the Plan is fair to and in the best interest of all Creditors

22  and other interested parties.  Any alternative plan could not make available the

23  approximately $43.1 million in Cash from the alleged charitable trust assets without

24  litigation and a court decision holding that those assets are available for payment of

25  Claims against the Debtor. The only potential assets not being utilized to provide

26  payment for Claims under the Plan are primarily those assets in the Apostolic Fund,

**Page 52 of ~~54~~54** – DISCLOSURE STATEMENT ~~CONCERNING~~REGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED ~~APRIL 4,~~MAY 27, 2011

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1187   Filed 05/27/11

1 Formation Fund, and Aged & Infirm Fund that are subject to donor-imposed restrictions.

2 If the Debtor is correct in its assertion that the charitable trust assets could not be

3 involuntarily used to pay Claims, the distribution to Creditors under any alternative

4 would be severely reduced from that being offered in the Plan.

5 **DATED:** ~~April 7,~~May 27, 2011.

6 **{SIGNATURES TO FOLLOW}**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   SOCIETY OF JESUS, OREGON PROVINCE, an Oregon
2   non-profit corporation,

3        /s/ *Michael A. Tyrrell, SJ for*
     *Patrick J. Lee, S.J.*
    By:_____
4        Patrick J. Lee, S.J., President

5   FUTURE CLAIMANTS REPRESENTATIVE

6   {TO BE PROVIDED}

7   _____
    Stephen S. Gray

8

9   SUSSMAN SHANK LLP

10       */s/ Thomas W. Stilley*
    By:_____
11       Thomas W. Stilley, OSB No. 883167
         Howard M. Levine, OSB No. 800730
12       Attorneys for Society of Jesus,
         Oregon     Province, an Oregon non-
13       profit corporation

14  PACHULSKI STANG ZIEHL & JONES
    LLP
15

16       */s/ James I. Stang*
    By:_____
17       James I. Stang, Admitted Pro Hac
    Vice
18       Pamela Egan Singer, OSB No.
    894231
19       Attorneys for the Official Committee of
         Unsecured Creditors

20

21

22  F:\CLIENTS\19620\004\PLAN & DISCLOSURE STATEMENT\P-DISCLOSURE STATEMENT FIRST MODIFIED (FINAL 0407112).DOC

23

24

25

26

**Page 54 of 5454** – DISCLOSURE STATEMENT CONCERNINGREGARDING FIRST MODIFIED JOINT PLAN OF REORGANIZATION DATED APRIL 4,MAY 27, 2011