1

2     Below is an Order of the Court.

3

4

5

6

7

ELIZABETH PERRIS
U.S. Bankruptcy Judge

8

9

10        IN THE UNITED STATES BANKRUPTCY COURT

11                DISTRICT OF OREGON

| | |
|---|---|
| 12   In re                       ) | Case No. 09-30938-elp11 |
| 13   SOCIETY OF JESUS, OREGON      ) | |
|     PROVINCE, an Oregon domestic nonprofit   ) | SECOND AMENDED ORDER |
| 14   religious corporation,             ) | CONFIRMING THIRD MODIFIED JOINT |
|                              ) | PLAN OF REORGANIZATION   (Dated |
| 15               Debtor.      ) | July 18, 2011) [Docket No. 1317] |
|                              ) | |
| 16                              ) | |

17       This matter comes before the Court on the Proponent's Motion to Correct Clerical

18 Mistake in Amended Confirmation Order [Docket No. 1327]. The Court having reviewed

19 the Motion and the Court's records and files and finding that the relief requested in the

20 motion is appropriate and warranted under the circumstances, and further finding that

21 no notice of the Motion need be given, the Amended Order Confirming the Plan is

22 corrected to provide as follows:

23       On April 4, 2011 the Proponents[1] filed their original Joint Plan of Reorganization

24

25 _____

26 [1] Unless otherwise stated in this Order, all initially capitalized terms used herein have
the same meanings as in the Plan.

**Page 1 of 16** – SECOND AMENDED ORDER CONFIRMING THIRD MODIFIED
JOINT PLAN OF REORGANIZATION   (Dated July 18, 2011) [Docket No. 1317]

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1 (Dated April 4, 2011) [Docket No. 1094] (the "Original Plan"). On April 7, 2011 the

2 Proponents filed their Disclosure Statement Regarding Joint Plan of Reorganization

3 Dated April 4, 2011 [Docket No. 1101] (the "Original Disclosure Statement"). On April

4 14, 2011 the Court entered its Notice of Hearing on Proposed Chapter 11 Disclosure

5 Statement [Docket No. 1110], which notice was served on all creditors and other

6 interested parties on April 20, 2011 [see Docket No. 1150]. On May 25, 2011 the Court

7 held a hearing to consider approval of the Original Disclosure Statement. Following that

8 hearing, on May 27, 2011 the Proponents filed their First Modified Joint Plan of

9 Reorganization (Dated May 27, 2011) [Docket No. 1186-1] (the "First Modified Plan"),

10 and Disclosure Statement Regarding First Modified Joint Plan of Reorganization Dated

11 May 27, 2011 [Docket No. 1187-1] (the "Disclosure Statement re First Modified Plan").

12 On May 27, 2011, the Court conducted a continued hearing and approved the

13 Disclosure Statement re First Modified Plan. On June 2, 2011, the First Modified Plan,

14 Disclosure Statement re First Modified Plan, and notice of the confirmation hearing were

15 provided to creditors and other interested in accordance with the Order: (A) Approving

16 Disclosure Statement; (B) Fixing Voting Record Date; (C) Approving Solicitation

17 Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and

18 Establishing Procedures for Voting on  Plan; (E) Scheduling Hearing and Establishing

19 Notice and Objection Procedures in Respect of Confirmation of Plan; and (F) Granting

20 Related Relief [Docket No. 1189] (the "Disclosure Statement Order"). On June 30, 2011

21 the Proponents filed their Second Modified Joint Plan of Reorganization (Dated June

22 30, 2011) [Docket No. 1244-1] (the "Second Modified Plan") which contained

23 modifications to the First Modified Plan agreed to between the Proponents and certain

24 creditors, including Seattle University.

25       On July 7, 2011 the Court held a hearing to consider confirmation of the Plan,

26 including the modifications included in both the First and Second Modified Plans (the

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1 "Confirmation Hearing"). Thomas W. Stilley, Howard M. Levine, Richard Hansen, and
2 James Murray appeared on behalf of the Debtor; James I. Stang and Paul Richler (by
3 telephone) appeared on behalf of the Official Committee of Unsecured Creditors,
4 Stephen S. Gray appeared as the Future Claims Representative. Ford Elsaesser
5 appeared on behalf of Bellarmine Preparatory School, Gonzaga Preparatory School,
6 Jesuit High School, and Seattle Preparatory School (collectively, the "Jesuit High
7 Schools") Other appearances are noted in the record. Following the Confirmation
8 Hearing, the Proponents filed their Third Modified Joint Plan of Reorganization (Dated
9 July 18, 2011) [Docket No. 1317] (the "Plan") which contains additional modifications
10 agreed to, and as directed by the Court, at the Confirmation Hearing. A copy of the Plan
11 is attached hereto and incorporated herein by reference.

12      In conjunction with the Confirmation Hearing, the Court considered: (a) the
13 pleadings filed by the Proponents, including the Proponents' Memorandum in Support of
14 Confirmation of Second Modified Joint Plan of Reorganization (Dated June 30, 2011)
15 filed on July 6, 2011 [Dkt. No. 1267]; (b) the Objection of Bellarmine Preparatory
16 School, Gonzaga Preparatory School, Jesuit High School, and Seattle Preparatory
17 School to Confirmation of Second Modified Joint Chapter 11 Plan of Reorganization,
18 filed on July 1, 2011 [Docket No. 1245] (the Jesuit High Schools' Objection); (c) the
19 Reply of Official Committee of Unsecured Creditors to Objection of Bellarmine
20 Preparatory School, Gonzaga Preparatory School, Jesuit High School, and Seattle
21 Preparatory School to Confirmation of Second Modified Joint Chapter 11 Plan of
22 Reorganization filed by the Committee filed on July 5, 2011 [Dkt. No. 1264; (d) the
23 Declaration of William Lockyear in Support of Confirmation of Second Modified Joint
24 Plan of Reorganization Dated June 30, 2011 filed on July 6, 2011 [Dkt. No. 1268] and
25 admitted into evidence; (e) the Declaration of Douglas R. Pahl in Support of
26 Confirmation of First Modified Joint Plan of Reorganization Dated May 27, 2011 filed on

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1    July 6, 2011 [Dkt. No. 1270] and admitted into evidence; (f) the Declaration of Cynthia

2    R. Koehler  filed on July 6, 2011 [Dkt. No. 1272] and admitted into evidence; (g) the

3    Declaration of Edward M. Zawitoski  filed on July 6, 2011 [Dkt. No. 1273] and admitted

4    into evidence; (h) the Declaration of Stephen S. Gray, the Future Claimants

5    Representative, in Support of Confirmation of Second Modified Plan of Reorganization

6    filed on July 6, 2011 [Dkt. No. 1271] and admitted into evidence; (i) the Declaration of

7    Anthony L. Atkinson in Support of Confirmation and in Response to Objections to

8    Confirmation of First Modified Joint Plan of Reorganization, filed on July 6, 2011 [Dkt.

9    No. 1269] and admitted into evidence; (j) the statements and arguments of counsel for

10   the Proponents; (k) the statements and arguments of creditors and others in support of

11   and in opposition to confirmation of the Plan, including the arguments of Ford

12   Elsaesser, who filed the Jesuit High Schools' Objection; (l) the Plan; (m) the Disclosure

13   Statement Regarding the First Modified Joint Plan of  Reorganization of Debtor (Dated

14   May 27, 2011) [Docket No. 1187; (n) the First Amended Summary of Acceptances and

15   Rejections filed on July 6, 2011 [Docket No. 1276]; (o) the Report of Administrative

16   Expenses filed on July 1, 2011 [Docket No. 1246]; (p) the First Plan Supplement filed by

17   the Debtor on July 5, 2011 regarding Traveler's Settlement  [Docket No. 1257]; (q) the

18   Second Plan Settlement filed on July 5, 2011 by the Debtor regarding the Western

19   World Settlement [Docket No. 1258]; and (r) the evidence admitted, adduced, and

20   proffered at the Confirmation Hearing, including offers of proof.

21       Based on the findings of fact and conclusions of law as stated on the record at

22   the hearing on July 7, 2011, and as more fully set forth in separate Findings of Fact and

23   Conclusions of Law entered in connection herewith, it is

24       ORDERED:

25       1.      The Plan, is confirmed in all respects.

26

**Page 4 of 16** – SECOND AMENDED ORDER CONFIRMING THIRD MODIFIED
JOINT PLAN OF REORGANIZATION  (Dated July 18, 2011) [Docket No. 1317]

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1    2.    All objections to confirmation of the Plan that have not been withdrawn,

2  waived, or settled are overruled on the merits.

3    3.    Each of the Plan Documents, including, but not limited to the following, are

4  approved:

5              a. Society of Jesus, Oregon Province Trust Agreement for Qualified

6                 Settlement Fund (Exhibit 1.147 to the Plan);

7              b. Settlement Agreement, Release, and Policy Buyback between the

8                 Debtor and Safeco (Exhibit 1.130 to the Plan);

9              c. Settlement Agreement, Release, and Policy Buyback between the

10                Debtor and Travelers (Exhibit 1.145(e) to the Plan);

11             d. Settlement Agreement, Release, and Policy Buyback between the

12                Debtor and Western World (Exhibit 1.159 to the Plan);

13             e. Allocation Plan I (Exhibit 1.9 to the Plan);

14             f. Allocation Plan II Exhibit 1.10 to the Plan); and

15             g. Allocation Plan III (Exhibit 1.11 to the Plan).

16    4.    Pursuant to 11 USC § 1146(c), the issuance, transfer, or exchange of any

17  security, or the making, delivery, filing, or recording of any instrument of transfer, under,

18  in furtherance of, or in connection with the Plan shall not be taxed under any law

19  imposing a recording tax, stamp tax, transfer tax, or similar tax.  All filing or recording

20  officers, wherever located and by whomever appointed, are hereby directed to accept

21  for filing or recording, and to file or record upon presentation thereof, all instruments of

22  transfer without payment of any recording tax, stamp tax, transfer tax, or similar tax

23  imposed by federal, state, or local law.

24    5.    The Plan provides for the following injunctions against conduct not

25  otherwise enjoined under Bankruptcy Code, which are being set forth herein (including

26

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1 references to the sections numbers of the Plan), and are part of this Order pursuant to

2 Bankruptcy Rule 3020(c):

3 **"11.5 Supplemental Injunction Preventing Prosecution of Abuse Claims
Against Settling Insurers.** Pursuant to sections 105(a) and 363 of the Bankruptcy
4 Code, any and all Persons and Entities who now hold or who may in the future hold
Claims and Interests of any kind or nature (including all debt holders, all equity holders,
5 governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse
Claimants, other insurers, and all others holding Claims or Interests of any kind or
6 nature whatsoever) against the Debtor, the Reorganized Debtor, the Province, the
Participating Parties, the Settling Insurers, the Settling Insurer Other Releasing Parties,
7 or the Settling Insurer Policies, arising out of, relating to, or in connection with the
Settling Insurer Policies or Abuse Claims are hereby permanently stayed, enjoined,
8 barred, and restrained from taking any action, directly or indirectly, to assert, to enforce
or to attempt to assert or enforce any such Claim and Interests against the Settling
9 Insurers, the Settling Insurer Released Parties, and/or the Settling Insurer Policies.

10 **11.6 Supplemental Injunctions Preventing Prosecution of Abuse Claims
Against Safeco, Travelers, and Western World.**
11
12 *11.6.1* In accordance with the Safeco Settlement Agreement and the
Approval Order that approved the Agreement (as defined in the Safeco Settlement
13 Agreement), pursuant to sections 105(a) and 363 of the Bankruptcy Code, any and all
Persons and Entities who now hold or who may in the future hold any Claims (as
14 defined in the Safeco Settlement Agreement) or Interests (as defined in the Safeco
Settlement Agreement) of any kind or nature (including, without limitation, all debt
15 holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade
and other creditors, Tort Claim (as defined in the Safeco Settlement Agreement)
16 holders, other insurers, and all others holding Claims (as defined in the Safeco
Settlement Agreement) or Interests (as defined in the Safeco Settlement Agreement) of
17 any kind or nature whatsoever) against SJOP, Safeco Other Releasing Parties, Safeco,
Safeco Released Parties, or the Safeco Policies, relating to or in connection with the
18 Safeco Policies, Tort Claims (as defined in the Safeco Settlement Agreement), or Abuse
Claims (as defined in the Plan), are hereby permanently stayed, enjoined, barred, and
19 restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt
to assert or enforce any such Claim (as defined in the Safeco Settlement Agreement) or
20 Interest (as defined in the Safeco Settlement Agreement) against Safeco, the Safeco
Released Parties, and/or the Safeco Policies.

21 11.6.2 Pursuant to sections 105(a) and 363 of the Bankruptcy Code and in
consideration of the undertakings of Travelers pursuant to the Travelers Settlement
22 Agreement, including any of the Travelers' purchases of Travelers Policies from the
Debtor free and clear of all Claims (as defined in the Travelers Settlement Agreement)
23 and Interests pursuant to Section 363(f) of the Bankruptcy Code, any and all Persons
and Entities who have held, now hold or who may in the future hold Claims (as defined
24 in the Travelers Settlement Agreement) or Interests of any kind or nature (including all
debt holders, all equity holders, governmental, tax and regulatory authorities, lenders,
25 trade and other creditors, Abuse Claimants, Future Abuse Claimants, Tort Claimants
(as defined in the Travelers Settlement Agreement), other insurers, and all others
26 holding Claims or Interests of any kind or nature whatsoever) against the Debtor, the

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

Estate, the Province, Travelers Other Releasing Parties, Travelers, Travelers Released Parties, or the Travelers Policies, arising out of, relating to, or in connection with the Travelers Policies, Abuse Claims, and/or Tort Claims (as defined in the Travelers Settlement Agreement), are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt to assert or enforce any such Claim (as defined in the Travelers Settlement Agreement) or Interest against Travelers, Travelers Released Parties, and/or the Travelers Policies.

11.6.3 In accordance with the Western World Settlement Agreement and the Approval Order that approved the Agreement (as defined in the Western World Settlement Agreement), pursuant to sections 105(a) and 363 of the Bankruptcy Code, any and all Persons and Entities who now hold or who may in the future hold any Claims (as defined in the Western World Settlement Agreement) or Interests (as defined in the Western World Settlement Agreement) of any kind or nature (including, without limitation, all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claim (as defined in the Western World Settlement Agreement) holders, other insurers, and all others holding Claims (as defined in the Western World Settlement Agreement) or Interests (as defined in the Western World Settlement Agreement) of any kind or nature whatsoever) against SJOP, Western World Other Releasing Parties, Western World, Western World Released Parties, or the Western World Policies, relating to or in connection with the Western World Policies, Tort Claims (as defined in the Western World Settlement Agreement), or Abuse Claims (as defined in the Plan), are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt to assert or enforce any such Claim (as defined in the Western World Settlement Agreement) or Interest (as defined in the Western World Settlement Agreement) against Western World, the Western World Released Parties, and/or the Western World Policies.

11.6.4 Any Insurer, other than Safeco, Travelers, and Western World, that becomes a Settling Insurer and signs a settlement agreement substantially in the form of the Safeco Settlement Agreement, shall be entitled to the benefits, including all injunctions, as set forth in the form of settlement agreement signed by such Insurer.

**11.7 Channeling Injunction Preventing Prosecution of Abuse Claims Against Channeling Injunction Beneficiaries.** In consideration of the undertakings of the Channeling Injunction Beneficiaries, pursuant to their respective settlements with the Debtor and/or a Participating Party, the funding of the Trust, other consideration, and to further preserve and promote the agreements between and among the Channeling Injunction Beneficiaries, and the protections afforded the Channeling Injunction Beneficiaries, and pursuant to section 105 of the Bankruptcy Code:

(a) any and all Channeled Claims are channeled into the Trust; and

(b) all Persons or Entities that have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim, including:

(i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any Channeling

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors, or against the property of any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors;

(ii) enforcing, attaching, collecting or recovering, by any manner or means, from any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors, or from the property of any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors, with respect to any such Channeled Claim, any judgment, award, decree, or order against any Channeling Injunction Beneficiaries, or other Person or Entity;

(iii) creating, perfecting or enforcing any lien of any kind against any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors, or the property of any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors, with respect to any such Channeled Claim; and

(iv) asserting, implementing or effectuating any Channeled Claim of any kind against:

(1) any obligation due any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors;

(2) any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers, and directors; or

(3) the property of any Channeling Injunction Beneficiaries, their respective predecessors, successors, and assigns, or their respective employees, officers and directors, with respect to any such Channeled Claim.

Notwithstanding any provision of [the] Plan, the foregoing "Channeling Injunction Preventing Prosecution of Abuse Claims Against Channeling Injunction Beneficiaries" provides absolutely no protection to (i) a Person or Persons having personally committed an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party, (ii) the Society of Jesus; (iii) the Father General of the Society of Jesus and his predecessors, (iv) the Society of Jesus General Curia; (v) a successor or predecessor of the Debtor to the extent of such successor's or predecessor's independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High Schools.

11.7.1 To the extent not otherwise enjoined in Section 11.6, assertion and enforcement of Channeled Claims, and any attempt to assert or enforce such Claims, by any Person or Entity, against Safeco, the Safeco Released Parties, Travelers, the Travelers Released Parties, Western World, and the Western World Released Parties is hereby permanently stayed, enjoined, barred, and restrained.

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

11.7.2 Safeco, the Safeco Released Parties, Travelers, the Travelers Released Parties, Western World, and the Western World Released Parties are entitled to and hereby shall receive the benefits and protections of the injunctions in Sections 11.5 and 11.7 of [the] Plan as if Section[s] 11.5 and 11.7 of the Plan applied specifically to Safeco, the Safeco Released Parties, Travelers, the Travelers Released Parties, Western World, and the Western World Released Parties.

**11.8 Term of Injunctions or Stays and Confirmation of Settlements With Settling Insurers, Released Parties, and Participating Parties.** All injunctions and/or stays provided for in [the] Plan [and this Confirmation Order], the injunctive provisions of Sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting Safeco, the Safeco Released Parties, Travelers, the Travelers Released Parties, Western World, the Western World Released Parties, Settling Insurers, Settling Insurer Released Party, Released Parties, and/or Participating Parties, and their respective predecessors, successors, and assigns, including Safeco, Travelers, Western World, or any other Settling Insurer that has purchased its Insurance Policy or Policies in a Section 363 Sale, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified. Debtor's settlement agreements, if any, with Safeco, Travelers, Western World, the Settling Insurers, the Released Parties, and the Participating Parties previously authorized by the Bankruptcy Court are hereby affirmed and any obligations of Debtor with respect to such settlement agreements shall be assumed by the Reorganized Debtor and Trustee, as applicable, on the Effective Date. None of the injunctions or stays under the Plan provide any protection whatsoever to (i) a Person or Persons having personally committed an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party, (ii) the Society of Jesus; (iii) the Father General of the Society of Jesus and his predecessors or (iv) the Society of Jesus General Curia; (v) a successor or predecessor of the Debtor to the extent of such successor's or predecessor's independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High Schools."

6.    The Plan provides for certain releases which are being set forth herein and are part of this Order:

**"11.9 Release of Avoidance Claims Against Participating Parties and Settling Insurers.** On the Effective Date, all Avoidance Claims, including those arising under Sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code, against each of the Participating Parties and the Settling Insurers, and the Debtor and Reorganized Debtor as trustee of the Arcas (and any other Person or Entity that may be determined to be a trustee of the Arcas), and each of their predecessors, successors, and assigns, shall be deemed settled, compromised, and released by [the] Plan [and this Confirmation Order]. The foregoing release has absolutely no application to the Avoidance Actions set forth on Exhibit 11.9 of the Plan.

**11.10 Release of Claims Against Seattle University.** Except for obligations arising under any executory contract assumed by Reorganized Debtor pursuant to Section 12.2 of [the] Plan, [o]n the Effective Date, Debtor, Reorganized Debtor and the Estate waive, release and discharge any and all claims or causes of action of every kind and nature that Debtor, Reorganized Debtor, or the Estate have or may have against

**Page 9 of 16** – SECOND AMENDED ORDER CONFIRMING THIRD MODIFIED JOINT PLAN OF REORGANIZATION (Dated July 18, 2011) [Docket No. 1317]

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Seattle University, including any Third Party Derivative Claims, Avoidance Claims, and any claim that Seattle University or its assets are a part of or owned by Debtor or the Estate. No such claim will survive the Effective Date or be deemed to be assigned to the Trust."

7. In order to identify the Debtor for purposes of litigation as provided in sections 5.4.2 and 6.9(c) of the Plan, the Debtor shall be designated solely as "POJS".

8. Except as otherwise provided in this Order, this Order supersedes any Court order entered prior hereto that may be inconsistent herewith or with the Plan.

9. (a) Pursuant to Section 11.1 of the Plan, and notwithstanding anything to the contrary in the Plan or this Order, on the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtor and the Reorganized Debtor will be discharged from all liability for any and all Claims and Debts, known or unknown, whether or not giving rise to a right to payment or an equitable remedy, that arose, directly or indirectly, from any action, inaction, event, conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtor, or the Debtor's Representatives before the Confirmation Date, or that otherwise arose before the Confirmation Date, including all interest, if any, on any such Claims and Debts, whether such interest accrued before or after the date of commencement of this Case, and including all Claims and Debts based upon or arising out of Abuse, and from any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim is filed or is deemed filed under Section 501 of the Bankruptcy Code; (b) such Claim is Allowed under the Plan; or (c) the holder of such Claim has accepted the Plan.

(b) Neither Section 11.1 of the Plan nor Paragraph 9(a) of this Order apply to (a) the obligations of any Non-Settling Insurers for any Claims; (b) the obligations arising under any settlement agreement between the Debtor and any Settling Insurer approved by the Bankruptcy Court, which are not and will not be discharged; (c) the performance by the Reorganized Debtor of any and all obligations

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1     due to the Non-Settling Insurers under their Insurance Policies with respect to any

2     Abuse Claim; and (d) (i) a Person or Persons having personally committed an act or

3     acts of Abuse resulting in a Claim against the Debtor or a Participating Party, (ii) the

4     Society of Jesus, (iii) the Father General of the Society of Jesus and his predecessors,

5     (iv) the Society of Jesus General Curia, (v) a successor or predecessor of the Debtor to

6     the extent of such successor's or predecessor's independent liability for an act or acts of

7     Abuse, (vi) Gonzaga University, (vii) Seattle University, and (viii) the Jesuit High

8     Schools.

9            (c)     Abuse Claims, other than Future Abuse Claims, arising or occurring

10    after the Petition Date will not be discharged, released or impaired, with the exception of

11    any Claim against a Settling Insurer relating to an Abuse Claim, as provided in the

12    Settling Insurer's Settlement Agreement and/or the Plan.

13         10.     The assumption and/or assignment of all unexpired leases and executory

14    contracts that, pursuant to the Plan, are being assumed and/or assigned, is hereby

15    approved. Any and all executory contracts and unexpired leases of the Debtor

16    (including, without limitation, employee and retiree benefit plans and collective

17    bargaining agreements) assumed pursuant to the Plan shall remain in full force and

18    effect for the benefit of the Reorganized Debtor.

19         11.     In consideration for the classification, distributions, and other benefits

20    provided under the Plan, the provisions of the Plan shall constitute a good faith

21    compromise and settlement of all Claims or controversies resolved pursuant to the Plan.

22    The entry of this Order shall constitute the Court's approval of each of the compromises

23    and settlements provided for in the Plan, including, without limitation, the following:

24            (a)     Settlement of the Property of the Estate Litigation. Specifically

25    included within the Court's approval of compromises and settlements of Claims and

26    controversies is the Court's approval of the settlement and compromise reached

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1  between the Debtor and the Committee of that certain adversary proceeding entitled

2  *Official Committee of Unsecured Creditors v. Society of Jesus, Oregon Province, et al*,

3  Adversary Proceeding No. 10-3275-elp, filed on September 23, 2010 (the "Estate

4  Property Litigation").  Pursuant to that settlement, on the Effective Date, and without the

5  need for the execution of any further documents the Estate Property Litigation will be

6  dismissed, with prejudice;

7  (b)  Settlement with Safeco. Specifically included within the Court's

8  approval of compromises and settlements of Claims and controversies is the Court's

9  approval of the Safeco Settlement Agreement.  The Safeco Settlement Agreement is

10  incorporated in the Plan by reference.  If a conflict exists between the Plan and the

11  Safeco Settlement Agreement, the Safeco Settlement Agreement controls such conflict.

12  The Safeco Settlement Agreement controls the protections and benefits afforded

13  Safeco and the Safeco Released Parties under the Safeco Settlement Agreement, as

14  well as the rights and obligations of the parties thereto, to the extent of any conflict with

15  the Plan.  The Safeco Settlement Agreement is binding on the Trust;

16  (c)  Settlement with Travelers.  Specifically included within the Court's

17  approval of compromises and settlements of Claims and controversies is the Court's

18  approval of the Travelers Settlement Agreement.  The Travelers Settlement Agreement

19  is incorporated in the Plan by reference.  If a conflict exists between the Plan and the

20  Travelers Settlement Agreement, the Travelers Settlement Agreement controls such

21  conflict. The Travelers Settlement Agreement controls the protections and benefits

22  afforded Travelers and the Travelers Released Parties under the Travelers Settlement

23  Agreement, as well as the rights and obligations of the parties thereto, to the extent of

24  any conflict with the Plan.  The Travelers Settlement Agreement is binding on the Trust;

25  and

26

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1    (d)  Settlement with Western World. Specifically included within the

2 Court's approval of compromises and settlements of Claims and controversies is the

3 Court's approval of the Western World Settlement Agreement.  The Western World

4 Settlement Agreement is incorporated in the Plan by reference.  If a conflict exists

5 between the Plan and the Western World Settlement Agreement, the Western World

6 Settlement Agreement controls such conflict.  The Western World Settlement

7 Agreement controls the protections and benefits afforded Western World and the

8 Western World Released Parties under the Western World Settlement Agreement, as

9 well as the rights and obligations of the parties thereto, to the extent of any conflict with

10 the Plan.  The Western World Settlement Agreement is binding on the Trust.

11    (e)  Settlement with Seattle University.  Specifically included within the

12 Court's approval of compromises and settlements of Claims and controversies is the

13 Court's approval of the settlement with Seattle University set forth in Sections 6.1.2,

14 6.7(e),11.10 14.1(c), and Exhibit 1.147 of the Plan.

15    (f)  Settlement with the Jesuit High Schools.  Specifically included

16 within the Court's approval of compromises and settlements of Claims and

17 controversies is the Court's approval of the settlement with the Jesuit High Schools as

18 set forth in Sections 6.7(e) and 11.11 of the Plan.

19    The Court's findings with respect to the foregoing settlements shall constitute its

20 determination under the standards of Bankruptcy Rule 9019 that such compromises and

21 settlements are in the best interests of the Debtor and the Estate.

22    12.  The Debtor and Participating Parties expressly reserve the right and are

23 authorized to compromise and settle other Claims and Debtor and Participating Party

24 Actions up to and including the Effective Date.

25    13.  In accordance with 11 USC § 1142, the Proponents, the Reorganized

26 Debtor, the Future Claims Representative, the Trustee of the Trust, all other parties in

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1    interest, and each entity created or designated pursuant to the Plan, are authorized and

2    empowered to take all actions necessary, useful, or appropriate to implement,

3    effectuate, and consummate the Plan and the transactions contemplated by the Plan

4    and the Plan Documents, and to perform their respective obligations thereunder.  The

5    authorized employees and representatives of the Debtor and Reorganized Debtor are

6    authorized to and may execute and deliver the Plan Documents in substantially the form

7    submitted to the Court for approval, subject to such amendments as may be agreed to

8    by the Proponents or approved by the Court, provided that any such amendments shall

9    be consistent with the Plan.

10       14.    Notwithstanding confirmation of the Plan, and except as otherwise

11   specifically set forth in Section 14.1 of the Plan, this Court retains jurisdiction over all

12   matters arising under, arising out of or related to the Case and the Plan pursuant to, and

13   for the purposes of 11 USC §§ 105(a) and 1142, and for such other purposes as may

14   be necessary or useful to aid in the consummation of the Plan and its implementation.

15       15.    Notwithstanding any other applicable law, and regardless of whether or

16   not they accepted the Plan, the terms of the Plan and this Order are binding upon and

17   enforceable against any and all holders of Claims and Interests, any and all non-debtor

18   parties as provided in the Plan, any and all non-debtor parties to executory contracts

19   and/or unexpired leases with the Debtor, any and all Claimants, including Abuse

20   Claimants and Future Abuse Claimants, creditors and other parties in interest, and any

21   and all parties to the settlements, compromises, and injunctions described in the Plan,

22   and the settlements approved by the Court, and all of the respective heirs, executors,

23   administrators, successor or assigns, if any, of any and all of the foregoing.

24       16.    Except as otherwise provided in the Plan or this Order, on the Effective

25   Date,  the Reorganized Debtor shall be vested with all property of the Estate, free and

26   clear of all Claims, liens, encumbrances, charges, and other interests of creditors, and

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1   shall thereafter hold, use, dispose of, and otherwise deal with such property, operate its

2   business, carry on its business, operations, ministry, and mission, free of any and all

3   restrictions imposed by the Bankruptcy Code.

4          17.    The Trust shall be formed pursuant to the Plan, and Omni Management

5   Group LLC is appointed Trustee of the Trust.

6          18.    The failure to specifically include or reference any particular provision of

7   the Plan in this Order shall not diminish or impair the effectiveness of such provision, it

8   being the intent of the Court that the Plan be confirmed in its entirety.

9          19.    Immediately following the fifteenth anniversary of the Effective Date, the

10  Trustee of the Trust shall forward the surplus, if any, in the Trust to an organization

11  named "AWARE, Inc.", a Juneau Alaska based social service agency for women and

12  children who have survived domestic or sexual violence  (awareak.org).

13         20.    Notwithstanding  LBR  2016(c)(2)(C)(ii),  all  requests  for  payment  of

14  Administrative Claims, including applications for the compensation of the FCR and the

15  Chapter 11 Professionals, shall be filed no later than 30 days after the Effective Date.

16                                            # # #

17  PRESENTED BY:

18

19  SUSSMAN SHANK LLP

20  By: /s/ Thomas W. Stilley_____
        Thomas W. Stilley, OSB No. 883167
21      Howard M. Levine, OSB No. 800730
    Attorneys for Society of Jesus, Oregon
22  Province

23  PACHULSKI STANG ZIEHL & JONES LLP

24  By: /s/ James I. Stang_____
        James I. Stang, Admitted Pro Hac Vice
25      Pamela Egan Singer, OSB No. 894231
        Attorneys for the Official Committee of
26      Unsecured Creditors

**Page 15 of 16** – SECOND AMENDED ORDER CONFIRMING THIRD MODIFIED
JOINT PLAN OF REORGANIZATION  (Dated July 18, 2011) [Docket No. 1317]

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

1
2
FUTURE CLAIMANTS
REPRESENTATIVE

3
/s/ Stephen S. Gray
    Stephen S. Gray

4

5
F:\CLIENTS\19620\004\PLAN & DISCLOSURE STATEMENT\CORRECTED AMENDED CONFIRMATION ORDER (FINAL 072611).DOC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 16 of 16** – SECOND AMENDED ORDER CONFIRMING THIRD MODIFIED
JOINT PLAN OF REORGANIZATION  (Dated July 18, 2011) [Docket No. 1317]

Sussman Shank LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

Florence Kenney, Co-Chair
c/o Christopher R. Cook
Cooke Roosa LLC
3700 Jewel Lake Road
Anchorage, AK 99502

Anthony Lionel Atkinson, Co-Chair
c/o Michael T. Pfau Esq.
Pfau, Cochran, Vertetis & Kosnoff PLLC
701 Fifth Avenue, Ste. 4730
Seattle, WA 98104

Frederick J. Odsen
James M. Gorski
Hughes Pfiffner Gorski Seedorf & Odsen, LLC
3900 C Street, Suite 1001
Anchorage, AK 99503

David Henderson, Esq.
PO Box 2441
135 Ridgecrest
Bethel, AK 99559

William A. Gilbert, Esq.
100 E. Broadway
PO Box 2149
Moses Lake, WA 98837

Jim Valcarce
Valcarce Law Office, LLC
900 3rd Avenue
PO Box 409
Bethel, AK 99559

Michelle Menely, Esq.
Gordon Thomas Honeywell
600 University Street, Suite 2100
Seattle, WA 98101-4185

Andrew Chasan
PO Box 1069
Boise, ID 83701

Gary A. Zipkin
510 L St #700
Anchorage, AK 99501

Sean E. Brown
Power and Brown, LLC
PO Box 1809
Bethel, AK 99559

Daniel Gatti
Gatti Gatti Maier et al
1781 Liberty St SE
Salem OR 97302

Daniel T Quinn
360 K St #200
Anchorage, AK 99501

Jospeh A. Blumel
4407 N Division St #900
Spokane, WA 99207

Cynthia L. Ducey
1007 W 3rd Ave #400
Anchorage, AK 99501

Seattle University
c/o Steven F. Kerr
Jack Lovejoy
1000 2nd Ave #3500
Seattle, WA 98104-1048

Jack Lovejoy
1000 2nd Ave #3500
Seattle, WA 98104

Timothy M. Lynch
Lynch & Associates P.C.
425 G St, Suite 420
Anchorage, AK 99501

David W. Oesting
701 W 8th Ave #800
Anchorage, AK 99501

Jonathan Lee Riches
Federal Medical Center
#40948018
POB 14500
Lexington, KY 40512

Roger Hotrum
Doc #923581
POB 2049
Airway Heights, WA 99001

Gregory G. Silvey
510 L St #700
Anchorage, AK 99501

Mackenzie E. Whatcott
800 Park Blvd #790
Washington Group Plaza #4
Boise, ID 83712

William C. Tharp
950 W Bannock St #900
Boise, ID 83702

Thomas G. Walker
POB 9518
Boise, ID 83707-9518

Stanley W. Welsh
800 Park Blvd #790
Washington Group Plaza #4
Boise, ID 83712

Julio K. Morales
Morales Law Office
212 W. Spruce Street
Missoula, MT 59802

Breck Barton
PO Box 100
Rexburg, ID 83440

Karen O'Kasey
Hoffman Hart & Wagner LLP
1000 SW Broadway Ste 2000
Portland OR 97205

Jerome Darrell Akles
213 SE 192nd Avenue, Suite 104
Portland, OR 97233

H. Douglas Spruance III
421 West Riverside Ave.
Suite 1400
Spokane, WA 99201

JMW Settlements, Inc.
c/o The Corporation Trust Co.,
Its Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

James P. Klapps
General Counsel and Principal
JMW Settlements, Inc.
1130 Connecticut Avenue NW, Suite 540
Washington, DC 20036

John Manly
Rebecca Rhodes
Manly & Stewart
4220 Von Karman Ave., Suite 200
Newport Beach, CA 92660

William A. Gilbert
P O Box 2149
Moses Lake, WA 98837

Richard Hansen
1211 SW 5th Avenue
Suite 1600-1900
Portland, OR 97204

Renea I. Saade
1420 Fifth Avenue, Suite 3010
Seattle, WA 98101-2393

Steven F. Kerr
1000 2nd Ave #3500
Seattle, WA 98104-1048

Mackienzie E. Whatcott
800 Park Blvd. #790
Washington Group Plaza #4
Boise, ID 83712

Frederick P. Marczyk
Drinker Biddle & Reath LLP
One Logan Square #2000
Philadelphia, PA 19103-6996

David W. Oesting
701 W 8th Ave #800
Anchorage, AK 99501

Michael P. Pompeo
Robert M. Vinci
Drinker Biddle & Reath LLP
500 Campus Dr.
Florham Park, NJ 07932

Fredric Michael Turk
111 Broadway, #101-195
Boise, ID 83702

SEC
Attn: Bankruptcy Counsel
5670 Wilshire Blvd. 11th Floor
Los Angeles, CA 90036

General Curia of the Society of Jesus
Attn: Teresa Pearson
Miller Nash LLP
Suite 3500, 111 SW 5th Ave.
Portland, OR 97204

John Kroger
Attorney General of the State of Oregon
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

Office of the Attorney General
Attorney General John J. Burns
P O Box 110300
Juneau, AK 99811-0300

Montana Department of Justice
Attorney General Steve Bullock
P O Box 201401
Helena, MT 59620-1401

State of Idaho
Office of the Attorney General
Attention: Lawrence G. Wasden, Attorney
General
 P O Box 83720
Boise, ID 83720-0010

State of Washington
General Rob McKenna
P O Box 40100
Olympia, WA 98504-0100

AND: ECF PARTICIPANTS

Thomas W. Stilley, OSB No. 883167
Howard M. Levine, OSB No. 800730
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
E-Mail:  tstilley@sussmanshank.com
            hlevine@sussmanshank.com
Attorneys for Debtor/Debtor-In-Possession

Stephen S. Gray
CRG PARTNERS GROUP, LLC
2 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 482-4242
Facsimile: (617) 482-9804
E-Mail: Stephen.Gray@crgpartners.com
Future Claimants Representative

James I. Stang, CA Bar No. 94435
Pamela E. Singer, CA Bar No. 224758
PACHULSKI STANG ZIEHL
  & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:  jstang@pszjlaw.com
            psinger@pszjlaw.com
Attorneys for Official Committee of
Unsecured Creditors

Richard K. Hansen, OSB No. 832231
Thomas V. Dulcich, OSB No. 802105
SCHWABE WILLIAMSON & WYATT  PC
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204
Telephone: (503)796-2958
Facsimile: (503)796-2900
E-mail: rhansen@schwabe.com
            tdulcich@schwabe.com
Special Claims Counsel for Debtor and
Debtor-In-Possession

Paul A. Richler, CA Bar No. 59909
MORGAN LEWIS & BOCKIUS LLP
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071-3132
Telephone: (213) 612-1104
Facsimile: (213) 612-2501
E-mail: prichler@morganlewis.com
Special Insurance Counsel for Official
Committee of Unsecured Creditors

James R. Murray, WA Bar No. 25263
Scott N. Godes, DC Bar No. 463674
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
Telephone: (202) 420-3409
Facsimile: (202)420-2201
E-mail: MurrayJ@DicksteinShapiro.com
            GodesS@DicksteinShapiro.com
Special Insurance Counsel for Debtor and
Debtor-In-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>SOCIETY OF JESUS, OREGON PROVINCE, an Oregon domestic nonprofit religious corporation,<br><br>         Debtor. | Case No. 09-30938-elp11<br><br>THIRD MODIFIED JOINT PLAN OF REORGANIZATION (Dated July 18, 2011) |

**TABLE OF CONTENTS**

1.    DEFINITIONS ................................................................ 1

2.    TREATMENT OF UNCLASSIFIED CLAIMS ......................................... 27

    2.1    Administrative Claims .............................................. 27

3.    CLASSIFICATION OF CLAIMS ................................................. 28

4.    TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS ................................ 29

    4.1    Class 1:  Priority Claims .......................................... 29

    4.2    Class 2:  General Unsecured Convenience Claims ..................... 29

    4.3    Class 5:  Omak Area Shelter Claim .................................. 29

    4.4    Class 9:  Student Loan Claims ...................................... 30

    4.5    Class 12:  Charitable Gift Annuity Claims .......................... 30

    4.6    Class 14: Convenience Abuse Claims ................................. 30

5.    TREATMENT OF IMPAIRED CLASSES OF CLAIMS .................................. 30

    5.1    Classes 3 and 3A:  Abuse Claims .................................... 30

    5.2    Treatment of Class 3 Claims ........................................ 34

    5.3    Treatment of Class 3A Claims (Non-Sexual Abuse Claims).............. 41

    5.4    Treatment of Litigation Current Abuse Claims ....................... 41

    5.5    Class 4:  Future Abuse Claims ...................................... 44

    5.6    Class 6:  Insured Non-Abuse Claims ................................. 49

    5.7    Class 7:  General Unsecured Claims ................................. 50

    5.8    Class 8:  Penalty Claims ........................................... 50

    5.9    Class 10 (Intentionally Ommitted) .................................. 50

    5.10   Class 11:  Formation Fund Claim .................................... 50

    5.11   Class 13: Donor Claims and Beneficiary Claims ...................... 50

    5.12   Class 15: Abuse Related Contribution/Indemnity Claims .............. 50

| | | | |
|---|---|---|---|
| 1 | 6. | TRUST | 53 |
| 2 | | 6.1 Establishment of Trust | 53 |
| 3 | | 6.2 Formation of Trust | 54 |
| 4 | | 6.3 Trustee Assumes Responsibility | 54 |
| 5 | | 6.4 Beneficiaries | 55 |
| 6 | | 6.5 Trustee | 55 |
| 7 | | 6.6 Intentionally omitted | 55 |
| 8 | | 6.7 Trust Funding | 55 |
| 9 | | 6.8 Deposit and Payment of Funds | 57 |
| 10 | | 6.9 Prosecution of Actions | 57 |
| 11 | | 6.10 Winding Up/Distribution of Excess Funds | 58 |
| 12 | | 6.11 No Execution | 59 |
| 13 | 7. | LIQUIDATION AND PAYMENT OF ABUSE CLAIMS | 59 |
| 14 | | 7.1 Liquidation of Abuse Claims | 59 |
| 15 | | 7.2 Payment of Abuse Claims | 59 |
| 16 | | 7.3 Future Abuse Claims Bar Date | 62 |
| 17 | | 7.4 Effect of Disallowance of Abuse Claims | 63 |
| 18 | | 7.5 Treatment of Attorneys' Fees of Abuse Claimants | 63 |
| 19 | | 7.6 Treatment of Punitive Damages | 63 |
| 20 | | 7.7 Withdrawal of Abuse Claims | 63 |
| 21 | 8. | INSURANCE MATTERS | 63 |
| 22 | | 8.1 Transfer of Insurance Rights | 63 |
| 23 | | 8.2 Appointment of Trustee as Estate Representative to Enforce Insurance | |
| 24 | | Rights and Obtain Insurance Recoveries | 64 |
| 25 | | 8.3 Consequences of Determination That Assignment is Invalid | 65 |
| 26 | | 8.4 Preservation of Insurance Rights | 66 |

| | | | |
|---|---|---|---|
| 1 | | 8.5 | Post-Judgment Actions Against Non-Settling Insurers .............................. 66 |
| 2 | | 8.6 | Settlement with Non-Settling Insurers ....................................... 67 |
| 3 | | 8.7 | Cooperation with Non-Settling Insurer in Defense of Claims.................... 67 |
| 4 | | 8.8 | Insurance Neutrality .................................................... 67 |
| 5 | 9. | | MEANS FOR IMPLEMENTATION OF THE PLAN................................. 68 |
| 6 | | 9.1 | Closing .................................................................. 68 |
| 7 | | 9.2 | Continuation of Future Claimants Representative..................................... 68 |
| 8 | | 9.3 | Obligations of the Reorganized Debtor and Participating Parties.............. 69 |
| 9 | | 9.4 | Objections to Claims ................................................... 70 |
| 10 | | 9.5 | Provisions Governing Distributions ........................................... 70 |
| 11 | | 9.6 | Closing of the Case................................................... 72 |
| 12 | 10. | | CONDITIONS PRECEDENT................................................. 73 |
| 13 | | 10.1 | Conditions to Effectiveness ......................................... 73 |
| 14 | | 10.2 | Waiver of Conditions ................................................. 73 |
| 15 | 11. | | EFFECTS OF PLAN CONFIRMATION ..................................... 73 |
| 16 | | 11.1 | Discharge ............................................................... 73 |
| 17 | | 11.2 | Post-Petition Abuse Claims......................................... 74 |
| 18 | | 11.3 | Vesting ................................................................... 74 |
| 19 | | 11.4 | Exculpation And Limitation Of Liability ..................................... 75 |
| 20 | | 11.5 | Supplemental Injunction Preventing Prosecution of Abuse Claims Against |
| 21 | | | Settling Insurers Other than Safeco ......................................... 75 |
| 22 | | 11.6 | Supplemental Injunctions Preventing Prosecution of Abuse Claims Against |
| 23 | | | Safeco, Travelers, and Western World ..................................... 76 |
| 24 | | 11.7 | Channeling Injunction Preventing Prosecution of Abuse Claims Against |
| 25 | | | Channeling Injunction Beneficiaries ......................................... 78 |
| 26 | | 11.8 | Term of Injunctions or Stays and Confirmation of Settlements With Settling |

Insurers, Released Parties, and Participating Parties ............................... 81

11.9    Release of Avoidance Claims Against Participating Parties and Settling

          Insurers ....................................................................................... 81

11.10   Release of Claims Against Seattle University ........................................... 82

11.11   Limitation on Exercise of Rights Against the Jesuit High Schools............. 82

12. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ...... 82

12.1    Assumed Employee and Retiree Benefit Plans and Collective Bargaining

          Agreements................................................................................... 82

12.2    General; Assumed if Not Rejected........................................................ 82

12.3    Claims for Contract Rejection.............................................................. 83

13. NON-MONETARY COMMITMENTS.......................................................... 83

14. MISCELLANEOUS PROVISIONS .............................................................. 89

14.1    Retention of Jurisdiction ................................................................... 89

14.2    Modification of Plan ......................................................................... 89

14.3    Severability..................................................................................... 90

14.4.   Post-Confirmation Professional Fees and Expenses ................................ 90

14.5    Headings ........................................................................................ 90

14.6    Computation of Time Periods.............................................................. 90

14.7    Notices ........................................................................................... 91

14.8    Post-Confirmation Court Approval........................................................ 92

14.9    Election Pursuant to Section 1129(b) of the Bankruptcy Code.................. 92

14.10   Consummation of the Plan ................................................................. 93

14.11   Exemption from Transfer Taxes .......................................................... 93

14.12   Waivers .......................................................................................... 93

14.13   Setoffs, Recoupments, and Defenses................................................... 93

14.14   Compromise of Controversies............................................................. 94

| | | | |
|---|---|---|---|
| 1 | 14.15 | Withdrawal or Revocation of the Plan | 96 |
| 2 | 14.16 | Default | 96 |
| 3 | 14.17 | Filing and Payment of Allowed Administrative Claims | 97 |
| 4 | 14.18 | Payment of United States Trustee Fees | 97 |
| 5 | 14.19 | Governing Law | 97 |
| 6 | 14.20 | Reservation of Rights | 97 |
| 7 | 14.21 | Controlling Documents | 97 |
| 8 | 14.22 | Successors and Assigns | 98 |
| 9 | 14.23 | Rounding of Fractional Numbers | 98 |
| 10 | 14.24 | Dissolution of the Committee | 98 |
| 11 | 14.25 | Exhibits | 98 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Society of Jesus, Oregon Province, an Oregon non-profit religious corporation, the Debtor and Debtor-in-Possession in this Case, the Official Committee of Unsecured Creditors appointed in this Case, and the Future Claimants Representative appointed in this Case as the legal representative for the Future Abuse Claimants, propose the following Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## 1.    DEFINITIONS.

For purposes hereof, any term used in an initially capitalized form in this Plan will have the defined meaning ascribed to it in the definitions set forth below and, if not defined below, in Section 101 of the Bankruptcy Code.  All definitions in the Bankruptcy Code and below will be subject to the rules of construction set forth in Section 102 of the Bankruptcy Code.  In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to" or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with. Whenever the context requires, such terms include the singular as well as the plural, the masculine gender includes the feminine, and the feminine gender includes the masculine.  Any specific references to promissory notes, deeds of trust or other debt instruments or security documents includes any amendments, modifications and extensions thereto.  Nothing contained in this Plan constitutes an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

The Plan includes as exhibits the (i) Safeco Settlement Agreement, (ii) Travelers Settlement Agreement, and (iii) the Western World Settlement Agreement, which are all incorporated herein by reference.  The Safeco Settlement Agreement, the Travelers Settlement Agreement, the Western World Settlement Agreement, and Supplemental

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

| | |
|---|---|
| 1 | Injunctions at sections 11.5 and 11.6 of the Plan, include: (i) terms that are not defined |
| 2 | in the Plan, and (ii) terms contained in the Plan but that are defined differently than in |
| 3 | the Plan. For the purposes of the interpretation and enforcement of the Safeco |
| 4 | Settlement Agreement, the Supplemental Injunctions, and the Plan provisions relating to |
| 5 | the Safeco Settlement Agreement, the definitions in the Safeco Settlement Agreement |
| 6 | control, and any conflicts between the defined terms in the Plan and the defined terms |
| 7 | in the Safeco Settlement Agreement shall be resolved in favor of the defined terms in |
| 8 | the Safeco Settlement Agreement. For the purposes of the interpretation and |
| 9 | enforcement of the Travelers Settlement Agreement, the Supplemental Injunctions, and |
| 10 | the Plan provisions relating to the Travelers Settlement Agreement, the definitions in the |
| 11 | Travelers Settlement Agreement control, and any conflicts between the defined terms in |
| 12 | the Plan and the defined terms in the Travelers Settlement Agreement shall be resolved |
| 13 | in favor of the defined terms in the Travelers Settlement Agreement. For the purposes |
| 14 | of the interpretation and enforcement of the Western World Settlement Agreement, the |
| 15 | Supplemental Injunctions, and the Plan provisions relating to the Western World |
| 16 | Settlement Agreement, the definitions in the Western World Settlement Agreement |
| 17 | control, and any conflicts between the defined terms in the Plan and the defined terms |
| 18 | in the Western World Settlement Agreement shall be resolved in favor of the defined |
| 19 | terms in the Western World Settlement Agreement. |
| 20 | **1.1 "Abuse"** means any act of Sexual Abuse, or physical, non-sexual, |
| 21 | mental, emotional, or cultural abuse. |
| 22 | **1.2 "Abuse Claim"** means a Claim, asserted by or on behalf of an individual |
| 23 | who is or claims to be the victim of Abuse, against the Debtor and/or a Participating |
| 24 | Party, related to Abuse that occurred prior to the Petition Date causing a personal injury |
| 25 | or wrongful death, or is a Claim for paternity. The term "Abuse Claim" does not include |
| 26 | any Abuse Related Contribution/Indemnity Claim. |

**Page 2 of 99** – THIRD MODIFIED JOINT PLAN OF REORGANIZATION (Dated July 18, 2011)

1.3 **"Abuse Claims Reviewer"** means the person, including the designee of such person, who will administer an Allocation Plan. Subject to the Plan's provisions for replacement of the Abuse Claims Reviewer, the Abuse Claims Reviewer for Allocation Plan I is Hon. William L. Bettinelli, Ret. The Abuse Claims Reviewer for Allocation Plans II and III is Katrina Pflaumer.

1.4 **"Abuse Claimant"** means the holder of an Abuse Claim, the estate of a deceased Abuse Claimant, or the personal executor or personal representative of the estate of a deceased Abuse Claimant, as the case may be.

1.5 **"Abuse Related Contribution/Indemnity Claim"** means any Entity's Claim against any other Entity for contribution, indemnity, or reimbursement arising as a result of such Entity having paid or defended against any Abuse Claim.

1.6 **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(1) of the Bankruptcy Code including the actual, necessary costs and expenses of preserving the Debtor's estate and operating the Debtor's business including Current Obligations, compensation for professional services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor's estate under chapter 123 of Title 28, United States Code.

1.7 **"Administrative Claimant"** means the holder of an Administrative Claim.

1.8 **"Aged & Infirm Fund"** means the Oregon Province Aged & Infirm Fund Charitable Trust, also known as the Arca Praevisionis.

1.8.a **"Allocation Plans"** means Allocation Plan I, Allocation Plan II, and Allocation Plan III.

1.9 **"Allocation Plan I"** means the protocol which is set forth as Exhibit 1.9 to the Plan.

1.10 **"Allocation Plan II"** means the protocol which is set forth as Exhibit 1.10 to the Plan.

1.11 **"Allocation Plan III"** means the protocol which is set forth as Exhibit 1.11 to the Plan.

1.12 **"Allowance Date"** means, with respect to a Claim, the date such Claim becomes Allowed.

1.13 **"Allowed"** means, with respect to a Claim, the extent to which:  (a) the Claim is agreed to by the Claimant and by the Debtor or the Reorganized Debtor; (b) the Claim is expressly allowed in this Plan; or (c) proof of such Claim was (i) timely filed with the Claims Agent, (ii) deemed filed pursuant to Section 1111(a) of the Bankruptcy Code, or (iii) tardily filed with leave of the Bankruptcy Court, and, in any case, as to which the Claim is not Disputed or, if the Claim is or was Disputed, the Claim has been Allowed by a Final Order.

1.14 **"Apostolic Works Fund"** means the Oregon Province Apostolic Works Fund Charitable Trust, also known as the Arca Operum Apostolicorum.

1.15 **"Arcas"** means collectively the Aged & Infirm Fund, the Apostolic Works Fund, the Formation Fund, and the Foundations Fund, and the trusts under civil law created thereunder.

1.16 **"Average Future Claim Point Award"** means the average award per point for all pools utilizing Allocation Plan I, excluding those Abuse Claimants electing treatment as the holder of a Convenience Abuse Claim or who are otherwise awarded no points.

1.17 **"Avoidance Rights"** means those rights that may be asserted by the Debtor, as a debtor-in-possession, to avoid and recover transfers, liens, or obligations, described in Sections 544, 545, 546, 547, 548, 549, and 550 of the Bankruptcy Code, and any other actions provided for under applicable law that allows a debtor-in-

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

possession or trustee to avoid certain transfers, but excluding those Avoidance Rights, if any, against the Participating Parties and the Settling Insurers that are compromised and released pursuant to Section 11.9 of the Plan.

**1.18 "Award"** means the liquidated amount of any Abuse Claim as determined in accordance with the terms of this Plan.

**1.19 "Ballot"** means the ballot that is used by a Creditor to accept or reject the Plan, and pursuant to which Abuse Claimants will make certain elections regarding the treatment of their Abuse Claims as provided in the Plan.

**1.20 "Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, principally codified in 11 USC Section 101, et seq., and any amendments thereto applicable to this case.

**1.21 "Bankruptcy Court"** means the United States Bankruptcy Court for the District of Oregon, located in Portland, Oregon.

**1.22 "Bankruptcy Rules"** means the Rules and Forms of Practice and Procedures in Bankruptcy promulgated under 28 USC § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 cases, together with all amendments and modifications thereto.

**1.23 "Beneficiary Claims"** means those Claims asserting (1) a right or entitlement to the use or benefit, including any religious use or benefit, of property, funds or other assets held by the Debtor or a Participating Party in trust or otherwise restricted in their use, including the property, funds, or other assets in the Apostolic Works Fund, the Formation Fund, the Aged & Infirm Firm, and the Foundations Fund, or (2) that the use of such property, funds, or other assets to pay Claims against the Debtor or a Participating Party violates the terms of any such trust or other restriction.

**1.24 "Business Day"** means any day other than Saturday, Sunday, or a "legal holiday", as that term is defined in Bankruptcy Rule 9006(a).

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     **1.25**  **"Canon Law"** means the 1983 Code of Canon Law promulgated on

2 January 25, 1983 by Pope John Paul II, and any amendments thereto.

3     **1.26**  **"Case"** means the case under Chapter 11 of the Bankruptcy Code

4 commenced by the Debtor on February 17, 2009, Case No. 09-30938-elp11.

5     **1.27**  **"Cash"** means cash, cash equivalents, bank deposits, and negotiable

6 instruments payable on demand.

7     **1.28**  **"Channeled Claim"** means any Abuse Claim, Tort Claim (as defined in

8 the Safeco Settlement Agreement), Tort Claim (as defined in the Travelers Settlement

9 Agreement), Tort Claim (as defined in the Western World Settlement Agreement),

10 and/or Claim against a Channeling Injunction Beneficiary arising from, in connection

11 with, or related in any way to an Abuse Claim, Tort Claim (as defined in the Safeco

12 Settlement Agreement), Tort Claim (as defined in the Travelers Settlement Agreement),

13 or Tort Claim (as defined in the Western World Settlement Agreement). Each Claim

14 described in this Section 1.28 shall include all such Claims whenever and wherever

15 arising or asserted, whether sounding in tort, contract, warranty or any other theory of

16 law, equity or admiralty, including without limitation all Claims by way of direct action,

17 statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages,

18 for attorneys' fees and other expenses, or for any equitable remedy.  A Channeled

19 Claim does not include an Abuse Claim against: (i) a Person or Persons having

20 personally committed an act or acts of Abuse resulting in a Claim against the Debtor or

21 a Participating Party, (ii) the Society of Jesus; (iii) the Father General of the Society of

22 Jesus and his predecessors, (iv) the Society of Jesus General Curia; (v) a successor or

23 predecessor of the Debtor to the extent of such successor's or predecessor's

24 independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii) Seattle

25 University, and (viii) the Jesuit High Schools.

26     **1.29**  **"Channeling Injunction"** means the injunction provided for under Section

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 11.7 of the Plan.

2 **1.29(a) "Channeling Injunction Beneficiaries"** means the Participating Parties,

3 the Released Parties, Safeco, the Safeco Released Parties, Travelers, the Travelers

4 Released Parties, Western World, the Western World Released Parties, the Settling

5 Insurers, and the Settling Insurer Released Parties.

6 **1.30 "Chapter 11 Professionals"** means, collectively, the Debtor's

7 Professionals, the Committee's Professionals, and the Future Claimants

8 Representative's Professionals.

9 **1.31 "Charitable Gift Annuities"** means the gifts made to the Debtor by

10 various donors for charitable gift annuities, in exchange for which such donors are to

11 receive certain fixed payments during their lives or the life of another person, the

12 payments for which were fixed at the date of the gift based on actuarial life expectancy

13 tables and uniform gift annuity rates.

14 **1.32 "Claim"** means any claim, as that term is defined in Section 101(5) of the

15 Bankruptcy Code, arising on or prior to entry of the Confirmation Order.

16 **1.33 "Claim Allowance Agreement"** means an agreement between the

17 Debtor and a Claimant which is entered into prior to the Effective Date and approved by

18 the Bankruptcy Court as reasonable under Bankruptcy Rule 9019, whereby the Debtor

19 and the Claimant agree to the Allowed amount of the Claimant's Claim.

20 **1.34 "Claimant"** means a Creditor that holds a Claim.

21 **1.35 "Claims Agent"** means BMC Group, Inc.

22 **1.36 "Claims Bar Date"** means November 30, 2009.

23 **1.37 "Claims Bar Date Notice"** means the various notices of the last day to

24 file Claims mailed to all known Creditors together with the publication notice published

25 in various newspapers and other publications providing notice of the Claims Bar Date.

26 **1.38 "Claims Bar Date Order"** means the order of the Bankruptcy Court

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  setting the Claims Bar Date and approving the method of notification of the Claims Bar

2  Date.

3  **1.39 "Claims Objection Bar Date"** means, unless extended by the Court, the

4  first Business Day that follows the 30th day after the Effective Date, by which any

5  objection to a Claim (excluding Class 4 Claims) must be filed with the Bankruptcy Court

6  or such objection will be forever barred.

7  **1.40 "Closing"** means the Reorganized Debtor's execution and delivery of the

8  Plan Documents and payment to the Trust of those sums required to be paid in

9  accordance with Sections 6.2 and 6.7 of the Plan.

10  **1.41 "Co-Defendant"** means a Person or Entity that is named as a defendant

11  in a lawsuit in which the Debtor is also named as a defendant, and/or who is alleged to

12  be fully or partially responsible for a Claim asserted, or which may be asserted in the

13  future, against both such Person and/or Entity and the Debtor, including co-debtors as

14  described in Section 509 of the Bankruptcy Code.

15  **1.42 "Committee"** means the Official Committee of Unsecured Creditors

16  appointed by the United States Trustee in the Case, as such committee may be

17  reconstituted from time to time.

18  **1.43 "Committee's Professionals"** means Pachulski Stang Ziehl & Jones

19  LLP; Morgan Lewis & Bockius LLP; LECG, LLC; Berkeley Research Group, LLC and all

20  other professionals, if any, which the Committee has retained or may retain to provide

21  professional services in accordance with Section 1103(a) of the Bankruptcy Code and

22  as approved by the Bankruptcy Court.

23  **1.44 "Conditional Payment"** means any payment made pursuant to Section

24  1395y(b)(2)(B) of the MSPA.

25  **1.45 "Confirmation Date"** means the date of the entry of the Confirmation

26  Order.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1.46 **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

1.47 **"Confirmation Order"** means the order confirming the Plan.

1.48 **"Contingent**" means, with respect to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

1.49 **"Convenience Abuse Claim"** means an Abuse Claim in an amount of $2,500 or less, or voluntarily reduced to $2,500 by the holder of such Abuse Claim or otherwise deemed to be a Convenience Abuse Claim under the Plan.

1.50 **Intentionally omitted**.

1.51 **"Court"** means the Bankruptcy Court.

1.52 **"Creditor Pool"** means a group of not less than forty-five (45) Class 3 Creditors who are associated for the purpose of allocating a portion of the Trust assets to each Abuse Claimant in the group pursuant to Allocation Plan I or Allocation Plan II. Each Creditor Pool shall be identified by a number, i.e. Creditor Pool No. 1.

1.53 **"Current Sexual Abuse Claim"** means the Abuse Claim of an Abuse Claimant: (a) who prior to any amendment or supplementation of a proof of claim filed a proof of claim alleging Sexual Abuse; or (b) who (i) initially filed a proof of claim that did not allege Sexual Abuse but later amended or supplemented the proof of claim to allege Sexual Abuse and (ii) according to the Abuse Claims Reviewer, based upon a preponderance of evidence, has a Claim for Sexual Abuse; and (c) who is not a Future Abuse Claimant.

1.54 **"Current Obligations"** means (a) all accounts payable and other liabilities or obligations of the Debtor that arose or accrued in the ordinary course of the Debtor's business subsequent to the Petition Date and prior to the Confirmation Date (excluding any Abuse Claims), and (b) any taxes that were incurred subsequent to the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ☐ FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1    Petition Date and became or become legally due and payable by the Debtor

2    subsequent to the Petition Date and prior to the Confirmation Date.

3    **1.55 "Debtor"** means the Society of Jesus, Oregon Province, an Oregon non-

4    profit religious corporation, and includes (a) each Jesuit Community, and (b) the

5    Province, to the extent any of them are determined not to be a civil entity separate from

6    the Debtor under applicable law.[1] "Debtor" does not include Seattle University, a

7    Washington non-profit corporation, and Jesuit Community of Gonzaga University, Inc., a

8    Washington corporation.

9    **1.56 "Debtor and Participating Party Actions"** means any and all Claims,

10   causes of action, and rights of the Debtor and the Participating Parties against third

11   parties including Claims of the Debtor and Participating Parties for recovery of, or based

12   upon, or in any manner arising from or related to damages, general or exemplary (or

13   both), or other relief, including equitable relief relating to or based upon:  (a)

14   indebtedness owing to the Debtor; (b) fraud, negligence, gross negligence, willful

15   misconduct, or any other tort actions; (c) breaches of contract; (d) violations of federal

16   or state laws (including corporate and securities laws); (e) breaches of fiduciary or

17   agency duties; (f) Abuse Related Contribution/Indemnity Claims, and (g) any other

18   Claim of the Debtor or a Participating Party to the extent not assigned to the Trust or

19   specifically compromised or released pursuant to this Plan or an agreement

20   incorporated into this Plan.  Debtor and Participating Party Actions shall not include: (a)

21   Insurance Claims, and (b) Avoidance Rights.

22   **1.57 "Debtor and Participating Party Action Recoveries"** means the rights

23   of the Debtor and the Participating Parties to any and all proceeds or other relief,

24   including equitable relief, from (a) any award, judgment, relief, or other determination

25   

26   [1] The separate legal existence of a Jesuit Community and/or the Province has not been
     determined by the Bankruptcy Court and is not being decided in connection with
     confirmation of the Plan.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  rendered or made as to any Debtor or Participating Party Action; or (b) any compromise

2  or settlement of any Debtor or Participating Party Action.

3      **1.58 "Debtor's Professionals"** means the law firms Sussman Shank LLP,

4  Schwabe Williamson & Wyatt PC, Dickstein Shapiro LLP, Rothgerber Johnson & Lyons

5  PC, Hoffman Hart & Wagner LLP, and Hughes Pfiffner Gorski Seedorf & Odsen, LLC;

6  the public relations firm The Ulum Group; the Debtor's Claims Agent, BMC Group, Inc.;

7  the accounting firm Moss Adams LLP; and all other professionals, if any, which the

8  Debtor has retained or may retain to provide professional services in accordance with

9  Sections 327(a) and 327(e) of the Bankruptcy Code.

10      **1.59 "Disallowed"** means, with respect to any Claim, the extent to which the

11  Claim has not been Allowed pursuant to a Final Order.

12      **1.60 "Disputed"** means, with respect to a Claim, that an objection to such

13  Claim has been timely filed, or such Claim is listed as disputed in the Debtor's

14  schedules filed with the Bankruptcy Court, and such objection or dispute has not been

15  resolved by Final Order, or by agreement between the Claimant and the Debtor, the

16  Reorganized Debtor, or the Trustee, as applicable.

17      **1.61 "Documents"** means to the extent such documents relate to Sexual

18  Abuse, documents that have been produced in any Rule 2004 Examination of the

19  Debtor and in any other litigation in which the Debtor or the Province Entities have been

20  a party, subject to (a) the privileges enumerated in Section 13.15; (b) restrictions under

21  other federal and state laws or regulations; (c) application of any court orders, except

22  those regarding privileges not enumerated in Section 13.15; and (d) redaction of

23  survivor's identities.  Notwithstanding the foregoing, the Reorganized Debtor and the

24  Province shall not assert the enumerated privileges in Section 13.15 to any Documents

25  already produced in any Rule 2004 Examination of the Debtor and in any other litigation

26  in which the Province Entities have been a party if not previously asserted. The prior

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 production of Documents shall not constitute a waiver of any of the privileges

2 enumerated in Section 13.15. The Debtor shall have a continuing obligation to produce

3 Documents as set forth in FRCP 26(e)(1)(A).

4     **1.62 "Donor Claims"** means those Claims of Persons and Entities that have

5 donated real or personal property, money, or funds to the Debtor and/or a Participating

6 Party, and as to which it is asserted (a) that such funds or property were donated for a

7 specific purpose, including without limitation any religious purpose, or otherwise are

8 restricted as to use, and that any use inconsistent with such purpose or restriction

9 constitutes a Claim, and (b) that the use of such funds or property pursuant to the

10 provisions of this Plan to pay Claims against the Debtor or a Participating Party is in any

11 way inconsistent with such specified purpose or restricted use.

12     **1.63 "Effective Date"** means the first Business Day after the Confirmation

13 Date on which (i) all conditions to effectiveness specified in this Plan have been

14 satisfied or waived, and (ii) no stay of the Confirmation Order is in effect.

15     **1.64 Intentionally omitted.**

16     **1.65 "Estate"** means the bankruptcy estate of the Debtor as created under

17 Section 541 of the Bankruptcy Code.

18     **1.66 "Estimated Amount"** means the amount at which the Bankruptcy Court

19 or the Oregon U.S. District Court, pursuant to 28 USC §157(b)(2)(B), Section 502(c) of

20 the Bankruptcy Code, and Bankruptcy Rule 3018(a), as the case may be, estimates any

21 Claim or class of Claims that is Contingent, unliquidated, or disputed, including any

22 Abuse Claim or class thereof, for the purpose of (a) allowance, (b) distribution, (c)

23 confirming this Plan pursuant to Section 1129 of the Bankruptcy Code, (d) voting to

24 accept or reject this Plan pursuant to Section 1126 of the Bankruptcy Code, or (e) any

25 other purpose.

26     **1.67 "Estimation Order"** means an order of the Bankruptcy Court or the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1  Oregon U.S. District Court, as applicable, that determines the Estimated Amount of any

2  Claim or Claims for any purpose, whether individually or as part of an aggregate.

3      **1.68 "Exculpated Parties"** means the Debtor and Reorganized Debtor; the

4  Participating Parties; the Released Parties; the Committee and each of its members; the

5  FCR; CRG Partners Group, LLC as consultant to the FCR; Safeco; Travelers; Western

6  World; the Settling Insurers; and all of their respective present or former members,

7  managers, officers, directors, employees, representatives, attorneys, and agents acting

8  in such capacity, but not including (i) a Person or Persons having personally committed

9  an act or acts of Abuse resulting in a Claim against the Debtor or a Participating Party,

10  (ii) the Society of Jesus; (iii) the Father General of the Society of Jesus and his

11  predecessors, (iv) the Society of Jesus General Curia or (v) a successor or predecessor

12  of the Debtor to the extent of such successor's or predecessor's independent liability for

13  an act or acts of Abuse; (vi) Gonzaga University; and (vii) the Jesuit High Schools.

14      **1.69 "FCR"** means the Future Claimants Representative.

15      **1.70 "FCR's Professionals"** means the professionals, if any, which the FCR

16  has retained or may retain to provide professional services in accordance with Sections

17  327(a) and 327(e) of the Bankruptcy Code.

18      **1.71 "Final Order"** means an order, judgment, ruling or decree of the

19  Bankruptcy Court, a U.S. District Court, or any other court having jurisdiction as to

20  which (a) any appeal that has been taken has been finally determined or dismissed and

21  the time to take any further appeal, or to seek certiorari, further reargument or

22  rehearing, has expired or been waived in writing, or (b) the time to take an appeal has

23  expired and no appeal has been timely filed.

24      **1.72 "Formation Fund"** means the Oregon Province Formation Fund

25  Charitable Trust, also known as the Arca Seminarii.

26      **1.73 "Foundations Fund"** means the Oregon Province Foundations Fund

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 Charitable Trust, also known as the Arca Fundationum.

2 **1.74 "Future Abuse Claim"** means an Abuse Claim for which the Abuse

3 Claimant did not file his or her own proof of claim by the Claims Bar Date, and as of the

4 30th day immediately preceding the Claims Bar Date met one of the following three

5 criteria:

6     (a)    The Abuse Claimant was under 18 years of age;

7     (b)    The Abuse Claimant:

8         (i)    was 18 years of age or older;

9         (ii)    was unaware of the occurrence of the physical acts that

10 constituted the Abuse; and,

11         (iii)    the Abuse Claimant's Abuse Claim was not time-barred by

12 operation of a state law limitations period,  or

13     (c)    The Abuse Claimant:

14         (i)    was 18 years of age or older;

15         (ii)    was aware of the occurrence of the physical acts that

16 constituted the Abuse;

17         (iii)    the Abuse Claimant's Abuse Claim was not time-barred by

18 operation of a state law limitations period; and

19         (iv)    the state law limitations period applicable to such Abuse

20 Claim had not begun to run.

21 The determination of whether an Abuse Claim was time-barred will be made

22 under applicable state law, with any state law enacted after the Petition Date having no

23 force or effect in such determination.   This defined term shall be interpreted in

24 accordance with the "Order Appointing Future Claimants Representative" (Docket No.

25 412).

26 **1.76 "Future Abuse Claimant"** means the holder of a Future Abuse Claim.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1.77 **"Future Claimants Representative"** means Stephen S. Gray, the legal representative for Future Abuse Claimants appointed by the Court pursuant to its order entered August 10, 2009 [Docket No. 412], or any successor appointed or approved by the Court or the Oregon U.S. District Court, as applicable.

1.78 **"Future Abuse Claims Bar Date"** means the fifteenth (15th) anniversary of the Effective Date.

1.79 **"Future Abuse Claims Liquidation Process"** means the procedure for liquidating and Allowing or Disallowing the Abuse Claim of a Future Abuse Claimant as provided for in the Trust Documents.

1.80 **"Future Abuse Claims Reserve"** means that portion of the assets to be held in the Trust that will be allocated to the payment of Allowed Future Abuse Claims pursuant to the terms of the Plan and Trust Documents.

1.81 **"General Unsecured Claim"** means any Claim against the Debtor that is not an Administrative Claim or a Claim that is otherwise classified under the Plan.

1.82 **"General Unsecured Convenience Claim"** means any General Unsecured Claim in an amount of $2,500 or less, or voluntarily reduced to $2,500 by the holder of such Claim.

1.83 **Intentionally omitted.**

1.84 **"Insurance Claims"** means all Claims, causes of action and enforceable rights against any Non-Settling Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, other than an Insured Non-Abuse Claim, held by:

(a) The Debtor for any reason related to an Abuse Claim including those for (i) defense, indemnity and payment of any Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide Insurance Coverage under any Insurance Policy, including the failure or refusal to provide a defense to any Abuse Claim against the Debtor; (iii) any Non-Setting Insurer's tortious or wrongful claims handling including the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ᴸᴵ FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1 failure or refusal of any Non-Settling Insurer to timely compromise and settle any Abuse
2 Claims against the Debtor pursuant to any Insurance Policy; and (iv) the interpretation
3 or enforcement of the terms of any Insurance Policy; and/or

4 (b) Any of the Participating Parties for any reason related to an Abuse
5 Claim against the Participating Party, whether independently or jointly liable with the
6 Debtor on such Abuse Claim, including (i) defense, indemnity and payment of any
7 Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide Insurance
8 Coverage under any Insurance Policy, including the failure or refusal to provide a
9 defense to any Abuse Claim against the Debtor or a Participating Party; (iii) any Non-
10 Setting Insurer's tortious or wrongful claims handling including the failure or refusal of
11 any Non-Settling Insurer to timely compromise and settle any Abuse Claims against the
12 Debtor or a Participating Party pursuant to any Insurance Policy; and (iv) the
13 interpretation or enforcement of the terms of any Insurance Policy.

14 **1.85 "Insurance Coverage"** means insurance that is available under any
15 Insurance Policy to cover all or any portion of an Abuse Claim asserted against (a) the
16 Debtor and/or (b) a Participating Party.

17 **1.86 "Insurance Policy"** means an insurance policy providing Insurance
18 Coverage.

19 **1.87 "Insurance Recoveries"** means the rights to any and all proceeds,
20 including any interest or income earned thereon, and other relief, from (a) any award,
21 judgment, relief, or other determination entered or made as to any Insurance Claims;
22 (b) any and all amounts payable by an Insurer under any settlement agreement with the
23 Debtor and/or a Participating Party with respect to Insurance Claims; and (c) any and all
24 proceeds of any Insurance Policy paid or payable to the Debtor and/or a Participating
25 Party with respect to Insurance Claims.

26 **1.88 "Insured"** means, with respect to an Abuse Claim, that portion of the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1 Claim for which there is Insurance Coverage being provided by an Insurer.

2 **1.89 "Insured Non-Abuse Claim"** means any Claim, other than an Abuse
3 Claim, all or part of which is covered by insurance.

4 **1.90 "Insurer"** means (a) any Person or Entity that during any period of time
5 either (i) provided Insurance Coverage to the Debtor and/or a Participating Party, its
6 predecessors, successors, or assigns, or (ii) issued an Insurance Policy to the Debtor
7 and/or a Participating Party, its predecessors, successors, or assigns; and (b) any
8 Person or Entity owing a duty to defend and/or indemnify the Debtor and/or a
9 Participating Party under any Insurance Policy.

10 **1.90(a) "Interest"** means all liens, Claims, encumbrances, interests, and other
11 rights of any nature, whether at law or in equity, including any rights of contribution,
12 indemnity, defense, subrogation, or similar relief.

13 **1.91 "Jesuit"** means a vowed member of the Society of Jesus.

14 **1.92 "Jesuit Community"** means a local community or group of Jesuits within
15 the Province Territory as described in the Statutes on Poverty, No. 46, §1, and the
16 Complimentary Norms Nos. 188 §§ 1 and 315 and not in the individual capacity of the
17 member or members of such local community or group, regardless of whether it is part
18 of the Debtor, or has a separate legal existence under civil law. As of the Effective
19 Date, any Jesuit community consisting entirely of Jesuits of provinces other than the
20 Province is not a Jesuit Community.

21 **1.93 "Jesuit High Schools"** means Bellarmine Preparatory School (Tacoma,
22 WA), Gonzaga Preparatory School (Spokane, WA), Jesuit High School (Portland, OR)
23 and Seattle Preparatory School (Seattle, WA).

24 **1.94 "Jesuit Novitiate of Sheridan"** means Jesuit Novitiate of Sheridan,
25 Oregon, Inc., an Oregon non-profit religious corporation.

26 **1.95 "Litigation Current Abuse Claim"** means an Abuse Claim for which the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1     holder has elected to opt out of Allocation Plan I or II  and proceed with the liquidation of

2     the Abuse Claim through litigation.

3         **1.96 "Litigation Current Abuse Claimant"** means the holder of a Litigation

4     Current Abuse Claim.

5         **1.97 Medicare Beneficiary"** means an Abuse Claimant who is eligible to

6         receive or is receiving Medicare benefits.

7         **1.98 "Montana Catholic Missions"** means Montana Catholic Missions, S.J., a

8     Montana non-profit religious corporation.

9         **1.99 "MSPA"** means Medicare Secondary Payer Act, codified at 42 U.S.C.

10     § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 411.1 *et*

11     *seq.*

12         **1.100 "MSPRC"** means Medicare Secondary Payer Recovery Contractor.

13         **1.101 "Non-Settling Insurer"** means any Insurer that is not a Settling Insurer.

14         **1.102 "Non-Sexual Abuse Claim"** means the Claim of an Abuse Claimant:

15     (a) who filed a proof of claim alleging Abuse but not Sexual Abuse; or (b) who filed a

16     proof of claim alleging Abuse but not Sexual Abuse and amended or supplemented the

17     proof of claim to allege Sexual Abuse.

18         **1.103 "Omak Area Shelter Claim"** means the Claim of any Person or Entity

19     against the Debtor based on the Debtor's promise or agreement to pay $200,000 for the

20     establishment or support of a homeless shelter(s) and/or homeless services in the

21     Omak, Washington area.

22         **1.104 "Oregon U.S. District Court"** means the United States District Court for

23     the District of Oregon, located in Portland, Oregon.

24         **1.105 "Participating Party"** means those Persons or Entities listed on

25     Exhibit 1.105 to the Plan, as the same may be amended with the consent of the

26     Committee or, after the Effective Date, with the consent of the Trustee subject to

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Bankruptcy Court approval, that are providing a portion of the funding for the Plan in exchange for (a) the release of any Abuse Related Contribution/Indemnity Claim by the Debtor against such Participating Party, (b) the benefit of the Channeling Injunction, and (c) any other benefits in favor of Participating Parties under the Plan.

**1.106 "Penalty Claim"** means a Claim for a fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including any Claim not meant to compensate the Claimant for actual pecuniary loss.

**1.107 "Petition Date"** means February 17, 2009, the date the Debtor filed the petition commencing this Case.

**1.108 "Pioneer Educational Society"** means Pioneer Educational Society, a Washington non-profit religious corporation.

**1.109 "Plan"** means this Plan of Reorganization and any and all modifications and/or amendments thereto.

**1.110 "Plan Documents"** means all agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are necessary or appropriate to implement the Plan and the Trust, including the Trust Documents; provided that the Committee shall have approved each of said agreements, documents and exhibits as to form and content, such approval not to be unreasonably withheld.

**1.111 "Priority Claim"** means any Claim which, if Allowed, would be entitled to priority under Section 507 of the Bankruptcy Code.

**1.112 "Priority Claimant"** means the holder of a Priority Claim.

**1.113 "Proponents"** means the Debtor, the Committee, and the FCR.

**1.114 "Pro Rata"** means proportionate, and when applied to a Claim means the ratio of the amount distributed on account of an Allowed Claim in a class to the amount distributed on account of all Allowed Claims in such class.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ☐ FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1.115 **"Province"** means the Oregon province of the Society of Jesus, an ecclesiastical entity, and a *juridic person* under canon law, regardless of whether it is part of the Debtor, or has a separate legal existence under civil law.

1.116 **"Province Entities"** means the Province and the Participating Parties.

1.117 **"Province Territory"** means the geographic area encompassing the states of Alaska, Idaho, Montana, Oregon, and Washington.

1.118 **"Provincial"** means the Person who is the ecclesiastical superior of the Province.

1.119 **"Punitive Damages"** means the portion of a Claim for punitive or exemplary damages.

1.120 **"Qualified Counsel"** means those attorneys representing Abuse Claimants (other than Future Abuse Claimants) who are utilizing Allocation Plans I, II or III and who have entered into an enforceable written retainer or fee agreements with such Claimant on or before the Effective Date; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Abuse Claimant.

1.121 **"Qualified Counsel Fees"** means the amount to be subtracted from the balance in the Trust in an amount equal to the actual fees payable to Qualified Counsel under enforceable written retainer or fee agreements with Abuse Claimants who are utilizing Allocation Plans I, II or III. Before any distribution(s) to any Abuse Claimant from the Creditor Pool, the Trustee will subtract all Qualified Counsel Fees and shall pay such Qualified Counsel Fees to the appropriate Qualified Counsel at the time the Abuse Claimant receives the first distribution from the Trustee.

1.122 **"Qualified Counsel Costs"** means the amount to be subtracted from the balance in the Trust in an amount equal to the reimbursable expenses (prepetition and postpetition) payable to Qualified Counsel under enforceable written retainer or fee

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     agreement with Abuse Claimants who are utilizing Allocation Plans I, II or III. Before

2     any distribution(s) to any Creditor Pool from the Trust, the Trustee will subtract all

3     Qualified Counsel Costs and shall pay such Qualified Counsel Costs to the appropriate

4     Qualified Counsel at the time the Abuse Claimant receives the first distribution from the

5     Trustee.

6          **1.123 "Released Parties"** means (a) the Debtor's and Reorganized Debtor's

7     present or former members, managers, officers, directors, employees, representatives,

8     attorneys, or agents acting in such capacity; (b) the Participating Parties; and (c) the

9     Participating Parties' present or former members, managers, officers, directors,

10     employees, representatives, attorneys, or agents acting in such capacity. The term

11     "Released Parties" does not include: (i) a Person or Persons having personally

12     committed an act or acts of Abuse resulting in a Claim against the Debtor or a

13     Participating Party, (ii) the Society of Jesus; (iii) the Father General of the Society of

14     Jesus and his predecessors, (iv) the Society of Jesus General Curia or (v) a successor

15     or predecessor of the Debtor to the extent of such successor's or predecessor's

16     independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii) Seattle

17     University; and (viii) the Jesuit High Schools.[2]

18          **1.124 Intentionally omitted.**

19          **1.125 "Reorganized Debtor"** means the Debtor on and after the Effective Date;

20     provided that any successor to the Province, Debtor or the Reorganized Debtor through

21     a merger or suppression of the Province shall not have any rights or remedies by virtue

22     of the Plan or Confirmation Order on account of Abuse Claims for which the successor

23     was independently liable.

24          **1.126 "Representatives"** means the current and former officers, directors,

25

26     [2] The exclusion of Seattle University from the defined term "Released Parties" shall not
    be construed to alter or impair the provisions of Section 11.10 of this Plan.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 agents, attorneys, employees, and legal representatives of a Person or Entity, but

2 excluding (i) a Person or Persons having personally committed an act or acts of Abuse

3 resulting in a Claim against the Debtor or a Participating Party, (ii) the Society of Jesus;

4 (iii) the Father General of the Society of Jesus and his predecessors, (iv) the Society of

5 Jesus General Curia, (v) a successor or predecessor of the Debtor to the extent of such

6 successor's or predecessor's independent liability for an act or acts of Abuse; (vi)

7 Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High Schools.

8 **1.127 "Represented Class 3 Abuse Claimant"** means a Class 3 Abuse

9 Claimant whose proof of claim, prior to any supplement or amendment filed with the

10 Bankruptcy Court, was signed by an attorney of record.

11 **1.128 "Safeco"** means American States Insurance Company, General

12 Insurance Company of America, and Safeco Insurance Company of America, and each

13 of their past and present subsidiaries, parents, and affiliates. "Safeco" also includes all

14 future subsidiaries, parents, and affiliates of American States Insurance Company,

15 General Insurance Company of America, and Safeco Insurance Company of America,

16 to the extent that their liability is derivative of Safeco's liabilities under the Safeco

17 Policies.

18 **1.129 "Safeco Coverage Litigation"** means that certain adversary proceeding

19 entitled General Insurance Company of America and American States Insurance

20 Company v. Society of Jesus, Oregon Province, Adversary Proceeding No. 09-3351-

21 elp, filed on October 23, 2009.

22 **1.129(a) "Safeco Other Releasing Parties"** means "Other Releasing Parties"

23 as defined in the Safeco Settlement Agreement.

24 **1.129(b) "Safeco Policies"** means "Policies" as defined in the Safeco

25 Settlement Agreement.

26 **1.129(c) "Safeco Released Parties"** means "Safeco Released Parties" as

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

defined in the Safeco Settlement Agreement.

**1.130 "Safeco Settlement Agreement"** refers to that certain Settlement Agreement between Safeco and the Debtor dated March 23, 2011 attached as Exhibit 1.130 to the Plan.

**1.131 "Safeco Settlement Amount"** means the payment of $118 million to be made by Safeco pursuant to Section 2.1 of the Safeco Settlement Agreement.

**1.132 "Section 363 Sale"** means a sale of property pursuant to the provisions of Section 363 of the Bankruptcy Code.

**1.133 Intentionally omitted.**

**1.134 "Settled"** means, with respect to a Claim, a Claim that has been resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or a U.S. District Court, as applicable.

**1.135 "Settling Insurer"** means: (a) each of those Insurers listed on Exhibit 1.135 to the Plan, as the same may be amended before the Confirmation Hearing with the consent of the Committee and the FCR, and after the Confirmation Hearing with the consent of the Trustee; and (b) such Insurer's predecessors, successors and assigns, but only to the extent that: (i) such predecessor's liability was assumed by the Insurer listed on Exhibit 1.135 to the Plan, and (ii) such successor's or assign's liability is derivative of the liability of the Insurer listed on Exhibit 1.135 to the Plan and not independent of the liability of the Insurer listed on Exhibit 1.135 to the Plan.

**1.135(a) "Settling Insurer Other Releasing Parties"** means "Other Releasing Parties" as defined in any settlement agreement between a Settling Insurer and the Debtor, the Reorganized Debtor, a Participating Party, or the Trustee, as the case may be.

**1.135(b) "Settling Insurer Policies"** means "Policies" as defined in any settlement agreement between a Settling Insurer and the Debtor, the Reorganized

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1 Debtor, a Participating Party, or the Trustee, as the case may be.

2 **1.135(c) "Settling Insurer Released Parties"** means the "Settling Insurer
3 Released Parties" as defined in any settlement agreement between a Settling Insurer
4 and the Debtor, the Reorganized Debtor, a Participating Party, or the Trustee, as the
5 case may be.

6 **1.136 "Sexual Abuse"** means sexual conduct or misconduct, sexual abuse, or
7 sexually-related harm or contacts, or interactions of a sexual nature between a child and
8 an adult, or a non-consenting adult and another adult. A child or non-consenting adult
9 is abused whether or not this activity involves explicit force.

10 **1.137 "Sexual Abuse Claims"** means Abuse Claims for Sexual Abuse.

11 **1.138 "Shelter Beneficiary(ies)"** means a minimum of one (1) and a maximum
12 of three (3) viable and recognized homeless shelters or programs serving the homeless
13 in the Omak, Washington area designated pursuant to Section 4.3 of the Plan.

14 **1.139 "Society of Jesus"** means the worldwide Roman Catholic religious order
15 of men founded in 1540 by Saint Ignatius Loyola and designated by him as "The
16 Company of Jesus." That title was Latinized into "Societatis Jesu" in the Bull of Paul III
17 approving its formation and the first formula of its Institute ("Regimini militantis ecclesia",
18 27 September, 1540).

19 **1.140 "Society of Jesus, Alaska"** means Society of Jesus, Alaska, an Alaska
20 non-profit religious corporation.

21 **1.141 "Statutes on Poverty"** means the Statutes on Religious Poverty in the
22 Society of Jesus first promulgated in 1976 and revised in 2003.

23 **1.142 "Student Loan Claims"** means those Claims of Persons or Entities in
24 probation or engaged in studies to become a member of the Society for payment or
25 reimbursement of their student loan obligations to an educational institution, including
26 any Claims of the educational institutions themselves, if any, based on the Debtor's

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1 agreement to pay or assume such student loan obligations.

2 **1.143 "Supplemental Injunction"** means each of the injunctions in Sections
3 11.5 and 11.6.

4 **1.144 "Temporarily Allowed"** with reference to a Claim means such Claim as
5 temporarily allowed for any purpose other than distribution on a Claim pursuant to
6 Bankruptcy Rule 3018(a) or otherwise.

7 **1.145** "**Third Party Derivative Claims"** means Claims against any Person or
8 Entity for disregard of the corporate form, piercing the corporate veil, or alter ego, that
9 would subject such Person or Entity to liability for Abuse Claims against the Debtor.

10 **1.145(a) "Travelers"** means Fidelity and Guaranty Insurance Company, Fidelity
11 and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company,
12 Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers
13 Indemnity Company of Connecticut, and each of their past and present subsidiaries,
14 parents, and affiliates. "Travelers" also includes all future subsidiaries, parents, and
15 affiliates of Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance
16 Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company
17 of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut,
18 to the extent that their liability arises out of liabilities under insurance policies issued by
19 Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance
20 Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company
21 of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut,
22 or any of their past or present subsidiaries, parents, or affiliates.

23 **1.145(b) "Travelers Other Releasing Parties"** means "Other Releasing
24 Parties" as defined in the Travelers Settlement Agreement.

25 **1.145(c) "Travelers Policies"** means "Policies" as defined in the Travelers
26 Settlement Agreement.

1.145(d) **"Travelers Released Parties"** means "Travelers Released Parties" as defined in the Travelers Settlement Agreement.

1.145(e) **"Travelers Settlement Agreement"** refers to that certain Settlement Agreement between Travelers and the Debtor dated June 8, 2011 attached as Exhibit 1.145(e) to the Plan.

1.146 **"Trust"** means the trust to be established pursuant to the Plan and the Trust Documents for the benefit of all Abuse Claimants.

1.147 **"Trust Documents"** means the agreements, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration and funding of the Trust. A trust agreement is attached as Exhibit 1.147 to the Plan.

1.148 **"Trustee"** means Omni Management Group, LLC, the trustee of the Trust, and any successor trustee appointed pursuant to the terms of this Plan and the Trust Documents.

1.149 **"U.S. District Court"** means a United States District Court.

1.150 **"Unrepresented Class 3 Abuse Claimant"** means a Class 3 Abuse Claimant whose proof of claim, prior to any supplement or amendment filed with the Bankruptcy Court, was not signed by an attorney of record. Retention of counsel after the filing of the original proof of claim does not relieve the Class 3 Abuse Claimant of the foregoing classification, unless counsel has executed and filed a proof of claim superseding the proof of claim executed and filed by the Class 3 Abuse Claimant.

1.151 **"Unrepresented Class 3A Abuse Claimant"** means a Class 3A Abuse Claimant whose proof of claim, prior to any supplement or amendment filed with the Bankruptcy Court, was not signed by an attorney of record. Retention of counsel after the filing of the original proof of claim does not relieve the Class 3A Abuse Claimant of the foregoing classification, unless counsel has executed and filed a proof of claim

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

superseding the proof of claim executed and filed by the Class 3A Abuse Claimant.

**1.152 "Unresolved"** means, with respect to a Claim, a Claim that has neither been Allowed or Disallowed or liquidated.

**1.153 "Voting Procedures"** means those procedures approved by the Bankruptcy Court pursuant to Motion for Order: (A) Approving Disclosure Statement; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for Voting on Plan; (E) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of Plan; and (F) Granting Related Relief.

**1.154 "Western World"** means Western World Insurance Company, and its past and present subsidiaries, parents, and affiliates. "Western World" also includes all future subsidiaries, parents, and affiliates of Western World Insurance Company, to the extent that their liability is derivative of Western World's liabilities under the Western World Policies.

**1.156 "Western World Other Releasing Parties"** means "Other Releasing Parties" as defined in the Western World Settlement Agreement.

**1.157 "Western World Policies"** means "Policies" as defined in the Western World Settlement Agreement.

**1.158 "Western World Released Parties"** means "Western World Released Parties" as defined in the Western World Settlement Agreement.

**1.159 "Western World Settlement Agreement"** refers to that certain Settlement Agreement between Western World and the Debtor dated June 10, 2011 attached as Exhibit 1.159 to the Plan.

**2. TREATMENT OF UNCLASSIFIED CLAIMS.**

**2.1 Administrative Claims**. Except as provided in section 6.7(b) of the Plan, the Reorganized Debtor will pay Administrative Claimants the full amount of their

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1  Allowed Administrative Claims in Cash either (a) on or as soon as practicable following
2  the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be
3  agreed to in writing by the Administrative Claimant and the Debtor or the Reorganized
4  Debtor; provided, however, that any Current Obligations will be paid in full in the
5  ordinary course of business in accordance with the terms and conditions of any
6  agreement relating thereto.

7  **3.    CLASSIFICATION OF CLAIMS.**

8      All Claims except Administrative Claims are placed in the following classes for all
9  purposes.  A Claim is classified in a particular class only to the extent the Claim
10  qualifies within the description of that class and is classified in a different class to the
11  extent the Claim qualifies within the description of that different class.  If a Claim is
12  acquired or transferred, the Claim will be placed in the class where it would have been
13  placed if it were owned by the original holder of such Claim.  If a Claimant has more
14  than one Claim in the same class, such Claims will be aggregated and treated as a
15  single Claim.  If a Claimant has Claims in different classes, such Claims will be
16  aggregated only within the same class and not between classes.

17      Class 1: Priority Claims

18      Class 2: General Unsecured Convenience Claims

19      Class 3: Current Sexual Abuse Claims

20      Class 3A: Non-Sexual Abuse Claims

21      Class 4: Future Abuse Claims

22      Class 5: Omak Area Shelter Claim

23      Class 6: Insured Non-Abuse Claims

24      Class 7: General Unsecured Claims

25      Class 8: Penalty Claims

26      Class 9: Student Loan Claims

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     Class 10: Intentionally Omitted.

2     Class 11: Formation Fund Claim

3     Class 12: Charitable Gift Annuity Claims

4     Class 13: Donor and Beneficiary Claims

5     Class 14: Convenience Abuse Claims

6     Class 15: Abuse Related Contribution/Indemnity Claims

7 **4.**     **TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.**

8     **4.1**     **Class 1: Priority Claims**. The holders of Allowed Priority Claims will

9 receive either (a) payment from the Reorganized Debtor of the full amount of their

10 Allowed Claims in Cash, on or as soon as practicable following the Effective Date or, if

11 later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as

12 may be agreed in writing by the Claimant and the Reorganized Debtor.

13     **4.2**     **Class 2: General Unsecured Convenience Claims**. The holders of

14 Allowed General Unsecured Convenience Claims will receive either (a) payment from

15 the Reorganized Debtor of the full amount of their Allowed General Unsecured

16 Convenience Claims in Cash, on or as soon as reasonably practicable following the

17 Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed General

18 Unsecured Convenience Claims upon such terms as may be agreed in writing by the

19 Claimant and the Reorganized Debtor.

20     **4.3**     **Class 5: Omak Area Shelter Claim.** John Allison, counsel for the

21 holders of Omak Area Shelter Claims, shall, within ninety (90) days after the Effective

22 Date, with the approval of a majority of the holders of Allowed Class 5 Claims,

23 designate in writing to the Reorganized Debtor the "Shelter Beneficiary(ies) for whose

24 benefit the Reorganized Debtor will convey the total sum of $200,000. If more than one

25 Shelter Beneficiary is designated by Allison, each Shelter Beneficiary shall be entitled to

26 its proportional share of the total sum of $200,000. This conveyance shall be due and

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  owing on the one (1) year anniversary following the date on which Allison has

2  designated the Shelter Beneficiary(ies) to the Reorganized Debtor. If Allison has not

3  designated the Shelter Beneficiary(ies) within ninety (90) days after the Effective Date,

4  then the Reorganized Debtor shall within a reasonable period, but not more than ninety

5  (90) additional days therefrom, select a Shelter Beneficiary(ies)  and notify Allison of its

6  decision. The Reorganized Debtor shall then have one (1) year after the date of its

7  notification to Allison to convey $200,000 to the Shelter Beneficiary(ies).  Upon

8  conveyance of $200,000 to the Shelter Beneficiary(ies), whether designated by Allison

9  or by the Reorganized Debtor as the case may be, the Reorganized Debtor shall advise

10 Allison. Such notification shall complete the Reorganized Debtor's obligation to these

11 Claimants, which shall be deemed fully and completely satisfied.

12  **4.4  Class 9:  Student Loan Claims**.  The legal, equitable, and contractual

13 rights of holders of Allowed Student Loan Claims will not be altered by the Plan and will

14 be paid in the ordinary course by the Reorganized Debtor.

15  **4.5  Class 12:  Charitable Gift Annuity Claims**.  The legal, equitable, and

16 contractual rights of holders of Allowed Charitable Gift Annuity Claims will not be altered

17 by the Plan and will be paid in the ordinary course by the Reorganized Debtor.

18  **4.6  Class 14: Convenience Abuse Claims**.  The holders of Allowed

19 Convenience Abuse Claims will receive payment from the Trust of the full amount of

20 their Allowed Convenience Abuse Claims in Cash, on or as soon as reasonably

21 practicable following the Effective Date or, if later, the Allowance Date.

22  **5.  TREATMENT OF IMPAIRED CLASSES OF CLAIMS.**

23  **5.1  Classes 3 and 3A:  Abuse Claims**.

24  **5.1.1**  On the Effective Date, and subject to sections 6.3 and 6.4 of the

25 Plan, the Trust shall assume all liability for and the Trust will pay all Abuse Claims

26 pursuant to the provisions of the Plan and Trust Documents.  The assumption of liability

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1  and payment of the Abuse Claims by the Trust shall not release the Debtor's liability on

2  account of the Abuse Claims.  Provided however, all of the Debtor's liability on account

3  of the Abuse Claims shall be discharged pursuant to the provisions of Section 11.1 of

4  this Plan.  As provided in Bankruptcy Code §524(e), such discharge shall not affect the

5  liability of any other entity on, or the property of any other entity for, the Abuse Claims

6  including the liability of any Non-Settling Insurer, which liability shall continue unaffected

7  by the terms of this Plan (except to the extent this Plan incorporates the Safeco

8  Settlement Agreement, Travelers Settlement Agreement, Western World Settlement

9  Agreement, and any settlement agreements with other Settling Insurers) or the

10  discharge granted to the Debtor under this Plan and Bankruptcy Code §1141(d).

11         **5.1.2**  On the Effective Date, and without any further action by any party,

12  each Class 3 and 3A Claimant who has elected to use Allocation Plans I, II or III to the

13  extent permitted by the Plan, shall be deemed to have assigned to the Trust that

14  Claimant's Class 3 or 3A Abuse Claim against the Debtor and each of the Participating

15  Parties, if such assignment is valid.   If such assignment is determined by the

16  Bankruptcy Court not to be valid, then each Class 3 and 3A Claimant will retain that

17  Claimant's Class 3 or 3A Abuse Claim and shall be deemed to have appointed the

18  Trustee as his or her attorney-in-fact for the purpose of:  (a) asserting his or her Class 3

19  or 3A Abuse Claim against the Reorganized Debtor and/or the Participating Parties,

20  subject to the provisions of Section 6.9 of this Plan and (b) provided that such Abuse

21  Claim results in a judgment against the Reorganized Debtor, asserting any rights that

22  such Class 3 or 3A Claimant may have against any Non-Settling Insurer.  All recoveries

23  received on account of such Abuse Claims shall be deemed to be held in trust for the

24  benefit of the Trust and shall be remitted to the Trust as soon as practicable following

25  the Class 3 or 3A Claimant's receipt of such Insurance Recoveries.  The determination

26  of whether the assignment by the Class 3 and 3A Claimants' of the Class 3 and 3A

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    Abuse Claims to the Trust is valid shall be made by the Bankruptcy Court at the

2    Confirmation Hearing. A determination that such assignment of the Class 3 and 3A

3    Abuse Claims to the Trust is valid shall include, *inter alia,* a determination that the

4    assignment in no way affects the ability of the Trust to pursue collection of the Class 3

5    and 3A Abuse Claims from the Non-Settling Insurers, and each of them. That

6    determination shall be binding upon all parties receiving notice of the Confirmation

7    Hearing, which shall include notice of this provision.  If a party in interest, including Non-

8    Settling Insurers, fails to timely file an objection to the proposed assignment by the

9    deadline for filing objections to confirmation of this Plan, that party in interest shall be

10   deemed to have irrevocably consented to the assignment and will be forever barred

11   from asserting that the assignment in any way affects the ability of the Trust to pursue

12   collection of the Class 3 and 3A Abuse Claims from the Non-Settling Insurers, and each

13   of them.

14       **5.1.3**   At such time as a Litigation Current Abuse Claimant obtains a final

15   non-appealable judgment against the Debtor and/or the Reorganized Debtor pursuant

16   to Section 5.4 of this Plan, such Litigation Current Abuse Claimant shall be deemed to

17   have assigned to the Trust such final non-appealable judgment against the Debtor

18   and/or the Reorganized Debtor and any rights such Litigation Current Claimant may

19   have against any Non-Settling Insurer, if such assignment is valid.  If such assignment

20   is determined by the Bankruptcy Court not to be valid, then each Litigation Current

21   Abuse Claimant will retain that Claimant's final non-appealable judgment and any rights

22   such Litigation Current Abuse Claimant may have against any Non-Settling Insurer and

23   shall be deemed to have appointed the Trustee as his or her attorney in fact for the

24   purpose of asserting any rights such Litigation Current Abuse Claimant may have

25   against any Non-Settling Insurer.  All recoveries received on account of such final non-

26   appealable judgment and any rights such Litigation Current Abuse Claimant may have

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 against any Non-Settling Insurer shall be deemed to be held in trust for the benefit of

2 the Trust and shall be remitted to the Trust as soon as practicable following the

3 Litigation Current Abuse Claimant's receipt of any Insurance Recoveries.  The

4 determination of whether the assignment of the final non-appealable judgment against

5 the Debtor and/or the Reorganized Debtor and any rights such Litigation Current Abuse

6 Claimant may have against any Non-Settling Insurer to the Trust is valid shall be made

7 by the Bankruptcy Court at the Confirmation Hearing.  A determination that such

8 assignments to the Trust is valid shall include, *inter alia,* a determination that the

9 assignment in no way affects the ability of the Trust to pursue collection of such

10 Litigation Current Abuse Claims from the Non-Settling Insurers, and each of them.  That

11 determination shall be binding upon all parties receiving notice of the Confirmation

12 Hearing, which shall include notice of this provision.  If a party in interest, including Non-

13 Settling Insurers, fails to timely file an objection to the proposed assignment by the

14 deadline for filing objections to confirmation of this Plan, that party in interest shall be

15 deemed to have irrevocably consented to the assignment and will be forever barred

16 from asserting that the assignments in any way affects the ability of the Trust to pursue

17 collection of the Litigation Current Abuse Claims from the Non-Settling Insurers, and

18 each of them.

19       **5.1.4**  Upon the completion of the Abuse Claims Reviewer's review of

20 Abuse Claims in a given Creditor Pool utilizing Allocation Plans I, II or III, including the

21 reconsideration of any point award for an Abuse Claim pursuant to the applicable

22 Allocation Plan, the Abuse Claims Reviewer shall provide written notification to the

23 Trustee of the points awarded to each Abuse Claimant in the Creditor Pool.  The

24 Trustee shall calculate the average value of each awarded point in the Creditor Pool

25 based on the net funds in each Creditor Pool available for distribution to the Abuse

26 Claimants in the Creditor Pool, i.e. the funds available after the reserves and deductions

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 Ι FACSIMILE (503) 248-0130

1  provided for in the Plan and Plan Documents.  The Trustee shall determine each Abuse

2  Claimant's monetary award from such net funds by multiply the average value of each

3  awarded point by the number of points awarded to a particular Abuse Claimant.  Upon

4  making such determination, the Trustee shall distribute the monetary award to the

5  Abuse Claimant in accordance with the Plan.

6       **5.1.5**  Under no circumstance shall the monetary award to an Abuse

7  Claimant pursuant to Allocation Plans I, II or III have any effect on the rights of a Non-

8  Settling Insurer.

9       **5.1.6**  Debtor, the Reorganized Debtor and their counsel shall reasonably

10  cooperate with the Abuse Claims Reviewer and the Trustee as requested by the Abuse

11  Claims Reviewer or the Trustee in connection with any inquiries by either in the

12  administration of the Allocation Plans.

13       **5.1.7**  The Abuse Claims Reviewer also may, but shall not be required to,

14  obtain discovery through use of process from any party other than the Debtor and the

15  Reorganized Debtor, and shall have all of the rights and powers of the Debtor to take

16  such discovery under Part VII of the Bankruptcy Rules. The Abuse Claims Reviewer's

17  determination shall be made expeditiously. The extent to which the Federal Rules of

18  Evidence will be applied by the Abuse Claims Reviewer in assessing the credibility and

19  competency of the evidence shall be within the sole discretion of the Abuse Claims

20  Reviewer. The Federal Rules of Evidence, to the extent determined by the Abuse

21  Claims Reviewer to be applicable, shall be liberally construed to promote justice.

22       **5.1.8**  No Class 3 or 3A Abuse Claimant may challenge the merit, validity,

23  or amount of any Class 3 or 3A Claim.

24       **5.2**    **Treatment of Class 3 Claims.**

25       **5.2.1**  The ballot shall provide Class 3 Abuse Claimants the following

26  alternatives to treatment in the Creditor Pool reflected on the Ballot:

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

1    (a)    Treatment of the Class 3 Abuse Claimant's Claim as a
2    Litigation Current Abuse Claim or

3    (b)    Treatment of the Class 3 Abuse Claimant's Claim as an
4    Abuse Claim in a Creditor Pool or

5    (c)    Treatment of the Class 3 Abuse Claimant's Claim as a
6    Convenience Abuse Claim.

7    **5.2.2**  If a Class 3 Abuse Claimant does not return a marked Ballot
8    indicating one of the elections in Section 5.2.1, the Class 3 Abuse Claimant shall
9    irrevocably will be treated as a Convenience Abuse Claim.    Notwithstanding the
10   foregoing, the Committee's counsel shall notify the Class 3 Abuse Claimant by mail of
11   the failure to mark a Ballot and the treatment of the Abuse Claim as a Convenience
12   Abuse Claim, and the Class 3 Abuse Claimant shall have ten (10) days from mailing of
13   such notice to deliver to Committee's counsel a marked Ballot which marked Ballot will
14   govern the treatment of the Class 3 Abuse Claim.

15   **5.2.3**  Assignment to a Creditor Pool.  All Class 3 Abuse Claimants shall
16   be assigned to a Creditor Pool.

17   **5.2.4**  Represented Class 3 Abuse Claimant.

18   (a)    Ballot Designation of Creditor Pool:  The assignment of a
19   Represented Class 3 Abuse Claimant to a Creditor Pool shall reflect the written
20   recommendation of the Represented Class 3 Abuse Claimant's attorney of record,
21   provided that the Committee has received such written recommendation from the
22   Represented Class 3 Abuse Claimant's attorney of record in accordance with the Voting
23   Procedures.  If such written recommendation is not received in accordance with the
24   Voting Procedures, the Represented Class 3 Abuse Claimant shall be treated as an
25   Unrepresented Class 3 Abuse Claimant solely for the purpose of the assignment of
26   such Represented Class 3 Abuse Claimant to a Creditor Pool and Allocation Plan.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1               (b)       Opt Out From Designated Creditor Pool.  Each Represented

2    Class 3 Abuse Claimant, in accordance with the Voting Procedures, may opt out of the

3    Creditor Pool designated on the Ballot and select any alternative Creditor Pool.  If the

4    Represented Class 3 Abuse Claimant opts out of the Creditor Pool designated on the

5    Ballot, but does not designate an alternative Creditor Pool, the Represented Class 3

6    Abuse Claimant shall be assigned to a Creditor Pool on a random basis by the

7    Committee; provided that the random assignments shall result in assignments to

8    Allocation Plans in proportion to the Allocation Plan assignments designated in the

9    original Ballots and that the first random assignment shall be to a Creditor Pool using

10    the Allocation Plan that has the greater number of Class 3 Abuse Claimants as

11    designated in the original Ballots.   If more than one Creditor Pool has selected an

12    Allocation Plan, such Represented Class 3 Abuse Claimant will be assigned to one of

13    the Creditor Pools on a random basis by the Committee provided that such Creditor

14    Pool assignments shall be in proportion to the number of Class 3 Abuse Claimants in

15    each Creditor Pool as designated in the original Ballots.

16         For example purposes only, assume that Ballot designations reflect that two-

17    thirds (2/3) of the Class 3 Abuse Claimants are assigned to Creditor Pools utilizing

18    Allocation Plan I and one-third (1/3) of the Class 3 Abuse Claimants are assigned to

19    Creditor Pools utilizing Allocation Plan II.   If fifteen Represented Class 3 Abuse

20    Claimants opt out of the Creditor Pool designated on the Ballot but do not designate an

21    alternative Creditor Pool, ten (10) of the Represented Class 3 Abuse Claimants will be

22    assigned to Creditor Pools utilizing Allocation Plan I and five (5)  of the Represented

23    Class 3 Abuse Claimants will be assigned to Creditor Pools utilizing Allocation Plan II.

24    The same method will be used for assigning such Represented Class 3 Abuse

25    Claimants to Creditor Pools.

26               (c)       If the Represented Class 3 Abuse Claimant does not return

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

1 the Ballot opting out of the assigned Creditor Pool in accordance with the Voting

2 Procedures, the Represented Class 3 Abuse Claimant irrevocably will be assigned to

3 the Creditor Pool designated on the Ballot.

4 (d) If a Represented Class 3 Abuse Claimant's counsel has not

5 associated into a minimum sized pool, the Represented Class 3 Abuse Claimant will

6 use the ballot to elect an Allocation Plan and Creditor Pool. If a Represented Class 3

7 Abuse Claimant fails to make the election of an Allocation Plan on the ballot, the

8 Represented Class 3 Abuse Claimant will be assigned to the Allocation Plan on a

9 random basis but the assignments shall be prorated between Allocation Plan I and

10 Allocation Plan II based on the numbers of Class 3 Abuse Claimants in the originally

11 constituted Creditor Pools. If the Represented Class 3 Abuse Claimant does not elect

12 into a Creditor Pool, the Represented Class 3 Abuse Claimant will be assigned to a

13 Creditor Pool on a random basis but the assignments shall be prorated between the

14 Creditor Pools based on the numbers of Claimants in the originally constituted Creditor

15 Pools.

16 **5.2.5** Unrepresented Class 3 Abuse Claimant. The Ballot for an

17 Unrepresented Class 3 Abuse Claimant shall not reflect any assignment to a Creditor

18 Pool. If the Unrepresented Class 3 Abuse Claimant does not elect treatment as a

19 Litigation Current Abuse Claimant, such claimant may mark the Ballot to select the

20 Creditor Pool to which the Unrepresented Class 3 Abuse Claimant will be assigned.

21 (a) If the Unrepresented Class 3 Abuse Claimant does not

22 designate a Creditor Pool, the Unrepresented Class 3 Abuse Claimant shall be

23 assigned to a Creditor Pool on a random basis by the Committee; provided that the

24 random assignments shall result in assignments to Allocation Plans in proportion to the

25 Allocation Plan assignments designated in the original Ballots and that the first random

26 assignment shall be to a Creditor Pool using the Allocation Plan that has the greater

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1     number of Abuse Claimants as designated in the original Ballots.  If more than one

2     Creditor Pool has selected an Allocation Plan, such Unrepresented Class 3 Abuse

3     Claimant will be assigned to one of the Creditor Pools on a random basis by the

4     Committee provided that such Creditor Pool assignments shall be in proportion to the

5     number of Abuse Claimants in each Creditor Pool as designated in the original Ballots.

6     For example purposes only, assume that Ballot designations reflect that two-thirds (2/3)

7     of the Abuse Claimants are assigned to Creditor Pools utilizing Allocation Plan I and

8     one-third (1/3) of the Abuse Claimants are assigned to Creditor Pools utilizing Allocation

9     Plan II.  If fifteen Unrepresented Class 3 Abuse Claimants do not designate a Creditor

10    Pool or do not return the Ballot in accordance with the Voting Procedures, ten (10) of

11    the Unrepresented Class 3 Abuse Claimants will be assigned to Creditor Pools utilizing

12    Allocation Plan I and five (5) of the Unrepresented Class 3 Abuse Claimants will be

13    assigned to Creditor Pools utilizing Allocation Plan II.   The same method will be used

14    for assigning such Unrepresented Class 3 Abuse Claimants to Creditor Pools.

15          (b)    An Unrepresented Class 3 Claimant will use the ballot to

16    elect an Allocation Plan and Creditor Pool.  If such a Claimant fails to make the election

17    of an Allocation Plan on the Ballot, the Claimant will be assigned on a random basis by

18    the Committee but the assignments shall be prorated between the Allocation Plans

19    based on the numbers of Claimants in the originally constituted Creditor Pools.

20    **5.2.6**  The Trustee shall establish a monetary reserve for each of the

21    Creditor Pools.  The amount of such reserve shall be determined by multiplying the

22    number of Claims in a Creditor Pool by the average distribution to a Class 3 Abuse

23    Claimant, net of certain deductions from the funds received by the Trust, including

24    deductions set forth in the Plan (a) Chapter 11 Professionals unpaid Allowed

25    Administrative Claims and Allowed expenses, (b) $7.233 million, plus additional

26    amounts as provided in the Plan, on account of a reserve for Future Abuse Claims,(c)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 fees and costs of Abuse Claim Reviewers in relation to the preliminary review of certain

2 Abuse Claims as set forth in the Plan; (d) and distribution to a reserve for Class 3A

3 Abuse Claimants as set forth in Section 5.3; (e) distribution to a reserve for Litigation

4 Current Abuse Claimants as set forth in Section 5.4; (f) a reserve to be established by

5 the Trustee, subject to Bankruptcy Court approval, for certain attorney's fees, costs and

6 expenses to be incurred by the Debtor and/or the Reorganized Debtor; and (g) any

7 other deductions and/or reserves required by the Plan. The Trustee shall also establish

8 a reasonable administrative expense reserve for each Creditor Pool's post-confirmation

9 expenses, including the fees and expenses of administering the Creditor Pool's

10 Allocation Plan.

11      **5.2.7** Confirmation of the Plan shall be conditioned on no Creditor Pool

12 having have more than 10% of its original membership of Represented Class 3 Abuse

13 Claimants opt out of the Creditor Pool. This condition may be waived by the

14 Committee.

15      **5.2.8** The Abuse Claims Reviewer for each Creditor Pool will divide the

16 Claims in the Creditor Pool into two categories: (a) Claims originally filed as Current

17 Sexual Abuse Claims and (b) Claims filed by the Law Office of Joseph A. Blumel III,

18 P.S. and Breck Barton & Associates, P.A. The Abuse Claims Reviewer shall determine

19 if any of these Claims is a Claim of Sexual Abuse supported by credible evidence. The

20 Abuse Claims Reviewer's powers to examine such a Claim will include all of the

21 discovery powers permitted the Abuse Claims Reviewer in the subsequent evaluation of

22 the Claims in the Creditor Pool. If the Abuse Claims Reviewer determines based on a

23 preponderance of evidence, that the Claim is not a Sexual Abuse Claim, such Claim will

24 be classified and treated as a Class 3A Claim. If Abuse Claims Reviewer determines

25 based on a preponderance of evidence that the Claim is a Sexual Abuse Claim, the

26 Claim will be classified and treated as a Class 3 Claim. The Abuse Claims Reviewer

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 □ FACSIMILE (503) 248-0130

1 determination will be subject solely to a right to seek reconsideration as provided in the

2 applicable Allocation Plan. After the Abuse Claims Reviewer has determined the

3 amount awarded to the Class 3 Claims filed by the Law Office of Joseph A. Blumel III,

4 P.S. and Breck Barton & Associates, P.A., the total awards on account of such Class 3

5 Claims will be compared to the amount funded into a Creditor Pool on account of such

6 Claims. If the total amount awarded is less than the total amount funded into a Creditor

7 Pool on account of all such Claims, the difference shall be withdrawn from such Creditor

8 Pool's reserve and distributed amongst all of the Creditor Pools on a pro rata basis

9 determined by the number of Abuse Claimants in each Creditor Pool. If the difference is

10 $0, no withdrawals from such Creditor Pool's reserve shall be made. If the total amount

11 awarded is more than the total amount funded into a Creditor Pool on account of all

12 such Claims, each other Creditor Pool shall contribute its pro rata share determined by

13 the number of Abuse Claimants in all of the Creditor Pools to the Creditor Pools

14 containing such Claims, provided however, that the Class 3 Claims filed by the Law

15 Office of Joseph A. Blumel III, P.S and Breck Barton & Associates, P.A. shall not

16 participate in any of such additional funds.

17     **5.2.9** The Claims of Unrepresented Abuse Claimants also shall be

18 preliminarily reviewed by the Abuse Claims Reviewer assigned to the Creditor Pool.

19 The Abuse Claims Reviewer's powers to preliminarily investigate such a Claim will

20 include all of the discovery powers permitted the Abuse Claims Reviewer under the

21 applicable Allocation Plan.

22     **5.2.10** If the Abuse Claims Reviewer determines that an Unrepresented

23 Class 3 Abuse Claimant for Sexual Abuse fails to meet Rule 9011's certifications, the

24 Abuse Claims Reviewer shall deny the Claim. A Claimant whose Sexual Abuse Claim

25 is so denied shall have the right to request reconsideration from the Abuse Claims

26 Reviewer and shall have the right to submit additional evidence that in support of that

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 │ FACSIMILE (503) 248-0130

1 request.  If the Claimant fails to seek reconsideration on a timely basis in accordance

2 with the applicable Allocation Plan, or if the Abuse Claims Reviewer denies the

3 reconsideration request, the Unrepresented Class 3 Abuse Claimant shall have no right

4 to any distribution under the Plan.

5         **5.2.11** If the Abuse Claims Reviewer finally determines that a Claim

6 should be denied hereunder, the amount reserved for such Claim in the creditor Pool

7 shall be distributed amongst the Creditor Pools on a prorated basis based on the

8 number of Abuse Claimants in each Creditor Pool.

9         **5.3    Treatment of Class 3A Claims (Non-Sexual Abuse Claims).**

10         **5.3.1**  The Trustee shall establish a reserve for Class 3A Claims in

11 amount equal to $17,500 multiplied by the number of Class 3A Claims.  The Abuse

12 Claims Reviewer assigned to Allocation Plan II shall review the Claims and make

13 awards ranging from $0 to $17,500 in accordance with Allocation Plan III.

14         **5.3.2**  When an Abuse Claim is reclassified from a Creditor Pool to Class

15 3A, the difference between the amount reserved for such Claim in the Creditor Pool and

16 $17,500 shall be distributed amongst the Creditor Pools on a prorated basis based on

17 the number of Abuse Claimants in each Creditor Pool.

18         **5.3.3**  The Trustee, up to five business days prior to notifying the Class 3A

19 Claimants of the Abuse Claims Reviewer's awards, shall have the right to settle a Class

20 3A Claim without Bankruptcy Court approval.

21         **5.3.4**  Any amounts reserved for the Class 3A which are not awarded to

22 Class 3A Claimants shall be distributed on a prorated basis to each Creditor Pool based

23 on the number of Abuse Claimants in each Creditor Pool.

24         **5.4    Treatment of Litigation Current Abuse Claims.**

25         **5.4.1**  At the Confirmation Hearing, the Committee shall ask the Court to

26 estimate the Litigation Current Abuse Claims pursuant to Bankruptcy Code §502 and

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1 the Trustee shall establish a reserve equal to the amount of the Court's estimate. The
2 reserve shall be used for the payment of Allowed Litigation Current Abuse Claims and
3 reasonable attorneys' fees and expenses to be incurred by the Debtor and Reorganized
4 Debtor in the litigation and settlement of Litigation Current Abuse Claims.

5       **5.4.2** Litigation Current Abuse Claims for which a prepetition action was
6 pending: (a) shall be transferred back to the U.S. District Court from which it was
7 originally transferred, (b) shall, upon the appropriate motion in the U. S. District Court to
8 which it was transferred back, be subject to remand to the court from which it was
9 originally removed if the prepetition action was removed during the Case, (c) the
10 complaint shall be deemed amended to replace the Debtor's name with the fictitious
11 name to be designated in the Confirmation Order and (c) liquidated pursuant to a final
12 non-appealable judgment by the court to which it was transferred and/or remanded.
13 The Litigation Current Abuse Claimant/plaintiff shall file a motion in the appropriate court
14 to put the prepetition action back onto the court's active trial docket, and serve such
15 motion on the Reorganized Debtor and the Trustee. Consistent with the discharge
16 provided for in Section 11.1 any judgment obtained in such action shall not be enforced
17 against the Debtor, the Reorganized Debtor and/or any of their assets, and shall be paid
18 in accordance with the Plan only from the reserve in the Trust established for the
19 payment of Litigation Current Abuse Claims and related fees and expenses. If a
20 Litigation Current Abuse Claimant does not timely file the motion seeking to put the
21 case on the active trial docket of the appropriate court within sixty (60) days of the
22 Effective Date, the Abuse Claim will be treated as a Convenience Abuse Claim, which
23 treatment will be irrevocable and in complete satisfaction, payment and release of such
24 Litigation Current Abuse Claim.

25       **5.4.3** Within sixty (60) days after the Effective Date each Litigation
26 Current Abuse Claimant who does not have a pending prepetition action must: file a

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1    complaint in the U.S. District Court for the District of Oregon against the Reorganized

2    Debtor, using the fictitious name for the Reorganized Debtor as set forth in the

3    Confirmation Order asserting his or her Abuse Claim and serve such complaint upon

4    the Reorganized Debtor and Trustee.  Consistent with the discharge provided for in

5    Section 11.1 any judgment obtained in such action shall not be enforced against the

6    Debtor, the Reorganized Debtor and/or any of their assets, and shall be paid in

7    accordance with the Plan only from the reserve in the Trust established pursuant to

8    Section 5.4.1 of the Plan.

9        **5.4.4**  If a Litigation Current Abuse Claimant does not timely file such a

10    complaint set forth in Section 5.4.3, then his or her Abuse Claim will be treated as a

11    Convenience Abuse Claim, which treatment will be irrevocable and in complete

12    satisfaction, payment and release of the Litigation Current Abuse Claim.

13        **5.4.5**  The Debtor and/or the Reorganized Debtor will retain all of the

14    Debtor's rights, defenses, privileges, affirmative defenses, including statute of

15    limitations, counterclaims, setoffs, and recoupments, with respect to Litigation Current

16    Abuse Claims.  The Debtor and Reorganized Debtor will have complete control of

17    litigation and settlements of Litigation Current Abuse Claims, subject to the rights of the

18    Trustee and/or any Non-Settling Insurer that is defending such a Claim pursuant to the

19    terms of the applicable Insurance Policy or policies.  All attorneys' fees, costs and

20    expenses of this litigation and/or settlements of Litigation Current Abuse Claims shall be

21    paid by the Trust without prejudice to any party's rights against a Non-Settling Insurer

22    for reimbursement thereof.

23        **5.4.6**  If a Non-Settling Insurer contests Insurance Coverage for a final

24    non-appealable judgment in favor of a Litigation Current Abuse Claimant:

25        (a)    At the request of the Trust, the Reorganized Debtor shall

26    assert its Insurance Claims to the extent requested by the Trust against any Non-

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

Settling Insurer;

(b)     The Reorganized Debtor shall select and retain counsel to pursue its Insurance Claims, subject to the Trustee's approval, which approval shall not be unreasonably withheld;

(c)     The Trust shall pay the reasonable attorneys' fees that are incurred by the Reorganized Debtor in pursuing its Insurance Claims pursuant to this Section 5.4.6;

(d)     The Trust shall, in addition to reasonable attorneys' fees, reimburse the Reorganized Debtor for any reasonable out of pocket costs and expenses it incurs as a direct consequence of pursuing such Insurance Claims, but will not compensate the Reorganized Debtor for any time any of its employees expend; and

(e)     Upon receipt by the Reorganized Debtor, all Insurance Recoveries received by the Reorganized Debtor on account of such Insurance Claims shall be deemed to be held in trust for the benefit of the Trust and shall be remitted by the Reorganized Debtor to the Trust as soon as practicable following the Reorganized Debtor's receipt of such Insurance Recoveries.

**5.4.7**  Each holder of an Allowed Litigation Current Abuse Claim will be paid in cash by the Trust such holder's pro rata share of a reserve for Litigation Current Abuse Claims net of the Debtor and Reorganized Debtor's fees, costs, and attorneys fees and costs defending and settling all Litigation Current Abuse Claims, within thirty (30) days after of the later of the date on which all Litigation Current Abuse Claims have been Allowed or Disallowed by Final Order or upon settlement or other final disposition of all the Litigation Current Abuse Claims.

**5.5     Class 4: Future Abuse Claims.**

**5.5.1**  On the Effective Date, and subject to section 6.3 and 6.4 of the Plan, all Class 4 Claims will be assumed by the Trust, which will pay those Claims

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ǁ FACSIMILE (503) 248-0130

1   pursuant to the provisions of the Trust Documents.  The assumption of the Class 4

2   Claims by the Trust shall not release the Debtor's liability on account of the Class 4

3   Abuse Claims.  Provided however, all liability on account of Class 4 Abuse Claims shall

4   be discharged pursuant to the provisions of Section 11.1 of the Plan.  As provided in

5   section 524(e) of the Bankruptcy Code, such discharge shall not affect the liability of

6   any other entity on, or the property of any other entity for, the Class 4 Claims including

7   the liability of any Non-Settling Insurer, which liability shall continue unaffected by the

8   terms of this Plan (except to the extent the Safeco Settlement Agreement, the Travelers

9   Settlement Agreement, the Western World Settlement Agreement, or any settlement

10  agreement with a Settling Insurer is incorporated into the Plan) or the discharge granted

11  to the Debtor under this Plan and Bankruptcy Code section 1141(d).

12          5.5.2  On the Effective Date, and without any further action by any party,

13  each Class 4 Claimant shall be deemed to have assigned to the Trust that Class 4

14  Claimant's Class 4 Claim against the Debtor and each of the Participating Parties, if

15  such assignment is valid.  If such assignment is determined by the Bankruptcy Court not

16  to be valid, then each Class 4 Claimant will retain that Claimant's Class 4 Claim and

17  shall be deemed to have appointed the Trustee as his or her attorney-in-fact for the

18  purpose of:  (a) asserting his or her Class 4 Claim against the Reorganized Debtor and

19  the Participating Parties, subject to the provisions of Section 6.9 of this Plan and (b)

20  provided that such Abuse Claim results in a judgment against the Reorganized Debtor,

21  asserting any rights that such Class 4 Claimant may have against any Non-Settling

22  Insurer.  All recoveries received on account of such Claims shall be deemed to be held

23  in trust for the benefit of the Trustee and shall be remitted to the Trustee as soon as

24  practicable following the Class 4 Claimant's receipt of such Insurance Recoveries.  The

25  determination of whether the assignment of the Class 4 Claimants' Abuse Claims to the

26  Trust is valid shall be made by the Bankruptcy Court at the Confirmation Hearing.  A

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

determination that such assignment of the Class 4 Claims to the Trust is valid shall include, *inter alia,* a determination that the assignment in no way affects the ability of the Trust to pursue collection of the Class 4 Claims from the Non-Settling Insurers, and each of them. That determination shall be binding upon all parties receiving notice of the Confirmation Hearing, which shall include notice of this provision. If a party in interest fails to timely file an objection to the proposed assignment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the assignment and will be forever barred from asserting that the assignment in any way affects the ability of the Trustee to pursue collection of the Class 4 Abuse Claim from the Non-Settling Insurers, and each of them.

**5.5.3** Creation of Future Abuse Claims Reserve Fund: Pursuant to the Trust Agreement, the Trustee shall establish the Future Abuse Claims Reserve Fund consisting of:

(a) $7.23 million;

(b) 45% of any sums paid to the Trust from Non-Settling Insurers; and

(c) 30% of any sums paid to the Trust from entities on account of such entities becoming a Participating Party other than those listed on Exhibit 1.105.

**5.5.4** Intentionally Omitted.

**5.5.5** Liquidation of Class 4 Claims.

(a) The Future Abuse Claims Reserve Fund shall reimburse the Trust for its Pro Rata share of attorneys' fees, costs and expenses incurred by the Trust after the Effective Date in recovering any amounts from Non-Settling Insurers and Participating Parties.

(b) The holder of a Class 4 Claim shall proceed with allowance of the Class 4 Claim by filing with the Trustee a Future Abuse Claim proof of claim to be

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 requested from and furnished by the Trustee upon request of a Class 4 Claimant.

2 Class 4 Claims will be reviewed pursuant to Allocation Plan I by the Abuse Claim

3 Reviewer Hon. William B. Bettinelli, Ret'd. Each Class 4 Claim will be assigned a score

4 consistent with similar Claims filed during the Case.

5       **5.5.6**   Distribution to Class 4 Claimants.

6       (a)     Valuation of Class 4 Claims: The points awarded to a Class

7 4 Claimant will be multiplied by the Average Future Claim Point Award. For illustration

8 purposes only, if the total number of Class 3 Claims in pools using Allocation Plan I

9 were 250, with 40 Claimants electing treatment as holders of Convenience Abuse

10 Claims and an additional 10 Claimants receiving zero points (i.e. no award), the

11 average would be calculated by dividing the total awards for the remaining 200 Class 3

12 Claims by the total number of points for those Claims. Thus, Class 4 Claimants will

13 receive shares in the Future Abuse Claim Reserve Fund equal to the number of points

14 awarded their Claim times the average award per point as determined above. At any

15 time prior to final liquidation of a Class 4 Claim, the holder of such Class 4 Claim may

16 settle the value of the Class 4 Claim with the Abuse Claim Reviewer.

17       (b)     Number of Shares.

18       (i)     The total number of shares in the Future Abuse

19 Claims Reserve Fund is determined initially by 63 (the estimated number of Class 4

20 Claimants) multiplied by the Average Future Claim Point Award plus an additional 20%.

21 (For example, if the Average Future Claim Point Award is $300,000, the initial number

22 of shares authorized for the Future Abuse Claims Reserve Fund would be 63 x 300,000

23 x 1.2 or 22,680,000 shares).

24       (ii)     The number of shares will be adjusted as follows:

25       (1)     The minimum number of unallocated shares

26 begins equal to the initial share calculation. In the example above 22,680,000 shares.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

1    (2)    The minimum number of unallocated shares

2    declines by 1/15th of the initial authorization each anniversary of the Effective Date.

3    Over the course of time, the minimum number of shares would decline until the 15th

4    anniversary of the Effective Date, at which time the minimum number of shares would

5    be 0.

6    (3)    If the issuance of shares to Class 4 Claimants

7    were to bring the unallocated share balance below the minimum, additional shares in

8    the Future Abuse Claims Reserve Fund would be authorized to bring the unallocated

9    balance back to the required minimum number of shares.

10    (4)    On the 15th anniversary of the Effective Date,

11    all authorized but unawarded shares in the Future Abuse Claims Reserve Fund would

12    be cancelled.

13    (c)    Dividends.

14    (1)    Class 4 Claimants awarded shares in the

15    Future Abuse Claims Reserve Fund will be paid a dividend on such shares.   The

16    dividend will be determined by dividing the Future Abuse Claims Reserve Fund, net of

17    reserves agreed upon by the Trustee and Future Claimants Representative, by the

18    number of authorized shares. For example if the Future Abuse Claims Reserve Fund,

19    net of reserves agreed upon by the Trustee and Future Claimants Representative is

20    $13,000,000 and the initial number of authorized shares is 22,680,000, the Base

21    Dividend Rate would be $13,000,000 / 22,680,000 or $0.573 per share.   The dividend

22    per share is recalculated annually, the denominator being updated with any additional

23    shares authorized, the numerator being updated with any changes to the Future Abuse

24    Claims Reserve Fund, net of agreed upon reserves.   If the dividend rate increases,

25    Class 4 Claimants previously receiving dividends will receive additional dividends to

26    bring them up to the then current rate.   If the dividend decreases, Class 4 Claimants

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  previously receiving dividends have no liability to any entity for the amount previously

2  received.  The dividend rate can never exceed $1.00 per share.

3          (2)    After the 15th anniversary of the Effective Date,

4  authorized but unawarded shares in the Future Abuse Claims Reserve Fund will be

5  cancelled. The Trustee will calculate a dividend rate based solely on the awarded

6  shares, but not to exceed a dividend of $1.00 per share).  Class 4 Claimants previously

7  receiving less than such dividend rate would receive additional dividends to bring their

8  aggregate dividend up to such rate.  Any excess reserve funds after reaching $1.00 per

9  share is to be donated to a charity supporting survivors of childhood sexual abuse to be

10 chosen by the Trustee.

11         (d)    Class 4 Claims Filed after the Future Claims Bar Date

12 Are Barred.  All Class 4 Claims filed after the Future Claims Bar Date (i.e. the fifteenth

13 (15th) anniversary of the Effective Date) will have no right to payment or any other right

14 under the Plan, and all such Claims will be discharged under the Plan.

15         (e)    Effect of Disallowance.    In accordance with the

16 discharge provisions in Section 11.1 and the provisions in sections 11.4, 11.5, 11.6 and

17 11.7 of the Plan, if a Class 4 Claim is liquidated at $0, the holder of such Claim will have

18 no further rights against the Debtor, the Reorganized Debtor, Settling Insurers,

19 Participating Parties, Released Parties, or the Trust and/or their respective assets.

20    5.6    Class 6:  Insured Non-Abuse Claims.  Each holder of an Insured Non-

21 Abuse Claim that is covered by an insurance policy issued by a Non-Settling Insurer will

22 retain the right to pursue the recovery of such Claim, including the filing of a lawsuit

23 against the Reorganized Debtor, the Participating Parties, and the Non-Settling Insurer

24 providing coverage for the Claim to obtain a judgment establishing the Allowed amount

25 of the Claim but will be restricted to seeking payment solely from the insurance

26 coverage available for such Claim.  Consistent with the discharge provided for in

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1 Section 11.1, and sections 11.4, 11.5, 11.6, and 11.7 of the Plan, any judgment

2 obtained in such action may not be enforced against the Debtor, the Reorganized

3 Debtor, the Participating Parties, the Released Parties, the Settling Insurers, and/or any

4 of their respective assets. Once the Claim has been Allowed, and the Non-Settling

5 Insurer has paid all amounts for which there is coverage, the remaining portion, if any,

6 excluding Punitive Damages, will be included in Class 7 and treated as a General

7 Unsecured Claim. The Punitive Damage portion, if any, will be included in Class 8.

8 **5.7 Class 7: General Unsecured Claims**. The holders of Allowed General

9 Unsecured Claims will receive payment from the Reorganized Debtor of their Pro Rata

10 share of the sum of $500,000, to be paid as soon as reasonably practicable after all

11 General Unsecured Claims have either been Allowed or Disallowed, but subject to the

12 filing and allowance of Claims under Section 502(h) of the Bankruptcy Code.

13 **5.8 Class 8: Penalty Claims**. Allowed Penalty Claims, if any, will be

14 subordinated to all other Allowed Claims and will receive no distribution under the Plan.

15 **5.9 Class 10:** Intentionally omitted.

16 **5.10 Class 11: Formation Fund Claim**. The Formation Fund Claim of

17 approximately $8,953,046 consisting of a loan from the Formation Fund to the Apostolic

18 Works Fund is not a Claim against the Debtor but against the Apostolic Works Fund. As

19 a result, the Formation Fund will not be entitled to vote on the Plan, its Claim will be

20 Disallowed, and it will receive no distribution under the Plan. The Formation Fund will

21 retain its rights to pursue collection of its Claim solely from the Apostolic Works Fund.

22 **5.11 Class 13: Donor Claims and Beneficiary Claims**. The holders of Donor

23 Claims and Beneficiary Claims, if any, will be Disallowed and will receive no distribution

24 under the Plan.

25 **5.12 Class 15: Abuse Related Contribution/Indemnity Claims**. Each Abuse

26 Related Contribution/Indemnity Claim held by (a) any Person or Entity against the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   Debtor, the Reorganized Debtor, a Participating Party, and/or the Trust; or (b) by the

2   Debtor, the Reorganized Debtor, a Participating Party, and/or the Trust against any

3   Person or Entity will be treated as follows:

4       i.      If an Abuse Claim is asserted against the Debtor, the Reorganized Debtor,

5   a Participating Party, and/or the Trust (collectively, the "Province Defendants") on the

6   one hand, and also against any other Persons or Entities (collectively the "Non-Province

7   Defendants") on the other hand,[3] the court in which the Abuse Claim is to be tried will

8   determine, subject to the applicable law governing that court: (a) the total amount of

9   damages to which an Abuse Claimant may be entitled; and (b) the allocation of fault, if

10  any, between or among Defendants and any other Person or Entity with whom an

11  Abuse Claimant has settled.   A payment to an Abuse Claimant from the Trust in

12  accordance with Sections 5.2 through 5.5 of the Plan is a settlement for purposes of (a)

13  this Section 5.12.

14      ii.     Notwithstanding the determination by a court of the total amount of

15  damages to which an Abuse Claimant may be entitled and/or the Province Defendants'

16  respective allocable percentage of fault for the Abuse Claim, the holder of the Abuse

17  Claim will only be entitled to recover, on account of the Province Defendants' liability for

18  the Abuse Claim, the amount payable by the Trust as determined in accordance with

19  Sections 5.2 through 5.5 of the Plan. No Abuse Claimant will be entitled to any recovery

20  whatsoever from the Debtor, the Reorganized Debtor, or any Participating Party, but

21  shall be paid solely from the Trust for any sums due on account of the Province

22  Defendants' liability for an Abuse Claim.   This provision is not intended to replace, and

23  does not affect the liability of any Non-Province Defendant under, state law  governing

24  joint and several liability.

25

26  _____
    [3]The Province Defendants and Non-Province Defendants are collectively referred to in
    this Section 5.12 as the "Defendants"

**Page 51 of 99** – THIRD MODIFIED JOINT PLAN OF REORGANIZATION (Dated
July 18, 2011)

1         iii.     Each of the Non-Province Defendants' liability for payment of an Abuse

2 Claim will be determined by the rights of such Non-Province Defendant under generally

3 applicable law governing allocation of liability among multiple defendants and any other

4 Person or Entity with whom an Abuse Claimant has settled. Nothing in this Plan is

5 intended to affect the treatment of a claim asserted against the Roman Catholic

6 Archbishop of Portland in Oregon, and successors, a corporation sole, dba Archdiocese

7 of Portland in Oregon (the "Archdiocese of Portland") as a "Future Claim" under the

8 Archdiocese of Portland's Third Amended and Restated Joint Plan of Reorganization

9 confirmed on April 17, 2007. This provision is not intended to replace, and does not

10 affect the liability of any Non-Province Defendant under, state law governing joint and

11 several liability.

12         iv.     Except for Litigation Current Abuse Claims, the determination by a court of

13 the amount of damages to which an Abuse Claimant is entitled will have no effect

14 whatsoever on the distribution the holder of such Abuse Claim will be entitled to receive

15 from the Trust, with such distribution being determined solely pursuant to Sections 5.2

16 through 5.5 of the Plan. The amount paid to any Abuse Claimant by the Trust will not be

17 considered in determining the allocation of fault amongst the Defendants and will be

18 inadmissible as evidence in any proceedings or trial to determine liability or the

19 allocation of fault for any Abuse Claim.

20         v.     None of the Province Defendants will be entitled to recover any amounts

21 from any of the Non-Province Defendants, and none of the Non-Province Defendants

22 will be entitled to recover any amounts from any of the Province Defendants, by way of

23 contribution, indemnity, or otherwise, for any of the Abuse Claims. The Defendants will,

24 however, be entitled to assert such Claims for contribution or indemnity against each

25 other solely for the purposes of establishing the respective liability of, or to allocate fault

26 to, those Persons or Entities allegedly responsible for an Abuse Claim, but there shall

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

1 be no affirmative recovery by any Province Defendant against any Non-Province

2 Defendant or by any Non-Province Defendant against any Province Defendant.

3 **6.    TRUST.**

4     **6.1    Establishment of Trust**.    On the Effective Date, the Trust shall be

5 established in accordance with the Trust Documents.  Except as otherwise specified in

6 the Plan, the purposes of the Trust, among other things, shall be to:  (a) enter into,

7 accept, and enforce the terms of the Plan and the Plan Documents regarding the Abuse

8 Claims; (b) assume all of the Debtor's, Reorganized Debtor's and Participating Parties'

9 rights, Claims, defenses, liabilities and obligations concerning the Abuse Claims; (c)

10 defend, litigate, arbitrate, mediate, negotiate, and settle the Litigation Current Abuse

11 Claims; (d) exercise the Avoidance Rights; (e) subject to Section 8.1, fund and pay for

12 any litigation, arbitration, mediation and negotiation regarding the Insurance Claims

13 against the Non-Settling Insurers related to the Abuse Claims; (f) receive, hold, and

14 invest funds in accordance with and subject to the provisions of this Plan and the Trust

15 Documents; (g)  issue payments and disburse funds subject to the terms of this Plan

16 and the Trust Documents, (h) retain attorneys, accountants, experts, and other

17 professionals to assist the Trustee in carrying out its duties under the Plan and the Trust

18 Documents; (i) pay the expenses, including professional fees of the attorneys,

19 accountants, experts, and other professionals to assist the Trustee in carrying out its

20 duties under the Plan and the Trust Documents; (j) pay the reasonable attorney's fees,

21 costs and expenses incurred by the Reorganized Debtor as provided in the Plan; and

22 (k) aid in the enforcement of the Channeling Injunction.  The Trust shall qualify as a

23 Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code and

24 the Treasury Regulations promulgated thereunder.  Neither the Trust nor the Trustee

25 will have the power or authority to bring, nor will the Trust or the Trustee be deemed to

26 succeed to, the Debtor's and Participating Parties' rights with respect to, any of the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1   Debtor and Participating Party Actions.

2        **6.1.1**  Nothing in the Plan or Plan Documents shall limit the Trust's rights

3 to dispute a Non-Settling Insurer's contribution, indemnity, or other equitable or legal

4 claims.

5        **6.1.2**  Neither the Trust nor the Trustee will succeed to any of Debtor's or

6 Reorganized Debtor's or the Estate's rights or claims against Seattle University.  Neither

7 the Trust nor the Trustee will initiate, conduct or pursue any litigation or other

8 proceeding against Seattle University.  Neither the Trust nor the Trustee will pay any

9 fees, costs or expenses incurred by or on behalf of any Entity or Person relating to or

10 concerning any litigation or other proceeding against Seattle University.  In the event

11 that the Trustee or the Trust assigns any Abuse Claim to any Entity or Person, the

12 assignment and the assignee will be subject to the foregoing restrictions against the

13 initiation or pursuit of or payment for any litigation or proceeding against Seattle

14 University.  The provisions of this paragraph 6.1.2 are not intended to prohibit the Trust

15 or the Trustee from seeking, subject to applicable law and rules, third-party discovery

16 from Seattle University.

17      **6.2**    **Formation of Trust**.  On or before the Effective Date (but after entry of

18 the Confirmation Order and after the Confirmation Order becomes a Final Order), the

19 Reorganized Debtor will cause the following to occur:  (a) the execution and delivery of

20 the Trust Documents, (b) delivery to the Trustee of any amounts due to the Trust; (c)

21 delivery of such assignments from the Reorganized Debtor to give effect to the right of

22 the Trustee to receive any portion of the amounts due to the Trust; and (d) delivery of

23 such documents, agreements and assignments that are necessary to convey to the

24 Trust the Debtor's Insurance Claims against the Non Settling Insurers.

25      **6.3**    **Trustee Assumes Responsibility**.  On the Effective Date, and subject to

26 the rights of the beneficiaries described in section 6.4 of the Plan, and in accordance

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 with the Plan, the Trustee will assume all liability and full responsibility for resolving and

2 paying the Abuse Claims of all Abuse Claimants electing to use Allocation Plans I, II

3 and III, and the Trustee will assume all liability and full responsibility for resolving and

4 paying all Litigation Current Abuse Claims and Future Abuse Claims.  Subject to section

5 6.4 of the Plan, the Trustee will assume full responsibility for: (a) establishing the

6 respective reserves with respect to the Trust; (b) making payments to the holders of

7 Class 3, 3A and 4 Claims that become payable under the Plan and Trust Documents,

8 (c) collecting, investing and distributing the Trust's funds for the benefit of the Trust and;

9 and (d) fulfilling all other obligations under the Trust Documents.

10     **6.4**    **Beneficiaries**.  The sole beneficiaries of the Trust are:(a) the holders of

11 the Abuse Claims and (b) those for whom reserves for the various fees, costs and

12 expenses, including reasonable attorneys' fees and costs, in administering the Trust

13 have been established by the Plan the Trust Documents.  No beneficiary of the Trust

14 shall have any interest in any reserve established by the Trustee pursuant to the Plan

15 and Trust Documents other than the reserve established for the payment of such

16 beneficiary's Claim.  No other creditors, including but not limited to the Class 15

17 creditors have any right, title or interest in the assets of the Trust.

18     **6.5**    **Trustee**.  The Trustee will be Omni Management Group, LLC.  The

19 Trustee will act only pursuant to the provisions of this Plan and the Trust Documents.

20 The Trustee may not assign any of his rights or obligations.  The Trustee will be entitled

21 to receive a reasonable fee and reimbursement of reasonable costs and expenses for

22 his services, with such fees and cost to be paid from the Trust.

23     **6.6**    **Intentionally omitted.**

24     **6.7**    **Trust Funding**.  The Trust will be funded as follows:

25        (a)    On the thirteenth (13th) day after the entry of the Confirmation

26 Order, the Debtor and the Participating Parties will, deposit into a trust account the sum

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1   of Forty-Three Million One Hundred Thousand Dollars ($43,100,000) in Cash. On the

2   Effective Date the Reorganized Debtor and Participating Parties will transfer all funds in

3   the trust account, including accrued interest, to the Trust. In the event the Effective Date

4   does not occur within three (3) business days after the Debtor and the Participating

5   Parties make such deposit into the trust account, the Debtor and Participating Parties

6   shall have the sole and exclusive option to withdraw the money from the trust account

7   and deposit such money back into the Reorganized Debtor's and Participating Parties'

8   accounts, as the case may be.

9           (b)    On the Effective Date, the Reorganized Debtor and the

10  Participating Parties will segregate and deposit into an interest bearing account an

11  additional Five Million Dollars ($5,000,000) in Cash from which the Allowed Amount of

12  all unpaid fees and expenses of the Chapter 11 Professionals are to be paid. Payments

13  to each Chapter 11 Professional will be made within 10 days after entry of a Final Order

14  Allowing its fees and expenses.  After all such payments are made, any funds remaining

15  in the segregated account, including accrued interest thereon, shall be paid into the

16  Trust;

17          (c)    Safeco, Travelers, and Western World will pay or deliver to the

18  Trust the sums due pursuant to the Safeco Settlement Agreement, the Travelers

19  Settlement Agreement, and the Western World Settlement Agreement.

20          (d)    The Reorganized Debtor and the Participating Parties will pay or

21  deliver to the Trustee such sums received by them from any settlements of Insurance

22  Claims prior to the Effective Date; and,

23          (e)    On the Effective Date, without any further act by any party, the

24  Reorganized Debtor and the Committee will be deemed to have assigned to the Trustee

25  and the Trust all Avoidance Rights (not otherwise released, compromised, enjoined or

26  discharged under the Plan) and Third Party Derivative Claims against Entities other

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   than Participating Parties and Seattle University, provided, however, that any Third

2   Party Derivative Claims against the Jesuit High Schools shall be brought no later than

3   nine (9) months from the Effective Date and shall be brought in a single lawsuit in the

4   U.S. District Court for the District of Oregon or the U. S. Bankruptcy Court for the District

5   of Oregon.

6   **6.8    Deposit and Payment of Funds**.  All funds paid to the Trustee pursuant

7   to this Plan will be deposited in the Trust.  The Trustee shall invest all funds that are

8   deposited in the Trust at his discretion subject to the terms of the Trust Documents.

9   The Trustee may distribute funds to the beneficiaries of the Trust by payment to the

10  client trust accounts of the attorneys of record representing the beneficiaries as

11  determined by the filed proofs of claim.  The Trustee shall have no liability to the

12  beneficiaries of the Trust on account of the administration of the funds once the funds

13  are transferred to the client trust accounts of the beneficiaries' attorneys of record.

14  Pursuant to the instructions of the Abuse Claims Reviewer and notwithstanding any

15  provision of Allocation Plans I II or III, the Trustee may make interim payments to

16  Beneficiaries of a Creditor Pool.

17  **6.9    Prosecution of Actions**.  An action may be prosecuted against the

18  Reorganized Debtor as follows:

19          (a)     In the event that, pursuant to Section 5.1.2 of this Plan, the

20  assignment of the Class 3 and/or 3A Abuse Claims to the Trust is determined to be

21  valid, or pursuant to Section 5.5.2 of this Plan, the assignment of the Class 4 Abuse

22  Claims to the Trust is determined to be valid, the Trust may prosecute an action on

23  account of such validly assigned Claims as provided in part (c) of this Section.

24          (b)     In the event that the assignment of the Class 3, 3A and 4 Claims

25  provided for at Section 5.1.2 of this Plan, or either of them, is not determined to be valid,

26  any such Class 3, 3A or 4 Claimant may prosecute an action on account of such

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 FACSIMILE (503) 248-0130

1 assigned claim by the Trust as his or her attorney-in-fact as provided in part (c) of this
2 Section. Any recovery from the prosecution of such an action is deemed assigned to
3 the Trust.

4        (c)     Pursuant to parts (a) and (b) of this Section 6.9, following the
5 Effective Date of this Plan, the Trust or any Class 3, 3A or 4 Claimant who has elected
6 to use Allocation Plans I, II or III, as the case may be and has the consent of the
7 Trustee, may commence an action against the Reorganized Debtor solely for the
8 purpose of liquidating an Abuse Claim for the purpose of pursuing Insurance
9 Recoveries with respect to such Abuse Claim from Non-Settling Insurers. Any such
10 action shall identify the Reorganized Debtor as set forth in the Confirmation Order and
11 shall be deemed by operation of law to be an action against the Debtor. Consistent with
12 the discharge provided for in Section 11.1 any judgment obtained in such action may
13 not be enforced against the Debtor, the Reorganized Debtor and/or any of their assets,
14 and shall be paid in accordance with the Plan and shall be fully enforceable solely
15 against and paid by any Non-Settling Insurer under the terms of that Non-Settling
16 Insurer's Insurance Policy. Any recovery from the prosecution of such an action is
17 deemed assigned to the Trust.

18     **6.10   Winding Up/Distribution of Excess Funds**. Upon entry of an order by a
19 court of competent jurisdiction authorizing termination and dissolution of the Trust, the
20 Trustee will promptly proceed to wind up the affairs of the Trust. Under no
21 circumstance shall the Trust be terminated or dissolved prior to the fifteenth (15th)
22 anniversary of the Effective Date. Upon termination of the Trust, and provided that all
23 fees and expenses of the Trust have been paid or provided for in full, the Trustee will
24 deliver all funds and other investments remaining in the Trust, if any, including any
25 investment earnings thereon, to a charity supporting survivors of childhood sexual
26 abuse to be chosen by the Committee prior to confirmation of the Plan and named in

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 □ FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1 the Confirmation Order.

2 **6.11 No Execution**. All funds held in the Trust will remain property of the Trust

3 until such time as the funds have actually been paid to and received by a Person or

4 Entity entitled to receive payment pursuant to the terms of this Plan and the Trust

5 Documents. Except as expressly provided in the Plan, Confirmation Order and the

6 Trust Documents, the Trust shall not be responsible for any Claims against the Debtor.

7 **7.    LIQUIDATION AND PAYMENT OF ABUSE CLAIMS.**

8 **7.1    Liquidation of Abuse Claims**. The Trust shall liquidate the Abuse

9 Claims in accordance with the terms and conditions of the Plan and Trust Documents.

10 The Trust's liquidation of the Abuse Claims shall not be binding upon any Non-Settling

11 Insurer unless such Non-Settling Insurer agrees in writing to be bound by the Trust's

12 Liquidation of the Abuse Claims no later than 21 days following the Effective Date.

13 Absent such consent, Non-Settling Insurers shall only be bound by judgments obtained

14 against the Debtor and/or the Participating Parties prior to the Petition Date and by

15 judgments obtained in proceedings brought in accordance with section 5.4 and 6.9 of

16 this Plan.

17 **7.2    Payment of Abuse Claims**.

18 **7.2.1**  The Trust shall pay Abuse Claims in accordance with the terms of

19 the Plan, Confirmation Order and Trust Documents. It is not anticipated that the Trust

20 will have sufficient assets to pay all of the Abuse Claims in the full amount that all Abuse

21 Claimants may be owed in the event that all Abuse Claimants elected to liquidate their

22 Claims pursuant to Allocation Plans I, II or III. For the avoidance of doubt, neither the

23 Debtor's or the Participating Parties' obligations to Abuse Claimants shall be deemed to

24 have been paid in full, nor their liability to Abuse Claimants fully satisfied, as a result of

25 payments received by Abuse Claimants from the Trust. Rather, because Abuse Claims

26 are being paid by the Trust without regard to whether those Claims are covered by

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    Insurance Policies issued by Settling Insurers: (a) the Trust shall be shall be deemed to

2    be subrogated to the Claims of the Abuse Claimants paid by the Trust to the extent of

3    those payments, (b) the Trust may pursue such subrogation Claim and any contribution

4    Claim in an action brought pursuant to Section 6.9 of the Plan and (c) the Trust may

5    pursue any deficiency between the amount of an Abuse Claim and the amount that the

6    Abuse Claimant received from the Trust in an action brought pursuant to Section 6.9 of

7    the Plan.  Except as provided in Section 6.9, and subject to sections 11.1, 11.4, 11.5,

8    11.6, and 11.7 of the Plan, the Trust may not bring any action under this Section against

9    the Debtor, the Reorganized Debtor, the Participating Parties, Seattle University, any

10   Settling Insurer and/or their respective assets.

11       **7.2.2**  Before the Trustee will pay any portion of any Abuse Claim to any

12   Abuse Claimant, that Claimant must provide a third-party vendor, which vendor has

13   been approved by the Trustee, Safeco, Travelers, and Western World, and which

14   approval shall not be unreasonably withheld, ("Approved Vendor") or if no Approved

15   Vendor has  been retained by or on behalf of an Abuse Claimant, the Trustee, with the

16   Abuse Claimant's name, date of birth, Social Security Number or Health Insurance

17   Claim Number (together, the "Personal Information"), a signed Social Security Release

18   Form or a Medicare Release form, or both, when requested by the Approved Vendor or

19   the Trustee, as the case may be, and any other information or documents reasonably

20   required to comply with Sections 7.2.3 and 7.2.4.

21       **7.2.3**  Each Abuse Claimant who claims that he or she is not a Medicare

22   Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may

23   be, to use the Personal  Information to submit a query to the Social Security

24   Administration to verify whether he or she is a Medicare Beneficiary.  Before the Trustee

25   will pay any portion of any Abuse Claim to an Abuse Claimant who claims that he or she

26   is  a Medicare Beneficiary, the Abuse Claimant will provide a letter  from an

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 Approved Vendor supported by documentation from the Social Security Administration,

2 received within the last sixty (60) days or if no Approved Vendor has been retained by

3 or on behalf of an Abuse Claimant, documentation from the Social Security

4 Administration received within the last sixty (60) days, confirming that the Abuse

5 Claimant is not a Medicare Beneficiary.  In the absence of such a confirming letter or

6 documentation, each Abuse Claimant will be presumed to be a Medicare Beneficiary.

7 Notwithstanding the foregoing, the Abuse Claimant may provide the Trustee with the

8 documentation from the Social Security Administration received within sixty (60) days

9 prior to a distribution from the Trustee, confirming that the Abuse Claimant is not a

10 Medicare Beneficiary.

11  **7.2.4**  Each Medicare Beneficiary expressly authorizes the Approved

12 Vendor or the Trustee, as the case may be, to use the Personal Information to submit a

13 query to the MSPRC to determine the amount of each and every Conditional Payment,

14 if any, subject to reimbursement by a "primary plan."  Before the Trustee will pay any

15 portion of any Abuse Claim to a Medicare Beneficiary, such Medicare Beneficiary, must

16 provide the Trustee with a letter from MSPRC received within sixty (60) days prior to a

17 distribution from the Trustee: (a) setting forth the Conditional Payment estimate made to

18 or on behalf of the Medicare Beneficiary that is subject to reimbursement by a "primary

19 plan," as the phrase is defined in Section 1395y(b)(2) of the MSPA; or (b) stating that no

20 such Conditional Payment has been made to or on behalf of the Medicare Beneficiary.

21 Notwithstanding the foregoing, the Abuse Claimant may provide the Trustee within sixty

22 (60) days prior to a distribution from the Trustee, a letter from MSPRC: (a) setting forth

23 the Conditional Payment estimate made to or on behalf of the Medicare Beneficiary that

24 is subject to reimbursement by a "primary plan," as the phrase is defined in Section

25 1395y(b)(2) of the MSPA; or (b) stating that no such Conditional Payment has been

26 made to or on behalf of the Medicare Beneficiary.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1      **7.2.5**  The failure by one or more Medicare Beneficiaries or other Abuse

2 Claimants to comply with these provisions shall not delay or impair the payment by the

3 Trustee to any other Medicare Beneficiary or other Abuse Claimant complying with

4 these provisions.

5      **7.2.6**  In the event of a violation or breach of the undertaking in Section

6 2.3 of the Safeco Settlement Agreement, then pursuant to Section 3.4 of the Safeco

7 Settlement Agreement, the Trust is liable to Safeco for the damages, injunctive relief,

8 attorneys' fees, costs, and expenses. In the event of a violation or breach of the

9 undertaking in Section 2.3 of the Travelers Settlement Agreement, then pursuant to

10 Section 3.4 of the Travelers Settlement Agreement, the Trust is liable to Travelers for

11 the damages, injunctive relief, attorneys fees, costs, and expenses. In the event of a

12 violation or breach of the undertaking in Section 2.3 of the Western World Settlement

13 Agreement, then pursuant to Section 3.4 of the Western World Settlement Agreement,

14 the Trust is liable to Western World for the damages, injunctive relief, attorneys fees,

15 costs, and expenses.

16      **7.2.7**  If the Abuse Claimant is the estate of an Abuse Claimant, then the

17 letters or documentation required pursuant to Sections 7.2.3 and 7.2.4 need not be

18 dated within sixty (60) days of the date of payment by the Trustee to such Claimant.

19      **7.2.8**  In the event that the Trustee does not comply with the provisions of

20 Sections 7.2.2 through 7.2.6, Safeco, Travelers, and/or Western World, as applicable,

21 shall be entitled to injunctive relief or damages resulting from such breach plus

22 attorneys' fees and costs.

23      **7.3**   **Future Abuse Claims Bar Date**.  Each holder of a Future Abuse Claim

24 must, on or before the Future Abuse Claims Bar Date, file with the Trustee a proof of

25 claim or such Claimant's Future Abuse Claim will be forever barred and the holder of

26 such Claim will have no right to payment or other rights under the Plan or the Trust

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ⊔ FACSIMILE (503) 248-0130

1    Documents.

2    **7.4    Effect of Disallowance of Abuse Claims**.  If an Abuse Claim is denied

3    payment pursuant to the Allocation Plans or an Abuse Claimant fails to obtain a

4    judgment against the Debtor, Reorganized Debtor, Released Parties, Participating

5    Parties, or the Trust, the holder of such Abuse Claim will have no further rights against

6    the Debtor, Reorganized Debtor, Released Parties, Participating Parties, the Settling

7    Insurers, the Trust or Trustee relating to such Abuse Claim.

8    **7.5    Treatment of Attorneys' Fees of Abuse Claimants**.  Subject to the

9    treatment of Qualified Counsel Fees pursuant to the Plan, the fees and expenses of

10   attorneys representing Abuse Claimants who receive payment from the Trust will be

11   borne by such Abuse Claimants based on applicable state law and individual

12   arrangements made between such Abuse Claimants and their respective attorneys. In

13   no event will the Debtor, the Reorganized Debtor, the Participating Parties, the

14   Released Parties, the Settling Insurers, the Trust, or the Trustee have any liability for

15   any fees and expenses of attorneys representing any of the Abuse Claimants except for

16   the provisions relating to Qualified Counsel Fees, and any such Claims for fees and

17   expenses, if any, will be Disallowed.

18   **7.6    Treatment of Punitive Damages**.  Claims for punitive or exemplary

19   damages in connection with any of the Claims will be treated as Penalty Claims and will

20   receive no distribution under the Plan.

21   **7.7    Withdrawal of Abuse Claims**.  An Abuse Claimant may withdraw an

22   Abuse Claim at any time on written notice to the Trustee.  If withdrawn, the Claim will be

23   withdrawn with prejudice and may not be reasserted.

24   **8.    INSURANCE MATTERS.**

25   **8.1  Transfer of Insurance Rights**.  On the Effective Date, and without any

26   further action by any party, but subject to the provisions of Sections 8.2 and 8.3, the

**Page 63 of 99** – THIRD MODIFIED JOINT PLAN OF REORGANIZATION (Dated
July 18, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 Debtor, the Reorganized Debtor, and each of the Participating Parties will be deemed to
2 have assigned to the Trust the Debtor's, the Reorganized Debtor's, and the
3 Participating Parties' rights to all Insurance Claims and Insurance Recoveries against
4 the Non-Settling Insurers. The foregoing transfer shall be effective to the maximum
5 extent permissible under applicable law and the terms of the Insurance Policies and
6 shall not be construed: (a) as an assignment of the Insurance Policies or (b) to entitle
7 any person or entity to Insurance Coverage other than those persons or entities entitled
8 to such coverage under the terms of the Insurance Policies. The determination of
9 whether the assignment of the Insurance Claims and Insurance Recoveries, or either of
10 them, to the Trust is valid or would defeat or impair the Insurance Coverage with
11 respect to an Insurance Policy, shall be made by the Bankruptcy Court at the
12 Confirmation Hearing. If a party in interest fails to timely file an objection to the
13 proposed assignment by the deadline for filing objections to confirmation of this Plan,
14 that party in interest shall be deemed to have irrevocably consented to the assignment
15 and will be forever barred from asserting that the assignment in any way affects the
16 ability of the Trust to pursue Insurance Claims and Insurance Recoveries, or either of
17 them, from the Non-Settling Insurers, and each of them, or Insurance Coverage. In the
18 event that the Bankruptcy Court determines that the assignment of the Insurance
19 Claims and Insurance Recoveries is valid and does not defeat or impair the Insurance
20 Coverage, following the Effective Date, the Trust shall assume responsibility for, and be
21 bound by, all of the obligations of the Debtor and Participating Parties under the
22 Insurance Policies; provided, however, that the Trust's assumption of such responsibility
23 shall not relieve the Debtor the Reorganized Debtor or the Participating Parties from any
24 obligation that such entities may have under the Insurance Policies.

25 **8.2 Appointment of Trustee as Estate Representative to Enforce**
26 **Insurance Rights and Obtain Insurance Recoveries**. Pursuant to the provisions of

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 section 1123(b)(3)(B) of the Bankruptcy Code and subject to the provisions of Sections
2 5.1.2, 5.4, 6.9 and 8.3 of the Plan, the Trust is hereby appointed as the representative
3 of the Debtor's estate for the purpose of retaining and enforcing the Debtor's and the
4 Debtor's estate's Insurance Coverage and for Insurance Claims with respect to the
5 Abuse Claims against the Debtor.

6     **8.3 Consequences of Determination That Assignment is Invalid**.  In the
7 event that the Bankruptcy Court determines that the assignment of Insurance Claims
8 provided for in Section 8.1, or that the appointment of the Trust as the Debtor's and the
9 Debtor's estate's representative provided for in Section 8.2, is invalid or would defeat or
10 impair the Insurance Coverage with respect to an Insurance Policy, as to such
11 Insurance Policy, the assignment and/or appointment, as the case may be, will be
12 deemed not to have been made.  If the assignment and/or appointment is not deemed
13 to have been made, the Debtor, the Reorganized Debtor, and each of the Participating
14 Parties will retain the Insurance Claims under such Insurance Policy, and:

15     (a)  At the request of the Trust, subject to Section 8.6, the
16 Reorganized Debtor will assert its Insurance Claims to the extent requested by the Trust
17 against any Non-Settling Insurer,

18     (b)  The Reorganized Debtor will select and retain counsel to
19 pursue its Insurance Claims pursuant to this Section 8.3, subject to the Trustee's
20 approval, which approval shall not be unreasonably withheld,

21     (c)  The Trust shall pay the reasonable attorneys' fees, costs
22 and expenses allowed by the Bankruptcy Court that are incurred by the Reorganized
23 Debtor in pursuing its Insurance Claims pursuant to this Section 8.3,

24     (d)  The Trust shall, in addition to reasonable attorneys' fees,
25 costs and expenses provided for in Section 8.3(c), reimburse the Reorganized Debtor
26 for any reasonable out of pocket costs and expenses it incurs as a direct consequence

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1 of pursuing such Insurance Claims, but will not compensate the Reorganized Debtor for
2 any time any of its employees expend.

3        (e)    Upon receipt by the Reorganized Debtor, all Insurance
4 Recoveries received by the Reorganized Debtor on account of such Insurance Claims
5 shall be deemed to be held in trust for the benefit of the Trust and shall be remitted by
6 the Reorganized Debtor to the Trust as soon as practicable following the Reorganized
7 Debtor's receipt of such Insurance Recoveries.

8      **8.4**    **Preservation of Insurance Rights**.   Nothing in this Plan shall be
9 construed to impair or diminish in any way any Non-Settling Insurers obligations under
10 any Insurance Policy. No provision of this Plan shall impair diminish any Non-Settling
11 Insurer's legal, equitable, or contractual obligations relating to the Insurance Policies
12 issued by the Non-Settling Insurers or the Insurance Claims against the Non-Settling
13 Insurers in any respect. In the event that any court determines that any provision of this
14 Plan impairs or diminishes any Non-Settling Insurer's obligations with respect to the
15 Insurance Claims or Insurance Recoveries, such provision of this Plan shall be given
16 effect only to the extent that it shall not cause such impairment or diminishment.

17      **8.5**    **Post-Judgment Actions Against Non-Settling Insurers**.   In the event
18 that the Trust or any Abuse Claimant obtains a judgment against the Reorganized
19 Debtor pursuant to Sections 5.4 or 6.9, the Reorganized Debtor will cooperate with the
20 Trust or Abuse Claimant in the pursuit of any action brought by the Trust or Abuse
21 Claimant against a Non-Settling Insurer that the Trust contends provides Insurance
22 Coverage for such judgment. Reorganized Debtor agrees that it will provide the Trust
23 or Abuse Claimant with any non-privileged and relevant documents and information
24 reasonably requested by the Trust or Abuse Claimant in pursuit of such an action. The
25 Trust agrees that it will reimburse the Reorganized Debtor for any reasonable out of
26 pocket costs it incurs, including attorneys' fees, as a direct consequence of such

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 I FACSIMILE (503) 248-0130

1 cooperation, but will not compensate the Reorganized Debtor for any time any of its
2 employees expend.

3     **8.6    Settlement with Non-Settling Insurers.**  Following the Effective Date,
4 the Reorganized Debtor shall not enter into a settlement agreement affecting any
5 Insurance Policy or Insurance Policies with any Non-Settling Insurer without the express
6 written consent of the Trust, which consent may be granted or withheld at the Trust's
7 sole and absolute discretion. Following the Effective Date, the Reorganized Debtor
8 authorizes the Trust to exclusively act on its behalf to negotiate a settlement with any
9 Non-Settling Insurer on account of such Insurance Claims.

10     **8.7    Cooperation with Non-Settling Insurer in Defense of Claims**. Without
11 limiting its obligations pursuant to Section 8.1, in the event that the Trust or any Abuse
12 Claimant prosecutes an action against the Reorganized Debtor pursuant to Sections
13 5.4, or 6.9, the Reorganized Debtor will cooperate, in accordance with the terms of any
14 applicable Insurance Policy, with a Non-Settling Insurer that is providing a defense to
15 such a Claim. The Trust agrees that it will reimburse the Reorganized Debtor for any
16 reasonable out of pocket costs, including attorneys' fees, it incurs as a direct
17 consequence of such cooperation, but will not compensate the Reorganized Debtor for
18 any time any of its employees expend.

19     **8.8  Insurance Neutrality**. Other than as expressly provided in this Section 8,
20 no provision of this Plan shall diminish or impair the right of any Insurer to assert any
21 defense to any Insurance Claim. Neither the assumption by the Trust of the Abuse
22 Claims nor the fact that the Trust is liquidating and paying monies on account of the
23 Abuse Claims shall be construed in any way to diminish any obligation of any Insurer
24 under any Insurance Policy to provide Insurance Coverage to the Debtor, the Debtor's
25 Estate or the Reorganized Debtor for Abuse Claims. The duties and obligations, if any,
26 of the Non-Settling Insurers under each Non-Settling Insurer's Insurance Policy shall not

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   be impaired, altered, reduced or diminished by:  (a) the discharge granted to the Debtor

2   under the Plan pursuant to section 1141(d) of the Bankruptcy Code, (b) the

3   exonerations, exculpations and releases contained in the Plan or (c) the Channeling

4   Injunction.

5   **9.      MEANS FOR IMPLEMENTATION OF THE PLAN.**

6           **9.1      Closing.**  Closing will be conducted in the offices of Sussman Shank LLP,

7   or at such other location designated by the Reorganized Debtor, as soon as reasonably

8   practicable following the Effective Date for the purpose of the Reorganized Debtor, the

9   Participating Parties, and the Settling Insurers executing and delivering the Plan

10  Documents and completing those actions necessary for the Reorganized Debtor, the

11  Participating Parties, and the Settling Insurers to establish and fund the Trust and make

12  other distributions required to be made upon, or promptly following, the Effective Date.

13  As soon as practicable after the conditions set forth in Section 10.1 have been satisfied

14  or waived in accordance with Section 10.2, the Reorganized Debtor will give written

15  notice of the Closing to the Committee, the FCR, and any Claimant, Insurer,

16  Participating Party, or other Person or Entity that will be directly involved in the Closing.

17          **9.2      Continuation of Future Claimants Representative**.

18          **9.2.1** Notwithstanding the entry of the Confirmation Order or the

19  occurrence of the Effective Date, the duty of the FCR, or his successor, will be generally

20  to represent the collective interests of the Future Abuse Claimants to ensure the

21  Trustee's compliance with the Plan and Trust Documents as they relate to the Class 4

22  Claims.  Such duty will continue until the Trust reserve for Class 4 Claims is wound

23  down in accordance with the provisions of the Plan and Trust Documents.

24          **9.2.2**  The FCR will have no duty of any kind to give or offer legal advice

25  to any individual who is, or contends that he or she is, an Abuse Claimant, make

26  available to any such individual an attorney or other professional person, or assist any

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  such individual in proving his or her own Claim or negotiating a settlement of such

2  Claim.  In addition to the FCR's other powers, the FCR will be empowered to: (a) retain

3  counsel and other professional advisors; (b) act as an advisor to the Trustee; (c)

4  enforce the Trust Documents and the Plan, or any provisions thereof, for the benefit of

5  the Future Abuse Claimants through legal proceedings or otherwise; and (d) initiate,

6  prosecute and defend any appeal arising out of or relating to (i) the Confirmation Order

7  or the Plan, (ii) any Plan Documents, or (iii) any other order or judgment entered in, or

8  relating to, the Case.  Upon termination of the Trust, without the necessity for any other

9  or further action by any party and without court order, the FCR will be discharged from

10  all further authority, duties, responsibilities and obligations relating to or arising from or

11  in connection with the Case or this Plan.  All reasonable fees, costs and expenses of

12  the FCR, including the fees and expenses of the FCR's professionals, will be paid by

13  the Trust from the reserve established for Class 4 Claims.

14  **9.3    Obligations of the Reorganized Debtor and Participating Parties.**

15         The Reorganized Debtor and the Participating Parties will:

16         (a)    In the exercise of their respective business judgment, review

17  all Claims filed against the Estate except for Abuse Claims and, if advisable, object to

18  such Claims;

19         (b)    After the Effective Date, not object to any Omak Area Shelter

20  Claims or Abuse Claims, except those Abuse Claims described in Sections 5.4 and 6.9

21  of the Plan.

22         (c)    In the exercise of their respective business judgment,

23  investigate, prosecute, settle, or dismiss all Debtor and Participating Parties Actions that

24  are not otherwise resolved under this Plan.  Unless otherwise provided in this Plan or

25  the Plan Documents, the Reorganized Debtor and Participating Parties will be entitled to

26  receive all Debtor and Participating Party Action Recoveries and insurance proceeds

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1     not related to the Abuse Claims;

2             (d)     Notwithstanding anything to the contrary in this Plan, honor

3 the Debtor's obligations under the Insurance Policies issued by the Non-Settling

4 Insurers and under applicable non-bankruptcy law, with the Reorganized Debtor's

5 attorneys' fees, costs and expenses incurred in doing so, if any, to be paid by the Non-

6 Settling Insurers and/or the Trust, as provided under the Insurance Policies, this Plan,

7 or the Trust Documents, as applicable;

8             (e)     Honor the Debtor's obligations arising under any settlement

9 agreement between the Debtor and any Settling Insurer that has been approved by the

10 Bankruptcy Court; and,

11             (f)     Perform all of their obligations under this Plan and Plan

12 Documents, in each case, as and when the same become due or are to be performed.

13     **9.4**     **Objections to Claims**. Objections to a Claim (except for Abuse Claims)

14 as to which no objection is pending as of the Effective Date, must be filed by the Claims

15 Objection Bar Date.

16     **9.5**     **Provisions Governing Distributions**.

17     **9.5.1** Distribution Only to Holders of Allowed Claims. Except as

18 otherwise provided in the Plan, distributions under this Plan and the Plan Documents

19 will be made only to the holders of Allowed Claims and in the case of Abuse Claims,

20 only to liquidated Claims pursuant to the Plan and the Trust Documents. To the extent

21 of any funds paid to the Trust under the Safeco Settlement Agreement, Travelers

22 Settlement Agreement, or Western World Settlement Agreement, distributions to Abuse

23 Claimants under this Plan and the Plan Documents will be made in accordance with the

24 Safeco Settlement Agreement, Travelers Settlement Agreement, and Western World

25 Settlement Agreement, as applicable. Until a Disputed Claim becomes an Allowed

26 Claim, the holder of that Disputed Claim will not receive any distribution otherwise

1    provided to the Claimants under this Plan or the Plan Documents. If necessary in

2    determining the amount of a Pro Rata distribution due to the holders of Allowed Claims

3    in any class, the Reorganized Debtor or the Trustee, as applicable, will make the Pro

4    Rata calculation as if all Unresolved Claims were Allowed Claims in the full amount

5    Claimed or in the Estimated Amount.  When an Unresolved Claim in any class becomes

6    an Allowed Claim, the Reorganized Debtor or the Trustee, as applicable, will make full

7    or partial distributions, as applicable, with respect to such Allowed Claim, net of any

8    setoff contemplated by the order, if any, allowing such Claim and/or any required

9    withholding of applicable federal and state taxes.

10        **9.5.2**  Transmittal of Distributions.  Except as otherwise provided in this

11   Plan, in the Plan Documents, or in an order of the Bankruptcy Court, distributions to be

12   made under this Plan or the Plan Documents to Claimants holding Allowed Claims or in

13   the case of Abuse Claim, Claimants holding liquidated Claims will, in each case, be

14   made by the Reorganized Debtor or Trustee, as applicable, by first class United States

15   mail, postage prepaid, (a) to the client trust account for attorneys of record of Abuse

16   Claimants, (b) if the Abuse Claimant does not have an attorney of record, to the latest

17   mailing address set forth in a proof of claim filed with the Claims Agent or the

18   Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be

19   provided to the Reorganized Debtor or Trustee, as applicable, by such Claimant in

20   writing, or (c) if no such proof of claim has been filed and no written notice setting forth a

21   mailing address is provided by or on behalf of such Claimant to the Reorganized Debtor

22   or Trustee, as applicable, to the mailing address set forth in the schedules filed by the

23   Debtor in this Case.  If a Claimant's distribution is not mailed or is returned to the

24   Reorganized Debtor or Trustee because of the absence of a proper mailing address,

25   the Reorganized Debtor or Trustee, as the case may be, shall make a reasonable effort

26   to locate or ascertain the correct mailing address for such Claimant from information

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  generally available to the public and from such party's own records, but shall not be

2  liable to such Claimant for having failed to find a correct mailing address.

3  Notwithstanding the foregoing, the Trustee may deliver Abuse Claimants' distributions

4  to the client trust accounts of attorneys of record.

5      **9.5.3** Timing of Distributions.    Unless otherwise agreed by the

6  Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under

7  this Plan or the Plan Documents, whenever any payment to be made is due on a day

8  other than a Business Day, such payment will instead be made on the next Business

9  Day, with interest to the extent expressly contemplated by this Plan or any applicable

10  agreement or instrument.

11      (a)    Form of Distributions.    Unless otherwise agreed by the

12  Reorganized Debtor or Trustee, as applicable, and the recipient of a distribution under

13  this Plan or the Plan Documents, all distributions will be made, at the option of the

14  Reorganized Debtor or Trustee, by a check or wire transfer.

15      (b)    No Professional Fees or Expenses.    No professional

16  fees or expenses incurred by a Claimant will be paid by the Debtor, the Reorganized

17  Debtor, or the Trustee with respect to any Claim except as specified in this Plan or the

18  Trust Documents.

19      **9.6    Closing of the Case**.  As soon as practicable after the Effective Date,

20  when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek

21  authority from the Court to close the Case in accordance with the Bankruptcy Code and

22  the Bankruptcy Rules; provided, however, that entry of a final decree closing the Case

23  shall, whether or not specified therein, be without prejudice to the right of the

24  Reorganized Debtor, the Trustee, or any other party in interest to reopen the Case for

25  any matter over which the Court or Oregon U.S. District Court has retained jurisdiction

26  under this Plan.  Any order closing this Case will provide that the Bankruptcy Court or

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 Oregon U.S. District Court, as appropriate, will retain (a) jurisdiction to enforce, by

2 injunctive relief or otherwise, the Confirmation Order, any other orders entered in this

3 Case, and the obligations created by this Plan and the Plan Documents; and (b) all

4 other jurisdiction and authority granted to it under this Plan and the Plan Documents.

5 **10. CONDITIONS PRECEDENT.**

6 **10.1 Conditions to Effectiveness**. The Effective Date will occur when each of

7 the following conditions have been satisfied or waived in accordance with Section 10.2

8 of this Plan:

9 **10.1.1** The Bankruptcy Court shall have entered a Final Order or Final

10 Orders approving all settlement agreements between the Debtor, the Participating

11 Parties, and the Settling Insurers, and any appropriate judgments consistent therewith,

12 in form and substance reasonably acceptable to each of those parties, and no stay of

13 such Orders shall be in effect;

14 **10.1.2** The Bankruptcy Court shall have entered the Confirmation Order

15 in form and substance reasonably acceptable to the Proponents, the Participating

16 Parties, and the Settling Insurers, and no stay of such Order shall be in effect.

17 **10.2 Waiver of Conditions**. Any condition set forth in Section 10.1 of this Plan

18 may be waived by the mutual consent of the Proponents, the Participating Parties, and

19 the Settling Insurers.

20 **11. EFFECTS OF PLAN CONFIRMATION.**

21 **11.1 Discharge**. Notwithstanding anything to the contrary in the Plan, on the

22 Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Debtor and the

23 Reorganized Debtor will be discharged from all liability for any and all Claims and

24 Debts, known or unknown, whether or not giving rise to a right to payment or an

25 equitable remedy, that arose, directly or indirectly, from any action, inaction, event,

26 conduct, circumstance, happening, occurrence, agreement, or obligation of the Debtor,

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  or the Debtor's Representatives before the Confirmation Date, or that otherwise arose

2  before the Confirmation Date, including all interest, if any, on any such Claims and

3  Debts, whether such interest accrued before or after the date of commencement of this

4  Case, and including all Claims and Debts based upon or arising out of Abuse, and from

5  any liability of the kind specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy

6  Code, whether or not (a) a proof of claim is filed or is deemed filed under Section 501 of

7  the Bankruptcy Code; (b) such Claim is Allowed under this Plan;  or (c) the holder of

8  such Claim has accepted this Plan.

9      **11.1.1**  Section 11.1 of the Plan does not apply to (a) the obligations of

10  any Non-Settling Insurers for any Claims; (b) the obligations arising under any

11  settlement agreement between the Debtor and any Settling Insurer approved by the

12  Bankruptcy Court, which are not and will not be discharged; (c) the performance by the

13  Reorganized Debtor of any and all obligations due to the Non-Settling Insurers under

14  their Insurance Policies with respect to any Abuse Claim, and (d) (i) a Person or

15  Persons having personally committed an act or acts of Abuse resulting in a Claim

16  against the Debtor or a Participating Party, (ii) the Society of Jesus; (iii) the Father

17  General of the Society of Jesus and his predecessors, (iv) the Society of Jesus General

18  Curia (v) a successor or predecessor of the Debtor to the extent of such successor's or

19  predecessor's independent liability for an act or acts of Abuse; (vi) Gonzaga University;

20  (vii) Seattle University; and (viii) the Jesuit High Schools.

21      **11.2**  **Post-Petition Abuse Claims.** Abuse Claims, other than Future Claims,

22  arising or occurring after the Petition Date will not be discharged, released or impaired,

23  with the exception of any Abuse Claim against a Settling Insurer**.**

24      **11.3**  **Vesting**.  Except as otherwise expressly provided in this Plan or in the

25  Confirmation Order, on the Effective Date, the Reorganized Debtor (a) will be vested

26  with all of the property of the Estate free and clear of all Claims, liens, encumbrances,

1 charges and other interests of Creditors and Claimants; and (b) may hold, use, dispose,
2 and otherwise deal with such property and conduct its affairs, in each case, free of any
3 restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

4 **11.4 Exculpation And Limitation Of Liability**.  Except as expressly provided
5 in this Plan, none of the Exculpated Parties will have or incur any liability to, or be
6 subject to any right of action by, any holder of a Claim, any other party in interest, or any
7 of their respective agents, employees, representatives, financial advisors, attorneys, or
8 affiliates, or any of their successors or assigns, for any act or omission in connection
9 with, relating to, or arising out of the Case, including the exercise of their respective
10 business judgment and the performance of their respective fiduciary obligations, the
11 pursuit of confirmation of the Plan, or the administration of the Plan or the Trust, except
12 liability for their willful misconduct or gross negligence (provided however the Debtor
13 and Reorganized Debtor will be discharged from any such liability for such acts or
14 omissions occurring prior to the Confirmation Date), and in all respects, such parties will
15 be entitled to reasonably rely upon the advice of counsel with respect to their duties and
16 responsibilities under the Plan or in the context of the Case.

17 **11.5 Supplemental Injunction Preventing Prosecution of Abuse Claims**
18 **Against Settling Insurers.**  Pursuant to sections 105(a) and 363 of the Bankruptcy
19 Code, any and all Persons and Entities who now hold or who may in the future hold
20 Claims and Interests of any kind or nature (including all debt holders, all equity holders,
21 governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse
22 Claimants, other insurers, and all others holding Claims or Interests of any kind or
23 nature whatsoever) against the Debtor, the Reorganized Debtor, the Province, the
24 Participating Parties, the Settling Insurers, the Settling Insurer Other Releasing Parties,
25 or the Settling Insurer Policies, arising out of, relating to, or in connection with the
26 Settling Insurer Policies or Abuse Claims are hereby permanently stayed, enjoined,

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

barred, and restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt to assert or enforce any such Claim and Interests against the Settling Insurers, the Settling Insurer Released Parties, and/or the Settling Insurer Policies.

**11.6 Supplemental Injunctions Preventing Prosecution of Abuse Claims Against Safeco, Travelers, and Western World.**

**11.6.1** In accordance with the Safeco Settlement Agreement and the Approval Order that approved the Agreement (as defined in the Safeco Settlement Agreement), pursuant to sections 105(a) and 363 of the Bankruptcy Code, any and all Persons and Entities who now hold or who may in the future hold any Claims (as defined in the Safeco Settlement Agreement) or Interests (as defined in the Safeco Settlement Agreement) of any kind or nature (including, without limitation, all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claim (as defined in the Safeco Settlement Agreement) holders, other insurers, and all others holding Claims (as defined in the Safeco Settlement Agreement) or Interests (as defined in the Safeco Settlement Agreement) of any kind or nature whatsoever) against SJOP, Safeco Other Releasing Parties, Safeco, Safeco Released Parties, or the Safeco Policies, relating to or in connection with the Safeco Policies, Tort Claims (as defined in the Safeco Settlement Agreement), or Abuse Claims (as defined in the Plan), are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt to assert or enforce any such Claim (as defined in the Safeco Settlement Agreement) or Interest (as defined in the Safeco Settlement Agreement) against Safeco, the Safeco Released Parties, and/or the Safeco Policies.

**11.6.2** Pursuant to sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of Travelers pursuant to the Travelers Settlement Agreement, including any of the Travelers' purchases of Travelers Policies from the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 Ι FACSIMILE (503) 248-0130

1      Debtor free and clear of all Claims (as defined in the Travelers Settlement Agreement)

2      and Interests pursuant to Section 363(f) of the Bankruptcy Code, any and all Persons

3      and Entities who have held, now hold or who may in the future hold Claims (as defined

4      in the Travelers Settlement Agreement) or Interests of any kind or nature (including all

5      debt holders, all equity holders, governmental, tax and regulatory authorities, lenders,

6      trade and other creditors, Abuse Claimants, Future Abuse Claimants, Tort Claimants

7      (as defined in the Travelers Settlement Agreement), other insurers, and all others

8      holding Claims or Interests of any kind or nature whatsoever) against the Debtor, the

9      Estate, the Province, Travelers Other Releasing Parties, Travelers, Travelers Released

10      Parties, or the Travelers Policies, arising out of, relating to, or in connection with the

11      Travelers Policies, Abuse Claims, and/or Tort Claims  (as defined in the Travelers

12      Settlement Agreement), are hereby permanently stayed, enjoined, barred, and

13      restrained from taking any action, directly or indirectly, to assert, to enforce or to attempt

14      to assert or enforce any such Claim (as defined in the Travelers Settlement Agreement)

15      or Interest against Travelers, Travelers Released Parties, and/or the Travelers Policies.

16      **11.6.3** In accordance with the Western World Settlement Agreement  and

17      the Approval Order that approved the Agreement (as defined in the Western World

18      Settlement Agreement),  pursuant to sections 105(a) and 363 of the Bankruptcy Code,

19      any and all Persons and Entities who now hold or who may in the future hold any

20      Claims (as defined in the Western World Settlement Agreement) or Interests (as defined

21      in the Western World Settlement Agreement) of any kind or nature (including, without

22      limitation, all debt holders, all equity holders, governmental, tax and regulatory

23      authorities, lenders, trade and other creditors, Tort Claim (as defined in the Western

24      World Settlement Agreement) holders, other insurers, and all others holding Claims (as

25      defined in the Western World Settlement Agreement) or Interests (as defined in the

26      Western World Settlement Agreement) of any kind or nature whatsoever) against SJOP,

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1 Western World Other Releasing Parties, Western World, Western World Released

2 Parties, or the Western World Policies, relating to or in connection with the Western

3 World Policies, Tort Claims (as defined in the Western World Settlement Agreement), or

4 Abuse Claims (as defined in the Plan), are hereby permanently stayed, enjoined,

5 barred, and restrained from taking any action, directly or indirectly, to assert, to enforce

6 or to attempt to assert or enforce any such Claim (as defined in the Western World

7 Settlement Agreement) or Interest (as defined in the Western World Settlement

8 Agreement) against Western World, the Western World Released Parties, and/or the

9 Western World Policies.

10        **11.6.4** Any Insurer, other than Safeco, Travelers, and Western World, that

11 becomes a Settling Insurer and signs a settlement agreement substantially in the form

12 of the Safeco Settlement Agreement, shall be entitled to the benefits, including all

13 injunctions, as set forth in the form of settlement agreement signed by such Insurer.

14        **11.7 Channeling Injunction Preventing Prosecution of Abuse Claims**

15 **Against Channeling Injunction Beneficiaries.**  In consideration of the undertakings of

16 the Channeling Injunction Beneficiaries, pursuant to their respective settlements with

17 the Debtor and/or a Participating Party, the funding of the Trust, other consideration,

18 and to further preserve and promote the agreements between and among the

19 Channeling Injunction Beneficiaries, and the protections afforded the Channeling

20 Injunction Beneficiaries, and pursuant to section 105 of the Bankruptcy Code:

21        (a) any and all Channeled Claims are channeled into the Trust;

22 and

23        (b) all Persons or Entities that have held or asserted, hold or

24 assert, or may in the future hold or assert, any Channeled Claim are hereby

25 permanently stayed, enjoined, barred and restrained from taking any action, directly or

26 indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 any Channeled Claim, including:

2     (i) commencing or continuing in any manner any action or other
3 proceeding of any kind with respect to any Channeled Claim against any Channeling
4 Injunction Beneficiaries, their respective predecessors, successors, and assigns, or
5 their respective employees, officers, and directors, or against the property of any
6 Channeling Injunction Beneficiaries, their respective predecessors, successors, and
7 assigns, or their respective employees, officers, and directors;

8     (ii) enforcing, attaching, collecting or recovering, by any manner or means,
9 from any Channeling Injunction Beneficiaries, their respective predecessors,
10 successors, and assigns, or their respective employees, officers, and directors, or from
11 the property of any Channeling Injunction Beneficiaries, their respective predecessors,
12 successors, and assigns, or their respective employees, officers, and directors, with
13 respect to any such Channeled Claim, any judgment, award, decree, or order against
14 any Channeling Injunction Beneficiaries, or other Person or Entity;

15     (iii) creating, perfecting or enforcing any lien of any kind against any
16 Channeling Injunction Beneficiaries, their respective predecessors, successors, and
17 assigns, or their respective employees, officers, and directors, or the property of any
18 Channeling Injunction Beneficiaries, their respective predecessors, successors, and
19 assigns, or their respective employees, officers, and directors, with respect to any such
20 Channeled Claim; and

21     (iv) asserting, implementing or effectuating any Channeled Claim of any
22 kind against:

23     (1) any obligation due any Channeling Injunction Beneficiaries, their
24 respective predecessors, successors, and assigns, or their respective employees,
25 officers, and directors;

26     (2) any Channeling Injunction Beneficiaries, their respective

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 predecessors, successors, and assigns, or their respective employees, officers, and
2 directors; or

3                 (3) the property of any Channeling Injunction Beneficiaries, their
4 respective predecessors, successors, and assigns, or their respective employees,
5 officers and directors, with respect to any such Channeled Claim.

6       Notwithstanding any provision of this Plan, the foregoing "Channeling Injunction
7 Preventing Prosecution of Abuse Claims Against Channeling Injunction Beneficiaries"
8 provides absolutely no protection to (i) a Person or Persons having personally
9 committed an act or acts of Abuse resulting in a Claim against the Debtor or a
10 Participating Party, (ii) the Society of Jesus; (iii) the Father General of the Society of
11 Jesus and his predecessors, (iv) the Society of Jesus General Curia; (v) a successor or
12 predecessor of the Debtor to the extent of such successor's or predecessor's
13 independent liability for an act or acts of Abuse; (vi) Gonzaga University; (vii) Seattle
14 University; and (viii) the Jesuit High Schools.

15       **11.7.1** To the extent not otherwise enjoined in Section 11.6, assertion and
16 enforcement of Channeled Claims, and any attempt to assert or enforce such Claims,
17 by any Person or Entity, against Safeco, the Safeco Released Parties, Travelers, the
18 Travelers Released Parties, Western World, and the Western World Released Parties is
19 hereby permanently stayed, enjoined, barred, and restrained.

20       **11.7.2** Safeco, the Safeco Released Parties, Travelers, the Travelers
21 Released Parties, Western World, and the Western World Released Parties are entitled
22 to and hereby shall receive the benefits and protections of the injunctions in Sections
23 11.5 and 11.7 of this Plan as if Section 11.5 and 11.7 of the Plan applied specifically to
24 Safeco, the Safeco Released Parties, Travelers, the Travelers Released Parties,
25 Western World, and the Western World Released Parties.

26       **11.8 Term of Injunctions or Stays and Confirmation of Settlements With**

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 **Settling Insurers, Released Parties, and Participating Parties**. All injunctions and/or

2 stays provided for in this Plan, the injunctive provisions of Sections 524 and 1141 of the

3 Bankruptcy Code, and all injunctions or stays protecting Safeco, the Safeco Released

4 Parties, Travelers, the Travelers Released Parties, Western World, the Western World

5 Released Parties, Settling Insurers, Settling Insurer Released Party, Released Parties,

6 and/or Participating Parties, and their respective predecessors, successors, and

7 assigns, including Safeco, Travelers, Western World, or any other Settling Insurer that

8 has purchased its Insurance Policy or Policies in a Section 363 Sale, are permanent

9 and will remain in full force and effect following the Effective Date and are not subject to

10 being vacated or modified. Debtor's settlement agreements, if any, with Safeco,

11 Travelers, Western World, the Settling Insurers, the Released Parties, and the

12 Participating Parties previously authorized by the Bankruptcy Court are hereby affirmed

13 and any obligations of Debtor with respect to such settlement agreements shall be

14 assumed by the Reorganized Debtor and Trustee, as applicable, on the Effective Date.

15 None of the injunctions or stays under the Plan provide any protection whatsoever to (i)

16 a Person or Persons having personally committed an act or acts of Abuse resulting in a

17 Claim against the Debtor or a Participating Party; (ii) the Society of Jesus; (iii) the

18 Father General of the Society of Jesus and his predecessors or (iv) the Society of Jesus

19 General Curia; (v) a successor or predecessor of the Debtor to the extent of such

20 successor's or predecessor's independent liability for an act or acts of Abuse; (vi)

21 Gonzaga University; (vii) Seattle University; and (viii) the Jesuit High Schools.

22      **11.9 Release of Avoidance Claims Against Participating Parties and**

23 **Settling Insurers.** On the Effective Date, all Avoidance Claims, including those arising

24 under Sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code, against each

25 of the Participating Parties and the Settling Insurers, and the Debtor and Reorganized

26 Debtor as trustee of the Arcas (and any other Person or Entity that may be determined

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1   to be a trustee of the Arcas), and each of their predecessors, successors, and assigns,
2   shall be deemed settled, compromised, and released by this Plan. The foregoing
3   release has absolutely no application to the Avoidance Actions set forth on Exhibit 11.9.

4       **11.10 Release of Claims Against Seattle University.** Except for obligations
5   arising under any executory contract assumed by Reorganized Debtor pursuant to
6   Section 12.2 of this plan, On the Effective Date, Debtor, Reorganized Debtor and the
7   Estate waive, release and discharge any and all claims or causes of action of every kind
8   and nature that Debtor, Reorganized Debtor, or the Estate have or may have against
9   Seattle University, including any Third Party Derivative Claims, Avoidance Claims, and
10   any claim that Seattle University or its assets are a part of or owned by Debtor or the
11   Estate. No such claim will survive the Effective Date or be deemed to be assigned to
12   the Trust.

13       **11.11 Limitation on Exercise of Rights Against the Jesuit High Schools**. On
14   or after the Effective Date, no Third Party Derivative Claims may be brought against the
15   Jesuit High Schools unless such claims are consolidated in a single action which action
16   shall be brought in the U.S. District Court for the District of Oregon or the U. S.
17   Bankruptcy Court for the District of Oregon. The Jesuit High Schools each consent to
18   jurisdiction in U.S. District Court for the District of Oregon or the U. S. Bankruptcy Court
19   for the District of Oregon for purposes of the Third Party Derivative Claims.

20       **12. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED**
21   **LEASES.**

22       **12.1 Assumed Employee and Retiree Benefit Plans and Collective**
23   **Bargaining Agreements**. To the extent not previously assumed, all employee and
24   retiree benefit plans and all collective bargaining agreements to which the Debtor is a
25   party will be deemed assumed by the Reorganized Debtor on the Effective Date.

26       **12.2 General; Assumed if Not Rejected**. Subject to the requirements of

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Section 365, all executory contracts and unexpired leases of the Debtor that have not been rejected by order of the Bankruptcy Court or are not the subject of a motion to reject pending on the Confirmation Date will be deemed assumed by the Reorganized Debtor on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed objects to such assumption, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court.  All payments to cure defaults that may be required under Section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Debtor.  In the event of a dispute regarding the amount of any such payments, or the ability of the Debtor to provide adequate assurance of future performance, the Reorganized Debtor will make any payments required by Section 365(b)(1) of the Bankruptcy Code after the entry of the Final Order resolving such dispute.

  **12.3**   **Claims for Contract Rejection**.  All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court within 30 days after the Effective Date or such Claims will be forever barred. If any order providing for the rejection of an executory contract or unexpired lease did not provide a deadline for the filing of Claims arising from such rejection, proofs of Claim with respect thereto must be filed within 30 days after the later to occur of (a) the Effective Date or, (b) if the order is entered after the Effective Date, the date such order becomes a Final Order, or such Claims will be forever barred.

**13.**   **NON-MONETARY COMMITMENTS.**

  In order to further promote healing and reconciliation, and in order to continue the Plan proponents efforts to prevent sexual abuse from occurring in the Province in the future, the Debtor and Reorganized Debtor agree that beginning thirty (30) days after the Effective Date (unless a different date is provided below):

  **13.1**   For a period of not less than ten (10) years after the Effective Date, the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 Ll FACSIMILE (503) 248-0130

1    Reorganized Debtor will post on the homepage of the Province's website,
2    www.nwjesuits.org, a prominent link to the names of all members of the Province, who
3    are identified as perpetrators of Sexual Abuse in proofs of claim filed in the Case.
4    Notwithstanding the foregoing, the Province shall maintain the posting for any longer
5    period of time if recommended by the U.S. Conference of Catholic Bishops.  Provided,
6    that the posting will not include the names of any of the five (5) Province members who
7    deny that they are perpetrators of Sexual Abuse unless the Province concludes that the
8    accusations are credible.  Upon the Province determining that any of the five (5) the
9    Province members are credibly accused, such member's name will be added to the
10   posting.

11       **13.2**   The Confirmation Order shall vacate any order(s) entered in the Case
12   restricting the publication of the names of any members of the Province who are
13   identified as perpetrators of Sexual Abuse in proofs of claim filed in the Case.

14       **13.3**   The Province will make available for two (2) years after the Effective Date
15   one printable page per quarter on the Province's website, www.nwjesuits.org, for Abuse
16   Claimants to tell their stories of Abuse, if they desire to publish their stories.

17       **13.4**   The  Provincial will send letters of apology to all Abuse Claimants at the
18   address listed on their proof of claim.  Letters of apology will state that the Abuse
19   Claimant was not at fault for the Abuse, and that the Province and the Reorganized
20   Debtor takes responsibility for its part in the Abuse.  The Provincial will personally sign
21   the letters of apology.  Nothing in the letter shall be deemed a reaffirmation of the Abuse
22   Claim or a waiver of any of the Reorganized Debtor's rights under the Plan.

23       **13.5**   For a period of five (5) years after the Effective Date, the Provincial will be
24   available upon reasonable notice in Portland Oregon, during scheduled visits to
25   Anchorage, Seattle, and Spokane, and at additional locations where he is having
26   manifestations with the Province members to have a private conference with any person

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1    who has alleged to have an Abuse Claim.

2    **13.6**   Reorganized Debtor and the Province will institute a policy requiring that

3    its employees, representatives, agents and spokespersons, not refer either verbally or

4    in print to sexual abuse claimants as "alleged" claimants, "alleged" victims or "alleged"

5    survivors.

6    **13.7**   The Province and the Reorganized Debtor will include a link on the

7    Province's website, www.nwjesuits.org, for five (5) years after the Effective Date to a

8    prominent statement urging persons sexually abused by priests or religious to come

9    forward and contact law enforcement, and the Province's Victim's Assistance

10   Coordinator, and/or any survivor group or organization felt appropriate by the person

11   wishing to make a report of abuse.

12   **13.8**   On the Effective Date, the Reorganized Debtor and the Province shall

13   adopt and implement a written policy for members of the Province and all employees of

14   the Reorganized Debtor requiring all members and employees to report to state and

15   local police and law enforcement authorities any knowledge of child Sexual Abuse

16   (provided that reporting of knowledge of Abuse obtained within the Sacrament of

17   Confession is not mandatory).

18   **13.9**   Irrespective of an apology, the Provincial shall issue a statement of

19   gratitude for the survivors of Sexual Abuse who have had the courage to speak about

20   the Sexual Abuse they endured and continue to live with every day. This statement shall

21   be posted on www.nwjesuits.org and published prominently as a retail ad of no less

22   than a–quarter page in the Oregonian, the Seattle Times, the Missoulian, the Idaho

23   Statesman, the Spokesman Review, the Anchorage Daily News, Indian Country Today,

24   Indian Times, the Fairbanks Daily News-Miner, Omak Chronicle, Fort Belknap News,

25   Billings Gazette, The Charkoosta, Lake County Leader, Valley Journal, Blaine County

26   Journal, The Mountaineer, Havre Daily News, and Great Falls Tribune.   In the

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  statement, the Provincial shall encourage victims to report abuse to law enforcement

2  and seek help from professional counselors. This statement shall include contact

3  information for support groups such as SNAP, SOAR Inc., and/or similar organizations.

4      **13.10** The Reorganized Debtor will publicly announce and post on the Province's

5  website, www.nwjesuits.org, the full and complete release of all survivors of Sexual

6  Abuse from any confidentiality requirement in settlements that they have signed as a

7  condition of settlement. No survivor's identity may be released or revealed without his or

8  her permission. The Reorganized Debtor and the Province shall contact by first class

9  mail each survivor of Sexual Abuse who has previously entered into such a

10  confidentiality agreement. The letter shall be addressed to the survivor at the address

11  listed in such agreement or to the person's attorney, if any, to notify them of the full and

12  complete release. Any future settlement related to Sexual Abuse entered into by the

13  Reorganized Debtor and/or the Province shall not contain any confidentiality provision

14  except at the written request of the survivor claimant.

15      **13.11** The Reorganized Debtor and the Province shall adopt a whistle blower

16  policy concerning the method by which a report concerning abuse within the Province

17  can be made and expressly providing that the Reorganized Debtor and the Province will

18  not take any retaliatory actions against persons who report such information in good

19  faith.

20      **13.12** The Provincial shall request that the Attorneys General of the five states

21  incorporated in the Province to form a Joint Task Force on Child Protection to annually

22  investigate and monitor all institutions under the auspices of the Reorganized Debtor

23  and the Province.

24      **13.13** The Reorganized Debtor and the Province will never seek to, direct, pay

25  or hire any agent or employee or third party, to retract, oppose or challenge the

26  constitutionality or legitimacy of any reform of a statute of limitations affecting sexual

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  abuse in the five states in the Province or similar legislation or law in any other state or

2  jurisdiction.

3  **13.14** The Reorganized Debtor and the Province shall continue to provide a toll-

4  free phone number and website for anonymous abuse complaints and include that

5  information on the main page of the Province's website – www.nwjesuits.org.  If a report

6  of abuse is made formally to anyone in the Province or through the aforementioned

7  avenues, the Reorganized Debtor and the Province will encourage the alleged victim to

8  report the information to law enforcement and the Reorganized Debtor and the Province

9  will report the information to law enforcement as well.   If a perpetrator is found to be

10  guilty either by the state or federal court system or by the Province, the Provincial will

11  publicly identify the perpetrator and will encourage any other possible survivors to report

12  the abuse to local law enforcement.

13  **13.15** In connection with the production of Documents set forth herein, the

14  Province Entities shall waive any and all privileges and defenses, if any, associated with

15  any statutory or Constitutional protections the Province Entities might otherwise seek to

16  assert, including any privileges and defenses associated with or in any way based upon

17  Canon Law, except for the following enumerated privileges under Oregon law:

18  1.  Attorney-Client;

19  2.  Priest-Penitent;

20  3.  Psychologist/Psychoanalyst-Client;

21  4.  Licensed Counselor/Social Worker-Client;

22  5.  Physician-Patient; and,

23  6.  Attorney Work Product.

24  **13.16** Any Person may publish the Documents.

25  **13.17** In connection with the production of Documents, and other than with

26  respect to video depositions, no victim's identity may be released or revealed without

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  his or her express permission.  Judge Gregg Zive[1] will rule on any disputes regarding

2  the production of Documents.   Decisions by Judge Zive (or, as applicable, his

3  successor) shall be final and non-reviewable by any court or other tribunal or authority.

4      **13.18** No Province Entity will retain or pay for counsel for any third party to

5  contest the production of any Document.

6      **13.19**  Upon a showing of good cause and after the Reorganized Debtor's

7  opportunity to respond thereto, the Reorganized Debtor shall allow Judge Zive (or his

8  successor) to have complete access to inspect Reorganized Debtor and the Province

9  files and archives to ensure that all Documents have been produced, subject to any

10  generally applicable rules regarding access to the Province archives.  The purpose of

11  this inspection right is to verify that all Documents have been produced, which

12  verification shall be final and non-reviewable by any court or other tribunal or authority.

13      **13.20** The Reorganized Debtor shall provide the Trustee with a compliance

14  report semi-annually for the first year and then annually. The Trustee shall be a party in

15  interest regarding the compliance report and the enforcement of the covenants in

16  Sections 13.1 through 13.22.

17      **13.21** The Reorganized Debtor and the Province shall not oppose, expressly or

18  implicitly, any proposed or enacted statutes or laws or judicial precedent that require

19  mandatory reporting of child abuse, abandonment or neglect.

20      **13.22** The Reorganized Debtor and the Province Entities, having exercised their

21  best efforts to produce, upon request, to an Abuse Claimant or the designee, any and

22  all of the Abuse Claimant's personal records, including but not limited to school

23  records, health records and communion records within 30 days of request, represent to

24  _____

25  [1] Or, as applicable, a successor agreed upon by the Reorganized Debtor and the
   Trustee.  If the Reorganized Debtor and Trustee cannot agree on a successor, a
26  successor designated by the Bankruptcy Court upon joint application of the
   Reorganized Debtor and the Trustee.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 ❘ FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1  the Committee that they have no such documents or records in their possession,
2  custody, or control.

3  **14.    MISCELLANEOUS PROVISIONS.**

4      **14.1   Retention of Jurisdiction**.  Notwithstanding entry of the Confirmation
5  Order or the occurrence of the Effective Date:

6          **14.1.1** Except as otherwise set forth in this Plan or in the Confirmation
7  Order, the Bankruptcy Court will retain jurisdiction over all matters arising under, in
8  furtherance of, or in connection with this Plan, including the following:

9                  (a)     The determination of objections to Disputed Claims;  the
10  determination of requests for payment of Claims entitled to priority under Section 507 of
11  the Bankruptcy Code, including compensation of and reimbursement of expenses of
12  parties entitled thereto;

13                  (b)     The resolution of controversies and disputes regarding
14  interpretation and implementation of this Plan and the Plan Documents;

15                  (c)     The granting of relief in aid of this Plan and the Plan
16  Documents including the entry of appropriate orders (which may include contempt or
17  other sanctions) to protect the Reorganized Debtor, the Participating Parties, the
18  Settling Insurers, Seattle University, and  the Released Parties from actions prohibited
19  under this Plan or the Plan Documents;

20                  (d)     Amendments to and modifications of this Plan;

21                  (e)     Subject to the limitations and exclusions described above,
22  the determination of any and all applications, adversary proceedings, and contested or
23  litigated matters pending on the Effective Date; and

24                  (f)     The closing of this Case.

25      **14.2   Modification of Plan**.  The Proponents reserve the right, in accordance
26  with the Bankruptcy Code, to amend, modify or withdraw this Plan prior to the entry of

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1 the Confirmation Order. After the entry of the Confirmation Order, the Proponents may,
2 upon order, amend or modify this Plan in accordance with Section 1127(b) of the
3 Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in
4 this Plan in such manner as may be necessary to carry out the purpose and intent of
5 this Plan.

6     **14.3 Severability**.   In the event of a successful collateral attack on any
7 provision of this Plan (i.e., an attack other than through a direct appeal of the
8 Confirmation Order), the remaining provisions of this Plan will remain binding on the
9 Debtor, the Reorganized Debtor, the Participating Parties, the Settling Insurers, the
10 Trustee, the Committee, the FCR, all Claimants, all Creditors, and all other parties in
11 interest.

12     **14.4. Post-Confirmation Professional Fees and Expenses**.   Except as
13 otherwise provided in the Plan, all professional fees and expenses incurred or payable
14 by the Reorganized Debtor, the Trustee, and the FCR after the Effective Date will be
15 paid in the ordinary course of business of the Reorganized Debtor and the Trust without
16 the need for approval of the Bankruptcy Court. The Bankruptcy Court will retain
17 jurisdiction to resolve any dispute with respect to such fees or expenses upon
18 application by the affected professional, the Trustee, the Committee, the FCR, or the
19 Reorganized Debtor.

20     **14.5 Headings**.   The headings of the sections of this Plan are inserted for
21 convenience only and will not affect the interpretation hereof.

22     **14.6 Computation of Time Periods**.   In computing any period of time
23 prescribed or allowed by this Plan, the day of the act, event, or default from which a
24 designated period of time begins to run will not be included. The last day of the period
25 so computed will be included so long as it is a Business Day. When the period of time
26 prescribed or allowed is less than 11 days, any day that is not a Business Day will be

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1 excluded in the computation.

2 **14.7 Notices**. All notices or requests to the Reorganized Debtor in connection

3 with this Plan shall be in writing and served either by (i) United States mail, postage

4 prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges

5 prepaid, and shall be deemed given when received by the following parties:

6       <u>If to the Debtor or Reorganized Debtor</u>:

7       Society of Jesus, Oregon Province
      3215 SE 45th Avenue
8       Portland, OR 97206
      Attn: Provincial
9

      With a copy to:
10
      Sussman Shank LLP
11       1000 SW Broadway, Suite 1400
      Portland, OR 97205
12       Attention: Thomas W. Stilley and Howard M. Levine

13       <u>If to the Trustee</u>:

14       Pachulski Stang Ziehl & Jones LLP
      10100 Santa Monica Boulevard, 11th Floor
15       Los Angeles, CA 90067-4100
      Attention: James I. Stang
16
      <u>If to the FCR</u>:
17
      Stephen S. Gray
18       CRG Partners Group, LLC
      2 Atlantic Avenue
19       Boston, MA 02110

20
      All notices and requests to a Person or Entity holding any Claim will be sent to
21
them at the last known address listed for such Person or Entity with the Court or with the
22
Debtor's Claims Agent, or to the last known address of their attorney of record. The
23
holder of a Claim may designate in writing any other address, which designation will be
24
effective upon actual receipt by the Reorganized Debtor and the Trustee. Any Person or
25
Entity entitled to receive notice under this Plan will have the obligation to provide the
26
Reorganized Debtor and the Trustee with such Person's or Entity's current address for

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1  notice purposes. The Reorganized Debtor and Trustee will have no obligation to attempt

2  to locate a more current address in the event any notice proves to be undeliverable to

3  the most recent address which has been provided to the Reorganized Debtor and the

4  Trustee.

5      **14.8  Post-Confirmation Court Approval**.  Any action requiring Bankruptcy

6  Court, U.S. District Court, or state court approval after the Effective Date will require the

7  Person or Entity seeking such approval to file an application, motion, or other request

8  with the Bankruptcy Court, U.S. District Court, or state court, as applicable, and obtain a

9  Final Order approving such action before the requested action may be taken. The

10  Person or Entity filing such application, motion, or other request shall serve such

11  application, motion, or other request, together with a notice setting forth the time in

12  which objections must be filed with the court, on the Reorganized Debtor, the

13  Committee, the FCR, and the Trustee by first-class mail, electronic mail, ECF, overnight

14  courier, facsimile, or hand delivery.  Unless the court orders otherwise, all notices shall

15  provide the recipients at least 21 days in which to file an objection to the application,

16  motion, or other request.  If no objection is timely filed, the court may authorize the

17  proposed action without further notice or a hearing.  If an objection is timely filed, the

18  court will determine whether to conduct a hearing, or to require the submission of further

19  documentation, prior to ruling on the application, motion, or other request.

20      **14.9  Election Pursuant to Section 1129(b) of the Bankruptcy Code**.  The

21  Proponents hereby request confirmation of the Plan pursuant to Section 1129(b) of the

22  Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the

23  Bankruptcy Code, except Section (a)(8) thereof, are met with regard to the Plan.  In

24  determining whether the requirements of Section 1129(a)(8) of the Bankruptcy Code

25  have been met, any Class or subclass of a Class that does not contain as an element

26  thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  as of the date fixed by the Bankruptcy Court for filing acceptances or rejections of this

2  Plan shall be deemed deleted from this Plan for purposes of voting to accept or reject

3  this Plan and for purposes of determining acceptance or rejection of this Plan by such

4  Class or subclass.

5      **14.10 Consummation of the Plan**.  The Proponents reserve the right to request

6  that the Confirmation Order include (i) a finding by the Court that Bankruptcy Rule

7  3020(e) shall not apply to the Confirmation Order, and (ii) the Court's authorization for

8  the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

9      **14.11 Exemption from Transfer Taxes**.  Pursuant to Section 1146(c) of the

10  Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in

11  furtherance of, or in connection with this Plan, whether occurring prior or subsequent to

12  the Confirmation Date, including any deeds, bills of sale or assignments executed in

13  connection with any disposition of assets contemplated by this Plan, shall not be subject

14  to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar

15  tax.

16      **14.12 Waivers**.  Except as otherwise provided in the Plan or in the Confirmation

17  Order, any term of the Plan may be waived by the party benefited by the term to be

18  waived.

19      **14.13 Setoffs, Recoupments, and Defenses**.  With the exception of the

20  Sections of the Plan concerning the cancellation and waiver of the Abuse Related

21  Contribution/Indemnity Claims, nothing contained in the Plan shall constitute a waiver or

22  release by the Debtor, Reorganized Debtor, Participating Parties, or Trustee of any

23  rights of setoff or recoupment, or of any defense, they may have with respect to any

24  Claim (including rights under Section 502(d) of the Bankruptcy Code).  Except as

25  otherwise provided in the Plan or in the Confirmation Order or in agreements previously

26  approved by a Final Order, the Debtor, Reorganized Debtor, Participating Parties, or

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1 Trustee may, but will not be required to, set off against any Claim or any distributions

2 with respect to such Claim, any and all of the Claims, rights and causes of action of any

3 nature that the Debtor, the Reorganized Debtor, Participating Parties, or Trustee, as

4 applicable, may hold against the holder of such Claim; provided, however, that neither

5 the failure to effect such a setoff, the allowance of any Claim hereunder, the payment of

6 any distribution hereunder or any other action or omission of the Debtor, Reorganized

7 Debtor, Participating Parties, or Trustee, nor any provision of the Plan, shall constitute a

8 waiver or release by the Debtor, the Reorganized Debtor, Participating Parties, or

9 Trustee, as applicable, of any such Claims, rights and causes of action that the Debtor,

10 the Reorganized Debtor, Participating Parties, or Trustee, as applicable, may possess

11 against such holder.

12 **14.14 Compromise of Controversies**.

13 **14.14.1** Court Approval of Settlements. In consideration for the

14 classification, distributions and other benefits provided under the Plan, the provisions of

15 the Plan shall constitute a good faith compromise and settlement of all Claims or

16 controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall

17 constitute the Court's approval of each of the compromises and settlements provided for

18 in the Plan, and the Court's findings shall constitute its determination under the

19 standards of Bankruptcy Rule 9019 that such compromises and settlements are in the

20 best interests of the Debtor and the Estate. The Debtor and Participating Parties

21 expressly reserve the right to compromise and settle other Claims and Debtor and

22 Participating Party Actions up to and including the Effective Date.

23 **14.14.2** Settlement of the Property of the Estate Litigation. Specifically

24 included within the Court's approval of compromises and settlements of Claims and

25 controversies is the Court's approval of the settlement and compromise reached

26 between the Debtor and the Committee of that certain adversary proceeding entitled

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  *Official Committee of Unsecured Creditors v. Society of Jesus, Oregon Province, et al*,

2  Adversary Proceeding No. 10-30275-elp, filed on September 23, 2010 (the "Estate

3  Property Litigation"). Pursuant to that settlement, on the Effective Date, and without the

4  need for the execution of any further documents the Estate Property Litigation will be

5  dismissed, with prejudice.

6  **14.14.3**  Settlement with Safeco. Specifically included within the Court's

7  approval of compromises and settlements of Claims and controversies is the Court's

8  approval of the Safeco Settlement Agreement.  The Safeco Settlement Agreement is

9  incorporated in this Plan by reference.  If a conflict exists between the Plan and the

10  Safeco Settlement Agreement, the Safeco Settlement Agreement control such conflict.

11  The Safeco Settlement Agreement controls the protections and benefits afforded

12  Safeco and the Safeco Released Parties under the Safeco Settlement Agreement, as

13  well as the rights and obligations of the parties thereto, to the extent of any conflict with

14  the Plan.  The Safeco Settlement Agreement is binding on the Trust.

15  **14.14.4**  Settlement with Travelers. Specifically included within the Court's

16  approval of compromises and settlements of Claims and controversies is the Court's

17  approval of the Travelers Settlement Agreement.  The Travelers Settlement Agreement

18  is incorporated in this Plan by reference.  If a conflict exists between the Plan and the

19  Travelers Settlement Agreement, the Travelers Settlement Agreement controls such

20  conflict. The Travelers Settlement Agreement controls the protections and benefits

21  afforded Travelers and the Travelers Released Parties under the Travelers Settlement

22  Agreement, as well as the rights and obligations of the parties thereto, to the extent of

23  any conflict with the Plan.  The Travelers Settlement Agreement is binding on the Trust.

24  **14.14.5**  Settlement with Western World. Specifically included within

25  the Court's approval of compromises and settlements of Claims and controversies is the

26  Court's approval of the Western World Settlement Agreement.  The Western World

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1    Settlement Agreement is incorporated in this Plan by reference. If a conflict exists

2    between the Plan and the Western World Settlement Agreement, the Western World

3    Settlement Agreement controls such conflict. The Western World Settlement Agreement

4    controls the protections and benefits afforded Western World and the Western World

5    Released Parties under the Western World Settlement Agreement, as well as the rights

6    and obligations of the parties thereto, to the extent of any conflict with the Plan. The

7    Western World Settlement Agreement is binding on the Trust.

8    **14.15 Withdrawal or Revocation of the Plan**. The Proponents reserve the

9    right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan is

10    revoked or withdrawn, or if the Confirmation Date does not occur, the Plan shall have no

11    force and effect and in such event nothing contained herein shall be deemed to

12    constitute a waiver or release of any Claims by or against the Estate or any other

13    Person or Entity, or to prejudice in any other manner the rights of a Proponent, whether

14    one or more, or any other entity in further proceedings involving a Proponent or

15    Proponents and specifically shall not modify or affect the rights of any party under any

16    prior orders of the Court.

17    **14.16 Default**. Except as otherwise provided in the Plan or in the Confirmation

18    Order, in the event the Reorganized Debtor, a Participating Party, a Settling Insurer, or

19    the Trustee shall default in the performance of any of their respective obligations under

20    the Plan or under any of the Plan Documents and shall not have cured such a default

21    within any applicable cure period (or, if no cure period is specified in the Plan or Plan

22    Documents or in any instrument issued to or retained by a Claimant under the Plan,

23    then within 30 days after receipt of written notice of default), then the entity to whom the

24    performance is due may pursue such remedies as are available at law or in equity. An

25    event of default occurring with respect to one Claim shall not be an event of default with

26    respect to any other Claim.

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    **14.17 Filing and Payment of Allowed Administrative Claims**. All requests for

2    the payment of Administrative Claims, including applications for the compensation of the

3    FCR and the Chapter 11 Professionals, must be filed with the Bankruptcy Court no later

4    than 30 days after the Effective Date or at such time as the Bankruptcy Court may

5    otherwise order. Once a Final Order is entered Allowing a Disputed Administrative

6    Claim, the Reorganized Debtor will pay such Claim in accordance with this Plan.

7    **14.18 Payment of United States Trustee Fees**. All fees due to the United

8    States Trustee pursuant to 28 USC §1930(a) accruing before or after the Effective Date

9    will be paid by the Reorganized Debtor as and when they become due and will be

10   based on the Reorganized Debtor's total disbursements, including ordinary course of

11   business disbursements, but will not include disbursements made directly to Claimants

12   or to the Trust under this Plan. Such fee obligations will not terminate until this Case is

13   converted or dismissed, or until this Case is no longer pending upon entry of a Final

14   Order closing this Case, whichever first occurs.

15   **14.19 Governing Law**. Except to the extent that federal law (including the

16   Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising

17   under the Plan or under the Plan Documents shall be governed by and construed and

18   enforced in accordance with the laws of the State of Oregon without giving effect to the

19   principles of conflicts of laws.

20   **14.20 Reservation of Rights**. If the Plan is not confirmed by a Final Order, or if

21   the Plan is confirmed and the Effective Date does not occur, the rights of all parties in

22   interest in the Case are and will be reserved in full. Any concessions or settlement

23   reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not

24   become effective, no party in interest in the Case shall be bound or deemed prejudiced

25   by any such concession or settlement.

26   **14.21 Controlling Documents**. To the extent any provision of the Plan

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   Documents (other than the Safeco Settlement Agreement, Travelers Settlement

2   Agreement, or Western World Settlement Agreement) is inconsistent with this Plan, the

3   provisions of the Plan shall control. To the extent any provision of the Safeco Settlement

4   Agreement, Travelers Settlement Agreement, or Western World Settlement Agreement

5   is inconsistent with this Plan or the Plan Documents (other than the Safeco Settlement

6   Agreement, Travelers Settlement Agreement, or Western World Settlement

7   Agreement), the Safeco Settlement Agreement, Travelers Settlement Agreement, and

8   Western World Settlement Agreement, as applicable, shall control.

9   **14.22 Successors and Assigns**.  The Plan shall be binding upon and inure to

10  the benefit of the Debtor, the Reorganized Debtor, all Claimants and all other parties in

11  interest affected thereby and their respective successors, heirs, legal representatives

12  and assigns.

13  **14.23 Rounding of Fractional Numbers.**  All fractional numbers, including

14  payments or distributions under the Plan and Trust Documents shall be rounded (up or

15  down) to the nearest whole number.

16  **14.24 Dissolution of the Committee.**  Upon the Effective Date, the Committee

17  will be dissolved.

18  **14.25 Exhibits**.  All Exhibits to this Plan, are incorporated into and are a part of

19  this Plan as if set forth in full herein.

20  DATED:  July 18, 2011

21  SOCIETY OF JESUS, OREGON              FUTURE CLAIMANTS
    PROVINCE, an Oregon domestic          REPRESENTATIVE
22  non-profit religious corporation

23

24  By: */s/ Michael A. Tyrrell, SJ for*        */s/ Stephen S. Gray*
        *Patrick J. Lee, S.J.*
        Patrick J. Lee, S.J., President          Stephen S. Gray
25

26

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

PACHULSKI STANG ZIEHL & JONES LLP     SUSSMAN SHANK LLP


By: /s/ James I. Stang_____     By: /s/ Thomas W. Stilley_____
    James I. Stang, Admitted Pro Hac Vice          Thomas W. Stilley, OSB No. 883167
    Pamela Egan Singer, OSB No. 894231             Howard M. Levine, OSB No. 800730
    Attorneys for the Official Committee of        Attorneys for Society of Jesus, Oregon
    Unsecured Creditors                            Province


F:\CLIENTS\19620\004\PLAN & DISCLOSURE STATEMENT\P-THIRD MODIFIED PLAN (FINAL 071811).DOC

**Page 99 of 99** – THIRD MODIFIED JOINT PLAN OF REORGANIZATION (Dated
July 18, 2011)

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1  <u>CERTIFICATE OF SERVICE</u>

2  I, Janine E. Hume declare as follows:

3  I am employed in the county of Multnomah, state of Oregon; I am over the age of

4  eighteen years and am not a party to this action; my business address is 1000 SW

5  Broadway, Suite 1400, Portland, Oregon 97205-3089, in said county and state.

6  I certify that on July 18, 2011, I served, by **first class mail**, a full and correct

7  copy of the foregoing **THIRD MODIFIED JOINT PLAN OF REORGANIZATION**

8  **(Dated July 18, 2011) (marked and clean versions)** on the parties of record,

9  addressed as follows:

10  **See attached service list.**

11  I also certify that on **July 18, 2011**, I served the above-referenced document(s)

12  on all ECF participants as indicated on the Court's Cm/ECF system.

13  I swear under penalty of perjury that the foregoing is true and correct to the best

14  of my knowledge, information, and belief.

15  Dated:  July 18, 2011

16

17  */s/ Janine E. Hume*

18  _____
Janine E. Hume, Legal Assistant

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - Page 1

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

Florence Kenney, Co-Chair
c/o Christopher R. Cook
Cooke Roosa LLC
3700 Jewel Lake Road
Anchorage, AK 99502

Anthony Lionel Atkinson, Co-Chair
c/o Michael T. Pfau Esq.
Pfau, Cochran, Vertetis & Kosnoff PLLC
701 Fifth Avenue, Ste. 4730
Seattle, WA 98104

Frederick J. Odsen
James M. Gorski
Hughes Pfiffner Gorski Seedorf & Odsen, LLC
3900 C Street, Suite 1001
Anchorage, AK 99503

David Henderson, Esq.
PO Box 2441
135 Ridgecrest
Bethel, AK 99559

William A. Gilbert, Esq.
100 E. Broadway
PO Box 2149
Moses Lake, WA 98837

Jim Valcarce
Valcarce Law Office, LLC
900 3rd Avenue
PO Box 409
Bethel, AK 99559

Michelle Menely, Esq.
Gordon Thomas Honeywell
600 University Street, Suite 2100
Seattle, WA 98101-4185

Andrew Chasan
PO Box 1069
Boise, ID 83701

Gary A. Zipkin
510 L St #700
Anchorage, AK 99501

Sean E. Brown
Power and Brown, LLC
PO Box 1809
Bethel, AK 99559

Daniel Gatti
Gatti Gatti Maier et al
1781 Liberty St SE
Salem OR 97302

Daniel T Quinn
360 K St #200
Anchorage, AK 99501

Jospeh A. Blumel
4407 N Division St #900
Spokane, WA 99207

Cynthia L. Ducey
1007 W 3rd Ave #400
Anchorage, AK 99501

Seattle University
c/o Steven F. Kerr
Jack Lovejoy
1000 2nd Ave #3500
Seattle, WA 98104-1048

Jack Lovejoy
1000 2nd Ave #3500
Seattle, WA 98104

Timothy M. Lynch
Lynch & Associates P.C.
425 G St, Suite 420
Anchorage, AK 99501

David W. Oesting
701 W 8th Ave #800
Anchorage, AK 99501

Jonathan Lee Riches
Federal Medical Center
#40948018
POB 14500
Lexington, KY 40512

Roger Hotrum
Doc #923581
POB 2049
Airway Heights, WA 99001

Gregory G. Silvey
510 L St #700
Anchorage, AK 99501

Mackenzie E. Whatcott
800 Park Blvd #790
Washington Group Plaza #4
Boise, ID 83712

William C. Tharp
950 W Bannock St #900
Boise, ID 83702

Thomas G. Walker
POB 9518
Boise, ID 83707-9518

Stanley W. Welsh
800 Park Blvd #790
Washington Group Plaza #4
Boise, ID 83712

Julio K. Morales
Morales Law Office
212 W. Spruce Street
Missoula, MT 59802

Breck Barton
PO Box 100
Rexburg, ID 83440

Karen O'Kasey
Hoffman Hart & Wagner LLP
1000 SW Broadway Ste 2000
Portland OR 97205

Jerome Darrell Akles
213 SE 192nd Avenue, Suite 104
Portland, OR 97233

H. Douglas Spruance III
421 West Riverside Ave.
Suite 1400
Spokane, WA 99201

JMW Settlements, Inc.
c/o The Corporation Trust Co.,
Its Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

James P. Klapps
General Counsel and Principal
JMW Settlements, Inc.
1130 Connecticut Avenue NW, Suite 540
Washington, DC 20036

John Manly
Rebecca Rhodes
Manly & Stewart
4220 Von Karman Ave., Suite 200
Newport Beach, CA 92660

William A. Gilbert
P O Box 2149
Moses Lake, WA 98837

Richard Hansen
1211 SW 5th Avenue
Suite 1600-1900
Portland, OR 97204

Renea I. Saade
1420 Fifth Avenue, Suite 3010
Seatle, WA 98101-2393

Steven F. Kerr
1000 2nd Ave #3500
Seattle, WA 98104-1048

Mackienzie E. Whatcott
800 Park Blvd. #790
Washington Group Plaza #4
Boise, ID 83712

Frederick P. Marczyk
Drinker Biddle & Reath LLP
One Logan Square #2000
Philadelphia, PA 19103-6996

David W. Oesting
701 W 8th Ave #800
Anchorage, AK 99501

Michael P. Pompeo
Robert M. Vinci
Drinker Biddle & Reath LLP
500 Campus Dr.
Florham Park, NJ 07932

Fredric Michael Turk
111 Broadway, #101-195
Boise, ID 83702

SEC
Attn: Bankruptcy Counsel
5670 Wilshire Blvd. 11th Floor
Los Angeles, CA 90036

General Curia of the Society of Jesus
Attn: Teresa Pearson
Miller Nash LLP
Suite 3500, 111 SW 5th Ave.
Portland, OR 97204

John Kroger
Attorney General of the State of Oregon
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

Office of the Attorney General
Attorney General John J. Burns
P O Box 110300
Juneau, AK 99811-0300

Montana Department of Justice
Attorney General Steve Bullock
P O Box 201401
Helena, MT 59620-1401

State of Idaho
Office of the Attorney General
Attention: Lawrence G. Wasden, Attorney
General
P O Box 83720
Boise, ID 83720-0010

State of Washington
General Rob McKenna
P O Box 40100
Olympia, WA 98504-0100

AND: ECF PARTICIPANTS

# ALLOCATION PLAN I

Attorneys from Alaska, California and Washington, who among them have over 125 years of combined legal experience and who have represented a total of over 600 child sexual abuse survivors, worked together to develop this allocation protocol It is the goal of this protocol to promptly, fairly, and efficiently distribute compensation to all claimants who select this plan. It is anticipated that those who participate in this allocation plan will have their claim evaluated and their award calculated within 45 days of plan confirmation, with minimum of cost and embarrassment, dignity, promptness, confidentiality, and fairness, along with low expense to each claimant, guided the preparation of this allocation plan.

All claims will be individually evaluated by retired Judge William Bettinelli, who will be employed by the Trustee as an Abuse Claims Reviewer.

## No Consideration of Joint/Several Liability or Statutes of Limitations for Sexual Abuse and Sexual Assault Claims

In evaluating the claims, Judge Bettinelli will disregard any considerations related to the statute of limitations with respect to sexual abuse and/or sexual assault claims. In addition, there will be no consideration of joint or several liability issues vis-à-vis non-Jesuit individuals or entities that may potentially be liable for the abuse to the Abuse Claimants are concerned; the primary function of the evaluation is to facilitate the equitable division of the proceeds of this settlement among the various Abuse Claimants. Consistent with Bankruptcy Rules, any Abuse Claimant in a Creditor Pool may challenge any other claim within that Creditor Pool by submitting information to Judge Bettinelli. No other challenges of claims are allowed.

## Tort Claimant Must Establish a Liability Relationship Between the Perpetrator and the Society of Jesus, Oregon Province

Before any award can be made to a particular Abuse Claimant, it must first be determined by the Abuse Claims Reviewer that the perpetrator of the primary abuse complained of by the Abuse Claimant was either a member of the Society of Jesus, Oregon Province, or a priest, nun, brother, deacon, other religious, or a lay individual for whom the Society of Jesus, Oregon Province, could reasonably be held liable for the abuse to the Tort Claimant. To facilitate this process a perpetrator list will be provided to the Abuse Claims Reviewer.

It is the responsibility of the Abuse Claimant, or the Abuse Claimant's attorney, if the Abuse Claimant is represented, to establish the existence of the liability

Exhibit _1-9_

Page _1_ of _6_   DOCS_LA:231071.2

relationship between the Society of Jesus, Oregon Province and the perpetrator, if the perpetrator is not on the perpetrator list.

## Allocation Procedure

Each claim will be individually evaluated based on evaluation factors, set forth below, and points will be allocated to each victim in relation to each of the numbered evaluation categories (0 to 5 in some categories, and 0 to 10 in others), except for category number five (5) for which plus or minus five (5) points may be awarded. The evaluation factors are as follows:

**1) Type, nature, and severity of abuse (0 to 10 points)**
- Exposure, touching, penetration, etc
- Violence/threat of violence
- Number of incidents (single, multiple)
- Duration of abuse (days, weeks, months, years)
- Circumstances of the abuse

**2) Vulnerability of the victim and damages suffered (0 to 5 points)**
- The relationship of the child to the victim to the perpetrator (position of trust vs. passing acquaintance, etc.)
- Nature and extent of damages suffered

**3) Age of the victim at the onset of the abuse (0 to 10 points)**
-more points awarded for abuse at a young age
-less points awarded for abuse at an older age

**4) Overall conduct of the abuser (0 to 5 points)**
-Serial abuser with many victims vs. one time or limited involvement

**5) Mitigating or aggravating factors (-5 to + 5)**
- Apparent merits of the claim
- Incarceration or criminal conduct of the victim (relating only to crimes involving sexual abuse, sexual assault and/or sexual misconduct)
- Sexual victimization of others
– Statute of limitations (as to pure physical abuse claims only)

## All Are Encouraged to Allow Judge Bettinelli Access to Files

To accomplish the evaluation and allocation, Judge Bettinelli should have free and unfettered access to all of Counsel's client and case files, including a copy of the unredacted proofs of claims, and records relating to each Abuse Claimant including attorney/client and work product protected documents and communications. This access should include new client information forms, client employment and criminal histories, psychological evaluations where available, data on perpetrators, expert witness files, and similar information. A failure to provide requested information may be considered by Judge Bettinelli in his allocation determination, and will result in a reduction in the award. At Judge Bettinelli's sole discretion, a refusal to provide information may result in the claim being denied or classified into the convenience class.

## Awards Will Be Mathematically Calculated

Each Abuse Claimant will be awarded settlement proceeds based upon the ratio of points awarded to each Abuse Claimant to the total points awarded to all Abuse Claimants. Thus if Abuse Claimant A is awarded 20 points and the total points awarded to all Abuse Claimants is 4,000 points, Abuse Claimant A will be awarded 20/4000 of the net settlement proceeds.

## Notification of Awards and Appeals

A preliminary allocation of net settlement funds (minus any established reserves) shall be made, and a Notice of Allocation shall be mailed to each Abuse Claimant and his/her attorney, advising the Abuse Claimant and counsel of the preliminary award amount. Initial allocations to any non-appealing party will not be changed as a result of any appeals. The Trustee, in consultation with Judge Bettinelli, will establish a reasonable reserve to accommodate any adjustments that maybe made as a result of successful appeals. Each Abuse Claimant shall have 21 days from the mailing date of the Notice of Allocation in which to advise the Trustee, in writing, of his or her objection to the preliminary award amount. Unless objection is made, the preliminary allocation shall become final at the end of the 21-day objection period. In accordance with the Plan and Trust Documents, the Trustee shall pay the allocation no later than thirty (30) days after it becomes final

Any additional award on appeal shall be paid from the appeal reserve. At the conclusion of all appeals, the balance of funds in the appeal reserve shall be distributed to all Abuse Claimants in the Creditor Pool utilizing the same formula as was used for each individual's final award.

Once the Trustee has advised Judge Bettinelli of any such objections, Judge Bettinelli will, at his sole discretion, arrange to speak with the objector(s), in person or by phone to discuss the objection and may request supplemental materials from the Abuse Claimant. He will review and reconsider the awards to which objection(s) have been made, and if appropriate modify the allocation(s). Judge Bettinelli shall have the discretion to increase or decrease the points awarded on reconsideration, depending on his findings. He will then issue a final award. The final award will not be subject to appeal or reconsideration.

## Compensation

Judge Bettinelli will be compensated at a rate agreed upon between him and the Trustee. His compensation shall be deducted from the gross proceeds of the award to the Allocation Pool(s) which retain(s) him. Judge Bettinelli shall have full discretion to determine the form and scope of any submissions to him relating to his allocation determination. His initial determination shall be made based on the documents described above and other submissions made to him by the Abuse Claimants and their attorneys.

d

# ALLOCATION PLAN II

## I.  Abuse Claims Reviewer

Attorney Kate Pflaumer shall have the title and responsibility of "Abuse Claims Reviewer" (hereinafter "ACR") under the terms of Allocation Protocol II. The ACR shall conduct a review of each of the abuse claims within Allocation Protocol II and make individual monetary distributions according to the guidelines set forth in section 4.4 below. The ACR shall have the authority to employ qualified assistants and consultants as she deems appropriate. The ACR's award as to each claimant shall be the final award, subject only to reconsideration as set forth in section 4.5 below.

## II.  Definitions

**2.1  Capitalized Terms.**

Capitalized terms used in Allocation Protocol II shall have the meanings given them in the Plan, the Settlement Trust Agreement or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated in Allocation Protocol II by reference.

**2.2  "Perpetrator of Debtor:"** means a person: (1) who was a Priest, Brother, employee or other agent of the Debtor at the time such person committed an act of Abuse; or (2) for whom or for whose actions the Debtor was responsible.

2.3  **"Sexual abuse" or "sexually abused"** shall have the meaning described in Section 1.1 of the Plan.

## III.  Purpose

**3.1  Purpose**:

The purpose of Allocation Protocol II is to provide for the just, fair and rational distribution of settlement funds to Abuse Claimants.

**3.2  Sole and Exclusive Method.**

Allocation Protocol II shall be the sole and exclusive method by which the holder of a Abuse Claim who is a member of Allocation Protocol II may seek distribution on account of such Claim.

**3.3  Interpretation.**

The terms of the Plan shall prevail if there is any discrepancy between the terms of the Plan and the terms of this Allocation Protocol.

ALLOCATION PLAN II - 1

### 3.4 Publication of Members of Allocation Protocol II.

Upon written request from any Abuse Claimant within Allocation Protocol II, the ACR shall provide a list of all Abuse Claimants by Proof of Claim number who are members of Allocation Protocol II.

## IV. Procedure for Allocation Protocol II

### 4.1 Monetary Distribution on Account of Abuse Tort Claim.

The ACR shall evaluate each claim within Allocation Protocol II and shall determine the number of points, if any, that should be credited to the Abuse Claimant under the guidelines set forth in section 4.4 below.

### 4.2 Proof of Abuse.

Available documentary information to be presented by the Abuse Claimant to the ACR shall be provided within 30 days of a written request from the ACR; provided that, the ACR may grant extensions of time for good cause shown.

The ACR shall consider all of the facts and evidence presented by the Abuse Claimant. However, it is recognized that many Abuse Claimants may not have such documents as medical or counseling records. The ACR shall not distinguish between documentary evidence and oral testimony in terms of its weight or value in making her findings. One is not necessarily more or less valuable than the other. The presence or absence of such documents shall not, alone, advantage or disadvantage the Abuse Claimant if the information presented is otherwise reliable and credible.

Each Abuse Claimant will have the opportunity for an interview by the ACR or her designated assistant(s); provided that, any Abuse Claimant may opt out of the interview by written notice at any time before the interview. Upon written request to the Abuse Claimant by the ACR, the interview shall occur within 30 days unless the ACR determines there is good cause for delay. If the Abuse Claimant opts out of an interview or otherwise does not appear for a scheduled interview, the ACR shall submit to the Abuse Claimant a standard form questionnaire and the Abuse Claimant shall return the questionnaire to the ACR within 30 days of mailing. Failure to timely return a questionnaire shall be grounds for denial of the Abuse Claim at the discretion of the ACR. The interview may be accomplished in person, by telephone, by internet teleconferencing or other means approved by the ACR; however, the interviews will be conducted in person when the ACR or her designated interviewer determines it is reasonably possible to do so. The ACR shall otherwise have discretion to determine where, how and when the interviews will take place.

### 4.3 Information from Abuse Claimant and/or Other Parties.

Any Abuse Claimant who is a member of Allocation Protocol II shall have the right to provide additional information to the ACR relative to the allowance or valuation of any other Abuse Claim that has been filed within Allocation Protocol II.

ALLOCATION PLAN II - 2

Exhibit _1 - 10_
Page _2_ of _7_   DOCS_LA:231078.3

**4.4   Deceased Abuse Claimant**

Abuse Claimant shall include the estate of the Deceased Abuse Client, or the personal executor, or personal representative of the estate of a Deceased Abuse Claimant.

**4.5   Guidelines for Use of Protocol / Monetary Distribution.**

   **a.   Initial Evaluation.**

An Abuse Claimant shall not receive more than one monetary distribution. Before determining a final award to be assigned to a particular claim, the ACR shall consider the degree to which the Abuse Claimant has proven by a preponderance of the evidence that the sexual abuse was perpetrated by a Perpetrator of Debtor. In certain circumstances, the responsibility of the Debtor for a perpetrator may be limited, shared, or non-existent. For example, the perpetrator may not be employed by, working under the supervision of, or be acting within the reasonable scope of responsibility of the Debtor. When this is the situation the ACR should consider the responsibility for the perpetrator of (1) the Debtor and (2) any other persons or entities who are not a Perpetrator of Debtor. Such responsibility of the Debtor may be comparatively reduced by the responsibility of these other persons or entities.

The ACR shall, in the ACR's sole discretion, adjust, reduce or eliminate the total award assigned to the Claim accordingly.

The ACR should consider the coherence, credibility and consistency of the Abuse Claimant's accounts of the abuse and should consider any and all evidence that may enhance or diminish the over-all reliability of such claims.

In evaluating the claims, The ACR will disregard any considerations related to the statute of limitations with respect to sexual abuse claims.

   **b.   Nature, severity, and impact of the sexual abuse.**

Each Abuse Claimant will be evaluated by the ACR.. Each claimant interviewed will be scored according to the following system. If a claimant opts out of an interview, the ACR will attempt to allocate points according to the same factors with what information is presented that she deems reliable and probative. Scores are based on the interviewer/ACR completing a summary sheet of information obtained in the interview, a questionnaire in lieu of interview, from counsel, or other means.

The summary sheet summarizes data in the following dimensions, which are illustrative only:

**Pre-existing Risk and Resiliency Factors:**             **MAXIMUM 20 POINTS**

ALLOCATION PLAN II - 3

Exhibit *1-10*
Page *3* of *7*
DOCS_LA:231078.3

I.    **Risk Factors.**  Risk factors are aspects of life known to negatively impact life and to exacerbate the negative impact of experience such as sexual abuse.

    a.  Childhood of poverty

    b.  Parental divorce

    c.  Exposure to substance abuse in home

    d.  Ever living without a parent

    e.  Being the victim of or witnessing DV or physical child abuse

    f.  Age at the time of abuse (though evidence is contradictory on impact so ACR must judge in context of other factors.)

II.   **Resilience Factors.**  Resiliency factors are aspects of life that are known to buffer or reduce the negative impact of events such as sexual abuse.  These factors should be assessed to modify downward the total points given in this Section.

    a.  Spiritual/faith as a child

    b.  Academic success

    c.  Close friend

    d.  Athletic

    e.  Close relationship with adult family member, non-related adult.

**Nature of the sexual abuse:**                          **MAXIMUM 40 POINTS**

III.  **Nature of the sexual abuse:**

    a.  Duration

    b.  Frequency

    c.  Degree intrusive into child's body (clothed/unclothed, oral, anal, vaginal)

    d.  Level of force/violence/coercion/threats

    e.  Child/family was Catholic

    f.  Control of environment (e.g. boarding school)

**ALLOCATION PLAN II - 4**

g. More than one perpetrator

h. Physical pain suffered

**Post Abuse Functioning to Age 18:**                     **MAXIMUM 15 POINTS**

IV.    **Post abuse functioning (to age 18)**

    a. School behavior problems

    b. School academic problems

    c. Getting into legal trouble

    d. Loss of faith

    e. Damage to family relationships

    f. Mental health symptoms

        i. Depression

        ii. Suicide Attempt

        iii. Anxiety

        iv. Substance abuse

        v. Sexual acting out

        vi. Runaway

        vii. Flashbacks

        viii. Nightmares

**Long Term Impact:**                     **MAXIMUM 15 POINTS**

V.    **Adult & current functioning**

    a. Symptoms – see above list

    b. Criminal record

    c. Underemployment

    d. Relationship problems

**ALLOCATION PLAN II - 5**

Exhibit _1-10_
Page_____5_____ of ___7___
CROCK_IA:231078.3

e.   Substance abuse

## Assessment of Global Severity of Impact/Suffering:        MAXIMUM 14 POINTS

**ACR to rate global severity of impact/suffering:** Compared to other Abuse Claimants in Allocation Protocol II, the ACR will consider how much this individual suffered as a result of the sexual abuse.

    a.   Compared to other Abuse Claimants in Allocation Protocol II, the ACR will consider the overall seriousness of the sexual abuse.
    b.   Compared to other Abuse Claimants in Allocation Protocol II, the ACR will consider the overall negative impact of the abuse.

## Monetary Distribution:

The ACR will arrive at a point total for each Abuse Claimant taking into account the above factors and applying any reductions that the ACR determines are necessary pursuant to Section 4.4 (a) above. This will result in an Abuse Claimant being put into one of 14 tiers shown below, which will correlate with monetary shares of the total amount of funds available.

| Points | Shares |
|--------|--------|
| 97-104 | 100 |
| 89-96 | 87 |
| 81-88 | 75 |
| 73-80 | 64 |
| 65-72 | 54 |
| 57-64 | 45 |
| 49-56 | 37 |
| 41-48 | 30 |
| 33-40 | 24 |
| 25-32 | 19 |
| 17-24 | 15 |
| 9-16 | 12 |
| 1-8 | 10 |
| 0 | 0 |

The value of an individual "share" will be determined after all Abuse Claimants have been evaluated and placed into one of the 14 tiers based on total points. The share value will be determined by dividing the total amount of dollars in the Allocation Protocol II settlement fund by the total number of shares among all of the individual Abuse Claimants. By way of example, if there are 200 claimants awarded a total of 10,000 shares, with a total Allocation Protocol II settlement fund of $50 million, each share would be valued at $5,000.

**4.5     Determinations by the ACR and Requests for Reconsideration and Appeal.**

ALLOCATION PLAN II - 6

Exhibit *1-10*
Page *6 of 7*
DOCS_LA:231078.3

The ACR shall notify the Abuse Claimant in writing of the monetary distribution with respect to the Abuse Claimant's Claim. The Settlement Trustee or ACR shall mail this determination to the Abuse Claimant. The ACR's determination shall be final unless the Abuse Claimant makes a timely request for the monetary distribution to be reconsidered by the ACR. The Abuse Claimant shall not have a right to any other appeal of the ACR's monetary distribution. The Abuse Claimant may request reconsideration of the ACR's monetary distribution by delivering a written request for reconsideration to the ACR within 14 calendar days after the date of mailing of the monetary distribution. The Abuse Claimant, with the request for reconsideration, may submit additional evidence and argument in support of such request. The ACR shall have sole discretion to determine how to proceed with the request for reconsideration. The ACR's determination of such request for reconsideration shall be final and not subject to any further appeal.

### 4.6     Confidentiality.

All information that the Settlement Trustee and/or the ACR receives from any source about any Abuse Claimant shall be held strictly confidential and shall not be disclosed absent an Order of the bankruptcy court.

## V.     General Guidelines

### 5.1     Non-Compensatory Damages and Other Theories of Liability.

In determining the value of any Abuse Claim, punitive damages and damages that do not compensate the tort claimant shall not be considered or allowed, even if these damages could have been allowed in a case or at trial.

### 5.2     Withdrawal of Claims.

An Abuse Claimant can irrevocably withdraw an Abuse Claim at any time upon written notice to the ACR.

### 5.3     Res Judicata Effect.

The ACR's determination with respect to an Abuse Claim shall have no preclusive or res judicata effect outside of this Bankruptcy Case as to any third party. That is, the ACR's determination may not be used against any Abuse Claimant in any other case.

Exhibit _I-10_
Page _7_ of _7_
DOCS_LA:231078.3

# ALLOCATION PLAN III

Allocation Protocol III applies to those Settling Tort Claimants that suffered physical abuse or were physically abused by a perpetrator of debtor as set forth in Section 2.2 below but who did not suffer sexual abuse or were sexually abused as described in Section 1.136 of the Plan.

Although persons suffering physical abuse may have suffered physical, psychological and emotional injuries at the time of the physical abuse and physical, psychological and emotional injuries may have continued to be symptomatic to present, it has to be recognized, from a legal standpoint, that the Statutes of Limitation in Washington (RCW 4.16.100), Montana (MTA 27-2-204), Idaho (IC 5-219), Alaska (AS 9.10.070) and Oregon (ORS 12.110), limit actions for assault and battery and related intentional torts to two years. There are tolling provisions in each state which would toll the Statute of Limitations under certain circumstances and other legal theories such as fraudulent concealment and equitable estoppel that could impact the application of the Statute of Limitations but, the fact remains, physical abuse claims are vulnerable to a Statute of Limitations defense. In order to avoid objections to physical abuse claims being filed in this proceeding based on the Statute of Limitations, and to negotiate a settlement that would allow physical abuse survivors to participate in this settlement, this Allocation Protocol III allows for the creation of a pool consisting of survivors that have physical abuse claims and who did not suffer sexual abuse or were sexually abused as described in Section 1.136 of the Plan. The physical abuse survivors pool shall be administered as set forth herein.

## I. Tort Claims Reviewer

Attorney Kate Pflaumer shall have the title and responsibility of "Tort Claims Reviewer" (hereinafter "TCR") under the terms of Allocation Protocol III. The TCR shall conduct a review of each of the tort claims within Allocation Protocol III and make individual monetary distributions according to the guidelines set forth in Section 4.4 below. The TCR shall have the authority to employ qualified assistants and consultants as she deems appropriate. The TCR's award as to each claimant shall be the final award, subject only to reconsideration as set forth in Section 4.5 below.

## II. Definitions

### 2.1    Capitalized Terms.

Capitalized terms used in Allocation Protocol II shall have the meanings given them in the Plan, the Settlement Trust Agreement or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated in Allocation Protocol III by reference.

### 2.2    "Perpetrator of Debtor:" means a person: (1) who was a Priest, Brother, employee or other agent of the Debtor at the time such person committed an act of Abuse; or (2)

Exhibit _1.11_
Page _1_ of Page _16_

for who or for whose actions the Debtor was responsible. In this regard, it is understood that the perpetrator would either be a member of the Society of Jesus, Oregon Province, or a Priest, Nun, Brother, Deacon, other religious, or a lay individual for whom the Society of Jesus, Oregon Province, could reasonably be held liable for the abuse to the tort claimant.

    **2.3**     **Physical Abuse or Physically Abused** shall have the meaning described in Section 1.102(a) of the Plan.

## III. Purpose

    **3.1**     **Purpose:**

    The purpose of the Allocation Protocol III is to provide a remedy for tort claimants suffering physical abuse or were physically abused by a perpetrator of Debtor but who did not suffer sexual abuse or were sexually abused, for the just, fair and rational distribution of settlement funds to Settling Tort Claimants.

    **3.2**     **Sole and Exclusive Method.**

    Allocation Protocol III shall be the sole and exclusive method by which the holder of a Settling Tort Claim alleging solely physical abuse may seek distribution on account of such Claim.

    **3.3**     **Interpretation.**

    The terms of the Plan shall prevail if there is any discrepancy between the terms of the Plan and the terms of this Allocation Protocol.

    **3.4**     **Publication of Members of Allocation Protocol III.**

    Upon written request from any Settling Tort Claimant within Allocation Protocol III, the TCR shall provide a list of all Settling Tort Claimants by Proof of Claim number who are members of Allocation Protocol III.

## IV. Procedure for Allocation Protocol III.

    **4.1**     **Monetary Distribution on Account of Settling Tort Claim.**

    As stated herein, the TCR shall evaluate each claim within Allocation Protocol III and shall make an award to the Settling Tort Claimant between $0.00 and $17,500.00 under the guidelines set forth in Section 4.4 below.

ALLOCATION PLAN III - 2

### 4.2    Proof of Abuse.

Available documentary information to be presented by the Settling Tort Claimant to the TCR shall be provided within 30 days of a written request from the TCR; provided that, the TCR may grant extensions of time for good cause shown.

The TCR shall consider all of the facts and evidence presented by the Settling Tort Claimant. However, it is recognized that many Settling Tort Claimants may not have such documents as medical or counseling records. The TCR shall not distinguish between documentary evidence and oral testimony in terms of its weight or value in making the TCR's findings. One is not necessarily more or less valuable than the other. The presence or absence of such documents shall not, alone, advantage or disadvantage the Settling Tort Claimant if the information presented is otherwise reliable and credible.

Each Settling Tort Claimant will have the opportunity for an interview by the TCR or a designated assistant(s); provided that, any Settling Tort Claimant may opt out of the interview by written notice at any time before the interview. Upon written request to the Settling Tort Claimant by the TCR, the interview shall occur within 30 days unless the TCR determines there is good cause for delay. If the Settling Tort Claimant opts out of an interview or otherwise does not appear for a scheduled interview, the TCR shall submit to the Settling Tort Claimant a standard form questionnaire and the Settling Tort Claimant shall return the questionnaire to the TCR within 30 days of mailing. Failure to timely return a questionnaire shall be grounds for denial fo the Settling Tort Claim at the discretion of the TCR. The interview may be accomplished in person, by telephone, by internet teleconferencing or other means approved by the TCR; however, the interviews will be conducted in person when the TCR or a designated interviewer determines it is reasonably possible to do so. The TCR shall otherwise have discretion to determine where, how and when the interviews will take place.

### 4.3    Information from Settling Tort Claimant and/or Other Parties.

Any Settling Tort Claimant who is a member of Allocation Protocol III shall have the right to provide additional information to the TCR relative to the allowance or valuation of any other Settling Tort Claim that has been filed within Allocation Protocol III.

### 4.4    Guidelines for Use of Protocol / Monetary Distribution.

#### a.    Initial Evaluation.

The TCR should consider the coherence, credibility and consistency fo the Settling Tort Claimant's accounts of the abuse and should consider any and all evidence that may enhance or diminish the over-all reliability of such claims.

In evaluating the claims, the TCR will disregard any considerations related to the Statute of Limitations with respect to physical abuse claims.

#### b.    Nature, severity, and impact of the physical abuse.

ALLOCATION PROTOCOL III - 3

Exhibit ___1.11___
Page __3__ of Page __6__

Each Settling Tort Claimant will be evaluated by the TCR. Each claimant interviewed will be evaluated according to the following system. If a claimant opts out of an interview, the TCR will attempt to evaluate the victim's claim according to the same factors with what information is presented that the TCR deems reliable and probative. The interviewing TCR will complete a summary sheet of information obtained in the interview, a questionnaire in lieu of interview, from counsel, or other means.

The summary sheet summarizes data in the following dimensions, which are illustrative only:

**Nature of physical abuse:**

**I.     Nature of physical abuse:**
   a.     Description of the physical abuse
   b.     Duration of the physical abuse
   c.     Frequency of the physical abuse suffered
   d.     How was the physical abuse administered, i.e., hands, fist, objects used to inflict physical abuse
   e.     Age when physical abuse administered
   f.     Location where physical abuse occurred
   g.     How many perpetrators inflicted physical abuse
   h.     Describe physical pain suffered

**II.    How the physical abuse affected the victim.**

   a.     Physical symptoms at the time of the physical abuse and any residual physical symptoms the victim has as a result of the physical abuse suffered
   b.     School behavior problems
   c.     School academic problems
   d.     Getting into legal trouble
   e.     Loss of faith
   f.     Mental health symptoms
         I.      Depression
         ii.     Suicide attempt
         iii.    Anxiety
         iv.     Substance abuse
         v.      Runaway
         vi.     Flashbacks
         vii.    Nightmares

**Monetary Distribution:**

ALLOCATION PLAN III - 4

The TCR will evaluate each Settling Tort Claimant taking into account the above factors and applying any reductions that the TCR determines are necessary pursuant to Section 4.4 above. The TCR shall have the authority to award a physical abuse claimant an amount of money between $0.00 and $17,500.00.

### 4.5 Determination by the TCR and Requests for Reconsideration and Appeal.

The TCR shall notify the Settling Tort Claimant in writing of the monetary distribution with respect to the Settling Tort Claimant's Claim. The Settlement Trustee or TCR shall mail this determination to the Settling Tort Claimant. The TCR's determination shall be final unless the Settling Tort Claimant makes a timely request for the monetary distribution to be reconsidered by the TCR. The Settling Tort Claimant shall not have a right to any other appeal of the TCR's monetary distribution. The Settling Tort Claimant may request reconsideration of the TCR's monetary distribution by delivering a written request for reconsideration to the TCR within 14 calendar days after the date of mailing of the monetary distribution. The Settling Tort Claimant, with the request for reconsideration, may submit additional evidence and argument in support of such request. The TCR shall have sole discretion to determine how to proceed with the request for reconsideration. The TCR's determination of such request for reconsideration shall be final and not subject to any further appeal.

### 4.6 Confidentiality.

All information that the Settlement Trustee and/or the TCR receives from any source about any Settling Tort Claimant shall be held strictly confidential and shall not be disclosed absent an Order of the Bankruptcy Court.

## V. General Guidelines.

### 5.1 Non-Compensatory Damages and Other Theories of Liability.

In determining the value of any Settling Tort Claim, punitive damages and damages that do not compensate the tort claimant shall not be considered or allowed, even if these damages could have been allowed in a case or at trial.

### 5.2 Withdrawal of Claims.

A Settlement Tort Claimant can irrevocably withdraw a Settling Tort Claim at any time upon written notice to the TCR.

ALLOCATION PROTOCOL III - 5

### 5.3    Res Judicata Effect.

The TCR's determination with respect to a Settling Tort Claim shall have no preclusive or res judicata effect outside of this Bankruptcy Case as to any third party. That is, the TCR's determination may not be used against any Settling Tort Claimant in any other case.

ALLOCATION PLAN III - 6

Exhibit _____ 1.1
Page_____ 6 of Page 6

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

EXHIBIT 1.105

PARTICIPATING PARTIES


Pioneer Educational Society

Montana Catholic Missions

Society of Jesus, Alaska

Jesuit Novitiate of Sheridan

All Jesuit Communities Within the Province Territory*

The Arcas

The Trustees of the Arcas, in their capacity as such

Jesuit Community of Gonzaga University, Inc.

Loyola Retreat Association, S.J., Inc. dba the Jesuit Spirituality Center

The Oregon Province of the Society of Jesus*

Mount St. Michael's Seminary of Philosophy and Science

Rocky Mountain Mission/Northwest

Nestucca Sanctuary, Inc.


* To the extent the Province or a Jesuit Community is a civil entity separate from the Debtor it is a Participating Party. In the event the Province or a Jesuit Community is not a civil entity separate from the Debtor, it is part of the Debtor and will receive all the benefits afforded the Debtor under the Plan.

Exhibit 1.105
Page 1 of 1

## SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

This Settlement Agreement, Release, and Policy Buyback ("Agreement") is hereby made between and among the Society of Jesus, Oregon Province (the "SJOP" as defined herein) and the Other Releasing Parties (as defined herein), on the one hand; and American States Insurance Company, General Insurance Company of America, and Safeco Insurance Company of America ("Safeco" as defined herein) and the Safeco Released Parties (as defined herein), on the other hand.

### RECITALS

WHEREAS, numerous individuals have asserted claims against the SJOP and certain Other Releasing Parties for injuries allegedly suffered due to sexual abuse by priests and other individuals allegedly negligently hired, supervised, or maintained by the SJOP (the "Tort Claims" as defined herein); and

WHEREAS, Safeco issued or allegedly issued certain insurance policies to or for the benefit of the SJOP and/or the Other Releasing Parties (the "Policies" as defined herein); and

WHEREAS, certain disputes between the SJOP and Safeco have arisen and would be likely to arise in the future concerning Safeco's position regarding the nature and scope of its responsibilities, if any, to provide coverage to the SJOP and/or any of the Other Releasing Parties under the Policies for the Tort Claims, including, without limitation, the sufficiency of the evidence of the existence and terms of the Policies; whether policy terms or exclusions provide or preclude coverage for the Tort Claims; whether the SJOP has complied with certain conditions precedent to coverage contained in the Policies; whether settlements made by the SJOP or to be made by the SJOP are reasonable; and whether and to what extent the costs incurred in connection with the Tort Claims are allocable to the Policies (the "Coverage Disputes" as defined herein); and

WHEREAS, the SJOP filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (as herein defined) on February 17, 2009 (the "Petition Date" as defined herein), in the United States Bankruptcy Court for the District of Oregon (the "Reorganization Case" as defined herein); and

WHEREAS, Safeco filed an adversary proceeding against the SJOP on October 23, 2009, in the United States Bankruptcy Court for the District of Oregon (the "Adversary Coverage Proceeding" as defined herein); and

WHEREAS, on February 23, 2010, the Official Committee of Unsecured Creditors filed a Motion for Authority to Commence, Prosecute and Settle Litigation on Behalf of Bankruptcy Estate Against Safeco in the Reorganization Case [Doc 660], which Motion Safeco and SJOP opposed by filing written opposition papers; and

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B                                    Exhibit A

Exhibit 1.130
Page 1 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

WHEREAS, the SJOP, Safeco, the Other Releasing Parties, and the Safeco Released Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish fully and finally to compromise and resolve any and all Coverage Disputes and any and all other disputes between them; and

WHEREAS, through this Agreement, the SJOP and the Other Releasing Parties intend to provide Safeco with the broadest possible buyback and release with respect to the Policies and to provide that Safeco shall have no further obligations now or in the future with respect to the Policies; and

WHEREAS, as part of the compromise and resolution of such disputes, the Parties, the Other Releasing Parties, and the Safeco Released Parties wish to effect a sale of the Policies pursuant to Section 363 of the Bankruptcy Code; and

WHEREAS, each Party has received the advice of counsel in the preparation, drafting, and execution of this Agreement, which was negotiated at arm's length;

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the Bankruptcy Court, the Parties, the Other Releasing Parties, and the Safeco Released Parties hereby agree as follows:

1.     **DEFINITIONS AND CONSTRUCTION**

    1.1    As used in this Agreement, the following terms shall have the meanings set forth below. Terms not defined below shall have any meanings given to them in the Bankruptcy Code.

        1.1.1    "Adversary Coverage Proceeding" means the lawsuit Safeco filed against the SJOP on October 23, 2009, in the United States Bankruptcy Court for the District of Oregon, Adv. Proc. No. 09-3351-elp.

        1.1.2    "Approval Motion" means the motion seeking entry of the Approval Order.

        1.1.3    "Approval Order" means a Final Order in substantially the form attached hereto as Exhibit 1, with only such modifications as are acceptable both to Safeco and the SJOP in each party's respective sole discretion, entered by the Bankruptcy Court under Bankruptcy Code Sections 363 and 105 and Bankruptcy Rule 9019 and/or under such other provisions as the Bankruptcy Court may order, approving this Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Agreement.

SETTLEMENT AGREEMENT,          Page 2 of 26        In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                      D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit _1.130_ Exhibit B              Exhibit A
Page _2_ of _38_

1.1.4  "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.1.5  "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Oregon and any other court in which the Reorganization Case may be pending or which has jurisdiction over the Reorganization Case.

1.1.6  "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure.

1.1.7  "<u>Claim</u>" means any past, present or future claim, demand, action, requests, cause of action, suit or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any claim within the definition of Section 101(5) of the Bankruptcy Code.

1.1.8  "<u>Conditional Payment</u>" means any payment made pursuant to Section 1395y(b)(2)(B) of the MSPA (Medicare Secondary Payer Act, as defined in § 1.1.16 of this Agreement).

1.1.9  "<u>Coverage Disputes</u>" means those disputes between the SJOP and Safeco that have arisen or may arise in the future concerning Safeco's position regarding the nature and scope of Safeco's responsibilities, if any, to provide coverage to the SJOP and/or any of the Other Releasing Parties under the Policies for Claims.

1.1.10  "<u>Effective Date</u>" means the date on which this Agreement becomes effective, which shall be the day upon which the Approval Order entered by the Bankruptcy Court has become a Final Order, which shall be after each of the Parties has executed this Agreement and delivered evidence of that execution, through delivery of an executed signature page, to the other Party.

1.1.11  "<u>Extra-Contractual Claim</u>" means any Claim against Safeco, seeking any type of relief, including compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs, or any other type of relief, on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 3 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B                         Exhibit A

Exhibit 1, 130
Page 3 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

omission of the insurer of any type for which the claimant seeks relief other than coverage or benefits under a Policy. Extra-Contractual Claims include without limitation: (i) any Claim arising out of or relating to Safeco's handling of any request for insurance coverage relating to the Policies for any Claim, including, without limitation, any Tort Claim; and (ii) the conduct of the Parties with respect to the negotiation of this Agreement. However, this limitation shall not include fraud in the inducement of this Agreement.

1.1.12 "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal or review has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the SJOP and Safeco have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Agreement.

1.1.13 "Insurance Coverage Claim" means any Claim for insurance coverage under the Policies.

1.1.14 "Interests" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief relating to the Policies.

1.1.15 "Medicare Beneficiary" means a Tort Claimant who is eligible to, is receiving, or has received Medicare benefits.

1.1.16 "MSPA" means Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 411.1 et seq.

1.1.17 "Other Releasing Parties" mean: (i) Montana Catholic Missions, S.J.; Mount St. Michael; Pioneer Educational Society (also sometimes referred to in the Policies as Pioneer Education Society or Pioneer Educational Society dba Bea House); Society of Jesus, Alaska; and Fr. Patrick J. Lee, S.J. on behalf of the Office of the Very Reverend Father Provincial of the SJOP; and (ii) any and all predecessors, successors, and assigns of the SJOP and any and all past and present employees, officers, directors, shareholders, principals, agents, attorneys, representatives, in their capacity as such, of the SJOP. In addition, it is the mutual understanding of SJOP and Safeco that the reference to "Society of Jesus" in the American States policies was and is intended to refer to the Society of Jesus, Oregon Province.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 4 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.1.30
Page 4 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1.1.18 "Parties" means the SJOP and Safeco, and "Party" means anyone of them.

1.1.19 "Person" means an individual, any corporation, including, without limitation, a corporation sole, a partnership, an association, a limited liability company, a proprietorship, joint venture, a trust, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

1.1.20 "Petition Date" means February 17, 2009, the date upon which the SJOP filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

1.1.21 "Plan Confirmation Order" means a Final Order that: (i) approves a plan of reorganization as to SJOP pursuant to Section 1129 and any other applicable provision of the Bankruptcy Code; (ii) contains an injunction pursuant to Section 105(a) of the Bankruptcy Code channeling all Tort Claims to the Trust; (iii) provides that this Agreement is binding on the Trust (i.e., contains a Supplemental Injunction in favor of Safeco); and (iv) provides all protections to Safeco and the Safeco Release Parties against Tort Claims that are afforded to settling insurers under the plan of reorganization.

1.1.22 "Policies" means all insurance policies, issued or allegedly issued, by Safeco and providing insurance coverage to the SJOP, and/or any Other Releasing Party, as identified on Exhibit 2 to this Agreement, and any and all unknown insurance policies issued or allegedly issued by Safeco to SJOP and/or any Other Releasing Party.

1.1.23 "Procedures Motion" means the motion seeking approval of the procedures for notice, service, and publication of the Approval Motion (as defined herein).

1.1.24 "Reorganization Case" means the Chapter 11 reorganization case filed February 17, 2009, by the SJOP in the United States Bankruptcy Court for the District of Oregon, *In re The Society of Jesus, Oregon Province,* Case No. 09-30938-elp11.

1.1.25 "Safeco" means American States Insurance Company, General Insurance Company of America, and Safeco Insurance Company of America, and each of their past and present subsidiaries, parents, and affiliates. "Safeco" also includes all future subsidiaries, parents, and affiliates of American States Insurance Company, General Insurance Company of America, and Safeco

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Exhibit B

Page 5 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit *1.13()*
Page *5* of *38*

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

Insurance Company of America, to the extent that their liability is derivative of Safeco's liabilities under the Policies.

1.1.26 "Safeco Released Parties" means Safeco, as defined above, and all employees, officers, directors, shareholders, principals, parents, agents, attorneys, and representatives, as well as the predecessors, successors, assignors, and assigns of each of the foregoing, in their capacity as such.

1.1.27 "Settlement Amount" means the payment to be made by Safeco pursuant to Section 2.1 of this Agreement.

1.1.28 "SJOP" means the Society of Jesus, Oregon Province, an Oregon non-profit religious corporation, and the Estate (pursuant to Section 541 of the Bankruptcy Code).

1.1.29 "Supplemental Injunction" means an injunction pursuant to Sections 105(a) and 363 of the Bankruptcy Code, barring and permanently enjoining any and all Persons and entities who now hold or who may in the future hold any Claims or Interests of any kind or nature (including, without limitation, all debt holders, all equity holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, Tort Claim holders, other insurers, and all others holding Claims or Interests of any kind or nature whatsoever) against SJOP, Other Releasing Parties, Safeco, Safeco Released Parties, or the Safeco Policies, relating to or in connection with the Safeco Policies or Tort Claims, from or against asserting any such Claim or Interests against Safeco, Safeco Released Parties, and/or the Policies.

1.1.30 "Tort Claim" means any Claim against the SJOP and/or Other Releasing Parties resulting, in whole or in part, from alleged sexual molestation or abuse or conduct of a sexual nature or corporal abuse and seeking monetary damages or other relief, and any Claims against Safeco for contribution, indemnity, defense, subrogation, or similar relief, including any Claim of any Person whose Interests are, have been, or may be represented by the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412], arising directly or indirectly from such Claims against SJOP and/or Other Releasing Parties.

1.1.31 "Tort Claimant" means any Person, including any Person whose Interests are, have been, or may be represented by the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412], asserting a Tort Claim.

1.1.32 "Trust" means the Trust, established pursuant to a plan of reorganization as to SJOP and confirmed by the Plan Confirmation Order, to

SETTLEMENT AGREEMENT,       Page 6 of 26      In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK           D. Or. Bankr. Docket No. 09-30938-elp11
Exhibit B
          Exhibit A

Exhibit  1130
Page  6  of  28

which all Tort Claims are channeled as the sole and exclusive source of payment of any claims against SJOP or Safeco.

1.2      The following rules of construction shall apply to this Agreement:

     1.2.1    Unless the context of this Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

     1.2.2    References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Agreement.

     1.2.3    The wording of this Agreement was reviewed by legal counsel for each of the Parties, or other signatories to this Agreement, and each of them had sufficient opportunities to propose and negotiate changes prior to its execution. None of the Parties, the Other Releasing Parties, or the Safeco Released Parties or other signatories to this Agreement will be entitled to have any wording of this Agreement construed against the other based on any contention as to which of the Parties drafted the language in question or which party is an insurer.

     1.2.4    The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, the Other Releasing Parties, and/or the Safeco Released Parties, as the case may be, shall not be construed to create a breach of this Agreement when the stated intent is not achieved. Notwithstanding the foregoing sentence, however, and for the avoidance of doubt, nothing in this Agreement, including in conjunction with or reliance on this Section 1.2.4, shall be construed as allowing SJOP or any Other Releasing Party to make any Claim against Safeco or any Safeco Released Party under the Policies should the intent of any Party to this Agreement fail or otherwise not be achieved. In exchange for payment of the Settlement Amount, the Parties, Other Releasing Parties, and Safeco Released Parties agree that all Claims against Safeco and the Safeco Released Parties are forever released and bought back as set forth in this Agreement.

2.      **PAYMENT OF SETTLEMENT AMOUNT**

2.1      Subject to all of the terms of this Agreement, in full and final settlement of all responsibilities under and arising out of the Policies, and in consideration of the sale of the Policies to Safeco free and clear of all Interests of any Person, and

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 7 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit A

Exhibit 6130
Page 7 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

expressly subject to fulfillment of all conditions to payment identified in Section 3 below, Safeco shall pay to the Trust the sum of One Hundred Eighteen Million Dollars ($118,000,000) (the "Settlement Amount") within fourteen (14) days after the Conditions Precedent to Safeco's Payment set forth in Section 3 of this Agreement have been fulfilled, provided that Safeco receives prior written notice of at least twenty one (21) days from the Trustee of the Trust that such conditions have been satisfied and direction as to transmission of the payment.

2.2  The Parties, the Other Releasing Parties, and the Safeco Released Parties expressly agree that it is intended: (i) that the Settlement Amount is the total amount Safeco and the Safeco Released Parties are obligated to pay on account of any and all Claims made under or relating to the Policies (including the Tort Claims and any reimbursement obligations for Conditional Payments under the MSPA) or with respect to Extra-Contractual Claims relating to the Policies; (ii) that under no circumstance will Safeco or the Safeco Released Parties ever be obligated to make any additional payments to anyone in connection with the Policies, including any amounts allegedly owed under the MSPA and for Extra-Contractual Claims; and (iii) that all limits of liability of the Policies, including all per person, per occurrence, and aggregate limits, shall be deemed fully and properly exhausted. The Parties, the Other Releasing Parties, and the Safeco Released Parties further agree that the Settlement Amount is the full purchase price of the Policies.

2.3  The Parties agree that the plan of reorganization as to the SJOP that is confirmed in the Plan Confirmation Order will provide that this Agreement is binding on the Trust and that before the Trustee of the Trust disburses any of the Settlement Amount to any Tort Claimant the Trustee shall determine whether any Conditional Payment has been made to or on behalf of any Tort Claimant. If any Conditional Payment has been made to or on behalf of any Tort Claimant, the Trustee shall, within the respective time period called for by the MSPA, (i) reimburse the appropriate Medicare Trust Fund for the appropriate amount, and (ii) submit the required information for any Tort Claimant to the appropriate agency of the United States government. To assist the Trustee, the Parties agree that the plan of reorganization as to SJOP shall provide as follows:

2.3.1  Before the Trustee will pay any portion of any Tort Claim to any Tort Claimant, that claimant must provide a third-party vendor, which vendor has been approved by the Official Committee of Unsecured Creditors or the Trustee ("Approved Vendor") or, if no Approved Vendor has been retained by or on behalf of an Tort Claimant, the Trustee, with his or her name, date of birth, Social Security Number or Health Insurance Claim Number (together, the "Personal Information"), a signed Social Security Release Form or a Medicare Release form, or both, when requested by the Approved Vendor or the Trustee,

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 8 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit A

Exhibit 1.130
Page 8 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

as the case may be, and any other information or documents reasonably required to comply with Sections 2.3.2, 2.3.3, and 2.3.4.

    2.3.2   Each Tort Claimant who claims that he or she is not a Medicare Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Social Security Administration to verify whether he or she is a Medicare Beneficiary. Before the Trustee will pay any portion of any Tort Claim to a Tort Claimant who claims that he or she is not a Medicare Beneficiary, the Tort Claimant will provide a letter from an Approved Vendor supported by documentation from the Social Security Administration, received within sixty (60) days prior to the Trustee making such payment or, if no Approved Vendor has been retained by or on behalf of a Tort Claimant, documentation from the Social Security Administration received within sixty (60) days prior to the Trustee making such payment, confirming that the Abuse Tort is not a Medicare Beneficiary. In the absence of such a confirming letter or documentation, each Tort Claimant will be presumed to be a Medicare Beneficiary.

    2.3.3   Each Medicare Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Centers for Medicare and Medicaid Services ("CMS"), the CMS Coordination of Benefits Contractor ("COBC"), and/or the Medicare Secondary Payer Recovery Contractor ("MSPRC") to determine the amount of each and every Conditional Payment, if any, subject to reimbursement by a "primary plan." Before the Trustee will pay any portion of any Tort Claim to a Medicare Beneficiary, such Medicare Beneficiary, must provide the Trustee with a letter from the MSPRC ("MSPRC Letter") received within sixty (60) days prior to the Trustee making such payment: (a) setting forth the Conditional Payment estimate made to or on behalf of the Medicare Beneficiary that is subject to reimbursement by a "primary plan," as the phrase is defined in Section 1395y(b)(2) of the MSPA; or (b) stating that no such Conditional Payment has been made to or on behalf of the Medicare Beneficiary. In the event that the MSPRC Letter sets forth a Conditional Payment estimate, no payment shall be made to such Medicare Beneficiary before the Trustee sets aside a reserve for the full amount of the Conditional Payment estimate, or pays a negotiated amount agreed to by the MSPRC and the Medicare Beneficiary. If the Trustee sets aside a reserve for the full amount of the Conditional Payment estimate, that reserved amount shall be withheld from the payment to the Medicare Beneficiary until the Conditional Payment estimate has been paid in full or a negotiated amount that has been agreed to by the MSPRC and the Medicare Beneficiary has been paid.

SETTLEMENT AGREEMENT,       Page 9 of 26       In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                      D. Or. Bankr. Docket No. 09-30938-elp11
Exhibit B                           Exhibit A

Exhibit 1.130
Page 9 of 38

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

2.3.4   The failure by one or more Medicare Beneficiaries or other Tort Claimants to comply with these provisions shall not delay or impair the payment by the Trustee to any other Medicare Beneficiary or other Tort Claimant complying with these provisions.

2.3.5   If the Tort Claimant is the estate of a Tort Claimant, then the letters or documentation required pursuant to Sections 2.3.2 and 2.3.3 need not be received by the Trustee within sixty (60) days of the date of payment by the Trustee to such claimant, provided that the date of death of the Tort Claimant is at least sixty (60) days prior to the date of such letters or documentation.

2.3.6   Notwithstanding any of the above, a Tort Claimant can elect to provide the Trustee with the documentation from the Social Security Administration required pursuant to section 2.3.2, or a Medicare Beneficiary can elect to provide the Trustee with the letter from MSPRC required pursuant to section 2.3.3, without retaining an Approved Vendor and without providing an Approved Vendor or the Trustee with his or her Personal Information, except to the extent that such information is disclosed in such documentation or letter.

3.   **CONDITIONS PRECEDENT TO SAFECO'S PAYMENT**

3.1   <u>Timing of Payment</u>.  Safeco's obligation to pay the Settlement Amount in Section 2.1 above is expressly conditioned on the SJOP having obtained both the Approval Order and the Plan Confirmation Order. Court deferral of entry of the Approval Order, in whole or in part, until entry of the Plan Confirmation Order is not a failure of this condition.

3.2   <u>Approval Order</u>.  Within fourteen (14) days after the SJOP and Safeco have executed this Agreement, the SJOP shall file the Procedures Motion.

3.2.1   Within five (5) days after the Court enters an order approving the Procedures Motion, SJOP shall file the Approval Motion. The Approval Motion shall seek entry of the Approval Order.

3.2.2   If any objections to the Approval Motion are filed with the Bankruptcy Court, the SJOP shall file a written response, in a form acceptable to Safeco, and shall take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order.  Safeco will cooperate with the SJOP, including making all appropriate submissions.

3.2.3   Written notice of the Approval Motion shall be provided to all known claimants (including all Tort Claimants and other claimants who have filed proofs of claim, all Tort Claimants scheduled by the SJOP, counsel for the Official

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 10 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit *1.130*
Page *10* of *38*

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

Committee of Unsecured Creditors, the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412]), all Persons who have filed notices of appearance in the Reorganization Case, all entities known to have provided general liability insurance to the SJOP, and the Other Releasing Parties. All claimants, including Tort Claimants, shall be served at the address shown on their proofs of claim or to their counsel of record (with a single notice to any counsel of record who represents multiple Tort Claimants constituting notice to all that counsel's clients who are Tort Claimants) or, if no proof of claim was filed, then at the address on SJOP's schedules. Counsel for each Tort Claimant shall also be served. Known Tort Claimants, to the extent of record, shall be served even if not scheduled or the subject of a proof of claim, to the extent known to SJOP. The General Curia of the Society of Jesus shall be given notice by international mail c/o Fr. Adolfo Nicholás at his official address in Rome, Italy, with a copy to its Portland-based counsel in the Reorganization Case. Any and all co-defendants and their counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants shall also be given notice at the last address shown on any filed appearance or, if such co-defendant is proceeding *pro se*, then to the last address of record for such *pro se* co-defendant. The notice of intent to seek entry of the Approval Order also shall be published, at Safeco's expense, twice in the *USA Today, Oregonian, Anchorage Daily News, Fairbanks Daily News-Miner, Seattle Times, Spokesman-Review, Missoulian,* and *Idaho Statesman,* in a form and at a time agreed to by the Parties or as ordered by the Bankruptcy Court.

3.3   Plan Confirmation Order. In conjunction with the Reorganization Case, the SJOP shall seek and obtain entry of a Plan Confirmation Order, which order must be in all respects consistent with this Agreement and contain no provisions that diminish or impair the benefit of this Agreement to Safeco. In so doing, SJOP's efforts shall include: (i) proposing a plan of reorganization and seeking a confirmation hearing on an appropriately timely basis; (ii) urging the Bankruptcy Court to overrule any objections and confirm a proposed plan; and (iii) taking all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of a Plan Confirmation Order. Prior to entry of a Plan Confirmation Order, the SJOP shall oppose any motion to lift any stay as to any Tort Claim. In the event the Bankruptcy Court lifts the stay as to any Tort Claim prior to the Plan Confirmation Order, the SJOP shall defend that Tort Claim to the extent that such Tort Claim would have been covered by a Policy, which indemnity and defense expenses shall be paid by Safeco and deducted from the Settlement Amount. The form and manner of notice of the hearing to confirm the plan of reorganization as to SJOP and the form and manner of notice of the hearing as to the adequacy of the disclosure statement pertaining thereto are subject to advance approval by Safeco, which approval cannot be unreasonably withheld. In the event the SJOP fails to defend that Tort

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 11 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit A

Exhibit 1.130
Page 11 of 38

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

Claim, then Safeco shall have the right, but not the duty, to defend and/or indemnify that Tort Claim pursuant to the terms and conditions of the applicable Policies and any such costs for defense or indemnity shall be deducted from the Settlement Amount. In such event, SJOP will cooperate with Safeco in the defense and/or indemnification of such Tort Claim, and Safeco agrees not to settle any such Tort Claim without the express consent of the Committee of Unsecured Creditors.

3.4     The Plan of Reorganization. The plan of reorganization as to the SJOP must be in all respects consistent with this Agreement and contain no provisions that diminish or impair its benefit to Safeco. Such plan of reorganization shall provide for damages, injunctive relief, attorneys' fees, costs, and expenses in favor of Safeco against the Trust in the event of a violation or breach of the undertaking in Section 2.3 of this Agreement.

4.      CONDITIONS TO AGREEMENT

4.1     This Agreement shall be subject to the following conditions: in the event (i) the Bankruptcy Court dismisses the Reorganization Case or converts it to a case under Chapter 7 of the Bankruptcy Code prior to the entry of a Plan Confirmation Order; or (ii) one or more of the conditions ("Dismissal Conditions") identified in Section 4.2 below occurs, then either the SJOP (subject to Court approval unless the Reorganization Case is dismissed) or Safeco may terminate this Agreement by prompt written notice to the other Party. Upon termination of this Agreement, the releases provided in Section 5 of this Agreement shall become null and void, and the SJOP or Safeco shall retain all of their rights and obligations with respect to the Policies, which shall be reinstated as if this Agreement had never been drafted or executed.

4.2     Dismissal Conditions for purposes of Section 4.1 of this Agreement are: (i) the failure of the SJOP, after a good faith effort, to obtain, by December 31, 2011, a Confirmation Order, provided, however, that this date shall be extended by up to one year at the request of either the SJOP or Safeco and may be extended further by the consent of both Parties and the Official Committee of Unsecured Creditors, which consent shall not be unreasonably withheld; or (ii) the agreement of Safeco and the SJOP that the SJOP should seek dismissal of the Reorganization Case.

5.      RELEASES AND SALE FREE AND CLEAR

5.1     From and after the Effective Date, neither the SJOP nor any Other Releasing Party shall commence against Safeco or the Safeco Released Parties any action, suit, or proceeding of any nature whatsoever with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance alleged in, arising

SETTLEMENT AGREEMENT,                    Page 12 of 26          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                       D. Or. Bankr. Docket No. 09-30938-elp11
Exhibit B
                                                    Exhibit A

Exhibit 1.130
Page 12 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

out of, connected with, or in any way relating to any Policy or Tort Claim, or Safeco's handling thereof, unless this Agreement is properly terminated pursuant to Section 4 above.

5.2 Subject to entry of the Approval Order and the Plan Confirmation Order as Final Orders, and the payment of the sum set forth in Section 2.1, and without any further action by the Parties, the SJOP and the Other Releasing Parties, on the one hand, and Safeco and the Safeco Released Parties, on the other hand, each hereby fully, finally, and completely remises, releases, acquits, and forever discharges, as of the Effective Date, the other, and each of them, from any and all past, present, or future Claims in connection with, relating to or arising out of, in any manner or fashion, the Policies, including Claims that are actual or alleged, known or unknown, accrued or unaccrued, suspected or unsuspected (including Tort Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims relating to, or arising out of the Reorganization Case), whether such Claims seek compensatory damages, punitive damages, exemplary damages, statutorily multiplied damages, attorneys' fees, interest, costs, or any other type of monetary or nonmonetary relief.

5.3 The SJOP, the Other Releasing Parties, Safeco, and the Safeco Released Parties agree that, as set forth in the Approval Order, Safeco hereby buys back the Safeco Policies free and clear of all liens, encumbrances, and other Interests (as set forth in the Approval Order) of any Person, including all rights and Interests of the SJOP; all Other Releasing Parties; and any other Person claiming by, through, or on behalf of the SJOP; any other insurer; any Tort Claimant; and the General Curia of the Society of Jesus. This sale is pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code. The Parties, Other Releasing Parties, and Safeco Released Parties acknowledge and agree that (i) Safeco is a good faith purchaser of the Safeco Policies within the meaning of Section 363(m) of the Bankruptcy Code and (ii) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Safeco Policies and constitutes reasonably equivalent value. The Parties, Other Releasing Parties, and Safeco Released Parties agree (as set forth in the Approval Order) that the releases in this Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws. The Parties, Other Releasing Parties, and Safeco Released Parties agree (as set forth in the Approval Order) that, upon the payment of the Settlement Amount by Safeco, the Policies shall be terminated and of no further force and effect. The Parties, Other Releasing Parties, and Safeco Released Parties further agree that Safeco's payment of the Settlement Amount constitutes Safeco's full and complete performance of any and all obligations under the Policies owed to any of the Other Releasing Parties and exhausts all limits of liability of the Policies.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 13 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1/130
Page 13 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

The Parties, Other Releasing Parties, and Safeco Released Parties agree that all rights, title, or interest the SJOP or Other Releasing Parties may have had, may presently have, or in the future may have in the Policies are released pursuant to the terms of this Agreement. The Parties, Other Releasing Parties, and Safeco Released Parties further agree that the SJOP accepts the Settlement Amount in full and complete satisfaction of all Safeco's past, present, and future obligations to the SJOP and the Other Releasing Parties, or any of them, under the Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such claims are in any way related to, connected with, based on, or arise out of the Tort Claims, the Reorganization Case, or otherwise under the Policies.

5.4    If, contrary to the specific intent of the Parties, Other Releasing Parties, and Safeco Released Parties, any Claims released pursuant to Section 5.2, including any Insurance Coverage Claim, are deemed to survive this Agreement, even though they are encompassed by the terms of the release set forth in this Section 5 of this Agreement, the Parties, Other Releasing Parties, and Safeco Released Parties hereby forever, expressly, and irrevocably waive entitlement to and agree not to assert any and all such Claims. If, contrary to the specific intent of the Parties, Other Releasing Parties, and Safeco Released Parties, CMS makes a claim against Safeco, such claim or its resolution shall not be deemed a breach of this Agreement.

5.5    The releases set forth in this Section 5, as well as all other provisions in this Agreement, are not intended to apply to or have any effect on Safeco's right to reinsurance recoveries under and reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Policies.

5.6    Nothing in this Section 5 is intended to, nor shall be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Agreement.

6.    **REPRESENTATIONS AND WARRANTIES OF THE PARTIES**

6.1    Each of the Parties, the Other Releasing Parties, and the Safeco Released Parties separately represents and warrants as follows:

6.1.1    To the extent it is a corporation, including a non-profit corporation, or other legal entity, it has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to approval of the Bankruptcy Court;

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 14 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.130
Page 14 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

6.1.2    Subject to entry of the Approval Order and Plan Confirmation Order as Final Orders, the execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of the Parties, the Other Releasing Parties, and the Safeco Released Parties and by all other necessary actions of the Parties, Other Releasing Parties, and Safeco Released Parties; and

6.1.3    This Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and has been executed and delivered in good faith, pursuant to arm's length negotiations and for value and valuable consideration.

6.2    Each of the Parties, Other Releasing Parties, and Safeco Released Parties has conducted and completed a thorough and good faith search for any policy of insurance that might exist, or other evidence of any such policy of insurance, under which Safeco was or might be an insurer of SJOP or of any Other Releasing Party for any Tort Claim.  Other than the Policies, no other policies of insurance have been located.

6.3    The person(s) executing this Agreement on behalf of each Other Releasing Party or Safeco Released Party represents and warrants that he/she has received authority from such Other Releasing Party or Safeco Released Party, as the case may be, to execute this Agreement on its behalf and to provide the releases identified in Section 5 above on behalf of such Other Releasing Party or Safeco Released Party.

6.4    Subject to the provisions of Sections 2.3.1 through 2.3.6, the SJOP agrees that the Trust and any plan of reorganization as to SJOP shall provide that the Settlement Amount shall be used solely for payment of indemnity and expenses relating to reimbursing the United States government for reimbursement obligations for Conditional Payments made pursuant to the MSPA applicable to any given Medicare Beneficiary and, after satisfaction thereof, to such Medicare Beneficiaries, Tort Claimants and the attorneys for Tort Claimants.

7.    ACTIONS INVOLVING THIRD PARTIES

7.1    For purposes of supporting the release granted in Section 5 and the extinguishment of any and all rights under the Policies resulting from the purchase and sale thereof contemplated by this Agreement, the SJOP and each Other Releasing Party hereby agrees as follows:

7.1.1    In the event that any other insurer of the SJOP or Other Releasing Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Safeco as a result of a claim for contribution, subrogation, indemnification, or other similar claim against Safeco

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 15 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.13(
Page 15 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

for Safeco's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of Safeco for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Agreement, the SJOP or Other Releasing Party(ies), as applicable, shall voluntarily reduce its judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to effectuate such contribution, subrogation, indemnification, or other claims against Safeco. To ensure that such a reduction is accomplished, Safeco shall be entitled to assert this Section as a defense to any action against Safeco brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Safeco and the Safeco Released Parties from any liability for the judgment or Claim. Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against Safeco, such Claim may be asserted as a defense against the Trust (under a plan of reorganization as to SJOP contemplated by the Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of Safeco in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or SJOP) shall be reduced dollar for dollar by the amount so determined.

7.2     Safeco shall not seek reimbursement for any payments it is obligated to make under this Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other insurer of the SJOP unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from Safeco. The SJOP shall use its reasonable best efforts to obtain from all insurers with which it settles agreements similar to those contained in this Section 7; provided, however, that the failure of the SJOP, despite its reasonable best efforts, to obtain such an agreement from any insurer with which it settles will not be a basis to terminate this Agreement or excuse Safeco from performing its obligations hereunder, including, without limitation, payment of the Settlement Amount.

8.     **MISCELLANEOUS**

8.1     In the event that any proceedings are commenced to invalidate all or any part of this Agreement, the Parties, Other Releasing Parties, and Safeco Released Parties agree to cooperate fully to oppose such proceedings. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Agreement to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties, Other Releasing Parties, and Safeco Released Parties

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 16 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit A

Exhibit 1,130
Page 16 of 38

Case 09-30938-elp11     Doc 1336     Filed 07/29/11

mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

8.2     Within fourteen (14) days after payment by Safeco, Safeco shall file a motion to dismiss the Adversary Coverage Proceeding with prejudice and with each Party to bear its own costs, expenses, and attorney's fees. The SJOP shall cooperate with Safeco in seeking such dismissal.

8.3     Each Party, Other Releasing Party, and Safeco Released Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

8.4     The Parties, Other Releasing Parties, and Safeco Released Parties shall cooperate with each other in connection with the Procedures Motion, the Approval Motion, the Approval Order, the Plan Confirmation Order, and the Reorganization Case. Such cooperation shall include consulting with each other upon request concerning the status of proceedings and providing each other with copies of requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court; provided, however, that nothing contained in this Section shall obligate any Party to provide to the other Party any information that is otherwise subject to the attorney-client privilege or work-product doctrine. It is understood and agreed that in addition to the protections set forth in Section 8.7 below, all negotiations leading up to this Agreement, and all prior drafts of this Agreement, are subject to the mediation order entered by the Bankruptcy Court in the Reorganization Case and the confidentiality order imposed by the mediator.

8.5     This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties, the Other Releasing Parties, and the Safeco Released Parties. Except as otherwise expressly provided herein, this Agreement supersedes all prior communications, settlements, and understandings between the Parties, the Other Releasing Parties, and the Safeco Released Parties, and their representatives, regarding the matters addressed by this Agreement. Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements, promises, or inducements, whether made by any party or any agents of any party, that are not contained in this Agreement shall not be valid or binding. Any changes to this Agreement must be made in writing and with the consent of the Parties, Other Releasing Parties, and Safeco Released Parties.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 17 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.130
30 17 of 38

8.6 By entering into this Agreement, none of Parties has waived or shall be deemed to have waived any rights, obligations, or positions it or they have asserted or may in the future assert in connection with any matter or Person outside the scope of this Agreement. SJOP's and the Other Releasing Parties' respective rights under policies of insurance issued by insurers other than Safeco shall not be affected by this Agreement (except to the extent expressly stated in Section 7.1 of this Agreement). No part of this Agreement, its negotiation, or its performance may be used in any action, suit, or proceeding by any Person as evidence of the rights, duties, or obligations of any of the Parties with respect to matters or Persons outside the scope of this Agreement. All actions taken and statements made by the Parties, Other Releasing Parties, and/or Safeco Released Parties, or by their representatives, relating to this Agreement or participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

8.7 This Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession by any Party of liability, culpability, wrongdoing, or insurance coverage. Settlement negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall within the protection afforded to compromises and to offers to compromise of Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in (i) an action or proceeding between or among the Parties to enforce the terms of this Agreement or (ii) any possible action or proceeding between Safeco and any of its reinsurers. This Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret Safeco's obligations under the Policies to the SJOP or to any other Person or any Claims of any Party against Safeco.

8.8 Neither this Agreement nor the rights and obligations set forth in this Agreement shall be assigned without the prior written consent of the other Parties, except an assignment that occurs as a matter of law by virtue of a merger of a Party with another corporation or entity. The SJOP covenants that it has not and will not assign any right, interest, or action on the Policies to any Person.

8.9 Section titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

8.10 All notices, demands, or other communication to be provided pursuant to this Agreement shall be in writing and sent by FedEx or other overnight delivery

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 18 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.130
Page 18 of 38

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

If to Safeco:

Terri Yahia
Senior Corporate Counsel – CERC
c/o LIBERTY MUTUAL INSURANCE COMPANY
Complex and Emerging Risks Claims Department
175 Berkeley Street
Boston, MA 02116
Fax: (617) 574-5974

With a copy to:

Robert B. Millner
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
Fax: (312) 876-7934

and

Susan A. Stone
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Fax: (312) 853-7036

If to the SJOP:

Fr. Patrick J. Lee, S.J.
c/o SOCIETY OF JESUS, OREGON PROVINCE
3215 SE 45th Avenue
Portland, OR 97206
Fax: (503) 228-6741

and

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 19 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.130
Page 19 of 28

William L. Lockyear
c/o SOCIETY OF JESUS, OREGON PROVINCE
3215 SE 45th Avenue
Portland, OR 97206
Fax: (503) 228-6741

With a copy to:

Howard M. Levine
Thomas W. Stilley
SUSSMAN SHANK LLP
1000 SW Broadway
Suite 1400
Portland, Oregon 97205-3089
Fax: (503) 248-0130

and

James R. Murray
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Fax: (202) 420-2201

If to Official Committee for the Unsecured Creditors:

James I. Stang
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067-4100
Fax: (310) 772-2354

with a copy to:

Paul A. Richler
Morgan Lewis & Bockius LLP
300 South Grand Ave, 22nd Fl.
Los Angeles, CA 90071-3132
Fax: (213) 612-2501

and to counsel for the Trust after it comes into existence, if different from the
address of counsel for the Official Committee of Unsecured Creditors.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 20 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.130
Page 20 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

8.11   This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile, which facsimile counterparts shall be deemed to be originals.

8.12   The Parties agree that nothing contained in this Agreement shall be deemed or construed to constitute (1) an admission by Safeco that the SJOP, the Other Releasing Parties, or any other Person was or is entitled to any insurance coverage under the Policies or as to the validity of any of the positions that have been or could have been asserted by the SJOP, (2) an admission by the SJOP as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by Safeco or any Claims that have been or could have been asserted by the SJOP against Safeco, or (3) an admission by the SJOP or Safeco of any liability whatsoever with respect to any of the Tort Claims.

8.13   All of the entities included in the definition of Safeco and Safeco Released Parties are intended beneficiaries of this Agreement. The Parties agree that, except as set forth in the preceding sentence or otherwise set forth in this Agreement, there are no third-party beneficiaries of this Agreement.

8.14   Except as otherwise provided in this Agreement, each Party shall be responsible for their own fees and costs incurred in conjunction with the Reorganization Case or this Agreement.

8.15   The Bankruptcy Court in the Reorganization Case shall retain exclusive jurisdiction to interpret and enforce the provisions of this Agreement, which shall be construed in accordance with Oregon law.

[Remainder of page left blank intentionally]

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Page 21 of 26

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.130
Page 21 of 38

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

On behalf of the SJOP (as defined herein)

By: _____
Fr. Patrick J. Lee, S.J.

Date: _22 March 2011_

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 22 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B

Exhibit A

Exhibit 1.130
Page 22 of 38

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

On behalf of the OTHER RELEASING PARTIES (as defined herein)

By: _____
Fr. Patrick J. Lee, S.J.

Date: _22 March 2011_

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 23 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B

Exhibit A

Exhibit 1.130
Page 23 of 38

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of SAFECO (as defined herein)**

By: _Cynthia R. Koehler_
Cynthia R. Koehler

Title: _Vice President, Ass't Gen Counsel_

Date: _March 22, 2011_

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 24 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit A

Exhibit 1.130
Page 24 of 38       Exhibit B

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of SAFECO RELEASED PARTIES (as defined herein)**

By: _Cynthia R. Koehler_

        Cynthia R. Koehler

Title: _Vice President, Ass't Gen Counsel_

Date: _March 22, 2011_

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 25 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.1.30
Page 25 of 38

Exhibit B

Exhibit A

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

The Official Committee of Unsecured Creditors [Doc 66] hereby (a) agrees that it has not and will not file or pursue any Avoidance Actions (as that phrase is defined in the Order dated February 15, 2011 [Doc 1016]), against Safeco or Safeco Released Parties; and (b) consents and agrees to the releases by the SJOP set forth in Section 5 of this Agreement to the extent they release or purport to release any Avoidance Actions against Safeco or Safeco Released Parties.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _James R. Stang_
[Insert Name]

Title: _Counsel for Official Com. of Unsecured Creditors._

Date: _March 23, 2011_

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 26 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B

Exhibit A

Exhibit _1.130_
Page _26_ of _38_

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

**Exhibit 1**
**to Settlement Agreement, Release, and Policy Buyback**

Joseph A. Field, OSB 94071
FIELD JERGER LLP
621 S.W. Morrison, Suite 1225
Portland, Oregon 97205
Tel. (503) 228-9115
joe@fieldjerger.com

Susan A. Stone (*pro hac vice*)
Daniel J. Neppl (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel. (312) 853-7000
sstone@sidley.com
dneppl@sidley.com

Robert B. Millner (*pro hac vice*)
Patrick C. Maxcy (*pro hac vice*)
SNR DENTON US LLP
233 South Wacker Drive, Suite 7800
Chicago, Illinois 60606
Tel. (312) 876-8000
robert.millner@snrdenton.com
patrick.maxcy@snrdenton.com

Attorneys for Plaintiffs General Insurance Company of America,
American States Insurance Company, and Safeco Insurance Company of America

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

In re:

SOCIETY OF JESUS, OREGON PROVINCE,

    Debtor.

---

Case No. 09-30938-elp11

[PROPOSED] ORDER APPROVING
SETTLEMENT AGREEMENT WITH
SAFECO INCLUDING THE SALE OF
INSURANCE POLICIES

(Docket ___, filed _____)

---

EXHIBIT 2 TO SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK
Exhibit B

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit _1.130_
Page _27_ of _38_

A hearing having been held (the "Hearing"), to consider the motion, dated _____, 2011 (the "Motion"), of the Society of Jesus, Oregon Province, an Oregon non-profit religious corporation and the debtor and debtor in possession (the "SJOP" or the "Debtor") in the above-captioned Chapter 11 reorganization case (the "Reorganization Case"), for an order pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002, 6004, and 9019: (i) authorizing the SJOP to enter into a compromise and settlement with Safeco[1] and Safeco Released Parties pursuant to which the SJOP and the Other Releasing Parties will release any and all Claims arising out of, relating to, or in any way connected with the Policies, including, without limitation, Tort Claims, Extra-Contractual Claims, and all Claims relating to or arising out of the Reorganization Case that they may have now or in the future against Safeco and/or the Safeco Released Parties ; (ii) authorizing the sale of the Policies, free and clear of all Interests of any Person, pursuant to the terms and conditions of that Settlement Agreement, Release, and Buyback dated as of March ___, 2011, between the SJOP and Other Releasing Parties, on the one hand, and Safeco and the Safeco Released Parties, on the other, a copy of which is annexed to the Motion as Exhibit 1 and incorporated by reference (the "Agreement"); (iii) approving the Agreement and each of its terms; and (iv) requesting the findings and admissions set forth herein. The Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334, and consideration of the Motion, the relief requested therein, and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearances of all interested parties and all responses and objections to the Motion, if any, having been duly noted in the record of the Hearing; and upon the record of the Hearing, the Motion, said responses and objections, if any; and after due deliberation and sufficient cause appearing therefor, the Court hereby makes the following:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

JURISDICTION, FINAL ORDER, AND STATUTORY PREDICATES

1.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

2.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and

---

[1] Capitalized terms used herein that are not otherwise defined herein will have the same meaning as in the Agreement.

EXHIBIT 2 TO SETTLEMENT AGREEMENT,          Page 2 of 10          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                         D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit _1.1 30_          Exhibit B
Page _28_ of _38_                                Exhibit A

(O). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.    This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

5.    The statutory predicates for the relief sought in the Motion are 11 U.S.C.§§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, and 9019.

RETENTION OF JURISDICTION

6.    It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting, any of the transactions contemplated under the Agreement. Such jurisdiction shall be retained even if the case is closed and the case may be reopened for such purpose.

NOTICE OF THE MOTION

7.    The SJOP has provided due and adequate notice of the Motion, Agreement, and the subject matter thereof, including the injunctions to protect Safeco and the Safeco Released Parties to be included in the Plan Confirmation Order, to all known claimants (including all Tort Claimants and other claimants who have filed proofs of claim, all Tort Claimants scheduled by the SJOP, counsel for the Official Committee of Unsecured Creditors, the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412]), all Persons who have filed notices of appearance in the Reorganization Case, all entities known to have provided general liability insurance to the SJOP, and the Other Releasing Parties. The notice was served on all Claimants, including Tort Claimants, at the address shown on their proofs of claim or to their counsel of record (with a single notice to any counsel of record who represents multiple Tort Claimants constituting notice to all that counsel's clients who are Tort Claimants) or, if no proof of claim was filed, then at the address on SJOP's schedules. Counsel for each Tort Claimant has also been served. Known Tort Claimants, to the extent of record, were served even if not scheduled or the subject of a proof of claim, to the extent known to SJOP. The General Curia of the Society of Jesus was given notice by international mail c/o Fr. Adolfo Nicholás at his official address in Rome, Italy, with a copy to its Portland-based counsel in the Reorganization Case.  Any and all co-defendants and their counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants have also been given notice at the last address shown on any filed appearance or, if such co-defendant is proceeding pro se, then to the last address of record for such pro se co-defendant. The SJOP also provided adequate notice to all other parties-in-interest by publication twice in the USA Today, Oregonian, Anchorage Daily News, Fairbanks Daily News-Miner, Seattle Times, Spokesman-Review, Missoulian, and Idaho Statesman.

EXHIBIT 2 TO SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Exhibit B

Page 3 of 10

Exhibit A

In re Society of Jesus, Oregon Province D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.130
Page 29 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

8. No other or further notice is necessary. Notice of the Agreement and Motion is sufficient to bind, with respect to the relief ordered herein, all known and unknown creditors and claimants; including the Future Claimants Representative and all Persons whose interests he represents, and all Persons who receive non-publication notice pursuant to paragraph 7 of this Order. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known claimants and all parties-in-interest. As to unknown creditors, the publication notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice provided to the General Curia of the Society of Jesus is sufficient for purposes of this settlement; notice to an attorney of a Tort Claimant or co-defendant of SJOP sued by a Tort Claimant constitutes notice to the claimant represented by the attorney.

### SOUND BUSINESS JUDGMENT AND REASONABLENESS

9. The relief requested in the Motion is in the best interests of the SJOP, its creditors, the holders of all Claims, including the holders of Tort Claims, and other parties-in-interest. The SJOP has demonstrated good, sufficient, and sound business purposes, cause, and justifications for the relief requested in the Motion and the approval of the transaction contemplated thereby. The settlement and compromise with Safeco and Safeco Released Parties embodied in the Agreement, including, without limitation, the sale of the Policies and the release of claims as set forth therein are within the reasonable range of litigation outcomes if the SJOP and Other Releasing Parties were to litigate the matters resolved pursuant to this Order and represent fair and reasonable consideration for the sale of the Policies and release of claims as set forth therein. The transactions contemplated by the Motion and Agreement are in compliance with, and satisfy the requirements for, approval of a settlement or compromise pursuant to Bankruptcy Rule 9019 and all applicable provisions of the Bankruptcy Code, including without limitation Sections 105(a) and 363, and applicable non-bankruptcy laws.

### GOOD FAITH OF INSURANCE POLICY PURCHASER

10. The Agreement was negotiated and proposed, and has been entered into by the Parties, in good faith, from arm's length bargaining positions, and without fraud or collusion. The Parties were represented by counsel. The sale consideration and other consideration to be realized by the SJOP pursuant to the Agreement is fair and reasonable. Safeco is a good faith purchaser for value within the meaning of 11 U.S.C. § 363(m) and is entitled to the protection thereof, and neither the Agreement nor the transaction contemplated thereby are subject to avoidance under 11 U.S.C. § 363(n). None of the SJOP, Other Releasing Parties, Safeco, or Safeco Released Parties has engaged in any conduct that would cause or permit the Agreement, or the sale of the Policies, to be avoided under 11 U.S.C. § 363(n) or that would prevent the application of 11 U.S.C. § 363(m) or cause the application of

EXHIBIT 2 TO SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Exhibit B

Page 4 of 10

Exhibit A

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 6130
Page 30 of 38

11 U.S.C. § 363(n). Furthermore, in the absence of a stay pending appeal, if any, Safeco will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in consummating the contemplated transactions at any time after entry of this Order.

### SATISFACTION OF SECTION 363 AND OTHER
### BANKRUPTCY CODE REQUIREMENTS

11. The transactions contemplated by the Motion and the Agreement are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. § 363.

12. The SJOP may sell the Policies free and clear of Interests under 11 U.S.C. § 363(f) because, in each case, one or more of the criteria set forth in sections 11 U.S.C. § 363(f)(1)-(5) have been satisfied. Those holders of Interests against any of the Policies and/or Claims thereunder who did not object, or who withdrew their objections, to the Motion or the relief requested therein are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2). Each holder of an Interest in the Policies, including any claim thereunder, can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by 11 U.S.C. § 363(f)(5). The Claims and Interests held by persons whose Interests are represented by the Future Claimants Representative are "claims" within the meaning of Section 101(5) of the Bankruptcy Code.

13. The sale of the Policies provides claimants, including holders of Tort Claims, with adequate protection. In particular, the Tort Claimants will be able to pursue their Claims against the Trust under a plan of reorganization as to SJOP contemplated by this Agreement. Accordingly, the sale of the Policies free and clear of Interests satisfies the statutory prerequisites of 11 U.S.C. § 363(f). Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against Safeco, such Claim may be asserted as a defense against the Trust (under a plan of reorganization as to SJOP contemplated by the Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of Safeco in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or SJOP) shall be reduced dollar for dollar by the amount so determined.

### RELEASES

14. In light of the terms of the Agreement, it is reasonable and appropriate for the SJOP and Other Releasing Parties to provide the releases set forth in the Agreement. These releases comply with the Bankruptcy Code and other applicable laws. The consideration given by Safeco hereunder constitutes valid and valuable consideration for the releases by SJOP and the Other Releasing Parties.

EXHIBIT 2 TO SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK      Page 5 of 10      In re Society of Jesus, Oregon Province D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B      Exhibit A

Exhibit 1.130
Page 31 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

### NO SUCCESSOR LIABILITY

15.     The transfer pursuant to the Agreement of the Policies does not and will not subject or expose Safeco or any Safeco Released Party to any liability, claim, cause of action, or remedy by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity.

16.     No common identity of officers or directors exists between Safeco or the Safeco Released Parties, on the one hand, and the SJOP or the Other Releasing Parties, on the other hand.

17.     Safeco is purchasing the Policies pursuant to the Agreement and this Order. Safeco is not purchasing any other assets of the SJOP or the Other Releasing Parties. Safeco shall not have any responsibility or liability with respect to any of the other assets of the SJOP or the Other Releasing Parties.

18.     A sale of the Policies other than one free and clear of Interests would impact adversely on the SJOP and creditors and would be of substantially less benefit to the estate of the SJOP.

### SUPPLEMENTAL INJUNCTION

19.     Issuing a Supplemental Injunction under 11 U.S.C. §§ 105(a) and 363 is essential to the reorganization of the SJOP. The SJOP and Safeco have agreed that a supplemental injunction is a necessary prerequisite for their implementing the terms and conditions of the Agreement, and Safeco will not consummate the sale of the Policies in the absence of a Supplemental Injunction from this Court. Due and adequate notice of the Supplemental Injunction has been provided by the notice of the motion.

20.     Safeco and the Safeco Released Parties shall be entitled to the benefit of an injunction (the "Supplemental Injunction" as defined in the Agreement) in the Plan Confirmation Order, providing that, pursuant to 11 U.S.C. §§ 105(a) and 363, any and all Persons and entities who now hold or who may in the future hold Claims or Interests of any kind or nature against the SJOP, the Other Releasing Parties, Safeco, Safeco Released Parties, or the Policies relating to or in connection with the Policies or Tort Claims are barred and permanently enjoined from asserting such Claims or Interests against Safeco, any Safeco Released Party, and/or the Policies. Nothing in this paragraph shall bind the Court as to approval of such an injunction in a plan of reorganization as to SJOP.

*       *       *

EXHIBIT 2 TO SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Page 6 of 10

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B

Exhibit A

EXHIBIT 1.130
PAG. 33 OF 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

For all of the foregoing and after due deliberation, **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

A.     The Motion is GRANTED and APPROVED in all respects.

B.     The Agreement and each of its terms and conditions are hereby approved, including without limitation the agreement of the Official Committee of Unsecured Creditors as set forth on its signature page of the Agreement.

C.     For the reasons set forth herein and on the record at the Hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits.

D.     The SJOP is authorized, empowered, and directed to enter into the Agreement, pursuant to 11 U.S.C. § 363(b) and other applicable provisions of the Bankruptcy Code, to sell, transfer, and convey its Interest in the Policies to Safeco in accordance with the terms and subject only to the conditions specified herein and in the Agreement. The transfer by the SJOP or Other Releasing Parties of their respective Interests in the Policies shall vest Safeco with all right, title, and interest in and to the Policies, free and clear of all rights, Claims, and Interests, including all Tort Claims, reimbursement obligations for Conditional Payments under the MSPA, and Claims by other insurers for contribution, indemnity, subrogation, or similar relief whether arising before or after commencement of this Reorganization Case and whether arising by agreement, understanding, law, equity, or otherwise.

E.     The terms of the Agreement are approved in their entirety, and this Order shall be binding upon the SJOP, all creditors of and claimants against the SJOP, Other Releasing Parties, all Tort Claimants, all insurers who received notice of the motion, the Future Claimants Representatives and all Persons whose Claims and Interests he represents, the General Curia of the Society of Jesus, all co-defendants in pre-petition actions by Tort Claimants against the SJOP, and all other Persons and entities as set forth in paragraph 8 *supra*, and each of their successors and assigns. The sale of the Policies to Safeco shall constitute a legal, valid, and effective transfer of the Policies and shall vest Safeco with all right, title, and interest in and to the Policies free and clear of all rights, claims, and interests, effective as of the Effective Date. The sale of the Policies to Safeco is subject to the Conditions to Agreement set forth in Section 4 of the Agreement.

F.     The $118,000,000 cash purchase price under the Agreement shall be paid by Safeco as provided in the Agreement.

G.     The releases in the Agreement comply with the Bankruptcy Code and all applicable state laws. The Agreement terminates the Policies pursuant to its terms, and the Policies are of no further force and effect.

EXHIBIT 2 TO SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Exhibit B

Page 7 of 10

Exhibit A

In re Society of Jesus, Oregon Province D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1/30
Page 33 of 38

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

H.     The sale of the Policies to Safeco under the Agreement will constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the State of Oregon.

I.     The SJOP and the Other Releasing Parties and Safeco are each hereby authorized to take all actions and execute all documents and instruments that the SJOP, the Other Releasing Parties, and Safeco deem necessary or appropriate to implement and effectuate the transactions contemplated by the Agreement.

J.     Pursuant to 11 U.S.C. §§.105(a) and 363(f), as provided by the Agreement, the Policies shall be and hereby are transferred to Safeco, free and clear of all liens, encumbrances and other Interests of any Person, including all rights and Interests of SJOP; all Other Releasing Parties; any other Person claiming by, through, or on behalf of the SJOP; any other insurer; any Tort Claimant; and the General Curia of the Society of Jesus, whether arising prior to or subsequent to the commencement of the Reorganization Case, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, Interests in the Policies that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the Interest of the bankruptcy estate or Safeco, as the case may be, in the Policies).

K.     Safeco is a good faith purchaser of the Policies and is entitled to (and is hereby granted) all of the protections provided to good faith purchasers under 11 U.S.C. § 363(m). The transactions contemplated by the Agreement shall not be subject to avoidance under 11 U.S.C. § 363(n). All Persons are hereby enjoined from commencing or continuing an action seeking relief under 11 U.S.C. § 363(n) with respect to the Agreement and the transactions contemplated thereby.

L.     Safeco and the Safeco Released Parties are not, and shall not be deemed to be, a successor to the SJOP or the Other Releasing Parties by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement. Safeco and the Safeco Released Parties shall not assume any liabilities of the SJOP or the Other Releasing Parties.

M.     Pursuant to Fed. R. Bankr. P. 9019, the releases and provisions set forth in Sections 5.1 - 5.6 of the Agreement are expressly approved. All of the Claims released therein are hereby dismissed and forever released effective as set forth under the Agreement.

N.     In the event that the Court approves a plan of reorganization for SJOP that is consistent with the Agreement, such plan shall provide that the Trust is bound by the Agreement, will include the Supplemental Injunction, will provide for the relief specified in Section 3.4 of the Agreement, and will provide for the use of the Settlement Amount as specified in Section 6.4 of the Agreement. In addition, any injunction in such plan that channels

EXHIBIT 2 TO SETTLEMENT AGREEMENT,          Page 8 of 10                    In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                        D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B                                    Exhibit A

Exhibit 1.130
Page 24 of 38

Case 09-30938-elp11     Doc 1336     Filed 07/29/11

Tort Claims to the Trust will include Safeco as a thirty party entitled to its benefits and protections.

O. This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Fed. R. Bankr. P. 6004(h) or any other applicable provision.

P. Nothing in this Order or the Plan Confirmation Order shall bar or limit Claims by a Tort Claimant against (a) the Society of Jesus (Rome), the Society of Jesus General Curia, The Father General of the Society of Jesus (Rome) and his predecessors, and any predecessors or successors to SJOP but only to the extent the liability of such predecessor or successor is entirely independent of the liability of SJOP, any named insured in any contract of insurance issued by Safeco to SJOP, or any Other Releasing Party; or (b) any insurance policy to the extent covering Claims not barred or limited by the preceding subsection (a).

Q. This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Agreement and this Order in all respects and further to hear and determine any and all disputes between the SJOP and/or the Other Releasing Parties and/or Safeco and/or the Safeco Released Parties, as the case may be, and any other Person; provided, however that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Agreement or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. In the event this case has been closed, there shall be a right to have this case reopened upon ex parte motion or application for such purposes.

R. The provisions of this Order are nonseverable and mutually dependent.

S. This Order shall inure to the benefit of Safeco, the Safeco Released Parties, the SJOP, the Other Releasing Parties and their respective successors and assigns and shall be binding upon the SJOP and the Other Releasing Parties.

T. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing, recording or otherwise any and all documents and instruments necessary and appropriate to consummate and/or evidence the transactions contemplated by the Agreement and this Order.

EXHIBIT 2 TO SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 9 of 10

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B

Exhibit A

Exhibit 1.130
Page 35 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

Dated: _____, 2011


_____
United States Bankruptcy Judge

EXHIBIT 2 TO SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 10 of 10

**In re Society of Jesus, Oregon Province**
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B

Exhibit A

Exhibit 1.130
Page 36 of 38

**EXHIBIT 2**
**to Settlement Agreement, Release, and Policy Buyback**

The following insurance policies and alleged insurance policies[2] are included within the definition of Policies and were issued or allegedly issued by the following insurers:

| Insurer | Policy No. |
|---|---|
| General Insurance Company of America a/s/i to Western Pacific Insurance Company | CLP 17803 |
| General Insurance Company of America a/s/i to Western Pacific Insurance Company | CLP 24924 |
| General Insurance Company of America | CP 200028 |
| General Insurance Company of America | CP 202775 |
| Safeco Insurance Company of America | CP 2203138 |
| Safeco Insurance Company of America | CP 342813 |
| General Insurance Company of America | CP 791745 |
| General Insurance Company of America | UL 751789 |
| General Insurance Company of America | UL 801172 |
| General Insurance Company of America | UL 791745 |
| General Insurance Company of America | CP 1188257A |
| General Insurance Company of America | CP 791745A |
| General Insurance Company of America | CP 791745B |
| General Insurance Company of America | CP 791745C |

---

[2] Safeco does not by this Exhibit or in this Agreement concede the existence, terms, conditions, or limits of any Policy.

EXHIBIT 2 TO SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B                    Exhibit A

Exhibit 1.130
Page 37 of 38

| Insurer | Policy No. |
|---|---|
| General Insurance Company of America | UL 791745A |
| Safeco Insurance Company of America | UL 791745B |
| Safeco Insurance Company of America | UL 791745C |
| General Insurance Company of America | CP 791745D |
| Safeco Insurance Company of America | UL 791745D |
| American States Insurance Company | 02 CC 140 308-1 |
| American States Insurance Company | 01 SU 096116 |
| American States Insurance Company | 02 CC 140 308-2 |
| American States Insurance Company | 01 SU 096116-20 |

EXHIBIT 2 TO SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 2 of 2

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit B

Exhibit A

Exhibit 1.13C
Page 38 of 38

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

# EXHIBIT 1.135 SETTLING INSURERS

1.      American States Insurance Company, General Insurance Company of America, and Safeco Insurance Company of America, and each of their past and present subsidiaries, parents, and affiliates. "Safeco" also includes all future subsidiaries, parents, and affiliates of American States Insurance Company, General Insurance Company of America, and Safeco Insurance Company of America, to the extent that their liability is derivative of Safeco's liabilities under the policies, as "Policies" are defined in the Safeco Settlement Agreement.

2.      Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, and each of their past and present subsidiaries, parents, and affiliates. "Travelers" also includes all future subsidiaries, parents, and affiliates of Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, to the extent that their liability arises out of liabilities under insurance policies issued by Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, or any of their past or present subsidiaries, parents, or affiliates.

3.      Western World Insurance Company, and its past and present subsidiaries, parents, and affiliates. "Western World" also includes all future subsidiaries, parents, and affiliates of Western World Insurance Company, to the extent that their liability is derivative of Western World's liabilities under the Western World Policies.

# SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

This Settlement Agreement, Release, and Policy Buyback ("Agreement") is hereby made between and among the Society of Jesus, Oregon Province (the "SJOP" as defined in paragraph 1.1.28 below) and the Other Releasing Parties (as defined in paragraph 1.1.16 below), on the one hand; and Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, and Travelers Indemnity Company of Connecticut (collectively, "Travelers" in paragraph 1.1.25 below), on the other hand.

## RECITALS

WHEREAS, numerous individuals have asserted claims against the SJOP and certain Other Releasing Parties for injuries they allegedly suffered due to sexual and/or physical abuse and/or other misconduct by priests and/or other individuals allegedly negligently hired, supervised, or maintained by the SJOP (the "Tort Claims" as defined in paragraph 1.1.31 below); and

WHEREAS, Travelers issued or allegedly issued certain insurance policies to or for the benefit of the SJOP and/or the Other Releasing Parties (the "Policies" as defined in paragraph 1.1.21 below); and

WHEREAS, certain disputes between, on the one hand, the SJOP and the Other Releasing Parties and, on the other hand, Travelers and the and the Travelers Released Parties (as defined in paragraph 1.1.26 below) have arisen and/or would be likely to arise in the future concerning Travelers' position regarding the nature and scope of its responsibilities, if any, to provide coverage to the SJOP and/or any of the Other Releasing Parties under the Policies in connection with the Tort Claims (the "Coverage Disputes" as defined in paragraph 1.1.8 below); and

WHEREAS, the SJOP filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (as defined in paragraph 1.1.3 below) on February 17, 2009 (the "Petition Date" as defined in paragraph 1.1.19 below), in the United States Bankruptcy Court for the District of Oregon (the "Reorganization Case" as defined in paragraph 1.1.24 below); and

WHEREAS, the SJOP and the Other Releasing Parties, on the one hand, and Travelers and the Travelers Released Parties, on the other hand, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Disputes and any and all other disputes between them; and

WHEREAS, through this Agreement, the SJOP and the Other Releasing Parties intend to provide Travelers with the broadest possible buyback and release with respect to the Policies and to provide that Travelers shall have no further obligations now or in the future with

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 1 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

respect to the Policies and no further obligations to the SJOP or the Other Releasing Parties under any other policy of insurance issued by Travelers; and

WHEREAS, as part of the compromise and resolution of such disputes, the SJOP, the Other Releasing Parties, Travelers, and the Travelers Released Parties wish to effect a sale of the Policies pursuant to Section 363 of the Bankruptcy Code; and

WHEREAS, the Parties and the Other Releasing Parties have received the advice of counsel in the preparation, drafting, and execution of this Agreement, which was negotiated at arm's length;

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the Bankruptcy Court, the SJOP, the Other Releasing Parties, Travelers, and the Travelers Released Parties hereby agree as follows:

## 1.    DEFINITIONS AND CONSTRUCTION

1.1    As used in this Agreement, the following terms shall have the meanings set forth below. Capitalized terms not defined below shall have any meanings given to them in the Bankruptcy Code.

1.1.1    "Approval Motion" means the motion seeking entry of the Approval Order.

1.1.2    "Approval Order" means a Final Order in substantially the form attached hereto as Exhibit 1, with only such modifications as are acceptable both to Travelers and the SJOP in each party's respective sole discretion, entered by the Bankruptcy Court under Bankruptcy Code Sections 363 and 105 and Bankruptcy Rule 9019 and/or under such other provisions as the Bankruptcy Court may order, approving this Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Agreement.

1.1.3    "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.1.4    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon and any other court in which the Reorganization Case may be pending or which has jurisdiction over the Reorganization Case.

1.1.5    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.1.6    "Claim" means any past, present or future claim, demand, action, requests, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, asserted or

SETTLEMENT AGREEMENT,                          Page 2 of 26                          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                            D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 2 of 36                          Case 09-30938-elp11      Doc 1336      Filed 07/29/11

unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any claim within the definition of Section 101(5) of the Bankruptcy Code.

1.1.7  "Conditional Payment" means any payment made pursuant to Section 1395y(b)(2)(B) of the MSPA (Medicare Secondary Payer Act, as defined in § 1.1.16 of this Agreement).

1.1.8  "Coverage Disputes" means those disputes between the SJOP and Travelers that have arisen or may arise in the future concerning Travelers' position regarding the nature and scope of Travelers' responsibilities, if any, to provide coverage to the SJOP and/or any of the Other Releasing Parties under the Policies for Claims.

1.1.9  "Effective Date" means the date on which this Agreement becomes effective, which shall be the day on which the Approval Order entered by the Bankruptcy Court has become a Final Order, which shall be after the Parties and the Other Releasing Parties have executed this Agreement and delivered evidence of that execution, through delivery of an executed signature page, to each other.

1.1.10  "Extra-Contractual Claim" means any Claim against Travelers or any of the Travelers Released Parties based, in whole or in part, on allegations that Travelers or the Travelers Released Parties acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of Travelers or any of the Travelers Released Parties of any type for which the claimant seeks relief other than coverage or benefits under any of the Policies.  Extra-Contractual Claims include without limitation: (i) any Claim arising out of or relating to Travelers' or any of the Travelers Released Parties' handling of any Claim or any request for insurance coverage relating to the Policies, including any request for coverage for any Claim, including any Tort Claim; and (ii) the conduct of the Parties with respect to the negotiation of this Agreement.  Extra-Contractual Claims does not include Claims for fraud in the inducement of this Agreement.

1.1.11  "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 3 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 3 of 36

Case 09-30938-elp11     Doc 1336     Filed 07/29/11

has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal or review has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the SJOP and Travelers have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Agreement.

1.1.12 "Insurance Coverage Claim" means any Claim for insurance coverage under the Policies or any Claim for insurance coverage by the SJOP or any of the Other Releasing Parties under any other policy of insurance issued by Travelers.

1.1.13 "Interests" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief relating to the Policies.

1.1.14 "Medicare Beneficiary" means a Tort Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

1.1.15 "MSPA" means Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 411.1 *et seq.*

1.1.16 "Other Releasing Parties" means: (i) Montana Catholic Missions, S.J.; Mount St. Michael; Pioneer Educational Society (also sometimes referred to in the Policies as Pioneer Education Society or Pioneer Educational Society dba Bea House); Society of Jesus, Alaska; and Fr. Patrick J. Lee, S.J. on behalf of the Office of the Very Reverend Father Provincial of the SJOP; (ii) any and all insureds and additional insureds under the Policies with respect to whom the SJOP has authority to release the Claims released pursuant to this Agreement; (iii) any and all predecessors, successors, and assigns of the SJOP or the Entities identified in paragraph 1.1.16(i) and (ii) above; and (iv) any and all past and present employees, officers, directors, shareholders, principals, agents, attorneys, and representatives of the Persons and Entities identified in paragraph 1.1.16(i), (ii), and (iii) above, in their capacity as such. In addition, it is the mutual understanding of SJOP and Travelers that any references to "Society of Jesus" in the Policies were intended to state "Society of Jesus, Oregon Province" and were and are intended to refer to the Society of Jesus, Oregon Province.

1.1.17 "Parties" means the SJOP and Travelers, and "Party" means either of them.

1.1.18 "Person" means an individual or entity, including any corporation, corporation sole, partnership, association, limited liability company,

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 4 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 4 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

proprietorship, joint venture, trust, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

1.1.19 "Petition Date" means February 17, 2009, the date upon which the SJOP filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

1.1.20 "Plan Confirmation Order" means a Final Order that: (i) approves a plan of reorganization as to SJOP pursuant to Section 1129 and any other applicable provision of the Bankruptcy Code; (ii) contains an injunction pursuant to Section 105(a) of the Bankruptcy Code channeling all Tort Claims to the Trust; (iii) provides that this Agreement is binding on the Trust (i.e., contains a Supplemental Injunction in favor of Travelers); and (iv) provides all protections to Travelers and the Travelers Released Parties against Tort Claims that are afforded to settling insurers under the plan of reorganization.

1.1.21 "Policies" means any and all known and unknown policies of insurance issued or allegedly issued by Travelers to the SJOP and/or any of the Other Releasing Parties, including those policies that are identified on Exhibit 2 to this Agreement.

1.1.22 "Procedures Motion" means the motion seeking approval of the procedures for notice, service, and publication of the Approval Motion.

1.1.23 "Procedures Order" means a Final Order in substantially the form attached hereto as Exhibit 3, with only such modifications as are acceptable both to Travelers and the SJOP in each party's respective sole discretion, entered by the Bankruptcy Court, approving the Procedures Motion.

1.1.24 "Reorganization Case" means the Chapter 11 reorganization case filed February 17, 2009, by the SJOP in the United States Bankruptcy Court for the District of Oregon, *In re The Society of Jesus, Oregon Province,* Case No. 09-30938-elp11.

1.1.25 "Travelers" means Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, and each of their past and present subsidiaries, parents, and affiliates. "Travelers" also includes all future subsidiaries, parents, and affiliates of Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, to the extent that their liability arises out of liabilities under insurance policies issued by Fidelity and

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 5 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 5 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., American Equity Insurance Company, Travelers Indemnity Company of Illinois, Travelers Companies, Inc. and Travelers Indemnity Company of Connecticut, or any of their past or present subsidiaries, parents, or affiliates.

1.1.26 "Travelers Released Parties" means Travelers, as defined above, and all employees, officers, directors, shareholders, principals, parents, agents, attorneys, and representatives, as well as the predecessors, successors, assignors, and assigns of each of the foregoing, in their capacity as such.

1.1.27 "Settlement Amount" means the payment to be made by Travelers pursuant to Section 2.1 of this Agreement.

1.1.28 "SJOP" means the Society of Jesus, Oregon Province, an Oregon non-profit religious corporation, and the Estate (pursuant to Section 541 of the Bankruptcy Code).

1.1.29 "Stipulated Order" means the stipulated order providing for service of the Approval Motion on the General Curia of the Society of Jesus through its Portland counsel Miller Nash LLP.

1.1.30 "Supplemental Injunction" means an injunction pursuant to Sections 105(a) and 363 of the Bankruptcy Code, barring and permanently enjoining any and all Persons who now hold or who may in the future hold any Claims or Interests of any kind or nature (including, without limitation, all debt holders, all equity holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, Tort Claim holders, other insurers, and all others holding Claims or Interests of any kind or nature whatsoever) against SJOP, Other Releasing Parties, Travelers, Travelers Released Parties, or the Policies, relating to or in connection with the Policies or Tort Claims, from or against asserting any such Claim or Interests against Travelers, the Travelers Released Parties, and/or the Policies.

1.1.31 "Tort Claim" means (i) any Claim against the SJOP and/or Other Releasing Parties resulting, in whole or in part, from alleged sexual molestation, abuse or other conduct of a sexual nature, corporal punishment or abuse, or any other misconduct and seeking monetary damages or any other relief, including any Claim asserted against the SJOP and/or Other Releasing Parties in connection with the Reorganization Case and any Claim of any Person whose Interests are, have been, or may be represented by the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412], and (ii) any Claim against Travelers for contribution, indemnity, defense, subrogation, or similar relief that arises directly or indirectly from Claims against SJOP and/or Other Releasing Parties identified in paragraph 1.1.31(i) above.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 6 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 6 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1.1.32 "Tort Claimant" means any Person, including any Person whose Interests are, have been, or may be represented by the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412], asserting a Tort Claim.

1.1.33 "Trust" means the Trust, established pursuant to a plan of reorganization as to SJOP and confirmed by the Plan Confirmation Order, to which all Tort Claims are channeled as the sole and exclusive source of payment of any claims against SJOP or Travelers.

1.2     The following rules of construction shall apply to this Agreement:

1.2.1    Unless the context of this Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

1.2.2    References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Agreement.

1.2.3    The wording of this Agreement was reviewed by legal counsel for each of the Parties, or other signatories to this Agreement, and each of them had sufficient opportunities to propose and negotiate changes prior to its execution. None of the Parties, the Other Releasing Parties, or the Travelers Released Parties or other signatories to this Agreement will be entitled to have any wording of this Agreement construed against the other based on any contention as to which of the Parties drafted the language in question or which party is an insurer.

1.2.4    The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, the Other Releasing Parties, and/or the Travelers Released Parties, as the case may be, shall not be construed to create a breach of this Agreement when the stated intent is not achieved. Notwithstanding the foregoing sentence, however, and for the avoidance of doubt, nothing in this Agreement, including in conjunction with or reliance on this Section 1.2.4, shall be construed as allowing SJOP or any Other Releasing Party to make any Claim against Travelers or any Travelers Released Party under the Policies or any other policy of insurance issued by Travelers should the intent of any Party to this Agreement fail or otherwise not be achieved. In exchange for payment of the Settlement Amount, the Parties, Other Releasing Parties, and Travelers Released Parties agree that all Claims against Travelers and the

SETTLEMENT AGREEMENT,                    Page 7 of 26           In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                     D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                 Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 7 of 36

Travelers Released Parties are forever released and bought back as set forth in this Agreement.

## 2.     PAYMENT OF SETTLEMENT AMOUNT

2.1     Subject to all of the terms of this Agreement, in full and final settlement of all responsibilities under and arising out of the Policies, and in consideration of the sale of the Policies to Travelers free and clear of all Interests of any Person, and expressly subject to fulfillment of all conditions to payment identified in Section 3 below, Travelers shall pay to the Trust the sum of One Million Four Hundred Thousand Dollars ($1,400,000) (the "Settlement Amount") within ten (10) days after the Conditions Precedent to Travelers' Payment set forth in Section 3 of this Agreement have been fulfilled, provided that Travelers receives prior written notice of at least ten (10) days from the Trustee of the Trust that such conditions have been satisfied and direction as to transmission of the payment.

2.2     The Parties, the Other Releasing Parties, and the Travelers Released Parties expressly agree that it is intended: (i) that the Settlement Amount is the total amount Travelers and the Travelers Released Parties are obligated to pay on account of any and all Claims made under or relating to the Policies (including the Tort Claims, any reimbursement obligations for Conditional Payments under the MSPA, and any Extra-Contractual Claims); (ii) that under no circumstance will Travelers or the Travelers Released Parties ever be obligated to make any additional payments to anyone in connection with the Policies, including any payments in connection with amounts allegedly owed under the MSPA, for any Claims, or for any Extra-Contractual Claims; (iii) that under no circumstance will Travelers or the Travelers Released Parties ever be obligated to make any additional payments to or on behalf of the SJOP or any of the Other Releasing Parties in connection with any policies of insurance issued by Travelers other than the Policies with respect to any Claims in connection with, arising out of or relating in any way to any Tort Claims; and (iv) that all limits of liability of the Policies, regardless of how the Policies identify or describe those limits, including all per person, per occurrence, per claim, "each professional incident," and aggregate limits, shall be deemed fully and properly exhausted. The Parties, the Other Releasing Parties, and the Travelers Released Parties further agree that the Settlement Amount is the full purchase price of the Policies.

2.3     The Parties agree that the plan of reorganization as to the SJOP that is confirmed in the Plan Confirmation Order will provide that this Agreement is binding on the Trust and that, before the Trustee of the Trust disburses any of the Settlement Amount to any Tort Claimant, the Trustee shall determine whether any Conditional Payment has been made to or on behalf of any Tort Claimant. If any Conditional Payment has been made to or on behalf of any Tort Claimant, the Trustee shall, within the respective time period called for by the MSPA, (i) reimburse the appropriate Medicare Trust Fund for the appropriate amount, and

SETTLEMENT AGREEMENT,                    Page 8 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                       D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)               Case 09-30938-elp11     Doc 1336     Filed 07/29/11
Page 8 of 36

(ii) submit the required information for any Tort Claimant to the appropriate agency of the United States government. To assist the Trustee, the Parties agree that the plan of reorganization as to SJOP shall provide as follows:

2.3.1 Before the Trustee will pay any portion of any Tort Claim to any Tort Claimant, that claimant must provide a third-party vendor, which vendor has been approved by the Official Committee of Unsecured Creditors or the Trustee ("Approved Vendor") or, if no Approved Vendor has been retained by or on behalf of a Tort Claimant, the Trustee, with his or her name, date of birth, Social Security Number or Health Insurance Claim Number (collectively, the "Personal Information"), a signed Social Security Release Form or a Medicare Release form, or both, when requested by the Approved Vendor or the Trustee, as the case may be, and any other information or documents reasonably required to comply with Sections 2.3.2, 2.3.3, and 2.3.4.

2.3.2 Each Tort Claimant who claims that he or she is not a Medicare Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Social Security Administration to verify whether he or she is a Medicare Beneficiary. Before the Trustee will pay any portion of any Tort Claim to a Tort Claimant who claims that he or she is not a Medicare Beneficiary, the Tort Claimant will provide a letter from an Approved Vendor supported by documentation from the Social Security Administration, received within sixty (60) days prior to the Trustee making such payment or, if no Approved Vendor has been retained by or on behalf of a Tort Claimant, documentation from the Social Security Administration received within sixty (60) days prior to the Trustee making such payment, confirming that the Tort Claimant is not a Medicare Beneficiary. In the absence of such a confirming letter or documentation, each Tort Claimant will be presumed to be a Medicare Beneficiary.

2.3.3 Each Medicare Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Centers for Medicare and Medicaid Services ("CMS"), the CMS Coordination of Benefits Contractor ("COBC"), and/or the Medicare Secondary Payer Recovery Contractor ("MSPRC") to determine the amount of each and every Conditional Payment, if any, subject to reimbursement by a "primary plan." Before the Trustee will pay any portion of any Tort Claim to a Medicare Beneficiary, such Medicare Beneficiary, must provide the Trustee with a letter from the MSPRC ("MSPRC Letter") received within sixty (60) days prior to the Trustee making such payment: (a) setting forth the Conditional Payment estimate made to or on behalf of the Medicare Beneficiary that is subject to reimbursement by a "primary plan," as the phrase is defined in Section 1395y(b)(2) of the MSPA; or (b) stating that no such Conditional Payment has been made to or on behalf of the Medicare Beneficiary. In the event that the MSPRC Letter sets forth a Conditional Payment estimate, no payment shall be

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 9 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 9 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

made to such Medicare Beneficiary before the Trustee sets aside a reserve for the full amount of the Conditional Payment estimate, or pays a negotiated amount agreed to by the MSPRC and the Medicare Beneficiary. If the Trustee sets aside a reserve for the full amount of the Conditional Payment estimate, that reserved amount shall be withheld from the payment to the Medicare Beneficiary until the Conditional Payment estimate has been paid in full or a negotiated amount that has been agreed to by the MSPRC and the Medicare Beneficiary has been paid.

2.3.4   The failure by one or more Medicare Beneficiaries or other Tort Claimants to comply with these provisions shall not delay or impair the payment by the Trustee to any other Medicare Beneficiary or other Tort Claimant complying with these provisions.

2.3.5   If the Tort Claimant is the estate of a Tort Claimant, then the letters or documentation required pursuant to Sections 2.3.2 and 2.3.3 need not be received by the Trustee within sixty (60) days of the date of payment by the Trustee to such claimant, provided that the date of death of the Tort Claimant is at least sixty (60) days prior to the date of such letters or documentation.

2.3.6   Notwithstanding any of the above, a Tort Claimant can elect to provide the Trustee with the documentation from the Social Security Administration required pursuant to section 2.3.2, or a Medicare Beneficiary can elect to provide the Trustee with the letter from MSPRC required pursuant to section 2.3.3, without retaining an Approved Vendor and without providing an Approved Vendor or the Trustee with his or her Personal Information, except to the extent that such information is disclosed in such documentation or letter.

3.   **CONDITIONS PRECEDENT TO TRAVELERS' PAYMENT**

3.1   <u>Timing of Payment</u>.  Travelers' obligation to pay the Settlement Amount in Section 2.1 above is expressly conditioned on the SJOP having obtained the Procedure Order, the Stipulated Order, the Approval Order and the Plan Confirmation Order. Court deferral of entry of the Approval Order, Procedure Order, or the Stipulated Order, in whole or in part, until entry of the Plan Confirmation Order is not a failure of this condition.

3.2   <u>Procedures Order</u>.  Within fourteen (14) days after the Parties and the Other Releasing Parties have executed this Agreement, the SJOP shall file the Procedures Motion.

3.2.1   If any objections to the Procedures Motion are filed with the Bankruptcy Court, the SJOP shall file a written response, in a form acceptable to Travelers, and shall take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the

SETTLEMENT AGREEMENT,                    Page 10 of 26          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                    D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)              Case 09-30938-elp11   Doc 1336   Filed 07/29/11
Page 10 of 36

Procedures Order.  Travelers will cooperate with the SJOP, including making all appropriate submissions.

3.3     Stipulated Order.  Within fourteen (14) days after the Parties and the Other Releasing Parties have executed this Agreement, the SJOP shall file the Stipulated Order.

3.4     Approval Order.  Within fourteen (14) days after the Parties and the Other Releasing Parties have executed this Agreement, the SJOP shall file the Approval Motion.

3.4.1     If any objections to the Approval Motion are filed with the Bankruptcy Court, the SJOP shall file a written response, in a form acceptable to Travelers, and shall take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order.  Travelers will cooperate with the SJOP, including making all appropriate submissions.

3.4.2     Written notice of the Approval Motion shall be provided to all known claimants (including all Tort Claimants and other claimants who have filed proofs of claim, all Tort Claimants scheduled by the SJOP, counsel for the Official Committee of Unsecured Creditors, the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412]), all Persons who have filed notices of appearance in the Reorganization Case, all entities known to have provided general liability insurance to the SJOP, the Other Releasing Parties and the Jesuit Volunteer Corps. All claimants, including Tort Claimants, shall be served at the address shown on their proofs of claim or to their counsel of record (with a single notice to any counsel of record who represents multiple Tort Claimants constituting notice to all that counsel's clients who are Tort Claimants) or, if no proof of claim was filed, then at the address on SJOP's schedules.  Counsel for each Tort Claimant shall also be served.  Known Tort Claimants, to the extent of record, shall be served even if not scheduled or the subject of a proof of claim, to the extent known to SJOP.  The General Curia of the Society of Jesus shall be given notice by international mail c/o Fr. Adolfo Nicolás at his official address in Rome, Italy, with a copy to its Portland-based counsel in the Reorganization Case.  Any and all co-defendants and their counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants shall also be given notice at the last address shown on any filed appearance or, if such co-defendant is proceeding *pro se*, then to the last address of record for such *pro se* co-defendant.  The notice of intent to seek entry of the Approval Order also shall be published, at Travelers' expense, twice in the *USA Today, Oregonian, Anchorage Daily News, Fairbanks Daily News-Miner, Seattle Times, Spokesman-Review, Missoulian,* and *Idaho Statesman,* in a form and at a time agreed to by the Parties or as ordered by the Bankruptcy Court.

SETTLEMENT AGREEMENT,                         Page 11 of 26           In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                          D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 11 of 36

3.5     Plan Confirmation Order. In conjunction with the Reorganization Case, the SJOP shall seek and obtain entry of a Plan Confirmation Order, which order must be in all respects consistent with this Agreement and contain no provisions that diminish or impair the benefit of this Agreement to Travelers. In so doing, SJOP's efforts shall include: (i) proposing a plan of reorganization and seeking a confirmation hearing on an appropriately timely basis; (ii) urging the Bankruptcy Court to overrule any objections and confirm a proposed plan; and (iii) taking all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of a Plan Confirmation Order. Prior to entry of a Plan Confirmation Order, the SJOP shall oppose any motion to lift any stay as to any Tort Claim. In the event the Bankruptcy Court lifts the stay as to any Tort Claim prior to the Plan Confirmation Order, the SJOP shall defend that Tort Claim to the extent that such Tort Claim would have been covered by one of the Policies, which indemnity and defense expenses shall be paid by Travelers and deducted from the Settlement Amount. The form and manner of notice of the hearing to confirm the plan of reorganization as to SJOP and the form and manner of notice of the hearing as to the adequacy of the disclosure statement pertaining thereto are subject to advance approval by Travelers, which approval cannot be unreasonably withheld. In the event the SJOP fails to defend that Tort Claim, then Travelers shall have the right, but not the duty, to defend and/or indemnify that Tort Claim pursuant to the terms and conditions of the applicable Policies and any such costs for defense or indemnity shall be deducted from the Settlement Amount. In such event, SJOP will cooperate with Travelers in the defense and/or indemnification of such Tort Claim, and Travelers agrees not to settle any such Tort Claim without the express consent of the Committee of Unsecured Creditors.

3.6     The Plan of Reorganization. The plan of reorganization as to the SJOP must be in all respects consistent with this Agreement and contain no provisions that diminish or impair its benefit to Travelers. Such plan of reorganization shall provide for damages, injunctive relief, attorneys' fees, costs, and expenses in favor of Travelers against the Trust in the event of a violation or breach of the undertaking in Section 2.3 of this Agreement.

4.     CONDITIONS TO AGREEMENT

4.1     This Agreement shall be subject to the following conditions: in the event (i) the Bankruptcy Court dismisses the Reorganization Case or converts it to a case under Chapter 7 of the Bankruptcy Code prior to the entry of a Plan Confirmation Order; or (ii) one or more of the conditions ("Dismissal Conditions") identified in Section 4.2 below occurs, then either the SJOP (subject to Court approval unless the Reorganization Case is dismissed) or Travelers may terminate this Agreement by prompt written notice to the other Party. Upon termination of this Agreement, the releases provided in Section 5 of this Agreement shall become null and void, and the SJOP and Travelers shall retain all

SETTLEMENT AGREEMENT,                    Page 12 of 26                    In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                              D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)              Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 12 of 36

of their rights and obligations with respect to the Policies, which shall be reinstated as if this Agreement had never been drafted or executed.

4.2 Dismissal Conditions for purposes of Section 4.1 of this Agreement are: (i) the failure of the SJOP, after a good faith effort, to obtain, by December 31, 2011, a Confirmation Order, provided, however, that this date shall be extended by up to one year at the request of either the SJOP or Travelers and may be extended further by the consent of both Parties and the Official Committee of Unsecured Creditors, which consent shall not be unreasonably withheld; or (ii) the agreement of Travelers and the SJOP that the SJOP should seek dismissal of the Reorganization Case.

## 5. RELEASES AND SALE FREE AND CLEAR

5.1 From and after the Effective Date, neither the SJOP nor any Other Releasing Party shall commence against Travelers or the Travelers Released Parties any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance arising out of, connected with, or in any way relating to any of the Policies or any other policy of insurance issued by Travelers, any Tort Claim, any Extra Contractual Claim, and/or any other matter released pursuant to Section 5.2 below, unless this Agreement is properly terminated pursuant to Section 4 above.

5.2 Subject to entry of the Approval Order and the Plan Confirmation Order as Final Orders, and the payment of the sum set forth in Section 2.1, and without any further action by the Parties, the SJOP and the Other Releasing Parties, on the one hand, and Travelers and the Travelers Released Parties, on the other hand, each hereby fully, finally, and completely remises, releases, acquits, and forever discharges, as of the Effective Date, the other, and each of them, from any and all past, present, or future Claims in connection with, relating to or arising out of, in any manner or fashion, the Policies or any other policy of insurance issued by Travelers, including Claims that are actual or alleged, known or unknown, accrued or unaccrued, suspected or unsuspected (including Tort Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims relating to, or arising out of the Reorganization Case), whether such Claims seek compensatory damages, punitive damages, exemplary damages, statutorily multiplied damages, attorneys' fees, interest, costs, or any other type of monetary or nonmonetary relief.

5.3 The SJOP, the Other Releasing Parties, Travelers, and the Travelers Released Parties agree that, as set forth in the Approval Order, Travelers hereby buys back the Policies free and clear of all liens, encumbrances, and other Interests (as set forth in the Approval Order) of any Person, including all rights and Interests of the SJOP; all Other Releasing Parties; any other Person claiming coverage by, through, or on behalf of the SJOP or the Other Releasing Parties; any other

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 13 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 13 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

insurer; any Tort Claimant; and the General Curia of the Society of Jesus. This sale is pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code. The Parties, Other Releasing Parties, and Travelers Released Parties acknowledge and agree that (i) Travelers is a good faith purchaser of the Policies within the meaning of Section 363(m) of the Bankruptcy Code and (ii) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Policies and constitutes reasonably equivalent value. The Parties, Other Releasing Parties, and Travelers Released Parties agree (as set forth in the Approval Order) that the releases in this Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws. The Parties, Other Releasing Parties, and Travelers Released Parties agree (as set forth in the Approval Order) that, upon the payment of the Settlement Amount by Travelers, the Policies shall be terminated and of no further force and effect. The Parties, Other Releasing Parties, and Travelers Released Parties further agree that Travelers' payment of the Settlement Amount constitutes Travelers' full and complete performance of any and all obligations under the Policies, including any performance owed to the SJOP and/or any of the Other Releasing Parties, and exhausts all limits of liability of the Policies. The Parties, Other Releasing Parties, and Travelers Released Parties agree that all rights, title, or interest the SJOP or Other Releasing Parties may have had, may presently have, or in the future may have in the Policies are released pursuant to the terms of this Agreement. The Parties, Other Releasing Parties, and Travelers Released Parties further agree that the SJOP and the Other Releasing Parties accept the Settlement Amount in full and complete satisfaction of all Travelers' past, present, and future obligations, including any obligations to the SJOP and the Other Releasing Parties, or any of them, under the Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such claims are in any way related to, connected with, based on, or arise out of the Tort Claims, the Reorganization Case, or otherwise under the Policies.

5.4    If, contrary to the specific intent of the Parties, Other Releasing Parties, and Travelers Released Parties, any Claims released pursuant to Section 5.2, including any Insurance Coverage Claim, are deemed to survive this Agreement, even though they are encompassed by the terms of the release set forth in this Section 5 of this Agreement, the Parties, Other Releasing Parties, and Travelers Released Parties hereby forever, expressly, and irrevocably waive entitlement to and agree not to assert any and all such Claims. If, contrary to the specific intent of the Parties, Other Releasing Parties, and Travelers Released Parties, CMS makes a claim against Travelers, such claim or its resolution shall not be deemed a breach of this Agreement.

SETTLEMENT AGREEMENT,                          Page 14 of 26                    In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                     D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 14 of 36

5.5 The releases set forth in this Section 5, as well as all other provisions in this Agreement, are not intended to apply to or have any effect on Travelers' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Policies or any other policy of insurance issued by Travelers.

5.6 Nothing in this Section 5 is intended to, nor shall be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Agreement.

## 6. REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1 Each of the Parties, the Other Releasing Parties, and the Travelers Released Parties separately represents and warrants as follows:

6.1.1 To the extent it is a corporation, including a non-profit corporation, or other legal entity, it has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to approval of the Bankruptcy Court;

6.1.2 Subject to entry of the Approval Order and Plan Confirmation Order as Final Orders, the execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of the Parties, the Other Releasing Parties, and the Travelers Released Parties and by all other necessary actions of the Parties, Other Releasing Parties, and Travelers Released Parties; and

6.1.3 This Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and has been executed and delivered in good faith, pursuant to arm's length negotiations and for value and valuable consideration.

6.2 Each of the Parties and Other Releasing Parties has conducted and completed a thorough and good faith search for any policy of insurance that might exist, or other evidence of any such policy of insurance, under which Travelers was or might be, with respect to any Tort Claim, an insurer of SJOP, Montana Catholic Missions, S.J., Mount St. Michael, Pioneer Educational Society, Pioneer Education Society, Pioneer Educational Society dba Bea House, Society of Jesus, Alaska or Fr. Patrick J. Lee, S.J. on behalf of the Office of the Very Reverend Father Provincial of the SJOP. Other than the policies identified in Exhibit 2, no other policies of insurance have been located.

6.3 The person(s) executing this Agreement on behalf of the Other Releasing Parties represents and warrants that he/she has received authority from such Other Releasing Parties, as the case may be, to execute this Agreement on their behalf and to provide the releases identified in Section 5 above on behalf of such Other Releasing Parties.

SETTLEMENT AGREEMENT,                    Page 15 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                        D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)              Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 15 of 36

6.4     Subject to the provisions of Sections 2.3.1 through 2.3.6, the SJOP agrees that the Trust and any plan of reorganization as to SJOP shall provide that the Settlement Amount shall be used solely for payment of indemnity and expenses relating to reimbursing the United States government for reimbursement obligations for Conditional Payments made pursuant to the MSPA applicable to any given Medicare Beneficiary and, after satisfaction thereof, to such Medicare Beneficiaries, Tort Claimants and the attorneys for Tort Claimants.

## 7.     ACTIONS INVOLVING THIRD PARTIES

7.1     For purposes of supporting the release granted in Section 5 and the extinguishment of any and all rights under the Policies resulting from the purchase and sale thereof contemplated by this Agreement, the SJOP and each Other Releasing Party hereby agrees as follows:

    7.1.1    In the event that any other insurer of the SJOP or Other Releasing Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Travelers as a result of a claim for contribution, subrogation, indemnification, or other similar claim against Travelers for Travelers' alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of Travelers for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Agreement, the SJOP or Other Releasing Party(ies), as applicable, shall voluntarily reduce its judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to satisfy such contribution, subrogation, indemnification, or other claims against Travelers. To ensure that such a reduction is accomplished, Travelers shall be entitled to assert this Section as a defense to any action against Travelers brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Travelers and the Travelers Released Parties from any liability for the judgment or Claim.  Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against Travelers, such Claim may be asserted as a defense against the Trust (under a plan of reorganization as to SJOP contemplated by the Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of Travelers in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or SJOP or the Other Releasing Parties) shall be reduced dollar for dollar by the amount so determined.

7.2     Travelers shall not seek reimbursement for any payments it is obligated to make under this Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other insurer of the SJOP unless that other insurer first seeks contribution, subrogation, indemnification, or similar

SETTLEMENT AGREEMENT,                    Page 16 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                         D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)               Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 16 of 36

relief from Travelers. The SJOP shall use its reasonable best efforts to obtain from all insurers with which it settles agreements similar to those contained in this Section 7; provided, however, that the failure of the SJOP, despite its reasonable best efforts, to obtain such an agreement from any insurer with which it settles will not be a basis to terminate this Agreement or excuse Travelers from performing its obligations hereunder, including, without limitation, payment of the Settlement Amount.

8. **MISCELLANEOUS**

8.1    In the event that any proceedings are commenced to invalidate all or any part of this Agreement, the Parties, Other Releasing Parties, and Travelers Released Parties agree to cooperate fully to oppose such proceedings. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Agreement, the Parties, Other Releasing Parties, and Travelers Released Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

8.2    Each Party, Other Releasing Party, and Travelers Released Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

8.3    The Parties, Other Releasing Parties, and Travelers Released Parties shall cooperate with each other in connection with the Procedures Motion, the Approval Motion, the Procedures Order, the Stipulated Order, the Approval Order, the Plan Confirmation Order, and the Reorganization Case. Such cooperation shall include consulting with each other upon request concerning the status of proceedings and providing each other with copies of requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court; provided, however, that nothing contained in this Section shall obligate any Party, Other Releasing Parties, or Travelers Released Parties to provide any information that is otherwise subject to the attorney-client privilege or work-product doctrine.

8.4    This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties, the Other Releasing Parties, and the Travelers Released Parties. Except as otherwise expressly provided herein, this Agreement supersedes all prior communications, settlements, and understandings between the Parties, the Other Releasing Parties, and the Travelers Released Parties, and their representatives, regarding the matters addressed by this Agreement. Except as explicitly set forth in this

SETTLEMENT AGREEMENT,           Page 17 of 26          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                          D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 17 of 36        Case 09-30938-elp11    Doc 1336    Filed 07/29/11

Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements, promises, or inducements, whether made by any party or any agents of any party, that are not contained in this Agreement shall not be valid or binding. Any changes to this Agreement must be made in writing and with the consent of the Parties, Other Releasing Parties, and Travelers Released Parties.

8.5 By entering into this Agreement, none of Parties, the Other Releasing Parties, or Travelers Released Parties has waived or shall be deemed to have waived any rights, obligations, or positions it or they have asserted or may in the future assert in connection with any matter or Person outside the scope of this Agreement. SJOP's and the Other Releasing Parties' respective rights under policies of insurance issued by insurers other than Travelers shall not be affected by this Agreement (except to the extent expressly stated in Section 7.1 of this Agreement). No part of this Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding by any Person as evidence of the rights, duties, or obligations of any of the Parties, Other Releasing Parties, or Travelers Released Parties with respect to matters or Persons outside the scope of this Agreement. All actions taken and statements made by the Parties, Other Releasing Parties, and/or Travelers Released Parties, or by their representatives, relating to this Agreement or participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

8.6 This Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession by any Party, Other Releasing Parties, or Travelers Released Parties of liability, culpability, wrongdoing, or insurance coverage. Settlement negotiations leading up to this Agreement, all related discussions and negotiations, and all prior drafts of this Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, Other Releasing Parties, or Travelers Released Parties except that they shall be admissible to the extent they would have otherwise been admissible, absent this paragraph 8.6, in (i) an action or proceeding to enforce the terms of this Agreement or (ii) any possible action or proceeding between Travelers and any of its reinsurers. This Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret Travelers' obligations under the Policies or any other policy of insurance issued by Travelers, with respect to any Claims against Travelers.

SETTLEMENT AGREEMENT,                    Page 18 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                        D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 18 of 36                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11

8.7 The Settlement negotiations leading up to this Agreement, all related discussions and negotiations, and all prior drafts of this Agreement shall be deemed and remain confidential, except that such negotiations, discussions and drafts may be disclosed (i) pursuant to an Order of Court or written agreement between the Parties, (ii) in an action or proceeding to enforce the terms of this Agreement or (iii) in any possible action or proceeding between Travelers and any of its reinsurers. Neither the SJOP nor any of the Other Releasing Parties shall make any public statements or disclosures (i) regarding Travelers' rationale or motivation for negotiating or entering into the settlement, or (ii) asserting or implying in any way that Travelers acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising from, in connection with or relating in any way to the Policies, including its handling of or involvement in connection with the Tort Claims or the resolution of the Tort Claims. Nor Shall Travelers make any public statements or disclosures (i) regarding the SJOP's or any of the Other Releasing Parties' rationale or motivation for negotiating or entering into the settlement, or (ii) asserting or implying in any way that the SJOP or any of the Other Releasing Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising from, in connection with or relating in any way to the Policies, including their handling of or involvement in connection with the Tort Claims or the resolution of the Tort Claims.

8.8 Neither this Agreement nor the rights and obligations set forth in this Agreement shall be assigned without the prior written consent of the other Parties, except an assignment that occurs as a matter of law by virtue of a merger of a Party or any of the Other Releasing Parties with another corporation or entity. The SJOP and the Other Releasing Parties covenant that they have not and will not assign any right, interest, or action on the Policies or any other policy of insurance issued by Travelers.

8.9 Section titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

8.10 All notices, demands, or other communication to be provided pursuant to this Agreement shall be in writing and sent by FedEx or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

If to Travelers:

Ed Zawitoski
Senior Vice President
Travelers
111 Schilling Road

SETTLEMENT AGREEMENT,                    Page 19 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                        D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 19 of 36                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11

Hunt Valley, MD 21031-1110

With a copy to:

Robert M. Vinci
Michael P. Pompeo
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, New Jersey 07932


and

Frederick P. Marczyk
Drinker Biddle & Reath LLP
One Logan Square, Ste. 2000
Philadelphia, PA  19103-6996


If to the SJOP:

Fr. Patrick J. Lee, S.J.
c/o SOCIETY OF JESUS, OREGON PROVINCE
3215 SE 45th Avenue
Portland, OR 97206
Fax:  (503) 228-6741

and

William L. Lockyear
c/o SOCIETY OF JESUS, OREGON PROVINCE
3215 SE 45th Avenue
Portland, OR 97206
Fax:  (503) 228-6741

With a copy to:

Howard M. Levine
Thomas W. Stilley
SUSSMAN SHANK LLP
1000 SW Broadway
Suite 1400
Portland, Oregon  97205-3089
Fax:  (503) 248-0130

SETTLEMENT AGREEMENT,                    Page 20 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                        D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 20 of 36

and

James R. Murray
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Fax: (202) 420-2201

If to Official Committee for the Unsecured Creditors:

James I. Stang
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067-4100
Fax: (310) 772-2354

with a copy to:

Paul A. Richler
Morgan Lewis & Bockius LLP
300 South Grand Ave, 22nd Fl.
Los Angeles, CA 90071-3132
Fax: (213) 612-2501

and to counsel for the Trust after it comes into existence, if different from the address of counsel for the Official Committee of Unsecured Creditors.

8.11    This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile or other electronic image, which facsimile or other electronic image counterparts shall be deemed to be originals.

8.12    Nothing contained in this Agreement shall be deemed or construed to constitute (i) an admission by Travelers that the SJOP, the Other Releasing Parties, or any other Person was or is entitled to any insurance coverage under the Policies or any other policy of insurance issued by Travelers or as to the validity of any of the positions that have been or could have been asserted by the SJOP or Other Releasing Parties, (ii) an admission by the SJOP or Other Releasing Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by Travelers or any Claims that have been or could have been asserted by the SJOP or Other Releasing Parties against Travelers, or (iii) an admission by the Parties, Other Releasing Parties, or Travelers Released Parties of any liability whatsoever with respect to any of the Tort Claims.

SETTLEMENT AGREEMENT,                    Page 21 of 26                    In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                              D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 21 of 36

8.13    All of the entities included in the definition of Travelers and Travelers Released Parties are intended beneficiaries of this Agreement. Except as set forth in the preceding sentence or otherwise set forth in this Agreement, there are no third-party beneficiaries of this Agreement.

8.14    Except as otherwise provided in this Agreement, each Party, the Other Releasing Parties, and the Travelers Released Parties shall be responsible for their own fees and costs incurred in connection with the Reorganization Case or this Agreement.

8.15    The Bankruptcy Court in the Reorganization Case shall retain exclusive jurisdiction to interpret and enforce the provisions of this Agreement, which shall be construed in accordance with Oregon law.

[Remainder of page left blank intentionally]

SETTLEMENT AGREEMENT,                    Page 22 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                        D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)          Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 22 of 36

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of the SJOP (as defined herein)**

By: _____
Fr. Patrick J. Lee, S.J.

Date: _____8 June 2011_____

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 23 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 23 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of the OTHER RELEASING PARTIES (as defined herein)**

By: _Patrick Lee_ s.j.
Fr. Patrick J. Lee, S.J.

Date: _8 June 2011_

Witness: _Michael Townsell_

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 24 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 24 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of TRAVELERS (as defined herein)**

By: _____

Ed Zawitoski

Title: 2nd V.P. _____

Date: 6-7-2011 _____

Witness: Cynthia Brown _____

SETTLEMENT AGREEMENT,                Page 25 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                    D. Or. Bankr. Docket No. 09-30938-elp11
Exhibit 1.145(e)
Page 25 of 36            Case 09-30938-elp11    Doc 1336    Filed 07/29/11

The Official Committee of Unsecured Creditors [Doc 66] hereby (a) agrees that it has not and will not file or pursue any Avoidance Actions (as that phrase is defined in the Order dated February 15, 2011 [Doc 1016]), against Travelers or Travelers Released Parties; and (b) consents and agrees to the releases by the SJOP set forth in Section 5 of this Agreement to the extent they release or purport to release any Avoidance Actions against Travelers or Travelers Released Parties.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _James Stang_
[Insert Name] James Stang

Title: _Attorney_

Date: _6/8/11_

Witness: _Bell Ko_

SETTLEMENT AGREEMENT,                    Page 26 of 26                    In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                              D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 26 of 36          Case 09-30938-elp11     Doc 1336     Filed 07/29/11

**Exhibit 1**
**to Settlement Agreement, Release, and Policy Buyback**

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| In re: | Case No. 09-30938-elp11 |
| SOCIETY OF JESUS, OREGON PROVINCE, an Oregon domestic non profit religious corporation, | [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT WITH TRAVELERS INCLUDING THE SALE OF INSURANCE POLICIES |
| Debtor. | (Docket ___, filed _____) |

A hearing having been held (the "Hearing"), to consider the motion, dated _____ __, 2011 (the "Motion"), of the Society of Jesus, Oregon Province, an Oregon non-profit religious corporation and the debtor and debtor in possession (the "SJOP" or the "Debtor") in the above-captioned Chapter 11 reorganization case (the "Reorganization Case"), for an order pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002, 6004, and 9019: (i) authorizing the SJOP to enter into a compromise and settlement with Travelers[1] and Travelers Released Parties pursuant to which the SJOP and the Other Releasing Parties will release any and all Claims arising out of, relating to, or in any way connected with the Policies, including, without limitation, Tort Claims, Extra-Contractual Claims, and all Claims relating to or arising out of the Reorganization Case that they may have now or in the future against Travelers and/or the Travelers Released Parties; (ii) authorizing the sale of the Policies, free and clear of all Interests of any Person, pursuant to the terms and conditions of that Settlement Agreement, Release, and Buyback dated as of _____ __, 2011, between the SJOP and Other Releasing Parties, on the one hand, and Travelers and Travelers Released Parties, on the other, a copy of which is annexed to the Motion as Exhibit 1 and incorporated by reference (the "Agreement"); (iii) approving the Agreement and each of its terms; and (iv) requesting the findings and admissions set forth herein. The Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334, and consideration of the Motion, the relief requested therein, and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearances of all interested parties and all responses and objections to the Motion, if any, having been duly noted in the record of the Hearing; and upon the record of the Hearing, the Motion, said responses and objections, if any; and after due deliberation and sufficient cause appearing therefor, the Court hereby makes the following:

---

[1] Capitalized terms used herein that are not otherwise defined herein will have the same meaning as in the Agreement.

EXHIBIT 2 TO SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 27 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

FINDINGS OF FACT AND CONCLUSIONS OF LAW

JURISDICTION, FINAL ORDER, AND STATUTORY PREDICATES

1.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

2.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O). Venue of the Reorganization Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.     This Order constitutes a final and immediately appealable order within the meaning of 28 U.S.C. § 158(a).

5.     The statutory predicates for the relief sought in the Motion are 11 U.S.C.§§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, and 9019.

RETENTION OF JURISDICTION

6.     It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting, any of the transactions contemplated under the Agreement. Such jurisdiction shall be retained even if the case is closed and the case may be reopened for such purpose.

NOTICE OF THE MOTION

7.     The SJOP has provided due and adequate notice of the Motion, the Hearing, the Agreement, and the subject matter thereof, including the injunctions to protect Travelers and the Travelers Released Parties to be included in the Plan Confirmation Order, to all known claimants (including all Tort Claimants and other claimants who have filed proofs of claim, all Tort Claimants scheduled by the SJOP, counsel for the Official Committee of Unsecured Creditors, the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412]), all Persons who have filed notices of appearance in the Reorganization Case, all entities known to have provided general liability insurance to the SJOP, the Other Releasing Parties and the Jesuit Volunteer Corps.  The notice was served on all claimants, including Tort Claimants, at the address shown on their proofs of claim or to their counsel of record (with a single notice to any counsel of record who represents multiple Tort

EXHIBIT 1 TO SETTLEMENT AGREEMENT,           Page 2 of 9           In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                    D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 28 of 36

Claimants constituting notice to all that counsel's clients who are Tort Claimants) or, if no proof of claim was filed, then at the address on SJOP's schedules. Counsel for each Tort Claimant has also been served. Known Tort Claimants, to the extent of record, shall be served even if not scheduled or the subject of a proof of claim, to the extent known to SJOP. The General Curia of the Society of Jesus was given notice by international mail c/o Fr. Adolfo Nicholás at his official address in Rome, Italy, with a copy to its Portland-based counsel in the Reorganization Case. Any and all co-defendants and their counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants have been given notice at the last address shown on any filed appearance or, if such co-defendant is proceeding *pro se*, then to the last address of record for such *pro se* co-defendant. The SJOP also provided adequate notice to all other parties-in-interest by publication twice in the USA Today, Oregonian, Anchorage Daily News, Fairbanks Daily News-Miner, Seattle Times, Spokesman-Review, Missoulian, and Idaho Statesman.

8.     No other or further notice is necessary. Notice of the Agreement and Motion is sufficient to bind, with respect to the relief ordered herein, all known and unknown creditors and claimants, including the Future Claimants Representative and all Persons whose Claims and Interests he represents, and all Persons who receive non-publication notice pursuant to paragraph 7 of this Order. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known claimants and all parties-in-interest. As to unknown creditors, the publication notice was "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice provided to the General Curia of the Society of Jesus is sufficient for purposes of this settlement; notice to an attorney of a Tort Claimant or co-defendant of SJOP sued by a Tort Claimant constitutes notice to the claimant represented by the attorney.

### SOUND BUSINESS JUDGMENT AND REASONABLENESS

9.     The relief requested in the Motion is in the best interests of the SJOP, its creditors, the holders of all Claims, including the holders of Tort Claims, and other parties-in-interest. The SJOP has demonstrated good, sufficient, and sound business purposes, cause, and justifications for the relief requested in the Motion and the approval of the transaction contemplated thereby. The settlement and compromise with Travelers and Travelers Released Parties embodied in the Agreement, including, without limitation, the sale of the Policies and the release of claims as set forth therein are within the reasonable range of litigation outcomes if the SJOP and Other Releasing Parties were to litigate the matters resolved pursuant to this Order and represent fair and reasonable consideration for the sale of the Policies and release of claims as set forth therein. The transactions contemplated by the Motion and Agreement are in compliance with, and satisfy the requirements for, approval of a settlement or compromise pursuant to Bankruptcy Rule 9019 and all applicable provisions of the Bankruptcy Code, including without limitation Sections 105(a) and 363 of the Bankruptcy Code, and applicable non-bankruptcy laws.

EXHIBIT 1 TO SETTLEMENT AGREEMENT,            Page 3 of 9            In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                       D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11
Page 29 of 36

GOOD FAITH OF INSURANCE POLICY PURCHASER

10.     The Agreement was negotiated and proposed, and has been entered into by the Parties, in good faith, from arm's length bargaining positions, and without fraud or collusion. The Parties were represented by counsel. The sale consideration and other consideration to be realized by the SJOP pursuant to the Agreement is fair and reasonable. Travelers is a good faith purchaser for value within the meaning of 11 U.S.C. § 363(m) and is entitled to the protection thereof, and neither the Agreement nor the transaction contemplated thereby are subject to avoidance under 11 U.S.C. § 363(n). None of the SJOP, Other Releasing Parties, Travelers, or Travelers Released Parties has engaged in any conduct that would cause or permit the Agreement, or the sale of the Policies, to be avoided under 11 U.S.C. § 363(n) or that would prevent the application of 11 U.S.C. § 363(m) or cause the application of 11 U.S.C. § 363(n). Furthermore, in the absence of a stay pending appeal, if any, Travelers will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in consummating the contemplated transactions at any time after entry of this Order.

SATISFACTION OF SECTION 363 AND OTHER
BANKRUPTCY CODE REQUIREMENTS

11.     The transactions contemplated by the Motion and the Agreement are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. § 363.

12.     The SJOP may sell the Policies free and clear of Interests under 11 U.S.C. § 363(f) because, in each case, one or more of the criteria set forth in sections 11 U.S.C. § 363(f)(1)-(5) have been satisfied. Those holders of Interests against any of the Policies and/or Claims thereunder who did not object, or who withdrew their objections, to the Motion or the relief requested therein are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2). Each holder of an Interest in the Policies, including any claim thereunder, can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Interest as contemplated by 11 U.S.C. § 363(f)(5). The Claims and Interests held by persons whose Interests are represented by the Future Claimants Representative are "claims" within the meaning of Section 101(5) of the Bankruptcy Code.

13.     The sale of the Policies provides claimants, including holders of Tort Claims, with adequate protection. In particular, the Tort Claimants will be able to pursue their Claims against the Trust being created under the First Modified Joint Plan of Reorganization Dated May 27, 2011 as contemplated by this Agreement (the "Plan"). Accordingly, the sale of the Policies free and clear of Interests satisfies the statutory prerequisites of 11 U.S.C. § 363(f). Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against Travelers or a Travelers Released Party, such Claim may be asserted as a defense against the Trust (under the Plan contemplated by the Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of Travelers or the Travelers Released Party in response thereto); and to the extent such a Claim is determined to

EXHIBIT 1 TO SETTLEMENT AGREEMENT,          Page 4 of 9          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                         D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 30 of 36                 Case 09-30938-elp11     Doc 1336     Filed 07/29/11

be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or SJOP) shall be reduced dollar for dollar by the amount so determined.

### RELEASES

14. In light of the terms of the Agreement, it is reasonable and appropriate for the SJOP and Other Releasing Parties to provide the releases set forth in the Agreement. These releases comply with the Bankruptcy Code and other applicable laws. The consideration given by Travelers hereunder constitutes valid and valuable consideration for the releases by SJOP and the Other Releasing Parties.

### NO SUCCESSOR LIABILITY

15. The transfer pursuant to the Agreement of the Policies does not and will not subject or expose Travelers or any Travelers Released Party to any liability, claim, cause of action, or remedy by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, including, without limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity.

16. No common identity of officers or directors exists between Travelers or the Travelers Released Parties, on the one hand, and the SJOP or the Other Releasing Parties, on the other hand.

17. Travelers is purchasing the Policies pursuant to the Agreement and this Order. Travelers is not purchasing any other assets of the SJOP or the Other Releasing Parties. Travelers shall not have any responsibility or liability with respect to any of the other assets of the SJOP or the Other Releasing Parties.

18. A sale of the Policies other than one free and clear of Interests would impact adversely on the SJOP and creditors and would be of substantially less benefit to the estate of the SJOP.

### SUPPLEMENTAL INJUNCTION

19. Issuing a Supplemental Injunction under 11 U.S.C. §§ 105(a) and 363 is essential to the reorganization of the SJOP. The SJOP and Travelers have agreed that a supplemental injunction is a necessary prerequisite for their implementing the terms and conditions of the Agreement, and Travelers will not consummate the sale of the Policies in the absence of a Supplemental Injunction from this Court. Due and adequate notice of the Supplemental Injunction has been provided by the notice of the motion.

20. Travelers and the Travelers Released Parties shall be entitled to the benefit of an injunction (the "Supplemental Injunction" as defined in the Agreement) in the

EXHIBIT 1 TO SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 5 of 9

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 31 of 36

Case 09-30938-elp11     Doc 1336     Filed 07/29/11

Plan Confirmation Order, providing that, pursuant to 11 U.S.C. §§ 105(a) and 363, any and all Persons and entities who now hold or who may in the future hold Claims or Interests of any kind or nature against the SJOP, the Other Releasing Parties, Travelers, Travelers Released Parties, or the Policies relating to or in connection with the Policies, Tort Claims or Abuse Claims (as defined in the Plan) are barred and permanently enjoined from asserting such Claims or Interests against Travelers, any Travelers Released Party, and/or the Policies. Nothing in this paragraph shall bind the Court as to approval of such an injunction in the Plan.

*   *   *

For all of the foregoing and after due deliberation, **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

A.     The Motion is GRANTED and APPROVED in all respects.

B.     The Agreement and each of its terms and conditions are hereby approved, including without limitation the agreement of the Official Committee of Unsecured Creditors as set forth on its signature page of the Agreement.

C.     For the reasons set forth herein and on the record at the Hearing, all objections to the Motion and the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits.

D.     The SJOP is authorized, empowered, and directed to enter into the Agreement, pursuant to 11 U.S.C. § 363(b) and other applicable provisions of the Bankruptcy Code, to sell, transfer, and convey its Interest in the Policies to Travelers in accordance with the terms and subject only to the conditions specified herein and in the Agreement. The transfer by the SJOP or Other Releasing Parties of their respective Interests in the Policies shall vest Travelers with all right, title, and Interest in and to the Policies, free and clear of all rights, Claims, and Interests, including all Tort Claims, reimbursement obligations for Conditional Payments under the MSPA, and Claims by other insurers for contribution, indemnity, subrogation, or similar relief whether arising before or after commencement of this Reorganization Case and whether arising by agreement, understanding, law, equity, or otherwise.

E.     The terms of the Agreement are approved in their entirety, and this Order shall be binding upon the SJOP, all creditors of and claimants against the SJOP, Other Releasing Parties, all Tort Claimants, all insurers who received notice of the motion, the Future Claimants Representatives and all Persons whose Claims and Interests he represents, the General Curia of the Society of Jesus, all co-defendants in pre-petition actions by Tort Claimants against the SJOP, and all other Persons and entities as set forth in paragraph 8 *supra*, and each of their successors and assigns. The sale of the Policies to Travelers shall constitute a legal, valid, and effective transfer of the Policies and shall vest Travelers with all right, title, and Interest in and to the Policies free and clear of all rights, claims, and Interests, effective as of

EXHIBIT 1 TO SETTLEMENT AGREEMENT,          Page 6 of 9                    In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                           D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 32 of 36                    Case 09-30938-elp11     Doc 1336     Filed 07/29/11

the Effective Date. The sale of the Policies to Travelers is subject to the Conditions to Agreement set forth in Section 4 of the Agreement.

F.       The $1,400,000 cash purchase price under the Agreement shall be paid by Travelers as provided in the Agreement.

G.       The releases in the Agreement comply with the Bankruptcy Code and all applicable state laws. The Agreement terminates the Policies pursuant to its terms, and the Policies are of no further force and effect.

H.       The sale of the Policies to Travelers under the Agreement will constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the State of Oregon.

I.       The SJOP and the Other Releasing Parties and Travelers are each hereby authorized to take all actions and execute all documents and instruments that the SJOP, the Other Releasing Parties, and Travelers deem necessary or appropriate to implement and effectuate the transactions contemplated by the Agreement.

J.       Pursuant to 11 U.S.C. §§ 105(a) and 363(f), as provided by the Agreement, the Policies shall be and hereby are transferred to Travelers, free and clear of all liens, Claims, encumbrances and Interests of any Person, including all rights and Interests of SJOP; all Other Releasing Parties; any other Person claiming by, through, or on behalf of the SJOP; any other insurer; any Tort Claimant; all co-defendants in any pre-petition litigation brought by Tort Claimants; the Jesuit Volunteer Corps; and the General Curia of the Society of Jesus, whether arising prior to or subsequent to the commencement of the Reorganization Case, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, Interests in the Policies that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the Interest of the bankruptcy estate or Travelers, as the case may be, in the Policies).

K.       Travelers shall be treated as a "Settling Insurer" under the Plan and shall be afforded (a) all of the rights, interests, and benefits of a Settling Insurer designated under the Plan and Plan Confirmation Order as a Settling Insurer including, but not limited to, the channeling injunctions and other rights, benefits and interests set forth in Article 11 of the Plan.

L.       Travelers is a good faith purchaser of the Policies and is entitled to (and is hereby granted) all of the protections provided to good faith purchasers under 11 U.S.C. § 363(m). The transactions contemplated by the Agreement shall not be subject to avoidance under 11 U.S.C. § 363(n). All Persons are hereby enjoined from commencing or continuing an action seeking relief under 11 U.S.C. § 363(n) with respect to the Agreement and the transactions contemplated thereby.

M.       Travelers and the Travelers Released Parties are not, and shall not be deemed to be, a successor to the SJOP or the Other Releasing Parties by reason of any theory of

Exhibit 1 to Settlement Agreement,                    Page 7 of 9                    In re Society of Jesus, Oregon Province
Release, and Policy Buyback                                                                            D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 33 of 36                    Case 09-30938-elp11     Doc 1336     Filed 07/29/11

law or equity or as a result of the consummation of the transactions contemplated in the Agreement or otherwise. Travelers and the Travelers Released Parties shall not assume any liabilities of the SJOP or the Other Releasing Parties.

N.      Pursuant to Fed. R. Bankr. P. 9019, the releases and provisions set forth in Sections 5.1 - 5.6 of the Agreement are expressly approved. All of the Claims released therein are hereby dismissed and forever released effective as set forth under the Agreement.

O.      In the event that the Court approves a plan of reorganization for SJOP that is consistent with the Agreement, such plan shall provide that the Trust is bound by the Agreement, will include the Supplemental Injunction, will provide for the relief specified in Section 3.4 of the Agreement, and will provide for the use of the Settlement Amount as specified in Section 6.4 of the Agreement. In addition, any injunction in such plan that channels Tort Claims to the Trust will include Travelers and the Travelers Released Parties as a third party entitled to its benefits and protections.

P.      This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Fed. R. Bankr. P. 6004(h) or any other applicable provision.

Q.      Nothing in this Order or the Plan Confirmation Order shall bar or limit Claims by a Tort Claimant against the Society of Jesus (Rome), the Society of Jesus General Curia, The Father General of the Society of Jesus (Rome) and his predecessors, and any successors to SJOP but only to the extent the liability of such successor is entirely independent of the liability of (a) SJOP, (b) any insured under any policy of insurance issued or allegedly issued by Travelers that insures or otherwise provides coverage or allegedly insures or allegedly otherwise provides coverage for the SJOP and/or any of the Other Releasing Parties, and/or (c) any Other Releasing Party.

R.      This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Agreement and this Order in all respects and further to hear and determine any and all disputes between the SJOP and/or the Other Releasing Parties and/or Travelers and/or the Travelers Released Parties, as the case may be, and any other Person; provided, however that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Agreement or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter. In the event this case has been closed, there shall be a right to have this case reopened upon ex parte motion or application for such purposes.

S.      The failure to specifically include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

T.      The provisions of this Order are nonseverable and mutually dependent.

**EXHIBIT 1 TO SETTLEMENT AGREEMENT,**
**RELEASE, AND POLICY BUYBACK**

Page 8 of 9

**In re Society of Jesus, Oregon Province**
**D. Or. Bankr. Docket No. 09-30938-elp11**

Exhibit 1.145(e)
Page 34 of 36

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

U.    This Order shall inure to the benefit of Travelers, the Travelers Released Parties, the SJOP, the Other Releasing Parties and their respective successors and assigns and shall be binding upon the SJOP and the Other Releasing Parties.

V.    Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing, recording or otherwise any and all documents and instruments necessary and appropriate to consummate and/or evidence the transactions contemplated by the Agreement and this Order.

Dated: _____ ___, 2011


_____
**United States Bankruptcy Judge**

Exhibit 1 to Settlement Agreement,                   Page 9 of 9                   In re Society of Jesus, Oregon Province
Release, and Policy Buyback                                                                       D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)                           Case 09-30938-elp11     Doc 1336     Filed 07/29/11
Page 35 of 36

**EXHIBIT 2**
**to Settlement Agreement, Release, and Policy Buyback**

The following insurance policies and alleged insurance policies are included within the definition of Policies and were issued or allegedly issued by the following insurers:

| Insurer | Policy No. |
|---|---|
| Fidelity and Guaranty Insurance Underwriters, Inc. | 1MP 300401354 00 |
| Fidelity and Guaranty Insurance Underwriters, Inc. | 1MP 300889028 00 |
| Fidelity and Guaranty Insurance Underwriters, Inc. | 1MP 300889028 01 |
| Fidelity and Guaranty Insurance Company | 1MP 300889028 02 |
| Fidelity and Guaranty Insurance Company | 1MP 300889028 03 |
| American Equity Insurance Company | AC 01210 |
| American Equity Insurance Company | AC 01233 |
| Travelers Indemnity Company Of Illinois | P-630-225D957A-TIL-01 |
| Travelers Indemnity Company Of Illinois | PSM-CUP-225D957A-TIL-01 |
| Travelers Indemnity Company Of Connecticut | P-630-225D957A-TCT-02 |
| Travelers Indemnity Company Of Connecticut | P-630-225D957A-TCT-03 |
| Travelers Indemnity Company Of Connecticut | P-630-225D957A-TCT-04 |

EXHIBIT 2 TO SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.145(e)
Page 36 of 36

Case 09-30938-elp11     Doc 1336     Filed 07/29/11

# SOCIETY OF JESUS, OREGON PROVINCE TRUST AGREEMENT
## FOR QUALIFIED SETTLEMENT FUND

This TRUST AGREEMENT FOR QUALIFIED SETTLEMENT FUND ("Trust Agreement") is entered into as of the ___ day of _____, 2011, pursuant to the Order ("Confirmation Order"), dated 2011, confirming Plan of Reorganization (the "Plan"), dated April 4, 2011, in *In re Society of Jesus, Oregon Province* (Bankr. D. Ore.), Case no. 09-30938-elp11 by the Society of Jesus, Oregon Province ("Debtor"), an Oregon domestic nonprofit religious corporation, and Omni Management Group, LLC, the Trustee. All capitalized terms not defined herein have the definitions set forth in the Plan or the Safeco Settlement Agreement, as the case may be. A copy of the Plan and Supplemental Plan Documents are attached as Exhibit A (The Supplemental Plan Documents that include the Plan as an exhibit will intentionally omit the Plan).

**Article 1    Name of the Trust.**

1.1    The trust shall be known as the "Society of Jesus, Oregon Province Qualified Settlement Fund" and referred to herein as the "Trust."

**Article 2    Corpus of the Trust.**

2.1    The assets of the Trust (the "Trust Estate") shall include all property transferred to the Trust pursuant to the Plan including:

2.1.1    All sums transferred to the Trust pursuant to the Plan or future orders of the Bankruptcy Court;

2.1.2    All rights of every kind, nature and description transferred to the Trust pursuant to the Plan or future orders of the Bankruptcy Court or otherwise belonging to the Trust;

2.1.3    The sum of Forty-Three Million One Hundred Thousand Dollars ($43,100,000.00) in Cash from the Reorganized Debtor and the Participating Parties,

2.1.4    Five Million Dollars ($5,000,000.00) in Cash plus interest accrued thereon from the Effective Date less the Allowed Amount of all unpaid fees and expenses of the Chapter 11 Professionals;

2.1.5    One Hundred Eighteen Million Dollars ($118,000,000) subject to the Safeco Settlement Agreement.

2.1.6    Sums received by the Reorganized Debtor and the Participating Parties from any settlements of Abuse Claims prior to the Effective Date; and.

2.1.7    All Avoidance Rights and claims against any co-defendants or others who are not Participating Parties for contribution or indemnity relating to the Abuse Claims. Notwithstanding the foregoing, the Trust Estate shall not include any Avoidance Rights or

contribution/indemnity claims related to the Abuse Claims that may exist against Seattle University.;

        2.1.8    Third Party Derivative Claims against Entities other than Seattle University and Participating Parties and

        2.1.9    All income and sale proceeds derived from any of the above assets of the Trust.

## Article 3      Purpose of the Trust.

    3.1    On the Effective Date, and in accordance with the Plan, the Trust will assume all liability and full responsibility for resolving and paying the Abuse Claims of all Abuse Claimants electing to use Allocation Plans I, II and III, and the Trust will assume all liability and full responsibility for resolving and paying all Litigation Current Abuse Claims and Future Abuse Claims. The Trust will assume full responsibility for: (a) establishing the respective reserves with respect to the Trust; (b) making payments to the holders of Class 3, 3A and 4 Claims that become payable under the Plan and Trust Documents, (c) collecting, investing and distributing the Trust's funds for the benefit of the Trust and; and (d) fulfilling all other obligations under the Trust Documents.

    3.2    This Trust Agreement sets forth the terms of the trust contemplated by the Plan. In the event of any inconsistency between the Plan and this Trust Agreement, the provisions of the Plan shall govern.

    3.3    The sole beneficiaries of the Trust are:(a) the holders of the Abuse Claims and (b) those for whom reserves for the various fees, costs and expenses, including reasonable attorneys' fees and costs, in administering the Trust have been established by the Plan the Trust Documents. No beneficiary of the Trust shall have any interest in any reserve established by the Trustee pursuant to the Plan and Trust Documents other than the reserve established for the payment of such beneficiary's Claim. No other creditors, including but not limited to the Class 15 creditors have any right, title or interest in the assets of the Trust.

## Article 4      Irrevocability of the Trust.

    4.1    The Trust shall be irrevocable. The Reorganized Debtor shall not alter, amend, revoke, or terminate the Trust. The Debtor shall have no power or authority to direct the Trustee to return any of the Trust estate of the Trust to the Reorganized Debtor.

## Article 5      Dissolution and Termination of the Trust.

    5.1    The Trust shall become effective as of the Effective Date following the execution of this Trust Agreement and shall remain and continue in full force and effect until entry of an order of the Bankruptcy Court upon motion of the Trustee terminating the Trust. Notice of the motion shall be sent to all persons who filed requests for special notice in the Debtor's chapter 11 case and who are entitled to notice through the Bankruptcy Court's ECF system ("Notice Parties"). The Bankruptcy Court may order dissolution of the Trust or may order that the

Exhibit _1. 147_
Page _2 of Page 1_
DOCS LA:231072.7 46352-002        2
Case 09-30938-elp11   Doc 1336   Filed 07/29/11

Trustee undertake such further actions as the Bankruptcy Court deems necessary and appropriate to carry out the provisions of the Plan. Upon entry of an order by the Bankruptcy Court authorizing dissolution of the Trust, the Trustee will promptly proceed to wind up the affairs of the Trust. Under no circumstance shall the Trust be dissolved prior to the fifteenth (15th) anniversary of the Effective Date

5.2     After the dissolution of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act in such capacity until its duties hereunder have been fully performed. The Trustee shall retain the books, records and files that shall have been delivered to or created by the Trustee until distribution of all the Trust's assets. At the Trustee's discretion, all of such records and documents may be destroyed at any time following the later of (x) the first anniversary of the final distribution of the Trust's assets, and (y) the date until which the Trustee is required by applicable law to retain such records and documents; provided that notwithstanding the foregoing the Trustee shall not destroy or discard any records or documents relating to the Trust without giving the Notice Parties reasonable prior written notice thereof.

5.3     Upon termination of the Trust, and provided that all fees and expenses of the Trust have been paid or provided for in full, the Trustee will deliver all funds and other investments remaining in the Trust, if any, including any investment earnings thereon, to a charity supporting survivors of childhood sexual abuse as set forth in the Confirmation Order.

5.4     The Court Order terminating the Trust shall provide, *inter alia*, for the discharge of the Trustee and its professionals, the exculpation of the Trustee and its professionals from liability, and the exoneration of the Trustee's bond.

**Article 6     Powers of Trustee.**

6.1     The Trustee is vested with all powers described in the Plan and necessary to effectuate the purpose of the Trust and to carry out the duties of the Trustee as set forth in the Plan. These powers include, but are not limited to, the following:

6.1.1     Bond, Management of the Trust Estate of the Trust.

The Trustee shall serve with a bond in the amount of $ **(To Be Determined In the Confirmation Order)**. The Trustee is empowered to manage the property of the Trust in order to effectuate the purpose of the Trust and the Plan, and shall have all rights, powers, duties and obligations provided by applicable law, save as may be modified elsewhere in this Trust Agreement.

6.1.2     Payment of Expenses of the Trust.

Subject to the Plan, the Trustee is empowered to incur on behalf of the Trust, and pay from the assets of the Trust, all fees, costs and expenses described in the Plan. These fees, costs and expenses include those payable to or on behalf of the Reorganized Debtor and those incurred by the Trustee in maintaining and administering the Trust including the fees of bankruptcy management companies, and the fees and costs of Professional Persons employed by the Trustee,

such as investment advisors, accountants, agents, managers, attorneys and contract attorneys, actuaries, or auditors, and the premiums charged by insurers, including professional liability insurers, title insurers, and escrow agents.

### 6.1.3    Payment of Abuse Claimants.

The Trustee is empowered to pay Abuse Claims pursuant to the terms of the Plan, subject to all limitations and conditions in the Plan and the Plan Documents.  The Trustee is empowered to comply with instructions of an Abuse Claimant to distribute funds from the Trust to a third party for the purposes of creating a structured settlement fund; however the Trustee and the Trust shall not be liable to the Abuse Claimant if the purposes of a structured settlement fund are not accomplished.

The Trustee shall be entitled to rely on the authenticity of the signature(s) of the Abuse Claim Reviewer(s), and the accuracy of the information set forth by the Abuse Claim Reviewer(s) in the administration of the Allocation Plans without any verification or confirmation.

### 6.1.4    Compliance with Section 13 of the Plan (Non Monetary Covenants)

The Trustee shall monitor the Reorganized Debtor's obligation to file compliance reports with the Bankruptcy Court as set forth in Section 13 of the Plan.  The Trustee shall not have any duty to monitor the Debtor's compliance with any other provision of Section 13 of the Plan but the Trustee may, as a party in interest, seek enforcement of any provision of Section 13 of the Plan.

### 6.1.5    Retention of Professionals and Consultants.

Except as restricted by applicable professional ethics rules such as the Rules of Professional Conduct, the Trustee is entitled to retain any attorney, contract attorney, accountant, investment advisor, bankruptcy management company, or such other agents and advisors as are necessary and appropriate (and shall be entitled to rely on advice given by such advisors within their areas of competence) to:

> a.    effectuate the purpose of the Trust and/or the Plan and Plan Documents; and
>
> b.    maintain and administer the Trust.

Nothing in the Plan, Plan Documents or any Trust Document restricts the Trustee's ability to retain any Committee Professional.

### 6.1.6    Execution of Documents.

The Trustee is empowered to make, sign, execute, acknowledge and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan, Plan Documents and/or the Trust or to maintain and administer the Trust.

### 6.1.7   Litigation or Other Proceedings.

Subject to the Plan, the Trustee shall be empowered to institute, conduct, defend, settle and compromise any litigation or other proceeding in any court or any administrative or regulatory forum in the name of the Trust if, in its sole discretion, it deems it so advisable to do so.  Within fourteen (14) days after the effective date of a settlement or compromise where the amount in controversy exceeded $50,000, the Trustee shall give notice of the settlement or compromise to the Notice Parties.  The purpose of this notice requirement is to enable interested persons to be informed about the results of litigation.

### 6.1.8   Compliance With Law.

The Trustee is empowered to comply with all requirements imposed by applicable law, rule, or regulation.

### 6.1.9   Modification of The Trust Agreement.

The Trustee may file a motion with the Bankruptcy Court, with notice to the Notice Parties, for a modification of the provisions of this Trust Agreement if the Trustee determines that such modifications are necessary to conform to legal and/or administrative requirements.

### 6.1.10   Distributions May Be Delayed to Wind Up Affairs of the Trust.

Upon any event terminating the Trust, the right to distributions shall vest immediately, but the Trustee may defer distribution of property from the Trust for a reasonable time needed to wind up the affairs of the Trust, including time needed to provide for payment of debts and taxes.

### 6.1.11   Anti-Assignment Clause.

To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to claims of creditors of any beneficiary or others, nor to legal process, nor be voluntarily or involuntarily assigned, alienated or encumbered except as may be ordered by the Bankruptcy Court.

### 6.1.12   Investments.

The Trustee shall comply with 11 U.S.C. §345 with regard to the investment of Trust assets.  The Trustee may invest assets of the Trust in U.S. Government insured or issued securities with a duration of not more than 3 years until all Tort Claims except Future Tort Claims have been finally determined and, to the extent Allowed, paid in full, and thereafter with a duration of not more than 10 years.  The Trustee is relieved of any obligation to diversify.

### 6.1.13   Trust Division.

The Trustee is authorized to and shall segregate the Trust established by this Trust Agreement into separate accounts or funds, as required by the Plan and Plan Documents, for ease of administration, or for any tax election or allocation.  Any segregation shall be made according

to the fair market value of the assets of the Trust at the time of segregation; the appreciation or depreciation of the property allocated to each account or fund, including cash, shall be fairly representative of the appreciation or depreciation to the date of each segregation of all property available for allocation; and the segregation shall otherwise be in accordance with applicable tax law. Nothing in this provision shall restrict the Trustee's authority to pool such accounts or funds for investment purposes or require separate bank accounts for such accounts or funds.

Pursuant to and in accordance with the Plan and the Plan Documents the Trustee shall establish accounts or funds for: (1) Class 3 Claims and each Creditor Pool; (2) the Class 3A Claims, (3) the Future Abuse Claims Reserve, (4) the payment of Litigation Current Abuse Claims, (5) fees, costs and expenses payable to or on behalf of the Reorganized Debtor and (6) fees, costs and expenses payable to or on behalf of the Trust's professionals and the Trustee.

The Trustee may establish additional reserve accounts as the Trustee determines are appropriate and may fund such additional reserve accounts pursuant to the Plan, the Plan Documents and the Trust Agreement. If, at any time, the Trustee determines that any reserve is not reasonably likely to be adequate to satisfy purposes of the reserve, then, the Trustee may increase the amount previously reserved.

If at any time, the Trustee determines that the value of a reserve is greater than the amount that is reasonably likely to satisfy the purpose for which the assets of the reserve have been reserved, the Trustee may release the excess amounts from such reserve and the amounts released would be deposited in any other reserve or become distributable to the Creditor Pools.

6.1.14  Safeco Settlement Agreement.

The Safeco Settlement Agreement is binding on the Trust and, to the extent of any inconsistencies between the Trust Agreement and Safeco Settlement Agreement, the Safeco Settlement Agreement will control.

Before the Trustee disburses any of the Settlement Amount to any Abuse Claimant the Trustee shall determine whether any Conditional Payment has been made to or on behalf of any Tort Claimant. If any Conditional Payment has been made to or on behalf of any Tort Claimant, the Trustee shall, within the respective time period called for by the MSPA, (i) reimburse the appropriate Medicare Trust Fund for the appropriate amount, and (ii) submit the required information for any Tort Claimant to the appropriate agency of the United States government.

This subparagraph 6.1.14 is not subject to modification without the consent of Safeco.

6.1.15  Perpetuities.

Notwithstanding any other provisions of this Trust Agreement, each trust hereby created, if not previously terminated under other provisions of this Trust Agreement, shall in any event terminate upon thirty five (35) years after the date of this Trust Agreement. Upon such termination, all the assets thereof shall be distributed pursuant to Article 5(b) above to the registry of the Bankruptcy Court.

6.1.16 Seattle University.

Neither the Trust nor the Trustee will succeed to any of Debtor's or Reorganized Debtor's or the Estate's rights or claims against Seattle University. Neither the Trust nor the Trustee will initiate, conduct or pursue any litigation or other proceeding against Seattle University. Neither the Trust nor the Trustee will pay any fees, costs or expenses incurred by or on behalf of any Entity or Person relating to or concerning any litigation or other proceeding against Seattle University. In the event that the Trustee or the Trust assigns any Abuse Claim to any Entity or Person, the assignment and the assignee will be subject to the foregoing restrictions against the initiation or pursuit of or payment for any litigation or proceeding against Seattle University. The provisions of this paragraph 6.1.16 are not intended to prohibit the Trust from seeking, subject to applicable law and rules, third-party discovery from Seattle University. This subparagraph 6.1.16 is not subject to modification without the consent of Seattle University.

**Article 7      Immunity and Indemnification of Trustee.**

7.1      Generally.

7.1.1    The Trust shall defend, indemnify and hold the Trustee and the Trustee's professionals harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from any contract, obligation or liability made or incurred by the Trustee in accordance with their respective standard of conduct set forth herein.

7.1.2    The Trust shall defend, indemnify and hold the Trustee's professionals harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from services rendered to the Trustee provided that the Trustee's professionals meet the standards of conduct according to applicable non-bankruptcy law.

7.2      Medicare Secondary Payer Act

Except as provided in the Plan, Plan Documents, the Safeco Settlement Agreement and any order approving the Safeco Settlement Agreement, neither the Trust nor the Trustee shall have any liability to any entity, including any governmental entity pursuant to the Medicare Secondary Payer Act or any state law statute that is substantially similar to the Medicare Secondary Payer Act.

7.3      Duty to Defend, Indemnify and Hold Harmless

The Trust shall defend, indemnify and hold the Trustee harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from any contract, obligation or liability made or incurred by the Trustee in good faith. Nothing in this section shall be construed or interpreted to limit in any way the protections and immunities, if any, afforded to the Trustee pursuant to federal and/or state statutory and common law. Notwithstanding the foregoing, this indemnification, obligation of defense and covenant to hold harmless shall not apply to any liability arising from a criminal proceeding where the Trustee had reasonable cause to believe that the conduct in question was unlawful.

## Article 8    Trustee Compensation.

8.1    The Trustee shall be entitled to receive as compensation from the monetary assets of the Trust such amounts as described in Exhibit B attached hereto, and as the same may be amended from time to time during the term of this Trust Agreement.  Such amendments to Exhibit B, if any, may be requested solely by the Trustee by written motion of the Trustee to the Bankruptcy Court.

## Article 9    Appointment and Acceptance of Trustee..

9.1    The Trustee hereby accepts the trusteeship of the Trust created by this Trust Agreement and the grant, assignment, transfer, conveyance and delivery of assets to the Trust, subject to the terms and conditions set forth in the Plan, the Confirmation Order and this Trust Agreement.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and not otherwise, and in accordance with applicable law.  The Trustee shall have the authority to bind the Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

## Article 10    Successor Trustees.

10.1    Vacancy Caused by Trustee Resignation or Removal.

10.1.1    Trustee Resignation.  The Trustee may resign at any time.  The Trustee shall file its written resignation to the Bankruptcy Court. The resignation shall take effect within thirty (30) days of delivery of the notice of resignation  The Trustee shall, by the earliest date possible, deliver to the Trustee's successor all of the Trust assets which were in the possession of the Trustee along with a complete record and inventory of all such assets.

10.1.2    Trustee Removal.  The Bankruptcy Court may remove a Trustee on a motion submitted by a party in interest following notice to the Notice Parties.  The ground for removal is good cause.  The removal will take effect upon the date the Bankruptcy Court specifies.  The Trustee shall, by the earliest date possible, deliver to the Trustee's successor all of the Trust assets which were in the possession of the Trustee along with a complete record and inventory of all such assets.

10.2    Appointment of Successor Trustee.

Any vacancy in the office of Trustee shall be filled by the nomination of a majority of the members of the Committee (notwithstanding the dissolution of the Committee on the Effective Date), subject to the approval of the Bankruptcy Court, after notice and a hearing.  If at least five (5) members of the Committee do not participate in the nomination of a within 30 days after the Trustee resigns or becomes unable to serve, the Honorable Elizabeth Perris or, in her absence, the Chief Judge of the U.S. Bankruptcy Court of the District of Oregon, shall designate a successor after notice to the Notice Parties and a hearing.

10.3    Acceptance of Appointment of Successor Trustee.

Any successor Trustee's acceptance of appointment as a successor Trustee shall be in writing and shall be filed with the Bankruptcy Court. The acceptance shall become effective when filed with the Bankruptcy Court. The Trustee shall thereupon be considered a Trustee of the Trust without the necessity of any conveyance or instrument. Each successor Trustee shall have all of the rights, powers, duties, authority, and privileges as if initially named as a Trustee hereunder. Each successor Trustee shall be exempt from any liability related to the acts or omissions of the Trustee prior to the appointment of the successor Trustee.

10.4    Preservation of Record of Changes in Trustees.

A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

## Article 11    Immunity and Indemnification of FCR.

11.1    Generally.

11.1.1 The FCR shall not be personally liable for mistakes in judgment, errors of fact or law, or other acts or omissions during the administration of the Trust, in the absence of willful misconduct or ultra vires acts.

11.1.2 The FCR's professionals who meet the standards of conduct according to applicable non-bankruptcy law shall be defended and indemnified by the Future Abuse Claims Reserve for reasonable costs and expenses, including but not limited to attorneys' fees.

11.2    Duty to Defend, Indemnify and Hold Harmless

11.2.1 The Trust shall defend, indemnify and hold the FCR and the FCR's professionals harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from any contract, obligation or liability made or incurred by the FCR in accordance with their respective standard of conduct set forth herein.

11.2.2 The Trust shall defend, indemnify and hold the FCR's professionals harmless from and against any and all uninsured claims, liabilities, costs, damages or expenses arising from services rendered to the FCR provided that the FCR's professionals meet the standards of conduct according to applicable non-bankruptcy law.

11.2.3 Notwithstanding anything to the contrary in the Plan, the Plan Documents or this Trust Agreement, the fees and costs incurred in defending and indemnifying the FCR and FCR's professionals shall be paid solely from the Future Abuse Claims Reserve. Nothing in this section shall be construed or interpreted to limit in any way the protections and immunities, if any, afforded to the FCR and its professionals pursuant to federal and/or state statutory and common law. Notwithstanding the foregoing, this indemnification, obligation of defense and covenant to hold harmless shall not apply to any liability arising from a criminal proceeding


Case 09-30938-elp11    Doc 1336    Filed 07/29/11

where the FCR or its professionals, respectively, had reasonable cause to believe that the conduct in question was unlawful.

## Article 12    Instructions to Trustee.

12.1    In addition to the other duties set forth in the Plan, Plan Documents or this Trust Agreement, the Trustee is hereby specifically directed to do the following:

### 12.1.1  Semi-Annual Financial Reports.

In lieu of compliance with applicable law regarding the Trustee's obligation to prepare accountings and/or reports, the Trustee shall prepare on behalf of the Trust semi-annual (June 30 and December 31) financial reports describing the then remaining assets and the manner in which the assets of the Trust are then invested. The reports shall include an itemization of categories of expenses and corresponding amounts. The reports shall also include an estimate of the current market value of the invested assets of the Trust and a description of the obligations, income and expenses of the Trust. The Trustee may, but shall not be required to, employ valuation experts. The reports shall include an itemized statement of all sums disbursed to Abuse Claimants. The reports shall be prepared within forty-five (45) days of the close of the reporting period. Copies of the reports shall be sent to the Notice Parties and filed with the Bankruptcy Court. The reports shall be prepared on an accrual basis, and shall be in accordance with Generally Accepted Accounting Principles.

### 12.1.2  Additional Reporting to the Court.

The Trustee shall report to the Bankruptcy Court, with notice to the Notice Parties, with respect to any matter arising from the administration of the Trust that the Trustee deems advisable to bring to the attention of the Bankruptcy Court. The Trustee shall report to the Bankruptcy Court, with notice to the Notice Parties, with respect to any matter arising from the administration of the Trust upon request of the Bankruptcy Court.

## Article 13    Grantor Trust Election.

13.1    The Debtor shall elect to treat the Trust as a grantor trust pursuant to Treasury Reg. § 1.468B-1(k). Payment of taxes, if any, attributable to Trust income shall be the obligation of the Trust.

## Article 14    Section 468B Settlement Fund.

14.1    Generally.

14.1.1  In accordance with the Plan, it is the intent of the Reorganized Debtor and the Trustee that all steps be taken by the Trustee to ensure that the Trust will qualify as, and remain, a "Designated" or "Qualified" settlement fund within the meaning of §468B of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and the regulations promulgated pursuant thereto. The Debtor is the "transferor" within the meaning of Treasury Regulations

§1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

14.1.2 It is further intended that the transfers to the Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Tax Code, and Treasury Regulation Section 1.461-1(a)(2).

14.2 Employer Identification Number.

Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust pursuant to Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

14.3 Relation-Back Election.

14.3.1 If applicable, the Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

14.4 Reporting Requirements.

14.4.1 The Trustee shall cause to be filed, on behalf of the Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulations §1.468B-2(k)(1). The Debtor shall file an election statement satisfying the requirements of Treasury Regulation §1.468B-1(k)(2)(ii) so that the Trust is treated as a grantor trust under §671 of the Tax Code and the regulations promulgated thereunder. The Debtor's election statement shall be made on the Trust's first timely filed trust income tax return. The Debtor (or some other person on behalf the Debtor) shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury Regulation §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which the Debtor (or some other person on behalf of the Debtor) makes a transfer to the Trust.

14.5 Broad Powers of the Trustee.

14.5.1 The Trustee is empowered to take all such actions, including such actions as may be inconsistent with those expressly set forth above, as he deems necessary to ensure that the Trust is treated as a "Designated" or "Qualified" settlement fund under §468B of the Tax Code, and the regulations promulgated pursuant thereto. Further, the Trustee may amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

**Article 15     Miscellaneous Provisions.**

15.1 Interpretation.

15.1.1 As used in this Trust Agreement, words in the singular include the plural and words in the plural include the singular. The masculine, feminine and neuter genders shall

Exhibit _1-147_
Page _11_ of Page _16_

be deemed to include all genders. The descriptive heading for each paragraph and subparagraph of this Trust Agreement are for the reader's convenience and shall not affect the interpretation or the legal efficacy of this Trust Agreement.

### 15.1.2 Notices.

Notices shall be sent to the "Notice Parties," who are all persons who submit a request in writing to the Trustee. Such requests shall include the requestor's street address and may include the requestor's fax number and email address.

All notices or deliveries required or permitted hereunder shall be in writing and shall be deemed given on the first of the following dates: (i) when personally delivered; (ii) when actually received by means of facsimile transmission or e-mail; (iii) when received by overnight express courier delivery; (iv) when delivered and receipted for by certified mail, postage prepaid, return receipt requested (or in the event of attempted delivery and refusal of acceptance, then on the date of the first attempted delivery).

### 15.1.3 Choice of Law.

This Trust Agreement shall be administered, governed by, construed, and enforced according to the internal laws of the State of Oregon applicable to contracts and agreements made and to be performed therein, except that all matters of federal tax law and this Trust's compliance with §468B of the Tax Code and Treasury Regulations thereunder, shall be governed by federal income tax law, and all matters of federal bankruptcy law shall be governed by federal bankruptcy law.

### 15.1.4 Invalidity and Unenforceability.

If any term or provision of this Trust Agreement shall be invalid or unenforceable, the remainder of this Trust Agreement shall not be affected thereby, and each remaining term and provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

### 15.1.5 Entirety of Agreement.

This Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter hereof. This Trust Agreement, together with the Exhibits hereto, the Plan, and the Confirmation Order, contain the sole and entire agreement and understanding with respect to the matters addressed therein.

### 15.1.6 Binding Agreement.

The individual executing this Trust Agreement and Exhibits on behalf of the Reorganized Debtor hereby covenants, warrants and represents that: (i) such individual is duly authorized to execute this Trust Agreement on behalf of the Reorganized Debtor, (ii) this Trust Agreement is binding upon the Reorganized Debtor, (iii) the Reorganized Debtor is duly organized and legally existing in the state of Oregon, and (iv) the execution of this Trust Agreement will not result in

any breach or constitute a default under any obligation, undertaking, contract, or agreement to which the Reorganized Debtor is a party or by which the Reorganized Debtor may be bound.

15.1.7 Counterparts.

This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15.1.8 Independent Legal and Tax Counsel.

**ALL PARTIES TO THIS TRUST AGREEMENT HAVE BEEN REPRESENTED BY COUNSEL AND ADVISORS (COLLECTIVELY REFERRED TO AS "COUNSEL") OF THEIR OWN SELECTION IN THIS MATTER. CONSEQUENTLY, THE PARTIES AGREE THAT THE LANGUAGE IN ALL PARTS OF THIS TRUST AGREEMENT SHALL IN ALL CASES BE CONSTRUED AS A WHOLE ACCORDING TO ITS FAIR MEANING AND NEITHER STRICTLY FOR NOR AGAINST ANY PARTY. IT IS SPECIFICALLY ACKNOWLEDGED AND UNDERSTOOD THAT THIS TRUST AGREEMENT HAS NOT BEEN SUBMITTED TO, NOR REVIEWED OR APPROVED BY, THE INTERNAL REVENUE SERVICE OR THE TAXING AUTHORITIES OF ANY STATE OR TERRITORY OF THE UNITED STATES OF AMERICA.**

15.1.9 Jurisdiction.

The United States Bankruptcy Court for the District of Oregon retains exclusive original jurisdiction over all matters related to the Plan, the Plan Documents and the Trust Documents. Notwithstanding such exclusive original jurisdiction, the Trustee, upon notice to the Debtor and Notice Parties, may seek permission of the Bankruptcy Court for commencement of an action in the Superior Courts of the State of Oregon or in any other state court of original jurisdiction for relief in any matter concerning the interpretation or resolution of any dispute related to the Trust, or for enforcement of any rights claimed by the Trustee. If the Bankruptcy Court concludes, in the exercise of its discretion, that the Trustee would be aided in the administration of the Trust by referral of the matter to the Superior Court or other state court, the Bankruptcy Court may grant the Trustee permission to commence an action in the Superior Court of the State of Oregon or any other state court of original jurisdiction.


Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN WITNESS WHEREOF, the parties execute this Trust Agreement as of the date set forth in the opening paragraph.

**Society of Jesus, Oregon Province**

By: _____
Printed Name: Fr. Patrick J. Lee, SJ
Title:              President

**OMNI MANAGEMENT GROUP, LLC**

By: _____
Printed Name: _____Robert L. Berger_____
Title:

By: _____
Printed Name: _____Eric R. Schwarz_____
Title:

# EXHIBIT A

## CONFIRMATION ORDER AND PLAN

Exhibit _1.147_
Page _15_ of Page _16_

## EXHIBIT B

## COMPENSATION FOR TRUSTEE

The Trustee shall charge for the time of its principals at the following hourly rates:

1. Robert L. Berger            $275.00

2. Eric R. Schwarz            $275.00

The Trustee shall charge for the time of its employees at their standard hourly rates; provided that no employee's rate is higher than the principals' rates. The hourly rates are subject to annual increases beginning in January 2012; however, the annual increases shall not exceed ten percent.

Before the Trustee pays any fees and expenses from the Trust (other than fees due under retainer agreements between an attorney and an Abuse Claimant), the Trustee shall send monthly invoices of fees and expenses by mail, fax, or email to the U.S. Trustee and the Notice Parties. Unless the Trustee receives a written objection within fifteen (15) calendar days after sending the monthly invoices, the fees and expenses shall be deemed allowed, and may be paid from the Trust. If a timely written objection is received by the Trustee, the Trustee shall apply to the Bankruptcy Court for approval of the requested fees and expenses, if the objection cannot be amicably resolved. Any portion of the monthly invoice which is not the subject of a timely written objection may be paid from the Trust.

034757/00001/2956931v4

## SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

This Settlement Agreement, Release, and Policy Buyback ("Agreement") is hereby made between and among the Society of Jesus, Oregon Province (the "SJOP" as defined herein) and the Other Releasing Parties (as defined herein), on the one hand; and Western World Insurance Company ("Western World" as defined herein) and the Western World Released Parties (as defined herein), on the other hand.

### RECITALS

WHEREAS, numerous individuals have asserted claims against the SJOP and certain Other Releasing Parties for injuries allegedly suffered due to sexual abuse by priests and other individuals allegedly negligently hired, supervised, or maintained by the SJOP (the "Tort Claims" as defined herein); and

WHEREAS, Western World issued or allegedly issued certain insurance policies to or for the benefit of the SJOP and/or the Other Releasing Parties (the "Policies" as defined herein); and

WHEREAS, certain disputes between the SJOP and Western World have arisen and would be likely to arise in the future concerning Western World's position regarding the nature and scope of its responsibilities, if any, to provide coverage to the SJOP and/or any of the Other Releasing Parties under the Policies for the Tort Claims, including, without limitation, the sufficiency of the evidence of the existence and terms of the Policies; whether policy terms or exclusions provide or preclude coverage for the Tort Claims; whether the SJOP has complied with certain conditions precedent to coverage contained in the Policies; whether settlements made by the SJOP or to be made by the SJOP are reasonable; and whether and to what extent the costs incurred in connection with the Tort Claims are allocable to the Policies (the "Coverage Disputes" as defined herein); and

WHEREAS, the SJOP filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (as herein defined) on February 17, 2009 (the "Petition Date" as defined herein), in the United States Bankruptcy Court for the District of Oregon (the "Reorganization Case" as defined herein); and

WHEREAS, the SJOP, Western World, the Other Releasing Parties, and the Western World Released Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish fully and finally to compromise and resolve any and all Coverage Disputes and any and all other disputes between them; and

WHEREAS, through this Agreement, the SJOP and the Other Releasing Parties intend to provide Western World with the broadest possible buyback and release with respect

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 1 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

to the Policies and to provide that Western World shall have no further obligations now or in the future with respect to the Policies; and

WHEREAS, as part of the compromise and resolution of such disputes, the Parties, the Other Releasing Parties, and the Western World Released Parties wish to effect a sale of the Policies pursuant to Section 363 of the Bankruptcy Code; and

WHEREAS, each Party has received the advice of counsel in the preparation, drafting, and execution of this Agreement, which was negotiated at arm's length;

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the Bankruptcy Court, the Parties, the Other Releasing Parties, and the Western World Released Parties hereby agree as follows:

1. **DEFINITIONS AND CONSTRUCTION**

    1.1    As used in this Agreement, the following terms shall have the meanings set forth below. Terms not defined below shall have any meanings given to them in the Bankruptcy Code.

        1.1.1   "Approval Motion" means the motion seeking entry of the Approval Order.

        1.1.2   "Approval Order" means a Final Order in substantially the form attached hereto as Exhibit 1, with only such modifications as are acceptable both to Western World and the SJOP in each party's respective sole discretion, entered by the Bankruptcy Court under Bankruptcy Code Sections 363 and 105 and Bankruptcy Rule 9019 and/or under such other provisions as the Bankruptcy Court may order, approving this Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Agreement.

        1.1.3   "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

        1.1.4   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon and any other court in which the Reorganization Case may be pending or which has jurisdiction over the Reorganization Case.

        1.1.5   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

        1.1.6   "Claim" means any past, present or future claim, demand, action, requests, cause of action, suit or liability of any kind or nature whatsoever,

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 2 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 2 of 42

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

whether at law or equity, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any claim within the definition of Section 101(5) of the Bankruptcy Code.

1.1.7  "Conditional Payment" means any payment made pursuant to Section 1395y(b)(2)(B) of the MSPA (Medicare Secondary Payer Act, as defined in § 1.1.16 of this Agreement).

1.1.8  "Coverage Disputes" means those disputes between the SJOP and Western World that have arisen or may arise in the future concerning Western World's position regarding the nature and scope of Western World's responsibilities, if any, to provide coverage to the SJOP and/or any of the Other Releasing Parties under the Policies for Claims.

1.1.9  "Effective Date" means the date on which this Agreement becomes effective, which shall be the day upon which the Approval Order entered by the Bankruptcy Court has become a Final Order, which shall be after each of the Parties has executed this Agreement and delivered evidence of that execution, through delivery of an executed signature page, to the other Party.

1.1.10  "Extra-Contractual Claim" means any Claim against Western World, seeking any type of relief, including compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs, or any other type of relief, on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of the insurer of any type for which the claimant seeks relief other than coverage or benefits under a Policy.  Extra-Contractual Claims include without limitation: (i) any Claim arising out of or relating to Western World's handling of any request for insurance coverage relating to the Policies for any Claim, including, without limitation, any Tort Claim; and (ii) the conduct of the Parties with respect to the negotiation of this Agreement. However, this limitation shall not include fraud in the inducement of this Agreement.

1.1.11  "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 3 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 3 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal or review has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the SJOP and Western World have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Agreement.

1.1.12 "Insurance Coverage Claim" means any Claim for insurance coverage under the Policies.

1.1.13 "Interests" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief relating to the Policies.

1.1.14 "Medicare Beneficiary" means a Tort Claimant who is eligible to, is receiving, or has received Medicare benefits.

1.1.15 "MSPA" means Medicare Secondary Payer Act, codified at 42 U.S.C. § 1395y, and the regulations promulgated thereunder, found at 42 C.F.R. § 411.1 et seq.

1.1.16 "Other Releasing Parties" mean: (i) Montana Catholic Missions, S.J.; Mount St. Michael; Pioneer Educational Society (also sometimes referred to in the Policies as Pioneer Education Society or Pioneer Educational Society dba Bea House); Society of Jesus, Alaska; and Fr. Patrick J. Lee, S.J. on behalf of the Office of the Very Reverend Father Provincial of the SJOP; and (ii) any and all predecessors, successors, and assigns of the SJOP and any and all past and present employees, officers, directors, shareholders, principals, agents, attorneys, representatives, in their capacity as such, of the SJOP. In addition, it is the mutual understanding of SJOP and Western World that the reference to "Society of Jesus" in the Western World policies was and is intended to refer to the Society of Jesus, Oregon Province.

1.1.17 "Parties" means the SJOP and Western World, and "Party" means anyone of them.

1.1.18 "Person" means an individual, any corporation, including, without limitation, a corporation sole, a partnership, an association, a limited liability company, a proprietorship, joint venture, a trust, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 4 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 4 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1.1.19 "Petition Date" means February 17, 2009, the date upon which the SJOP filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

1.1.20 "Plan Confirmation Order" means a Final Order that: (i) approves a plan of reorganization as to SJOP pursuant to Section 1129 and any other applicable provision of the Bankruptcy Code; (ii) contains an injunction pursuant to Section 105(a) of the Bankruptcy Code channeling all Tort Claims to the Trust; (iii) provides that this Agreement is binding on the Trust (i.e., contains a Supplemental Injunction in favor of Western World); and (iv) provides all protections to Western World and the Western World Release Parties against Tort Claims that are afforded to settling insurers under the plan of reorganization.

1.1.21 "Policies" means all insurance policies, issued or allegedly issued, by Western World and providing insurance coverage to the SJOP, and/or any Other Releasing Party, as identified on Exhibit 2 to this Agreement, and any and all unknown insurance policies issued or allegedly issued by Western World to SJOP and/or any Other Releasing Party.

1.1.22 "Procedures Motion" means the motion seeking approval of the procedures for notice, service, and publication of the Approval Motion (as defined herein).

1.1.23 "Procedures Order" means a Final Order in substantially the form attached hereto as Exhibit 3, with only such modifications as are acceptable both to Travelers and the SJOP in each party's respective sole discretion, entered by the Bankruptcy Court, approving the Procedures Motion.

1.1.24 "Reorganization Case" means the Chapter 11 reorganization case filed February 17, 2009, by the SJOP in the United States Bankruptcy Court for the District of Oregon, In re The Society of Jesus, Oregon Province, Case No. 09-30938-elp11.

1.1.25 "Western World" means Western World Insurance Company, and each of its past and present subsidiaries, parents, and affiliates. "Western World" also includes all future subsidiaries, parents, and affiliates of Western World Insurance Company, to the extent that their liability is derivative of Western World's liabilities under the Policies.

1.1.26 "Western World Released Parties" means Western World, as defined above, and all employees, officers, directors, shareholders, principals, parents, agents, attorneys, and representatives, as well as the predecessors,

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 5 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 5 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

successors, assignors, and assigns of each of the foregoing, in their capacity as such.

1.1.27 "<u>Settlement Amount</u>" means the payment to be made by Western World pursuant to Section 2.1 of this Agreement.

1.1.28 "<u>SJOP</u>" means the Society of Jesus, Oregon Province, an Oregon non-profit religious corporation, and the Estate (pursuant to Section 541 of the Bankruptcy Code).

1.1.29 "<u>Stipulated Order</u>" means the stipulated order providing for service of the Approval Motion on the General Curia of the Society of Jesus through its Portland counsel Miller Nash LLP.

1.1.30 "<u>Supplemental Injunction</u>" means an injunction pursuant to Sections 105(a) and 363 of the Bankruptcy Code, barring and permanently enjoining any and all Persons and entities who now hold or who may in the future hold any Claims or Interests of any kind or nature (including, without limitation, all debt holders, all equity holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, Tort Claim holders, other insurers, and all others holding Claims or Interests of any kind or nature whatsoever) against SJOP, Other Releasing Parties, Western World, Western World Released Parties, or the Western World Policies, relating to or in connection with the Western World Policies or Tort Claims, from or against asserting any such Claim or Interests against Western World, Western World Released Parties, and/or the Policies.

1.1.31 "<u>Tort Claim</u>" means any Claim against the SJOP and/or Other Releasing Parties resulting, in whole or in part, from alleged sexual molestation or abuse or conduct of a sexual nature or corporal abuse and seeking monetary damages or other relief, and any Claims against Western World for contribution, indemnity, defense, subrogation, or similar relief, including any Claim of any Person whose Interests are, have been, or may be represented by the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412], arising directly or indirectly from such Claims against SJOP and/or Other Releasing Parties.

1.1.32 "<u>Tort Claimant</u>" means any Person, including any Person whose Interests are, have been, or may be represented by the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412], asserting a Tort Claim.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 6 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 6 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1.1.33 "Trust" means the Trust, established pursuant to a plan of reorganization as to SJOP and confirmed by the Plan Confirmation Order, to which all Tort Claims are channeled as the sole and exclusive source of payment of any claims against SJOP or Western World.

1.2     The following rules of construction shall apply to this Agreement:

1.2.1    Unless the context of this Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

1.2.2    References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Agreement.

1.2.3    The wording of this Agreement was reviewed by legal counsel for each of the Parties, or other signatories to this Agreement, and each of them had sufficient opportunities to propose and negotiate changes prior to its execution. None of the Parties, the Other Releasing Parties, or the Western World Released Parties or other signatories to this Agreement will be entitled to have any wording of this Agreement construed against the other based on any contention as to which of the Parties drafted the language in question or which party is an insurer.

1.2.4    The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, the Other Releasing Parties, and/or the Western World Released Parties, as the case may be, shall not be construed to create a breach of this Agreement when the stated intent is not achieved. Notwithstanding the foregoing sentence, however, and for the avoidance of doubt, nothing in this Agreement, including in conjunction with or reliance on this Section 1.2.4, shall be construed as allowing SJOP or any Other Releasing Party to make any Claim against Western World or any Western World Released Party under the Policies should the intent of any Party to this Agreement fail or otherwise not be achieved. In exchange for payment of the Settlement Amount, the Parties, Other Releasing Parties, and Western World Released Parties agree that all Claims against Western World and the Western World Released Parties are forever released and bought back as set forth in this Agreement.

SETTLEMENT AGREEMENT,                     Page 7 of 26                  In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                                  D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 7 of 42                          Case 09-30938-elp11     Doc 1336     Filed 07/29/11

**2.** **PAYMENT OF SETTLEMENT AMOUNT**

2.1 Subject to all of the terms of this Agreement, in full and final settlement of all responsibilities under and arising out of the Policies, and in consideration of the sale of the Policies to Western World free and clear of all Interests of any Person, and expressly subject to fulfillment of all conditions to payment identified in Section 3 below, Western World shall pay to the Trust the sum of Three Hundred Thousand Dollars ($300,000) (the "Settlement Amount") within fourteen (14) days after the Conditions Precedent to Western World's Payment set forth in Section 3 of this Agreement have been fulfilled, provided that Western World receives prior written notice of at least twenty one (21) days from the Trustee of the Trust that such conditions have been satisfied and direction as to transmission of the payment.

2.2 The Parties, the Other Releasing Parties, and the Western World Released Parties expressly agree that it is intended: (i) that the Settlement Amount is the total amount Western World and the Western World Released Parties are obligated to pay on account of any and all Claims made under or relating to the Policies (including the Tort Claims and any reimbursement obligations for Conditional Payments under the MSPA) or with respect to Extra-Contractual Claims relating to the Policies; (ii) that under no circumstance will Western World or the Western World Released Parties ever be obligated to make any additional payments to anyone in connection with the Policies, including any amounts allegedly owed under the MSPA and for Extra-Contractual Claims; and (iii) that all limits of liability of the Policies, including all per person, per occurrence, and aggregate limits, shall be deemed fully and properly exhausted. The Parties, the Other Releasing Parties, and the Western World Released Parties further agree that the Settlement Amount is the full purchase price of the Policies.

2.3 The Parties agree that the plan of reorganization as to the SJOP that is confirmed in the Plan Confirmation Order will provide that this Agreement is binding on the Trust and that before the Trustee of the Trust disburses any of the Settlement Amount to any Tort Claimant the Trustee shall determine whether any Conditional Payment has been made to or on behalf of any Tort Claimant. If any Conditional Payment has been made to or on behalf of any Tort Claimant, the Trustee shall, within the respective time period called for by the MSPA, (i) reimburse the appropriate Medicare Trust Fund for the appropriate amount, and (ii) submit the required information for any Tort Claimant to the appropriate agency of the United States government. To assist the Trustee, the Parties agree that the plan of reorganization as to SJOP shall provide as follows:

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 8 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 8 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

2.3.1   Before the Trustee will pay any portion of any Tort Claim to any Tort Claimant, that claimant must provide a third-party vendor, which vendor has been approved by the Official Committee of Unsecured Creditors or the Trustee ("Approved Vendor") or, if no Approved Vendor has been retained by or on behalf of an Tort Claimant, the Trustee, with his or her name, date of birth, Social Security Number or Health Insurance Claim Number (together, the "Personal Information"), a signed Social Security Release Form or a Medicare Release form, or both, when requested by the Approved Vendor or the Trustee, as the case may be, and any other information or documents reasonably required to comply with Sections 2.3.2, 2.3.3, and 2.3.4.

2.3.2   Each Tort Claimant who claims that he or she is not a Medicare Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Social Security Administration to verify whether he or she is a Medicare Beneficiary. Before the Trustee will pay any portion of any Tort Claim to a Tort Claimant who claims that he or she is not a Medicare Beneficiary, the Tort Claimant will provide a letter from an Approved Vendor supported by documentation from the Social Security Administration, received within sixty (60) days prior to the Trustee making such payment or, if no Approved Vendor has been retained by or on behalf of a Tort Claimant, documentation from the Social Security Administration received within sixty (60) days prior to the Trustee making such payment, confirming that the Abuse Tort is not a Medicare Beneficiary. In the absence of such a confirming letter or documentation, each Tort Claimant will be presumed to be a Medicare Beneficiary.

2.3.3   Each Medicare Beneficiary expressly authorizes the Approved Vendor or the Trustee, as the case may be, to use the Personal Information to submit a query to the Centers for Medicare and Medicaid Services ("CMS"), the CMS Coordination of Benefits Contractor ("COBC"), and/or the Medicare Secondary Payer Recovery Contractor ("MSPRC") to determine the amount of each and every Conditional Payment, if any, subject to reimbursement by a "primary plan." Before the Trustee will pay any portion of any Tort Claim to a Medicare Beneficiary, such Medicare Beneficiary, must provide the Trustee with a letter from the MSPRC ("MSPRC Letter") received within sixty (60) days prior to the Trustee making such payment: (a) setting forth the Conditional Payment estimate made to or on behalf of the Medicare Beneficiary that is subject to reimbursement by a "primary plan," as the phrase is defined in Section 1395y(b)(2) of the MSPA; or (b) stating that no such Conditional Payment has been made to or on behalf of the Medicare Beneficiary. In the event that the MSPRC Letter sets forth a Conditional Payment estimate, no payment shall be made to such Medicare Beneficiary before the Trustee sets aside a reserve for

SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Page 9 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 9 of 42

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

the full amount of the Conditional Payment estimate, or pays a negotiated amount agreed to by the MSPRC and the Medicare Beneficiary. If the Trustee sets aside a reserve for the full amount of the Conditional Payment estimate, that reserved amount shall be withheld from the payment to the Medicare Beneficiary until the Conditional Payment estimate has been paid in full or a negotiated amount that has been agreed to by the MSPRC and the Medicare Beneficiary has been paid.

2.3.4    The failure by one or more Medicare Beneficiaries or other Tort Claimants to comply with these provisions shall not delay or impair the payment by the Trustee to any other Medicare Beneficiary or other Tort Claimant complying with these provisions.

2.3.5    If the Tort Claimant is the estate of a Tort Claimant, then the letters or documentation required pursuant to Sections 2.3.2 and 2.3.3 need not be received by the Trustee within sixty (60) days of the date of payment by the Trustee to such claimant, provided that the date of death of the Tort Claimant is at least sixty (60) days prior to the date of such letters or documentation.

2.3.6    Notwithstanding any of the above, a Tort Claimant can elect to provide the Trustee with the documentation from the Social Security Administration required pursuant to section 2.3.2, or a Medicare Beneficiary can elect to provide the Trustee with the letter from MSPRC required pursuant to section 2.3.3, without retaining an Approved Vendor and without providing an Approved Vendor or the Trustee with his or her Personal Information, except to the extent that such information is disclosed in such documentation or letter.

3.    **CONDITIONS PRECEDENT TO WESTERN WORLD'S PAYMENT**

3.1    Timing of Payment. Western World's obligation to pay the Settlement Amount in Section 2.1 above is expressly conditioned on the SJOP having obtained the Procedures Order, the Stipulated Order, the Approval Order and the Plan Confirmation Order. Court deferral of entry of the Procedures Order, the Stipulated Order, or the Approval Order, in whole or in part, until entry of the Plan Confirmation Order is not a failure of this condition.

3.2    Procedures Order. Within fourteen (14) days after the Parties and the Other Releasing Parties have executed this Agreement, the SJOP shall file the Procedures Motion.

3.2.1    If any objections to the Procedures Motion are filed with the Bankruptcy Court, the SJOP shall file a written response, in a form acceptable to Travelers, and shall take all reasonable steps to defend against any appeal,

SETTLEMENT AGREEMENT,                    Page 10 of 26          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                          D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 10 of 42                    Case 09-30938-elp11    Doc 1336    Filed 07/29/11

petition, motion, or other challenge to the Bankruptcy Court's entry of the Procedures Order. Travelers will cooperate with the SJOP, including making all appropriate submissions.

3.3 <u>Stipulated Order</u>. Within fourteen (14) days after the Parties and the Other Releasing Parties have executed this Agreement, the SJOP shall file the Stipulated Order.<u>Approval Order</u>. Within fourteen (14) days after the SJOP and Western World have executed this Agreement, the SJOP shall file the Procedures Motion.

3.4 <u>Approval Order</u>. Within fourteen (14) days after the Parties and the Other Releasing Parties have executed this Agreement, the SJOP shall file the Approval Motion.

    3.4.1   If any objections to the Approval Motion are filed with the Bankruptcy Court, the SJOP shall file a written response, in a form acceptable to Western World, and shall take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order. Western World will cooperate with the SJOP, including making all appropriate submissions.

    3.4.2   Written notice of the Approval Motion shall be provided to all known claimants (including all Tort Claimants and other claimants who have filed proofs of claim, all Tort Claimants scheduled by the SJOP, counsel for the Official Committee of Unsecured Creditors, the Future Claimants Representative appointed pursuant to Order entered August 10, 2009 [Doc 412]), all Persons who have filed notices of appearance in the Reorganization Case, all entities known to have provided general liability insurance to the SJOP, and the Other Releasing Parties. All claimants, including Tort Claimants, shall be served at the address shown on their proofs of claim or to their counsel of record (with a single notice to any counsel of record who represents multiple Tort Claimants constituting notice to all that counsel's clients who are Tort Claimants) or, if no proof of claim was filed, then at the address on SJOP's schedules. Counsel for each Tort Claimant shall also be served. Known Tort Claimants, to the extent of record, shall be served even if not scheduled or the subject of a proof of claim, to the extent known to SJOP. The General Curia of the Society of Jesus shall be given notice by international mail c/o Fr. Adolfo Nicholás at his official address in Rome, Italy, with a copy to its Portland-based counsel in the Reorganization Case. Any and all co-defendants and their counsel (to the extent of record) in any pre-petition litigation brought by Tort Claimants shall also be given notice at the last address shown on any filed appearance or, if such co-defendant is proceeding *pro se*, then to the last address of record for such *pro se* co-

SETTLEMENT AGREEMENT,        Page 11 of 26        In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                          D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 11 of 42        Case 09-30938-elp11    Doc 1336    Filed 07/29/11

defendant. The notice of intent to seek entry of the Approval Order also shall be published, at Western World's expense, twice in the *USA Today, Oregonian, Anchorage Daily News, Fairbanks Daily News-Miner, Seattle Times, Spokesman-Review, Missoulian,* and *Idaho Statesman,* in a form and at a time agreed to by the Parties or as ordered by the Bankruptcy Court.

3.5    <u>Plan Confirmation Order</u>. In conjunction with the Reorganization Case, the SJOP shall seek and obtain entry of a Plan Confirmation Order, which order must be in all respects consistent with this Agreement and contain no provisions that diminish or impair the benefit of this Agreement to Western World. In so doing, SJOP's efforts shall include: (i) proposing a plan of reorganization and seeking a confirmation hearing on an appropriately timely basis; (ii) urging the Bankruptcy Court to overrule any objections and confirm a proposed plan; and (iii) taking all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of a Plan Confirmation Order. Prior to entry of a Plan Confirmation Order, the SJOP shall oppose any motion to lift any stay as to any Tort Claim. In the event the Bankruptcy Court lifts the stay as to any Tort Claim prior to the Plan Confirmation Order, the SJOP shall defend that Tort Claim to the extent that such Tort Claim would have been covered by a Policy, which indemnity and defense expenses shall be paid by Western World and deducted from the Settlement Amount. In the event the SJOP fails to defend that Tort Claim, then Western World shall have the right, but not the duty, to defend and/or indemnify that Tort Claim pursuant to the terms and conditions of the applicable Policies and any such costs for defense or indemnity shall be deducted from the Settlement Amount. In such event, SJOP will cooperate with Western World in the defense and/or indemnification of such Tort Claim, and Western World agrees not to settle any such Tort Claim without the express consent of the Committee of Unsecured Creditors.

3.6    <u>The Plan of Reorganization</u>. The plan of reorganization as to the SJOP must be in all respects consistent with this Agreement and contain no provisions that diminish or impair its benefit to Western World. Such plan of reorganization shall provide for damages, injunctive relief, attorneys' fees, costs, and expenses in favor of Western World against the Trust in the event of a violation or breach of the undertaking in Section 2.3 of this Agreement.

4.    **CONDITIONS TO AGREEMENT**

4.1    This Agreement shall be subject to the following conditions: in the event (i) the Bankruptcy Court dismisses the Reorganization Case or converts it to a case under Chapter 7 of the Bankruptcy Code prior to the entry of a Plan Confirmation Order; or (ii) one or more of the conditions ("<u>Dismissal</u>

Settlement Agreement,
Release, and Policy Buyback

Page 12 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 12 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

Conditions") identified in Section 4.2 below occurs, then either the SJOP (subject to Court approval unless the Reorganization Case is dismissed) or Western World may terminate this Agreement by prompt written notice to the other Party. Upon termination of this Agreement, the releases provided in Section 5 of this Agreement shall become null and void, and the SJOP or Western World shall retain all of their rights and obligations with respect to the Policies, which shall be reinstated as if this Agreement had never been drafted or executed.

4.2 Dismissal Conditions for purposes of Section 4.1 of this Agreement are: (i) the failure of the SJOP, after a good faith effort, to obtain, by December 31, 2011, a Confirmation Order, provided, however, that this date shall be extended by up to one year at the request of either the SJOP or Western World and may be extended further by the consent of both Parties and the Official Committee of Unsecured Creditors, which consent shall not be unreasonably withheld; or (ii) the agreement of Western World and the SJOP that the SJOP should seek dismissal of the Reorganization Case.

5. **RELEASES AND SALE FREE AND CLEAR**

5.1 From and after the Effective Date, neither the SJOP nor any Other Releasing Party shall commence against Western World or the Western World Released Parties any action, suit, or proceeding of any nature whatsoever with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance alleged in, arising out of, connected with, or in any way relating to any Policy or Tort Claim, or Western World's handling thereof, unless this Agreement is properly terminated pursuant to Section 4 above.

5.2 Subject to entry of the Approval Order and the Plan Confirmation Order as Final Orders, and the payment of the sum set forth in Section 2.1, and without any further action by the Parties, the SJOP and the Other Releasing Parties, on the one hand, and Western World and the Western World Released Parties, on the other hand, each hereby fully, finally, and completely remises, releases, acquits, and forever discharges, as of the Effective Date, the other, and each of them, from any and all past, present, or future Claims in connection with, relating to or arising out of, in any manner or fashion, the Policies, including Claims that are actual or alleged, known or unknown, accrued or unaccrued, suspected or unsuspected (including Tort Claims, Extra-Contractual Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims relating to, or arising out of the Reorganization Case), whether such Claims seek compensatory damages, punitive damages, exemplary damages, statutorily multiplied damages, attorneys' fees, interest, costs, or any other type of monetary or nonmonetary relief.

SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Page 13 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 13 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

5.3     The SJOP, the Other Releasing Parties, Western World, and the Western World
        Released Parties agree that, as set forth in the Approval Order, Western World
        hereby buys back the Western World Policies free and clear of all liens,
        encumbrances, and other Interests (as set forth in the Approval Order) of any
        Person, including all rights and Interests of the SJOP; all Other Releasing Parties;
        and any other Person claiming by, through, or on behalf of the SJOP; any other
        insurer; any Tort Claimant; and the General Curia of the Society of Jesus. This
        sale is pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code. The
        Parties, Other Releasing Parties, and Western World Released Parties
        acknowledge and agree that (i) Western World is a good faith purchaser of the
        Western World Policies within the meaning of Section 363(m) of the Bankruptcy
        Code and (ii) the consideration exchanged constitutes a fair and reasonable
        settlement of the Parties' disputes and of their respective rights and obligations
        relating to the Western World Policies and constitutes reasonably equivalent
        value. The Parties, Other Releasing Parties, and Western World Released Parties
        agree (as set forth in the Approval Order) that the releases in this Agreement
        and the policy buyback comply with the Bankruptcy Code and applicable non-
        bankruptcy laws. The Parties, Other Releasing Parties, and Western World
        Released Parties agree (as set forth in the Approval Order) that, upon the
        payment of the Settlement Amount by Western World, the Policies shall be
        terminated and of no further force and effect. The Parties, Other Releasing
        Parties, and Western World Released Parties further agree that Western World's
        payment of the Settlement Amount constitutes Western World's full and
        complete performance of any and all obligations under the Policies owed to any
        of the Other Releasing Parties and exhausts all limits of liability of the Policies.
        The Parties, Other Releasing Parties, and Western World Released Parties agree
        that all rights, title, or interest the SJOP or Other Releasing Parties may have had,
        may presently have, or in the future may have in the Policies are released
        pursuant to the terms of this Agreement. The Parties, Other Releasing Parties,
        and Western World Released Parties further agree that the SJOP accepts the
        Settlement Amount in full and complete satisfaction of all Western World's past,
        present, and future obligations to the SJOP and the Other Releasing Parties, or
        any of them, under the Policies or arising therefrom, as to any and all Claims for
        insurance coverage or policy benefits of any nature whatsoever, whether legal or
        equitable, known or unknown, suspected or unsuspected, fixed or contingent,
        and regardless of whether or not such claims are in any way related to,
        connected with, based on, or arise out of the Tort Claims, the Reorganization
        Case, or otherwise under the Policies.

5.4     If, contrary to the specific intent of the Parties, Other Releasing Parties, and
        Western World Released Parties, any Claims released pursuant to Section 5.2,
        including any Insurance Coverage Claim, are deemed to survive this Agreement,

SETTLEMENT AGREEMENT,                    Page 14 of 26          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                          D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 14 of 42              Case 09-30938-elp11     Doc 1336     Filed 07/29/11

even though they are encompassed by the terms of the release set forth in this Section 5 of this Agreement, the Parties, Other Releasing Parties, and Western World Released Parties hereby forever, expressly, and irrevocably waive entitlement to and agree not to assert any and all such Claims. If, contrary to the specific intent of the Parties, Other Releasing Parties, and Western World Released Parties, CMS makes a claim against Western World, such claim or its resolution shall not be deemed a breach of this Agreement.

5.5     The releases set forth in this Section 5, as well as all other provisions in this Agreement, are not intended to apply to or have any effect on Western World's right to reinsurance recoveries under and reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Policies.

5.6     Nothing in this Section 5 is intended to, nor shall be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Agreement.

## 6.     REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1     Each of the Parties, the Other Releasing Parties, and the Western World Released Parties separately represents and warrants as follows:

6.1.1     To the extent it is a corporation, including a non-profit corporation, or other legal entity, it has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to approval of the Bankruptcy Court;

6.1.2     Subject to entry of the Approval Order and Plan Confirmation Order as Final Orders, the execution and delivery of, and the performance of the obligations contemplated by, this Agreement have been approved by duly authorized representatives of the Parties, the Other Releasing Parties, and the Western World Released Parties and by all other necessary actions of the Parties, Other Releasing Parties, and Western World Released Parties; and

6.1.3     This Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and has been executed and delivered in good faith, pursuant to arm's length negotiations and for value and valuable consideration.

6.2     Each of the Parties, Other Releasing Parties, and Western World Released Parties has conducted and completed a thorough and good faith search for any policy of insurance that might exist, or other evidence of any such policy of insurance, under which Western World was or might be an insurer of SJOP or of any Other

SETTLEMENT AGREEMENT,                    Page 15 of 26          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                   D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 15 of 42          Case 09-30938-elp11     Doc 1336     Filed 07/29/11

Releasing Party for any Tort Claim. Other than the Policies, no other policies of insurance have been located.

6.3    The person(s) executing this Agreement on behalf of each Other Releasing Party or Western World Released Party represents and warrants that he/she has received authority from such Other Releasing Party or Western World Released Party, as the case may be, to execute this Agreement on its behalf and to provide the releases identified in Section 5 above on behalf of such Other Releasing Party or Western World Released Party.

6.4    Subject to the provisions of Sections 2.3.1 through 2.3.6, the SJOP agrees that the Trust and any plan of reorganization as to SJOP shall provide that the Settlement Amount shall be used solely for payment of indemnity and expenses relating to reimbursing the United States government for reimbursement obligations for Conditional Payments made pursuant to the MSPA applicable to any given Medicare Beneficiary and, after satisfaction thereof, to such Medicare Beneficiaries, Tort Claimants and the attorneys for Tort Claimants.

## 7.    ACTIONS INVOLVING THIRD PARTIES

7.1    For purposes of supporting the release granted in Section 5 and the extinguishment of any and all rights under the Policies resulting from the purchase and sale thereof contemplated by this Agreement, the SJOP and each Other Releasing Party hereby agrees as follows:

7.1.1    In the event that any other insurer of the SJOP or Other Releasing Parties obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Western World as a result of a claim for contribution, subrogation, indemnification, or other similar claim against Western World for Western World's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation of Western World for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Agreement, the SJOP or Other Releasing Party(ies), as applicable, shall voluntarily reduce its judgment or Claim against, or settlement with, such other insurer(s) to the extent necessary to effectuate such contribution, subrogation, indemnification, or other claims against Western World. To ensure that such a reduction is accomplished, Western World shall be entitled to assert this Section as a defense to any action against Western World brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Western World and the Western World Released Parties from any liability for the judgment or Claim. Moreover, if a non-settling insurer asserts that it has a Claim

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 16 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 16 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

for contribution, indemnity, subrogation, or similar relief against Western World, such Claim may be asserted as a defense against the Trust (under a plan of reorganization as to SJOP contemplated by the Agreement) in any coverage litigation (and the Trust may assert the legal and equitable rights of Western World in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Trust (or SJOP) shall be reduced dollar for dollar by the amount so determined.

7.2    Western World shall not seek reimbursement for any payments it is obligated to make under this Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other insurer of the SJOP unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from Western World. The SJOP shall use its reasonable best efforts to obtain from all insurers with which it settles agreements similar to those contained in this Section 7; provided, however, that the failure of the SJOP, despite its reasonable best efforts, to obtain such an agreement from any insurer with which it settles will not be a basis to terminate this Agreement or excuse Western World from performing its obligations hereunder, including, without limitation, payment of the Settlement Amount.

## 8.    MISCELLANEOUS

8.1    In the event that any proceedings are commenced to invalidate all or any part of this Agreement, the Parties, Other Releasing Parties, and Western World Released Parties agree to cooperate fully to oppose such proceedings. In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Agreement to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties, Other Releasing Parties, and Western World Released Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

8.2    Each Party, Other Releasing Party, and Western World Released Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

8.3    The Parties, Other Releasing Parties, and Western World Released Parties shall cooperate with each other in connection with the Procedures Motion, the Approval Motion, the Approval Order, the Plan Confirmation Order, and the Reorganization Case. Such cooperation shall include consulting with each other upon request concerning the status of proceedings and providing each other

SETTLEMENT AGREEMENT,                    Page 17 of 26          In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                    D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 17 of 42            Case 09-30938-elp11    Doc 1336    Filed 07/29/11

with copies of requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court; provided, however, that nothing contained in this Section shall obligate any Party to provide to the other Party any information that is otherwise subject to the attorney-client privilege or work-product doctrine. It is understood and agreed that in addition to the protections set forth in Section 8.6 below, all negotiations leading up to this Agreement, and all prior drafts of this Agreement, are subject to the mediation order entered by the Bankruptcy Court in the Reorganization Case and the confidentiality order imposed by the mediator.

8.4     This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties, the Other Releasing Parties, and the Western World Released Parties. Except as otherwise expressly provided herein, this Agreement supersedes all prior communications, settlements, and understandings between the Parties, the Other Releasing Parties, and the Western World Released Parties, and their representatives, regarding the matters addressed by this Agreement. Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements, promises, or inducements, whether made by any party or any agents of any party, that are not contained in this Agreement shall not be valid or binding. Any changes to this Agreement must be made in writing and with the consent of the Parties, Other Releasing Parties, and Western World Released Parties.

8.5     By entering into this Agreement, none of Parties has waived or shall be deemed to have waived any rights, obligations, or positions it or they have asserted or may in the future assert in connection with any matter or Person outside the scope of this Agreement. SJOP's and the Other Releasing Parties' respective rights under policies of insurance issued by insurers other than Western World shall not be affected by this Agreement (except to the extent expressly stated in Section 7.1 of this Agreement). No part of this Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding by any Person as evidence of the rights, duties, or obligations of any of the Parties with respect to matters or Persons outside the scope of this Agreement. All actions taken and statements made by the Parties, Other Releasing Parties, and/or Western World Released Parties, or by their representatives, relating to this Agreement or participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

SETTLEMENT AGREEMENT,                    Page 18 of 26              In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                                        D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 18 of 42                Case 09-30938-elp11     Doc 1336     Filed 07/29/11

8.6     This Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession by any Party of liability, culpability, wrongdoing, or insurance coverage. Settlement negotiations leading up to this Agreement and all related discussions and negotiations shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in (i) an action or proceeding between or among the Parties to enforce the terms of this Agreement or (ii) any possible action or proceeding between Western World and any of its reinsurers. This Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret Western World's obligations under the Policies to the SJOP or to any other Person or any Claims of any Party against Western World.

8.7     Neither this Agreement nor the rights and obligations set forth in this Agreement shall be assigned without the prior written consent of the other Parties, except an assignment that occurs as a matter of law by virtue of a merger of a Party with another corporation or entity. The SJOP covenants that it has not and will not assign any right, interest, or action on the Policies to any Person.

8.8     Section titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

8.9     All notices, demands, or other communication to be provided pursuant to this Agreement shall be in writing and sent by FedEx or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

        If to Western World:

        Lisa A. Rosa
        Western World Insurance Company
        400 Parson's Pond Drive
        Franklin Lakes, NJ 07417-2600
        Fax: 201-847-7924

Settlement Agreement,
Release, and Policy Buyback

Page 19 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 19 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

With a copy to:

Rob S. May
Smith Freed & Eberhard P.C.
111 SW Fifth Avenue, Suite 4300
Portland, OR 97204
Fax:

If to the SJOP:

Fr. Patrick J. Lee, S.J.
c/o SOCIETY OF JESUS, OREGON PROVINCE
3215 SE 45th Avenue
Portland, OR 97206
Fax: (503) 228-6741

and

William L. Lockyear
c/o SOCIETY OF JESUS, OREGON PROVINCE
3215 SE 45th Avenue
Portland, OR 97206
Fax: (503) 228-6741

With a copy to:

Howard M. Levine
Thomas W. Stilley
SUSSMAN SHANK LLP
1000 SW Broadway
Suite 1400
Portland, Oregon 97205-3089
Fax: (503) 248-0130

and

James R. Murray
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Fax: (202) 420-2201

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 20 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 20 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

If to Official Committee for the Unsecured Creditors:

James I. Stang
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067-4100
Fax: (310) 772-2354

with a copy to:

Paul A. Richler
Morgan Lewis & Bockius LLP
300 South Grand Ave, 22nd Fl.
Los Angeles, CA 90071-3132
Fax: (213) 612-2501

and to counsel for the Trust after it comes into existence, if different from the address of counsel for the Official Committee of Unsecured Creditors.

8.10   This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile, which facsimile counterparts shall be deemed to be originals.

8.11   The Parties agree that nothing contained in this Agreement shall be deemed or construed to constitute (1) an admission by Western World that the SJOP, the Other Releasing Parties, or any other Person was or is entitled to any insurance coverage under the Policies or as to the validity of any of the positions that have been or could have been asserted by the SJOP, (2) an admission by the SJOP as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by Western World or any Claims that have been or could have been asserted by the SJOP against Western World, or (3) an admission by the SJOP or Western World of any liability whatsoever with respect to any of the Tort Claims.

8.12   All of the entities included in the definition of Western World and Western World Released Parties are intended beneficiaries of this Agreement. The Parties agree that, except as set forth in the preceding sentence or otherwise set forth in this Agreement, there are no third-party beneficiaries of this Agreement.

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 21 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 21 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

8.13    Except as otherwise provided in this Agreement, each Party shall be responsible for their own fees and costs incurred in conjunction with the Reorganization Case or this Agreement.

8.14    The Bankruptcy Court in the Reorganization Case shall retain exclusive jurisdiction to interpret and enforce the provisions of this Agreement, which shall be construed in accordance with Oregon law.

[Remainder of page left blank intentionally]

SETTLEMENT AGREEMENT,         Page 22 of 26         In re Society of Jesus, Oregon Province
RELEASE, AND POLICY BUYBACK                               D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 22 of 42        Case 09-30938-elp11    Doc 1336    Filed 07/29/11

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of the SJOP (as defined herein)**

By: _____

Fr. Patrick J. Lee, S.J.

Date: _10 June 2011_

Witness: _____

SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Page 23 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 23 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of the OTHER RELEASING PARTIES (as defined herein)**

By: _____
Fr. Patrick J. Lee, S.J.

Date: _10 June 2011_____

Witness: _____

SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Page 24 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 24 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

On behalf of WESTERN WORLD (as defined herein)

By: _____

Title: _Senior Vice President_

Date: ___6/9/11___

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 23 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 25 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

On behalf of WESTERN WORLD RELEASED PARTIES (as defined herein)

By: _____

Title: _Senior Vice President_

Date: __6/9/11__

Witness: _____

SETTLEMENT AGREEMENT,
RELEASE, AND POLICY BUYBACK

Page 24 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 26 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

The Official Committee of Unsecured Creditors [Doc 66] hereby (a) agrees that it has not and will not file or pursue any Avoidance Actions (as that phrase is defined in the Order dated February 15, 2011 [Doc 1016]), against Western World or Western World Released Parties; and (b) consents and agrees to the releases by the SJOP set forth in Section 5 of this Agreement to the extent they release or purport to release any Avoidance Actions against Western World or Western World Released Parties.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _____
[Insert Name]

Title: _____

Date: 6/10/11

Witness: _____

SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

Page 27 of 26

In re Society of Jesus, Oregon Province
D. Or. Bankr. Docket No. 09-30938-elp11

Exhibit 1.159
Page 27 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re:

SOCIETY OF JESUS, OREGON
PROVINCE, an Oregon domestic non
profit religious corporation,

     Debtor.

Case No. 09-30938-elp11

[PROPOSED] ORDER
APPROVING SETTLEMENT
AGREEMENT WITH WESTERN
WORLD INCLUDING THE SALE
OF INSURANCE POLICIES

(Docket ___, filed _____)

    A hearing having been held (the "Hearing"), to consider the motion, dated

_____ __, 2011 (the "Motion"), of the Society of Jesus, Oregon Province, an

Oregon non-profit religious corporation and the debtor and debtor in possession (the

"SJOP" or the "Debtor") in the above-captioned Chapter 11 reorganization case (the

"Reorganization Case"), for an order pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R.

Bankr. P. 2002, 6004, and 9019: (i) authorizing the SJOP to enter into a compromise

and settlement with Western World[1] and Western World Released Parties pursuant to

_____

[1] Capitalized terms used herein that are not otherwise defined herein will have the same
meaning as in the Agreement.
**Page 1 of 14 -** [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement
SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 28 of 42

Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1    which the SJOP and the Other Releasing Parties will release any and all Claims arising

2    out of, relating to, or in any way connected with the Policies, including, without

3    limitation, Tort Claims, Extra-Contractual Claims, and all Claims relating to or arising out

4    of the Reorganization Case that they may have now or in the future against Western

5    World and/or the Western World Released Parties; (ii) authorizing the sale of the

6    Policies, free and clear of all Interests of any Person, pursuant to the terms and

7    conditions of that Settlement Agreement, Release, and Buyback dated as of _____

8    __, 2011, between the SJOP and Other Releasing Parties, on the one hand, and

9    Western World and Western World Released Parties, on the other, a copy of which is

10    annexed to the Motion as Exhibit A and incorporated by reference (the "Agreement");

11    (iii) approving the Agreement and each of its terms; and (iv) requesting the findings and

12    admissions set forth herein. The Court having jurisdiction to consider the Motion and

13    the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334, and

14    consideration of the Motion, the relief requested therein, and the responses thereto, if

15    any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the

16    appearances of all interested parties and all responses and objections to the Motion, if

17    any, having been duly noted in the record of the Hearing; and upon the record of the

18    Hearing, the Motion, said responses and objections, if any; and after due deliberation

19    and sufficient cause appearing therefor, the Court hereby makes the following:

### Findings of Fact and Conclusions of Law
### Jurisdiction, Final Order, and Statutory Predicates

20
21

22         1.    The findings and conclusions set forth herein constitute the Court's

23    findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made

24    applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

25         2.    To the extent any of the following findings of fact constitute

26    conclusions of law, they are adopted as such. To the extent any of the following

**Page 2 of 14 -** [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement    SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 29 of 42    Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1    conclusions of law constitute findings of fact, they are adopted as such.

2         3.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§

3    157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§

4    157(b)(2)(A), (N), and (O). Venue of the Reorganization Case and the Motion in this

5    district is proper under 28 U.S.C. §§ 1408 and 1409.

6         4.     This Order constitutes a final and immediately appealable order

7    within the meaning of 28 U.S.C. § 158(a).

8         5.     The statutory predicates for the relief sought in the Motion are 11

9    U.S.C.§§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004, and 9019.

10                          **Retention of Jurisdiction**

11        6.     It is necessary and appropriate for the Court to retain jurisdiction to,

12   among other things, interpret and enforce the terms and provisions of this Order and the

13   Agreement, and to adjudicate, if necessary, any and all disputes arising under or

14   relating in any way to, or affecting, any of the transactions contemplated under the

15   Agreement. Such jurisdiction shall be retained even if the case is closed and the case

16   may be reopened for such purpose.

17                            **Notice of the Motion**

18        7.     The SJOP has provided due and adequate notice of the Motion, the

19   Hearing, the Agreement, and the subject matter thereof, including the injunctions to

20   protect Western World and the Western World Released Parties to be included in the

21   Plan Confirmation Order, to all known claimants (including all Tort Claimants and other

22   claimants who have filed proofs of claim, all Tort Claimants scheduled by the SJOP,

23   counsel for the Official Committee of Unsecured Creditors, the Future Claimants

24   Representative appointed pursuant to Order entered August 10, 2009 [Doc 412]), all

25   Persons who have filed notices of appearance in the Reorganization Case, all entities

26   known to have provided general liability insurance to the SJOP, the Other Releasing

**Page 3 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement    SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 30 of 42              Case 09-30938-elp11     Doc 1336    Filed 07/29/11

1   Parties and the Jesuit Volunteer Corps.   The notice was served on all claimants,

2   including Tort Claimants, at the address shown on their proofs of claim or to their

3   counsel of record (with a single notice to any counsel of record who represents multiple

4   Tort Claimants constituting notice to all that counsel's clients who are Tort Claimants)

5   or, if no proof of claim was filed, then at the address on SJOP's schedules.   Counsel for

6   each Tort Claimant has also been served.   Known Tort Claimants, to the extent of

7   record, shall be served even if not scheduled or the subject of a proof of claim, to the

8   extent known to SJOP.   The General Curia of the Society of Jesus was given notice by

9   service on its Portland-based counsel in the Reorganization Case in accordance with

10  the Stipulated Order.   Any and all co-defendants and their counsel (to the extent of

11  record) in any pre-petition litigation brought by Tort Claimants have been given notice at

12  the last address shown on any filed appearance or, if such co-defendant is proceeding

13  *pro se*, then to the last address of record for such *pro se* co-defendant.   The SJOP also

14  provided adequate notice to all other parties-in-interest by publication twice in the USA

15  Today, Oregonian, Anchorage Daily News, Fairbanks Daily News-Miner, Seattle Times,

16  Spokesman-Review, Missoulian, and Idaho Statesman.

17           8.       No other or further notice is necessary. Notice of the Agreement

18  and Motion is sufficient to bind, with respect to the relief ordered herein, all known and

19  unknown creditors and claimants, including the Future Claimants Representative and all

20  Persons whose Claims and Interests he represents, and all Persons who receive non-

21  publication notice pursuant to paragraph 7 of this Order.   A reasonable opportunity to

22  object or be heard with respect to the Motion and the relief requested therein has been

23  afforded to all known claimants and all parties-in-interest.   As to unknown creditors, the

24  publication notice was "reasonably calculated, under all circumstances, to apprise

25  interested parties of the pendency of the action and afford them the opportunity to

26  present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306,

**Page 4 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 31 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1    314 (1950).  The notice provided to the General Curia of the Society of Jesus is

2    sufficient for purposes of this settlement; notice to an attorney of a Tort Claimant or co-

3    defendant of SJOP sued by a Tort Claimant constitutes notice to the claimant

4    represented by the attorney.

## Sound Business Judgment and Reasonableness

6          9.      The relief requested in the Motion is in the best interests of the

7    SJOP, its creditors, the holders of all Claims, including the holders of Tort Claims, and

8    other parties-in-interest. The SJOP has demonstrated good, sufficient, and sound

9    business purposes, cause, and justifications for the relief requested in the Motion and

10   the approval of the transaction contemplated thereby. The settlement and compromise

11   with Western World and Western World Released Parties embodied in the Agreement,

12   including, without limitation, the sale of the Policies and the release of claims as set

13   forth therein are within the reasonable range of litigation outcomes if the SJOP and

14   Other Releasing Parties were to litigate the matters resolved pursuant to this Order and

15   represent fair and reasonable consideration for the sale of the Policies and release of

16   claims as set forth therein. The transactions contemplated by the Motion and

17   Agreement are in compliance with, and satisfy the requirements for, approval of a

18   settlement or compromise pursuant to Bankruptcy Rule 9019 and all applicable

19   provisions of the Bankruptcy Code, including without limitation Sections 105(a) and 363

20   of the Bankruptcy Code, and applicable non-bankruptcy laws.

## Good Faith of Insurance Policy Purchaser

22         10.     The Agreement was negotiated and proposed, and has been

23   entered into by the Parties, in good faith, from arm's length bargaining positions, and

24   without fraud or collusion. The Parties were represented by counsel. The sale

25   consideration and other consideration to be realized by the SJOP pursuant to the

26   Agreement is fair and reasonable. Western World is a good faith purchaser for value

**Page 5 of 14 - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES**

Exhibit 1 to Settlement Agreement     SUSSMAN SHANK LLP, ATTORNEYS AT LAW
                                      1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
                                      TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159          Case 09-30938-elp11     Doc 1336     Filed 07/29/11
Page 32 of 42

1　within the meaning of 11 U.S.C. § 363(m) and is entitled to the protection thereof, and

2　neither the Agreement nor the transaction contemplated thereby are subject to

3　avoidance under 11 U.S.C. § 363(n). None of the SJOP, Other Releasing Parties,

4　Western World, or Western World Released Parties has engaged in any conduct that

5　would cause or permit the Agreement, or the sale of the Policies, to be avoided under

6　11 U.S.C. § 363(n) or that would prevent the application of 11 U.S.C. § 363(m) or cause

7　the application of 11 U.S.C. § 363(n). Furthermore, in the absence of a stay pending

8　appeal, if any, Western World will be acting in good faith within the meaning of 11

9　U.S.C. § 363(m) in consummating the contemplated transactions at any time after entry

10　of this Order.

11
### Satisfaction of Section 363 and Other
### Bankruptcy Code Requirements

12
13　　　11.　　The transactions contemplated by the Motion and the Agreement

14　are in compliance with and satisfy all applicable provisions of the Bankruptcy Code,

including, without limitation, 11 U.S.C. § 363.

15
16　　　12.　　The SJOP may sell the Policies free and clear of Interests under 11

17　U.S.C. § 363(f) because, in each case, one or more of the criteria set forth in sections

11 U.S.C. § 363(f)(1)-(5) have been satisfied. Those holders of Interests against any of

18
19　the Policies and/or Claims thereunder who did not object, or who withdrew their

objections, to the Motion or the relief requested therein are deemed to have consented

20
21　pursuant to 11 U.S.C. § 363(f)(2). Each holder of an Interest in the Policies, including

any claim thereunder, can be compelled, in a legal or equitable proceeding, to accept a

22
23　money satisfaction of such Interest as contemplated by 11 U.S.C. § 363(f)(5).　The

Claims and Interests held by persons whose Interests are represented by the Future

24
25　Claimants Representative are "claims" within the meaning of Section 101(5) of the

Bankruptcy Code.

26

**Page 6 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement
　　　SUSSMAN SHANK LLP, ATTORNEYS AT LAW
　　1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
　　　TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 33 of 42　　　　　Case 09-30938-elp11　　Doc 1336　　Filed 07/29/11

1        13.    The sale of the Policies provides claimants, including holders of

2 Tort Claims, with adequate protection. In particular, the Tort Claimants will be able to

3 pursue their Claims against the Trust being created under the First Modified Joint Plan

4 of Reorganization Dated May 27, 2011 as contemplated by this Agreement (the "Plan").

5 Accordingly, the sale of the Policies free and clear of Interests satisfies the statutory

6 prerequisites of 11 U.S.C. § 363(f). Moreover, if a non-settling insurer asserts that it

7 has a Claim for contribution, indemnity, subrogation, or similar relief against Western

8 World or a Western World Released Party, such Claim may be asserted as a defense

9 against the Trust (under the Plan contemplated by the Agreement) in any coverage

10 litigation (and the Trust may assert the legal and equitable rights of Western World or

11 the Western World Released Party in response thereto); and to the extent such a Claim

12 is determined to be valid by the court presiding over such action, the liability of such

13 non-settling insurer to the Trust (or SJOP) shall be reduced dollar for dollar by the

14 amount so determined.

15                               **Releases**

16        14.    In light of the terms of the Agreement, it is reasonable and

17 appropriate for the SJOP and Other Releasing Parties to provide the releases set forth

18 in the Agreement. These releases comply with the Bankruptcy Code and other

19 applicable laws. The consideration given by Western World hereunder constitutes valid

20 and valuable consideration for the releases by SJOP and the Other Releasing Parties.

21                         **No Successor Liability**

22        15.    The transfer pursuant to the Agreement of the Policies does not

23 and will not subject or expose Western World or any Western World Released Party to

24 any liability, claim, cause of action, or remedy by reason of such transfer under the laws

25 of the United States, any state, territory, or possession thereof, or the District of

26 Columbia, based on, in whole or in part, directly or indirectly, including, without

**Page 7 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement    SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 34 of 42     Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1 limitation, any theory of tort, creditors' rights, equity, antitrust, environmental, successor

2 or transferee liability, labor law, *de facto* merger, or substantial continuity.

3     16. ' No common identity of officers or directors exists between Western

4 World or the Western World Released Parties, on the one hand, and the SJOP or the

5 Other Releasing Parties, on the other hand.

6     17. Western World is purchasing the Policies pursuant to the

7 Agreement and this Order. Western World is not purchasing any other assets of the

8 SJOP or the Other Releasing Parties. Western World shall not have any responsibility

9 or liability with respect to any of the other assets of the SJOP or the Other Releasing

10 Parties.

11     18. A sale of the Policies other than one free and clear of Interests

12 would impact adversely on the SJOP and creditors and would be of substantially less

13 benefit to the estate of the SJOP.

14 **Supplemental Injunction**

15     19. Issuing a Supplemental Injunction under 11 U.S.C. §§ 105(a) and

16 363 is essential to the reorganization of the SJOP. The SJOP and Western World have

17 agreed that a supplemental injunction is a necessary prerequisite for their implementing

18 the terms and conditions of the Agreement, and Western World will not consummate the

19 sale of the Policies in the absence of a Supplemental Injunction from this Court. Due

20 and adequate notice of the Supplemental Injunction has been provided by the notice of

21 the motion.

22     20. Western World and the Western World Released Parties shall be

23 entitled to the benefit of an injunction (the "Supplemental Injunction" as defined in the

24 Agreement) in the Plan Confirmation Order, providing that, pursuant to 11 U.S.C. §§

25 105(a) and 363, any and all Persons and entities who now hold or who may in the future

26 hold Claims or Interests of any kind or nature against the SJOP, the Other Releasing

**Page 8 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement     SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 35 of 42     Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1    Parties, Western World, Western World Released Parties, or the Policies relating to or

2    in connection with the Policies, Tort Claims or Abuse Claims (as defined in the Plan) are

3    barred and permanently enjoined from asserting such Claims or Interests against

4    Western World, any Western World Released Party, and/or the Policies. Nothing in this

5    paragraph shall bind the Court as to approval of such an injunction in the Plan.

6          For all of the foregoing and after due deliberation, **IT IS ORDERED,**

7    **ADJUDGED, AND DECREED THAT:**

8          A.    The Motion is GRANTED and APPROVED in all respects.

9          B.    The Agreement and each of its terms and conditions are hereby

10   approved, including without limitation the agreement of the Official Committee of

11   Unsecured Creditors as set forth on its signature page of the Agreement.

12         C.    For the reasons set forth herein and on the record at the Hearing,

13   all objections to the Motion and the relief requested therein and/or granted in this Order

14   that have not been withdrawn, waived, or settled, and all reservations of rights included

15   in such objections are overruled on the merits.

16         D.    The SJOP is authorized, empowered, and directed to enter into the

17   Agreement, pursuant to 11 U.S.C. § 363(b) and other applicable provisions of the

18   Bankruptcy Code, to sell, transfer, and convey its Interest in the Policies to Western

19   World in accordance with the terms and subject only to the conditions specified herein

20   and in the Agreement. The transfer by the SJOP or Other Releasing Parties of their

21   respective Interests in the Policies shall vest Western World with all right, title, and

22   Interest in and to the Policies, free and clear of all rights, Claims, and Interests,

23   including all Tort Claims, reimbursement obligations for Conditional Payments under the

24   MSPA, and Claims by other insurers for contribution, indemnity, subrogation, or similar

25   relief whether arising before or after commencement of this Reorganization Case and

26   whether arising by agreement, understanding, law, equity, or otherwise.

**Page 9 of 14 - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT**
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement        SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 36 of 42              Case 09-30938-elp11      Doc 1336      Filed 07/29/11

1        E.     The terms of the Agreement are approved in their entirety, and this

2   Order shall be binding upon the SJOP, all creditors of and claimants against the SJOP,

3   Other Releasing Parties, all Tort Claimants, all insurers who received notice of the

4   motion, the Future Claimants Representatives and all Persons whose Claims and

5   Interests he represents, the General Curia of the Society of Jesus, all co-defendants in

6   any pre-petition litigation brought by Tort Claimants, and all other Persons and entities

7   as set forth in paragraph 7 *supra*, and each of their successors and assigns. The sale of

8   the Policies to Western World shall constitute a legal, valid, and effective transfer of the

9   Policies and shall vest Western World with all right, title, and Interest in and to the

10   Policies free and clear of all rights, claims, and Interests, effective as of the Effective

11   Date. The sale of the Policies to Western World is subject to the Conditions to

12   Agreement set forth in Section 4 of the Agreement.

13        F.     The $300,000 cash purchase price under the Agreement shall be

14   paid by Western World as provided in the Agreement.

15        G.     The releases in the Agreement comply with the Bankruptcy Code

16   and all applicable state laws. The Agreement terminates the Policies pursuant to its

17   terms, and the Policies are of no further force and effect.

18        H.     The sale of the Policies to Western World under the Agreement will

19   constitute transfers for reasonably equivalent value and fair consideration under the

20   Bankruptcy Code and the laws of the State of Oregon.

21        I.     The SJOP and the Other Releasing Parties and Western World are

22   each hereby authorized to take all actions and execute all documents and instruments

23   that the SJOP, the Other Releasing Parties, and Western World deem necessary or

24   appropriate to implement and effectuate the transactions contemplated by the

25   Agreement.

26

**Page 10 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement    SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 37 of 42    Case 09-30938-elp11   Doc 1336   Filed 07/29/11

1      J.     Pursuant to 11 U.S.C. §§ 105(a) and 363(f), as provided by the

2   Agreement, the Policies shall be and hereby are transferred to Western World, free and

3   clear of all liens, Claims, encumbrances and Interests of any Person, including all rights

4   and Interests of SJOP; all Other Releasing Parties; any other Person claiming by,

5   through, or on behalf of the SJOP; any other insurer; any Tort Claimant; all co-

6   defendants in any pre-petition litigation brought by Tort Claimants; the Jesuit Volunteer

7   Corps; and the General Curia of the Society of Jesus, whether arising prior to or

8   subsequent to the commencement of the Reorganization Case, and whether imposed

9   by agreement, understanding, law, equity, or otherwise (including, without limitation,

10  Interests in the Policies that purport to give to any party a right or option to effect any

11  forfeiture, modification, or termination of the Interest of the bankruptcy estate or

12  Western World, as the case may be, in the Policies).

13     K.    Western World shall be treated as a "Settling Insurer" under the

14  Plan and shall be afforded (a) all of the rights, interests, and benefits of a Settling

15  Insurer designated under the Plan and Plan Confirmation Order as a Settling Insurer

16  including, but not limited to, the channeling injunctions and other rights, benefits and

17  interests set forth in Article 11 of the Plan.

18     L.    Western World is a good faith purchaser of the Policies and is

19  entitled to (and is hereby granted) all of the protections provided to good faith

20  purchasers under 11 U.S.C. § 363(m). The transactions contemplated by the

21  Agreement shall not be subject to avoidance under 11 U.S.C. § 363(n). All Persons are

22  hereby enjoined from commencing or continuing an action seeking relief under 11

23  U.S.C. § 363(n) with respect to the Agreement and the transactions contemplated

24  thereby.

25     M.    Western World and the Western World Released Parties are not,

26  and shall not be deemed to be, a successor to the SJOP or the Other Releasing Parties

**Page 11 of 14 - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES**

Exhibit 1 to Settlement Agreement   SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 38 of 42        Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1 by reason of any theory of law or equity or as a result of the consummation of the

2 transactions contemplated in the Agreement or otherwise. Western World and the

3 Western World Released Parties shall not assume any liabilities of the SJOP or the

4 Other Releasing Parties.

5     N.    Pursuant to Fed. R. Bankr. P. 9019, the releases and provisions set

6 forth in Sections 5.1 - 5.6 of the Agreement are expressly approved. All of the Claims

7 released therein are hereby dismissed and forever released effective as set forth under

8 the Agreement.

9     O.    In the event that the Court approves a plan of reorganization for

10 SJOP that is consistent with the Agreement, such plan shall provide that the Trust is

11 bound by the Agreement, will include the Supplemental Injunction, will provide for the

12 relief specified in Section 3.6 of the Agreement, and will provide for the use of the

13 Settlement Amount as specified in Section 6.4 of the Agreement. In addition, any

14 injunction in such plan that channels Tort Claims to the Trust will include Western World

15 and the Western World Released Parties as a third party entitled to its benefits and

16 protections.

17     P.    This Order shall be effective and enforceable immediately upon

18 entry and its provisions shall be self-executing and shall not be stayed under Fed. R.

19 Bankr. P. 6004(h) or any other applicable provision.

20     Q.    Nothing in this Order or the Plan Confirmation Order shall bar or

21 limit Claims by a Tort Claimant against the Society of Jesus (Rome), the Society of

22 Jesus General Curia, The Father General of the Society of Jesus (Rome) and his

23 predecessors, and any successors to SJOP but only to the extent the liability of such

24 successor is entirely independent of the liability of (a) SJOP, (b) any insured under any

25 policy of insurance issued or allegedly issued by Western World that insures or

26 otherwise provides coverage or allegedly insures or allegedly otherwise provides

**Page 12 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement    SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 39 of 42          Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1  coverage for the SJOP and/or any of the Other Releasing Parties, and/or (c) any Other

2  Releasing Party.

3      R.    This Court shall retain exclusive jurisdiction to interpret and enforce

4  the provisions of the Agreement and this Order in all respects and further to hear and

5  determine any and all disputes between the SJOP and/or the Other Releasing Parties

6  and/or Western World and/or the Western World Released Parties, as the case may be,

7  and any other Person; provided, however that in the event the Court abstains from

8  exercising or declines to exercise such jurisdiction or is without jurisdiction with respect

9  to the Agreement or this Order, such abstention, refusal, or lack of jurisdiction shall

10  have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of

11  any other court having competent jurisdiction with respect to any such matter. In the

12  event this case has been closed, there shall be a right to have this case reopened upon

13  ex parte motion or application for such purposes.

14      S.    The failure to specifically include any particular provision of the

15  Agreement in this Order shall not diminish or impair the effectiveness of such provision,

16  it being the intent of the Court that the Agreement be authorized and approved in its

17  entirety.

18      T.    The provisions of this Order are nonseverable and mutually

19  dependent.

20      U.    This Order shall inure to the benefit of Western World, the Western

21  World Released Parties, the SJOP, the Other Releasing Parties and their respective

22  successors and assigns and shall be binding upon the SJOP and the Other Releasing

23  Parties.

24      V.    Each and every federal, state, and local governmental agency or

25  department is hereby directed to accept for filing, recording or otherwise any and all

26

**Page 13 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement    SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 40 of 42    Case 09-30938-elp11    Doc 1336    Filed 07/29/11

1   documents and instruments necessary and appropriate to consummate and/or evidence

2   the transactions contemplated by the Agreement and this Order.

3                                    # # #

4
5   PRESENTED BY:

6   SUSSMAN SHANK LLP

7
    _____
8   Thomas W. Stilley, OSB No. 883167
    tom@sussmanshank.com
9   Attorneys for Debtor

    c: ECF Participants
10     Attached List

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 14 of 14** - [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
WITH WESTERN WORLD INCLUDING THE SALE OF INSURANCE POLICIES

Exhibit 1 to Settlement Agreement
SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Exhibit 1.159
Page 41 of 42

Case 09-30938-elp11    Doc 1336    Filed 07/29/11

**EXHIBIT 2**
**to Settlement Agreement, Release, and Policy Buyback**

The following insurance policies are included within the definition of Policies and were issued or allegedly issued by the following insurers:

| Insurer | Policy No. |
|---|---|
| Western World Insurance Co. | GLA 343047 |
| Western World Insurance Co. | NGL 06159 |
| Western World Insurance Co. | NGL 06196 |

**Exhibit 2 to Settlement Agreement**

| Adv. Case No. | DEFENDANT |
|---|---|
| 11-03102 | Manhattan College aka The Brothers of the Christian Schools of Manhattan College, Inc. aka Jasper Hall aka Lantern Organization aka Lantern Group aka Lantern Group Foundation, Inc. aka Jasper Hall aka Jasper Hall Service Corp., and DOES 1 through 5 |
| 11-03096 | Manresa Jesuit Community aka Society of Jesus, Oregon Province – Manresa Jesuit Community and DOES 1 through 5 |
| 11-03097 | Jesuit Fathers of Yakima aka Jesuit Fathers in Yakima aka Jesuit Fathers (Yakima) and DOES 1 though 5 |
| 11-03071 | The Jesuit Community Corporation at St. Louis University a/k/a Jesuit Community Corporation |
| 11-03069 | Jesuit Conference, Inc. d/b/a Company Magazine |
| 11-03070 | Jesuit Volunteers Corps: Northwest a/k/a Jesuit Volunteers Corp. |
| 11-03083 | Providence Health & Services, *Defendant;* Providence Health & Services - Washington, d/b/a Mount St. Vincent a/k/a Providence Mount St. Vincent |
| 11-03090 | The New York Province of the Society of Jesus d/b/a The Community for Jesuits in First Studies at Fordham University (Ciszek Hall), *Defendant;* Fordham University (Ciszek Hall) |
| 11-03062 | Gonzaga Preparatory School aka Gonzaga Preparatory School, Inc. |
| 11-03074 | Jesuit High School, *Defendant;* Jesuit High School Foundation |
| 11-03064 | Loyola University of Chicago |
| 11-03063 | Legislative Consultants, Inc., aka Legislative Consultants in |

| Adv. Case No. | DEFENDANT |
|---|---|
| | Alaska |
| 11-03079 | St. Andrew Nativity School |
| 11-03066 | St. Louis University |
| 11-03076 | Trustees of Boston College, *Defendant;* School of Theology and Ministry, Boston College fka Weston Jesuit School of Theology, *Defendant;* The Society of Jesus of New England aka New England Province Jesuits |
| 11-03072 | Wisconsin Province Society of Jesus |
| 11-03077 | Saint Louis University dba Bellarmine House of Studies, *Defendant;* The Jesuits of the Missouri Province; The Jesuit Community Corporation at St. Louis University dba Bellarmine House of Studies |
| 11-03085 | Seattle University (Bellarmine Hall) |
| 11-03080 | MBK Senior Living LLC dba Harbor Glen at Cedar Canyon Estates and Harbor Crest at Cedar Canyon Estates |
| 11-03067 | The Society of Jesus, *Defendant;* Society of Jesus General Curia; Curia Generalizia, Society of Jesus, Rome; Society of Jesus, Father General, Adolpho Nicholas, S.J., and His Predecessors, |
| 11-03065 | Canisius College |
| 11-03087 | The Conference of Major Superiors of Men of the United States aka Conference of Major Superiors of Men aka CMSM |
| 11-03068 | Corp. of Roman Catholic Clergymen a/k/a The Corporation of the Roman Catholic Clergymen |
| 11-03095 | Hennessey Funeral Home aka Hennessey Funeral Homes & Crematories aka Hennessey Funeral Homes aka Hennessy-Smith Funeral Home aka |

Exhibit *11- 9*

2

DOCS_LA:235409.1 Page 2 of 4

| Adv. Case No. | DEFENDANT |
|---|---|
|  | Carriage Funeral Holdings, Inc. dba Hennessey-Smith Funeral Home and DOES 1 through 5 |
| 11-03073 | Intercommunity Peace & Justice Center a/k/a Intercomm. Peace & Justice Ctr. |
| 11-03082 | Jesuit Community at Boston College, Trustees of Boston College, *Defendant;* Society of Jesus, New England Province aka Society of Jesus of New England |
| 11-03071 | The Jesuit Community Corporation at St. Louis University a/k/a Jesuit Community Corporation |
| 11-03100 | Jesuit Fathers of Upper Canada aka Society of Jesus, English Canada Province aka Provincia Canadae Anglicae aka Jesuits in English Canada aka Society of Jesus Province of Upper Canadae Superioris |
| 11-03084 | Jesuit Refugee Service/USA a/k/a Jesuit Refugee Service |
| 11-03089 | Praesidium, Inc. |
| 11-03081 | The California Province of the Society of Jesus dba Saint Agnes Church, Archdiocese of San Francisco, aka The Archdiocese of San Francisco Parish and School Juridic Persons Real Property Support Corp., The Archdiocese of San Francisco Parish, School and Cemetery Juridic Persons Capital Assets Support Corporation, dba St. Agnes Church |
| 11-03078 | The Corporation of Gonzaga University |
| 11-03075 | Faber Jesuit Community, Inc. f/k/a Weston Jesuit Community, Inc. a/k/a Weston Jesuit Community; The Society of Jesus of New |

Exhibit 11 - 9
Page 3 of 4

3

| Adv. Case No. | DEFENDANT |
|---|---|
| | England a/k/a New England Province Jesuits |
| 11-03091 | Trustees of the Society of Jesus 1929 Trust for Roman Catholic Purposes |
| 11-03092 | Compania de Jesus aka *aka* Society of Jesus (Peru) aka Compania de Jesus Comunidad San Jose *aka* Society of Jesus, San Jose Community (Peru) |
| 11-03099 | Br. Joe Prince Community aka Brother Joe Prince Community aka Society of Jesus, Oregon Province - Brother Joe Prince Community |
| 11-03101 | President and Board of Trustees of Santa Clara College aka Jesuit School of Theology of Santa Clara University aka J.S.T.B. aka Jesuit School of Theology of Santa Clara University in Berkeley aka Jesuit Community, J.S.T.B. aka Santa Clara University aka The Jesuit School of Theology at Berkeley aka The California Province of the Society of Jesus dba J.S.T.B. dba Jesuit Community, J.S.T.B. dba Santa Clara University dba The Jesuit School of Theology at Berkeley dba Jesuit School of Theology of Santa Clara University in Berkeley dba The Jesuit Community at Santa Clara University, Inc. and DOES 1 through 5 |

Exhibit 11- 9
Page 4 of 4

4

DOCS_LA:235409.1